UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., *Plaintiff*, v. MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, *Defendants*. | Civil Action No. 1:06-cv-00658 (HHK) |

### PLAINTIFF INTERVET'S OPPOSITION TO DEFENDANTS THE QUEEN'S UNIVERSITY OF BELFAST'S AND THE UNIVERSITY OF SASKATCHEWAN'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff Intervet Inc. ("Intervet") hereby opposes Defendants The Queen's University of Belfast's and the University of Saskatchewan's Motion to Dismiss for Lack of Subject Matter Jurisdiction. For the reasons set forth in this brief, the Court should deny the motion by The Queen's University of Belfast and the University of Saskatchewan ("Universities").

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 1

I. The Universities' Relationship with Merial, the Patent-in-Suit, and This Case................. 1

II. The Georgia Action............................................................................................................ 2

III. This Action and the Recent Amendment to the Tripartite Agreement .............................. 3

ARGUMENT ........................................................................................................................... 5

I. An Actual Case or Controversy Existed Between Intervet and the Universities
   When This Suit Was Filed ................................................................................................. 5

II. The Universities Should Remain as Parties in This Case Because a Case or
    Controversy Still Exists and They Possess Critical Information ...................................... 7

III. If the Court Grants the Universities' Motion, it Should Order That the Inventors,
     Their Documents, and Other Relevant Documents From the Universities are in the
     Control of Merial and Therefore Subject to Discovery ....................................................9

CONCLUSION......................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Abbott Labs.v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995) ...................................................... 7

*Anne Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988) ...................................................... 11

*\* Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) ...................................................... 6

*Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16
    (S.D.N.Y. 1984) ........................................................................................................................11

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) .............................................. 6

*Foseco Inc. v. Consol. Aluminum Corp.*, No. 88-85 C (2), 1989 U.S. Dist. LEXIS 15318, 12
    U.S.P.Q.2d 1226 (E.D. Mo. Apr. 13, 1989) .......................................................................... 8, 9

*Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514 (S.D.N.Y. 1992) ................................ 11

*\* In re Nifedipine Capsule Patent Litig.*, No. 89 Civ. 1374, 1989 U.S. Dist. LEXIS 11061, 13
    U.S.P.Q.2d 1574 (S.D.N.Y. Sept. 20, 1989) .................................................................. 9, 10, 11

*\* Israel Bio-Eng'g Project v. Amgen, Inc.*, 401 F.3d 1456 (Fed. Cir. 2005) ................................. 5

*\* Minebea Co., Ltd. v. Georg Papst*, 370 F. Supp. 2d 302 (D.D.C. 2005) ................................ 9, 10

*Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F.Supp. 484 (D. Mass. 1996) ................................ 8

*Sherman Theaters, Ltd. v. Ahlbrandt*, 607 F.Supp. 939 (D.D.C. 1989) ........................................ 6

*Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971 (Fed. Cir. 2005) ......................................... 7

*Societe de Conditionnement en Aluminum v. Hunter Eng'g Co., Inc.*, 655 F.2d 938 (9th Cir.
    1981) ......................................................................................................................................... 6

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) ....................... 7

**Statutes**

\* Fed. R. Civ. P. 34(a) ................................................................................................................ 9, 11

**Treatises**

Chisum on Patents, § 21.02[1][d][iii][A]……………………………………………………… 7

# INTRODUCTION

The Universities' motion to dismiss should be denied because it is not supported by the law and violates the most basic principles of fairness. At best, the Universities' motion is little more than a thinly-veiled attempt to block Intervet from access to discovery from the Universities and *eight* of the ten named inventors of the patent-in-suit, U.S. Patent No. 6,368,601 ("'601 patent"). This motion is the culmination of the Universities' and Merial's numerous and similar previous attempts to obstruct access to the Universities in the predecessor case in the Northern District of Georgia.

# STATEMENT OF FACTS

**I.     The Universities' Relationship with Merial, the Patent-in-Suit, and This Case**

The '601 patent resulted from work performed under an agreement between the Universities and Merial SAS ("Tripartite Agreement").[1] The Universities conducted the bulk of the research and development work that led to the '601 patent. Indeed, *eight* of the ten inventors on the face of the '601 patent are affiliated with the Universities. The express provisions of the Tripartite Agreement also strongly suggest that the Universities were the ones doing the day-to-day research that led to the '601 patent. For instance, under the Tripartite Agreement, the Universities expressly retained the right to make and use any patented invention for scientific and technical research. *See* Dismissal Order From the Georgia Action at 15 (attached as Exhibit

---

[1]    The Tripartite Agreement is not attached as an exhibit because it was produced confidentially by Merial in the Georgia Action only after the court ordered its production. Defendants have once again chosen not to produce this most relevant document in the present action. The failure to provide this Court with a copy of that agreement, by itself, should preclude the Court from granting the present motion to dismiss. Without fully considering the rights granted and retained in that agreement, the Court cannot properly consider whether the Universities should remain as parties to the present lawsuit. Certain portions of the Tripartite Agreement were made public in the Georgia Action, and only these portions are discussed herein.

1

A). Accordingly, it appears that the majority of the information related to the conception, reduction to practice, and potential unenforceability of the '601 patent resides with the Universities and the inventors.

## II.     The Georgia Action

Prior to the initiation of the present lawsuit, Merial Limited sued Intervet for alleged infringement of the '601 patent in the United States District Court for the Northern District of Georgia ("Georgia Action").  Merial Limited originally brought the Georgia Action in its own name, claiming that it was "exclusively licensed" under the '601 patent.  *See* D.I. 1 from C.A. No. 1:05-cv-3168 (attached as Exhibit B).  The court in the Georgia Action, however, found that Merial Limited had no standing to sue for infringement of the '601 patent.  *See* Exhibit A at 7-16.  The face of the '601 patent and the assignment records in the U.S. Patent and Trademark Office ("PTO") showed that its joint owners were the Universities and Merial SAS, not Merial Limited.  *See id.* at 3.  Further, while Merial Limited alleged that it was "exclusively licensed," it possessed no written exclusive license at the time it brought suit.  *See id.* at 4, 10-12.  Intervet thus moved to dismiss the Georgia Action for lack of standing.  *See id.* at 7.  At the same time, Intervet also brought the present action, properly naming all owners of the '601 patent.  (D.I. 1.)

In response to Intervet's motion to dismiss, Merial struggled mightily to maintain the Georgia Action while keeping the Universities out of the case.  First, Merial Limited produced a new "exclusive license" between itself and Merial SAS.  This license was actually an after-the-fact, retroactive license executed well after Merial Limited initiated the Georgia action, after Intervet moved to dismiss that case, and even after Intervet initiated the present lawsuit.  *See* Exhibit A at 4, 11-12.

2

Merial next sought to keep the Universities out of the Georgia Action by adding only Merial SAS (i.e., only one of the three parties to the Tripartite Agreement) as a party. *See id*. at 12. Relying on selective presentation and cropping of portions of the Tripartite Agreement, while simultaneously refusing to produce the entire Agreement (just as it has done in the present case), Merial Limited and Merial SAS argued that between them all substantial rights in the '601 patent were accounted for, and thus the Universities were not necessary. *See id*. at 12-13. As the court in the Georgia Action later held, this contention was not true. *See id*. at 12-16.

Finally, the Universities themselves also attempted to secure their release from the Georgia Action by voluntarily filing declarations stating that they agreed to be bound by the decision in the Georgia Action. *See id*. at 15. These declarations demonstrate both that the Universities consented to the enforcement of their patent against Intervet in the Georgia Action, and that Merial has the ability to obtain their voluntary cooperation in furthering this enforcement. *See* Declarations of the Universities at ¶ 3 (attached as Exhibits C and D).

Despite the Universities' and Merial's concerted efforts to the contrary, the court in the Georgia Action refused to allow the case to continue *without* the Universities' involvement. *See* Exhibit A at 15-16. The Northern District of Georgia specifically held that the Universities had substantial ownership rights in the '601 patent and were hence necessary parties. *See id.* at 12-16. Accordingly, the court dismissed the Georgia Action based on Merial's lack of standing. *See id.* at 16.

**III.    This Action and the Recent Amendment to the Tripartite Agreement**

As in the Georgia Action, Merial has charged Intervet with infringement of the '601 patent in this case. (D.I. 7 at 6-8.) The need for the Universities to participate in discovery in

3

order for Intervet to defend itself against Merial's claims of infringement is no less real in this case than it was in the Georgia Action. Despite this fact, and the court in the Georgia Action's clear rejection of their earlier attempts to avoid participating in discovery concerning the '601 patent, the Universities and Merial have redoubled their efforts to exclude the Universities from this action. This Court should also reject the Defendants' latest maneuvers to avoid jurisdiction.

Since the filing of this action and Merial's counterclaim for infringement, Merial SAS and the Universities executed an amendment that purports to "clarify" the Tripartite Agreement. (D.I. 21-1 at 6.) The recent amendment, however, does not nullify the Tripartite Agreement and, in particular, Article 7.4 of that agreement, which remains in effect.[2] Under Article 7.4:

> Each Party, as soon as it becomes aware, shall notify the others, either of any apparent infringement of their common patents by a third party, or of any claim of a third party alleging that the use of results and/or patents as per the present agreement infringe such third party's patents [sic] rights.
>
> *The Queen's University of Belfast, the University of Saskatchewan and MERIAL shall then closely cooperate in any procedure and/or defense, any relevant costs being borne by MERIAL.*

(emphasis added). *See* Exhibit A at 14. The recent amendment also does not limit the Universities' right under the Tripartite Agreement to make and use any patented invention. *See id.* at 15. In sum, the Universities continue to be integral to the enforcement of the '601 patent.

---

[2] For this reason, Intervet submits, the Court should have been presented with a copy of the Tripartite Agreement, and that without this agreement, it should deny the present motion.

4

**ARGUMENT**

I.  **An Actual Case or Controversy Existed Between Intervet and the Universities When This Suit Was Filed**

From the beginning of this patent infringement action, the Universities were necessary parties because they were co-owners of the '601 patent with substantial rights in the patent.[3] On April 27, 2006, the Georgia district court explicitly held that the Universities possessed substantial rights in the patent-in-suit and were necessary parties. *See* Exhibit A at 12-16. This decision renders the argument that there was never subject matter jurisdiction over the foreign Universities frivolous – there could not have been a proper lawsuit *without* the Universities. The Universities argue that there has never been a case or controversy between Intervet and the Universities because the Universities did not actually threaten suit against Intervet and the Georgia Action was brought only by Merial Limited. (D.I. 21-1 at 3-6.) However, regardless of whether the Universities themselves ever explicitly and directly threatened suit, it is undisputable that a case or controversy existed between the Universities, as co-owners of the '601 patent, and Intervet, when Merial Limited filed suit against Intervet.

Under the unambiguous terms of Article 7.4 of the Tripartite Agreement, Merial was required to notify the Universities of any alleged infringement and thus the Universities had to have been complicit in the filing of the Georgia Action. Likewise, once notified, the Universities were obligated under the Tripartite Agreement to cooperate closely with Merial in the prosecution of the case. Indeed, the Universities submitted declarations stating that they "had

---

[3]   It is black-letter law that all co-owners of a patent must be party to a lawsuit to enforce the patent. *Israel Bio-Eng'g Project v. Amgen, Inc.*, 401 F.3d 1456, 1465-66 (Fed. Cir. 2005).

been actively working directly with Merial Limited on procurement and enforcement of the patents under the Tripartite Agreement for many years . . . ." *See* Exhibits C and D at ¶ 3.

The Universities' current attempt to rely on agency principles to argue that Merial Limited had no apparent authority to speak on their behalf is misplaced. (D.I. 21-1 at 3-4.) Unlike *Sherman Theaters, Ltd. v. Ahlbrandt*, 607 F.Supp. 939 (D.D.C. 1989), on which the Universities rely, Intervet is not charging the Universities under agency principles. *Id.* at 941. The *Sherman Theaters* court also specifically noted that "[d]efendant . . . engaged in no conduct to cause plaintiff to believe that he consented to the charges of [the licensee]." *Id.* at 944. This is hardly the case here. The Universities' complicity and involvement in the Georgia Action from the beginning makes the issue of apparent authority irrelevant. The Universities' protracted arguments on agency simply confuse the issue because "agency is not the test for case or controversy." *Societe de Conditionnement en Aluminum v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 945 (9th Cir. 1981) (cited in *Sherman Theaters*).

As stated by the Supreme Court, "[i]f . . . a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the [Declaratory Judgment] Act." *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95-96 (1993) (emphasis in original); *see also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2005). Here, Intervet has been charged with infringement of the '601 patent both in the Georgia Action and in this case. Furthermore, the Universities, at the very least at the time of these infringement charges, were co-owners of the '601 patent with substantial rights and a contractual obligation to participate in this litigation. *See* Exhibit A at 12-16. In other words, as held by the court in the Georgia

6

Action, they were necessary parties.  Thus, the fact that the Universities never themselves directly threatened suit against Intervet is irrelevant.

A charge of infringement is to be given a liberal or expansive interpretation, not the overly restrictive one that the Universities have improperly offered.  *See* Chisum on Patents, § 21.02[1][d][iii][A].  The actual controversy requirement is judged "by the facts of each case, generally applicable rules are few."  *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995).  Here, the totality of the facts and circumstances leaves no doubt that Intervet had a reasonable apprehension of suit, and that the foreign Universities were properly named as parties.

## II.    The Universities Should Remain as Parties in This Case Because a Case or Controversy Still Exists and They Possess Critical Information

Recently, Merial SAS and the Universities have amended their Tripartite Agreement to convey additional rights from the Universities to Merial SAS.  This latest strategic amendment, however, fails to divest the Universities of all of their rights and obligations related to the '601 patent.  For example, the Universities continue to have obligations under the Tripartite Agreement to cooperate in any litigation related to the '601 patent and the right to make and use the patented invention.  These rights and obligations are still significant to this case and controversy.  *See Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005) (retained right to consent to certain actions and be consulted on others considered in substantial rights evaluation); *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (retained right to make and use the patented invention for internal use considered in substantial rights evaluation); *see also* Exhibit A at 15 ("Belfast and Saskatchewan retained the right to freely dispose of the '601 Patent to carry on internal scientific, research, or teaching works.").

7

Nevertheless, the Universities argue that their recent amendment to the Tripartite Agreement requires that the Court dismiss them as parties, no matter the timing of the amendment or their motive in making it, relying in part on *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F.Supp. 484 (D. Mass. 1996). (D.I. 21-1 at 6-7.) In finding that a post-filing assignment divested subject matter jurisdiction, however, the *Pharmachemie* court noted that the dismissed party's "only current connection to the patents-in-suit is that it produces doxorubicin, an unpatented bulk raw material that is later sold and shipped to Inc. in the United States." 934 F.Supp. at 489. The Universities, in contrast, do not have such an attenuated connection to this case. First, and most importantly, eight of the ten named inventors on the face of the '601 patent are from the Universities. Second, the recent clarification to the Tripartite Agreement does not divest the Universities of their entire interests in the '601 patent under the Tripartite Agreement because they are still required to cooperate in litigation and are entitled to make and use the '601 patent. *See* Exhibit A at 14-15.

Similarly misplaced is the Universities' reliance on *Foseco Inc. v. Consol. Aluminum Corp.*, No. 88-85 C (2), 1989 U.S. Dist. LEXIS 15318, 12 U.S.P.Q.2d 1226 (E.D. Mo. Apr. 13, 1989). (D.I. 21-1 at 7.) Unlike in the *Foseco* case, where the court noted that the party opposing dismissal presented no specifics to support its contention of prejudice, here the vast majority of the inventors, their notebooks, and most of the documents pertinent to the validity and enforceability issues in this action reside with the parties seeking to be dismissed. 12 U.S.P.Q.2d at 1228. Even in *Foseco*, however, where there was no evidence of prejudice, the court stated that such motions to dismiss should not serve as shields to discovery:

> The Court does note that by granting F.I.L's motion to dismiss, this Court is not completely insulating F.I.L. from the discovery process, should it become apparent that the discoverable material sought by defendants is in the exclusive possession of F.I.L.

8

12 U.S.P.Q.2d at 1228. In this case, highly relevant and discoverable documents and testimony lie with the Universities and the inventors who are contractually obligated to Merial to cooperate in this litigation. A case or controversy as to the validity and enforceability of the '601 patent continues, and the Universities should remain in this case so that Intervet can have access to this discovery and defend itself.

**III.    If the Court Grants the Universities' Motion, it Should Order That the Inventors, Their Documents, and Other Relevant Documents From the Universities are in the Control of Merial and Therefore Subject to Discovery**

Motions to dismiss such as the one presently before the Court carry significant potential for prejudice. *Foseco*, 12 U.S.P.Q.2d at 1228. Thus, in patent cases, where the relevance and importance of discovery from inventors are unquestioned, this District and other courts have held that inventors and their documents are within the control of the party-patentee and must be made available in discovery under Fed. R. Civ. P. 34(a). *See Minebea Co., Ltd. v. Georg Papst*, 370 F. Supp. 2d 302, 307-10 (D.D.C. 2005); *In re Nifedipine Capsule Patent Litig.*, No. 89 Civ. 1374, 1989 U.S. Dist. LEXIS 11061, 13 U.S.P.Q.2d 1574 (S.D.N.Y. Sept. 20, 1989). This Court should issue an order to this effect in the event that it chooses to grant the Universities' motion.

This District, under similar circumstances in *Minebea*, recently ruled that the inventors were under the control of the party-assignee and must be made available to testify. *Minebea*, 370 F. Supp. 2d at 307-10. In *Minebea*, seven inventors assigned the patent-in-suit to Papst Motoren, a German company. 370 F. Supp. 2d at 307. In their initial assignments, the inventors in *Minebea* promised to assist in future enforcement of the assigned patent. *Id.* at 308-09. A second assignment from Papst Motoren to Papst, the U.S. plaintiff in the litigation, similarly

9

promised to aid in litigation. *Id.* at 309. Due to these promises to assist in litigation, the Court required Papst to make all seven inventors available. *Id.* at 309-310.

*Minebea* is applicable here. The initial assignments from the eight inventors to the Universities contain promises to assist the Universities in all aspects relating to the patent-in-suit.[4] Also, the recent amendment to the Tripartite Agreement, which the Universities claim is another assignment, does not nullify Article 7.4's requirement that the Universities "closely cooperate" with Merial in any litigation. As in *Minebea*, the inventors in this case *are* within the control of Merial.[5] Merial should therefore make the inventors available, and Intervet should not be forced to go through the Hague Convention to obtain their testimony. *See also In re Nifedipine*, 1989 U.S. Dist. LEXIS 11061 at *2-5.

In addition to ordering that the inventors are within Merial's control, if the Court grants the present motion it should also order that the inventors' and Universities' documents pertinent to this lawsuit and related to the subject matter of the '601 patent are also within Merial's

---

[4] Specifically, the inventors promised:

> 5. Bind our heirs and legal representatives, as well as ourselves to do, upon Assignee's request and at its expense, but without additional consideration to us or them, ***all acts reasonably serving to assure that the said inventions and discoveries, the said patent applications and the said Letters Patent shall be held and enjoyed by Assignee as fully and entirely as the same could have been held and enjoyed by us or our heirs or representatives if this assignment had not been made***; and particularly to execute and deliver to Assignee all lawful application documents including petitions, specifications, and oaths, and all assignments, disclaimers, and lawful affidavits in form and substance as may be requested by Assignee; ***to communicate to Assignee all facts known to us relating to said inventions and discoveries or the history thereof; and to furnish Assignee with any and all documents, photographs, models, samples and other physical exhibits in our control or in the control of our heirs or legal representatives and which may be useful for establishing the facts of our conceptions, disclosures, and reduction to practice of said inventions and discoveries.***

*See* Assignments to the Universities at ¶ 5 (attached as Exhibits E and F) (emphasis added).

[5] For instance, there is no doubt that, if Merial wanted any of the inventors to testify at trial in support of the present lawsuit, the inventors would appear.

control. Under Rule 34(a), the courts have held that contractual promises to assist in litigation are sufficient to place documents in the possession of the promising party under the promisee's control. *See Anne Anderson v. Cryovac, Inc.*, 862 F.2d 910, 928-29 (1st Cir. 1988); *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 524-25 (S.D.N.Y. 1992).

Without an order that the inventors and the documents discussed above are in Merial's control, there is a significant danger, as this District recognized in *Minebea*, that the Universities and Merial will refuse to perform their contractual obligations and provide the necessary discovery. 370 F. Supp. 2d at 310. As one court has stated, Merial should not be permitted to "come into this court seeking the protection of United States laws . . . yet neglect their accompanying responsibility to disclose all relevant facts to their adversary." *In re Nifedipine*, 1989 U.S. Dist. LEXIS 11061 at *4 (citing *Compagnie Francaise D'Assurance v. Phillips Petroleum Co.*, 105 F.R.D. 16, 32 (S.D.N.Y. 1984)). Thus, should the Court grant the Universities' motion to dismiss, it should redress the obvious prejudice that Intervet would suffer by finding that the inventors and the Universities are within the control of Merial under Rule 34(a) and therefore order Merial to (1) make the inventors available for deposition, and (2) produce all of the inventors' and Universities' documents that are relevant to the present lawsuit and responsive to Intervet's discovery requests.[6]

---

[6] A second proposed order that redresses the discovery prejudice to Intervet is submitted with this brief should the Court grant the Universities' motion to dismiss.

11

## CONCLUSION

For the aforementioned reasons, the Court should deny the Universities' motion to dismiss.

Dated: July 24, 2006                                            Respectfully Submitted,


                                                                    /s/  John Hutchins
John R. Hutchins (D.C. Bar # 456749)
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, DC. 20005
(202) 220-4200 (telephone)
(202) 220-4201 (facsimile)
Attorneys for Plaintiff
Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, <br><br> *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2006, I electronically filed *Plaintiff Intervet's Opposition to Defendants the Queen's University of Belfast's and the University of Saskatchewan's Motion to Dismiss for Lack of Subject Matter Jurisdiction* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

        Judy Jarecki-Black, Ph.D.
        MERIAL LIMITED
        3239 Satellite Blvd.
        Duluth, GA 30096-4640
        Tel: (678) 638-3805
        Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200