# EXHIBIT A

Case 1:06-cv-00658-HHK-JMF   Document 28-4   Filed 07/27/2006   Page 1 of 14

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PLUMTREE SOFTWARE, INC, a Delaware corporation, | | No C 02-5693 VRW |
| | Plaintiff, | ORDER |
| v | | |
| DATAMIZE, LLC, a Wyoming limited liability corporation, | | |
| | Defendant. / | |

         Currently before the court is a motion to realign the parties. On August 7, 2003, defendant and cross-claimant Datamize LLC (Datamize) filed a motion to realign it as the plaintiff and to realign plaintiff and cross-defendant Plumtree Software, Inc (Plumtree) as the defendant. Doc # 18. For the following reasons, the court GRANTS Datamize's motion for realignment.

/
/
/

I

The dispute presented in this case actually commenced in the United States District Court for the District of Montana. In May of 2002, defendant Datamize brought suit in that court, alleging that plaintiff Plumtree had infringed its US Patent No. 6,014,137 ('137 patent). Req Jud Not, Exh 1, Summons and Complaint in <u>Datamize v Plumtree</u>, No CV 02-86-M-DWM (D Mont July 8, 2003)(Doc # 19). Plumtree responded by filing a motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the Northern District of California. Not Pend 1:26-28 (Doc # 3). The case was referred to Magistrate Judge Leif Erickson, who on November 25, 2002, recommended granting the motion to dismiss for lack of personal jurisdiction. Id at 1:28-2:2.

On December 4, 2002, subsequent to the magistrate's recommendation and before the Montana district judge had ruled on the motion to dismiss, Plumtree filed an action in the Northern District of California, requesting a declaratory judgment that it "does not infringe any valid and enforceable claim of [the '137 patent]." Compl 1:23-25 (Doc # 1). On that same date, Plumtree filed notice of the pendency of the Montana action. Doc # 3. The case was reassigned to the undersigned on December 23, 2002. Doc # 7.

On July 8, 2003, the Montana district court officially adopted Magistrate Judge Erickson's findings. Thus, Datamize's action for infringement was dismissed for lack of personal jurisdiction. Pl Opp Mot Realign, Decl Cynthia T Bright 2:6-8

2

(Bright Decl)(Doc # 26). Subsequently, on July 17, 2003, Datamize filed its answer in Plumtree's Northern District action and counterclaimed for patent infringement. Doc # 11.

Datamize filed its motion for realignment on August 7, 2003. Doc # 18. Additionally, the parties filed a joint case management statement on August 26, 2003. Doc # 20. Then on September 11, 2003, Plumtree filed its opposition to Datamize's motion. Doc # 26. Datamize filed its reply brief on September 22, 2003. Doc # 28.

The court must determine two issues: (1) whether it has the power to realign the parties in this case; (2) if it does have the power to realign here, whether it should exercise that power. The court addresses both of these issues in turn.

II

As a threshold matter, the court must determine whether, in this particular case, it has the authority to realign the parties. Datamize contends that realignment of parties is well within the court's discretion. In making this argument, it relies on a line of cases supporting the possibility of realignment when the courts' subject matter jurisdiction is based on diversity of citizenship and whenthe alignment of the parties could affect whether the diversity requirements are met. See Def Mot Realign 2:14-3:3. Plumtree argues that those cases do not support an inquiry into realignment, because they only explicitly deal with realignment in the context of whether the federal courts have jurisdiction

3

over the matters.  As such, those cases have no application to the case at bar, which presents no diversity jurisdictional issue.  Pl Opp Mot Realign 4:1-5:2.

The United States Supreme Court has held, at least for the purposes of determining whether diversity jurisdiction exists, that "[l]itigation is the pursuit of practical ends, not a game of chess."  <u>Indianapolis et al v Chase National Bank</u>, 314 US 63, 69 (1941).  Accordingly, the federal courts have a duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute."  Id.

In the Ninth Circuit, courts follow the "primary purpose" test; that is, courts must "align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'"  <u>Prudential Real Estate Affil, Inc v PPR Realty, Inc</u>, 204 F3d 867, 873 (9th Cir 2000)(quoting <u>Continental Airlines, Inc v Goodyear Tire & Rubber Co</u>, 819 F2d 1519, 1523 (9th Cir 1987)); see also <u>Dolch v United California Bank</u>, 702 F2d 178, 181 (9th Cir 1983)(noting that the courts, not the parties, are responsible for aligning the parties in accordance with their interests in the case).

Several other circuits follow the primary purpose test as well.  For example, the Third Circuit has held that, with respect to diversity, "the correct inquiry turns not on some artificial position, but the 'principal purpose' of the action: '[A] court must first identify the primary issue in controversy and then determine whether there is a real dispute by opposing parties over that issue.'"  <u>Angst v Royal Maccabees Life Ins Co</u>, 77 F3d 701, 704 (3d Cir 1996)(quoting <u>Employers Ins of Wausau v</u>

4

<u>Crown Cork & Seal Co</u>, 942 F2d 862, 864 (3d Cir 1991). Similarly, the Sixth Circuit follows the rule that "the parties be aligned in accordance with the primary dispute in the controversy, even where a different, legitimate dispute between the parties supports the original alignment." <u>United States Fidelity & Guaranty Co et al v Thomas Solvent Co et al</u>, 955 F2d 1085, 1089 (6th Cir 1992); cf <u>Fidelity & Deposit Co v City of Sheboygan Falls</u>, 713 F2d 1261, 1267-68 (7th Cir 1983)(finding that original alignment should not be changed if there is any "substantial" dispute between the parties).

Plumtree is correct that most of the cases that Datamize cites involve realignment, via application of the primary purpose test, for diversity jurisdictional purposes. Some courts, however, have found realignment to be appropriate in other circumstances. For instance, in <u>Lloyd et al v Pendleton Land & Exploration, Inc</u>, 22 F3d 623 (5th Cir 1994), the defendant had filed a previous suit against the plaintiffs in a different district, but his suit was consolidated with the plaintiffs' action against him. The trial court realigned him as a defendant for the purposes of both actions. Id at 625. Similarly, this district's own Judge Alsup granted a defendant's motion to be realigned as a plaintiff because "from a practical standpoint," forcing that party to continue as a defendant "would frustrate the adversarial purpose of the judicial system," since the party's interests were more aligned with those of the plaintiff. <u>Christie v Standard Ins Co</u>, 2002 US Dist LEXIS 22062, *20 (ND Cal). While these cases do not explicitly use the primary purpose test, their reasoning is

5

1 consistent with that test.

2     Thus, the court agrees with Datamize that it has the
3 discretion to realign the parties in accordance with the primary
4 purpose of the litigation. Although most of the cases on which
5 Datamize relies do not extend this test beyond the realm of
6 diversity jurisdiction, nothing in those cases explicitly limits
7 the test to that subject. Additionally, as noted above, other
8 federal courts (including one in this district) have realigned
9 parties in situations not involving the propriety of diversity
10 jurisdiction. Furthermore, Plumtree has cited no authority that
11 would limit the court's discretion in this area, nor is the
12 court aware of any such authority. Accordingly, the court finds
13 that it <u>may</u> exercise its discretion to realign the parties and
14 now turns to whether it <u>should</u> make such a realignment.

16     III

18     With respect to the propriety of realignment, the Ninth
19 Circuit, as noted above, follows the "primary purpose" test.
20 <u>Prudential Real Estate</u>, 204 F3d at 873; <u>Continental Airlines</u>,
21 819 F2d at 1523; <u>Dolch</u>, 702 F2d at 181. When evaluating the
22 primary purpose of the litigation, the court first should look
23 to the pleadings submitted by the parties, but it also "has a
24 duty to look beyond the pleadings to determine the actual
25 interests of the parties." <u>Angst</u>, 77 F3d at 704. Additionally,
26 the court should align the parties in accordance with the
27 primary dispute in the controversy, "despite the fact that there
28 may be actual and substantial ancillary or secondary issues to

6

United States District Court

For the Northern District of California

the primary issue." US Fidelity, 955 F2d at 1089.

In the case at bar, the bulk of the evidence reveals that the primary dispute in this case is Datamize's claim against Plumtree for patent infringement, and not Plumtree's claim for declaratory judgment of noninfringement. Despite the fact that Plumtree may have created a substantial ancillary dispute by filing a declaratory judgment action, the court must align the parties in keeping with the primary dispute concerning infringement. A range of reasons support this result.

First, as it points out in its papers, Datamize was the first party to sue on the issue of infringement of the '137 patent. It filed the original patent infringement suit in May of 2002, seven months before Plumtree filed its action for declaratory relief on the same issue. Thus, Datamize was the original plaintiff in this dispute. Furthermore, it appears that Plumtree filed its suit against Datamize less as a result of its own volition than as a response to the suit Datamize filed against it in the District of Montana.

Second, Datamize is more properly considered the natural plaintiff in this action than is Plumtree. For one thing, Datamize is the party asserting the affirmative claim of infringement. See Donald Chisum, 6 Chisum on Patents § 19.01(1) at 19-14 (noting that "[i]n traditional terms, infringement constitutes the case in chief of the patent owner"). Essentially, Plumtree's declaratory action for noninfringement and invalidity is a defense to Datamize's infringement counterclaim. See 35 USC § 282 (2003)(designating noninfringement and invalidity as defenses to patent

7

infringement); 6 Chisum § 19.01(1) at 19-14 (reasoning that "[i]nvalidity, by virtue of the statutory presumption of validity, constitutes a defense available to the defendant or accused infringer"). As such, Datamize's affirmative position makes the position of plaintiff more appropriate for it, while Plumtree's defensive position makes the position of defendant more appropriate for it.

A further consideration that supports Datamize as the natural plaintiff is the burden of proof. Datamize notes that with respect to a declaratory judgment action, the party with the burden of proof is determined by the nature of relief sought, and not by the pleadings' designations of plaintiff and defendant. Def Mot Realign 3:23-25; see also Burlington Northern Railroad Co v Hyundai Merchant Marine Co, 1999 US Dist LEXIS 23186, *17-18 (CD Cal). As a result, in a declaratory action in which the defendant "would bear the burden of affirmative proof were the action brought in traditional form, the underlying * * * assignment of burdens is not altered." United Pacific Ins Co v Safety-Kleen Corp, 1993 WL 505393, *4 (ND Cal). As noted above, Datamize bears the burden of proof with respect to proving the infringement counterclaim. Based on the foregoing analysis, Datamize also bears the affirmative burden of proof in the declaratory relief action for noninfringement, since the essential issue of infringement is the same in both cases.

A third reason that the infringement claim is primary relates to the circumstances of this declaratory judgment action. This case, as Datamize argues, does not present the

8

usual rationale for bringing a declaratory judgment action. Def Mot Realign 4:17-5:4. The Declaratory Judgment Act's function is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure - or never." Hal Roach Studios, Inc v Feiner & Co, 896 F2d 1542, 1555 (9th Cir 1989) (internal citations omitted). Declaratory relief is ordinarily quite appropriate in patent cases because otherwise questions of validity and potential infringement might never be adjudicated, unless the patent holder brought suit. Societe de Conditionnement en Aluminum v Hunter Engineering Co, Inc, 655 F2d 938, 943 (9th Cir 1981). This basic rationale for declaratory judgment is inapposite in this case, because patent holder Datamize had actually brought suit at the time Plumtree filed the declaratory judgment action. Thus, the "Damoclean" threats to potential defendant Plumtree do not exist.

    A fourth reason favoring the court's finding Datamize's infringement claim to be the primary purpose is that such a designation may aid in the logical presentation of the evidence at trial. Datamize and Plumtree spend considerable time in their moving papers disagreeing about the proper order of proof at trial: Datamize contends that the case for infringement should be tried first, while Plumtree suggests that the issue of validity should be decided first. See Def Mot Realign 5:12-6:3; Pl Opp Mot Realign 5:26-6:13. Datamize concludes that designating it as plaintiff and trying the infringement portion of the case first could reduce or obviate the need to inquire into validity, should no infringement be found; such a situation

United States District Court
For the Northern District of California

1 would streamline the trial process by eliminating some of the
2 issues. Def Mot Realign 5:24-6:3. The court agrees with
3 Plumtree that trying the infringement issue first would not
4 necessarily mean that the validity issue would be moot, even if
5 no infringement were found. See Cardinal Chemical Co v Morton
6 International, Inc, 506 US 83, 96 (1993) (finding that "[a]
7 party seeking a declaratory judgment of invalidity presents a
8 claim independent of the patentee's charge of infringement"); 6
9 Chisum § 19.02[1][a] at 19-19 - 19-24.

10       Reaching this conclusion, however, does not mean that
11 there are no advantages to realignment from a trial-oriented
12 perspective. If the case proceeds to trial, the party
13 designated as plaintiff will be the party who opens the case.
14 As Datamize points out, it is simply more logical to present the
15 affirmative case for infringement first, rather than presenting
16 the case for noninfringement first. To require Datamize to
17 present second might invite juror confusion on the issue of
18 burden of proof, as Datamize essentially would be put in the
19 position of rebutting Plumtree's defensive claims. See Def Mot
20 Realign 5:21-24.

21       Fifth, realignment of the parties is more consistent
22 with both the Patent Local Rules and the parties' joint case
23 management statement. No matter whether the patent holder
24 asserts infringement claims first, or whether he does so in
25 response to a declaratory action, Pat LR 3-5 essentially
26 provides for the same sequence of disclosures. Pat LR 3-5(a);
27 see also Pat LR 3-1 & 3-2 (discussing the sequence and content
28 of disclosures and accompanying document production). The

Patent Local Rules seem to treat the patent holder as the putative plaintiff in either situation, for the purposes of disclosures and document production; it therefore is consistent with the spirit of those rules to treat Datamize as the plaintiff in the remainder of the action.

The joint case management statement also treats Datamize as a plaintiff would be treated: It allows Datamize, based on its status as patent holder, to present first at the upcoming <u>Markman</u> hearing. Joint Case Manag St 6:6-7. Thus, as is the case with the Patent Local Rules, it is more consistent with the case management statement to realign Datamize as the plaintiff.

A sixth and final factor with respect to realignment is that it mitigates the effects of Plumtree's evident forum-shopping in this case. Although both parties accuse each other of forum-shopping, Plumtree appears to be the more vigorous shopper. Datamize initiated the substance of this action in the district court in Montana; before that time, Plumtree had taken no action on the matter. After making its motion to dismiss for lack of personal jurisdiction, Plumtree did not so much as wait for the Montana court's ruling on that motion before filing the instant action for declaratory relief in this district. Thus, it appears that Plumtree has gone to considerable lengths to deprive Datamize of its choice of forum (enigmatic as the Montana may be) and to have these issues tried in the Northern District of California. Accordingly, it seems equitable to allow Datamize to retain its status as plaintiff, despite the loss of its choice of forum.

11

Based on these six factors, the court concludes that the primary purpose of this litigation is the adjudication of Datamize's infringement claim. The court, therefore, should exercise its discretion to designate Datamize as the plaintiff and Plumtree as the defendant. Accordingly, Datamize's motion to realign the parties is GRANTED.

IV

For the foregoing reasons, defendant Datamize's motion to realign the parties (Doc # 18) is GRANTED. From this point onward, Datamize shall be designated as the plaintiff and counter-defendant, and Plumtree shall be designated as the defendant and counter-claimant. All pleadings filed in this case shall reflect this realignment.

IT IS SO ORDERED.

_____
VAUGHN R WALKER
United States District Judge