UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., *Plaintiff*, v. MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, *Defendants*. | Civil Action No. 1:06-cv-00658 (HHK) |

**PLAINTIFF INTERVET'S NOTICE OF AUTHORITIES IN OPPOSITION TO
DEFENDANTS' PROPOSED SCHEDULING ORDER**

Plaintiff Intervet Inc. ("Intervet") hereby responds to and opposes Defendants' request to schedule a *Markman* hearing in the middle of fact discovery in this case. (D.I. 27.) For the reasons set forth in this brief, the Court should schedule the *Markman* hearing to occur after the close of both fact and expert discovery.

**INTRODUCTION**

Defendants' request for an early *Markman* hearing will disadvantage the Court and require it to rule on crucial issues of claim construction without the benefit of a fully developed record. Moreover, an early *Markman* hearing in this case would unduly prejudice Intervet, given that all ten of the named inventors of the patent-in-suit—from whom Intervet would have to obtain comprehensive document discovery and depositions—are located outside of the United

States.[1] Defendants' proposal has the additional disadvantage of likely resulting in multiple rounds of expert discovery from the parties.

Furthermore, at this juncture in this case it is simply impossible to assess how numerous and thorny the *Markman* issues will be with respect to the patent-in-suit. Likewise, it is unclear whether a *Markman* ruling will be dispositive of any issues in this case, which involves complex technology in the field of molecular biology. Only through fact discovery, and after the respective parties' experts have been able to review and opine on that fact discovery, will the *Markman* issues be ready for resolution by this Court. None of the parties in this case dispute that the *Markman* ruling is of critical importance and will be hotly contested, and Intervet therefore submits that the *Markman* hearing should be undertaken only after the parties have engaged in comprehensive fact and expert discovery.

## STATEMENT OF FACTS

**A.     The Patent-in-Suit**

The patent-in-suit, U.S. Patent No. 6,368,601 (the "'601 patent"), is entitled "Porcine Circovirus Vaccine and Diagnostic Reagents." (D.I. 1 at Ex. A.) This patent stems from work performed by inventors working at the French defendant, Merial SAS, and two universities, The Queen's University of Belfast in Great Britain and the University of Saskatchewan in Canada (hereinafter together, "Universities"). The bulk of the work that led to the '601 patent was

---

[1] For their part, Defendants are not only unwilling to voluntarily produce these inventors for deposition (as Intervet has asked), but are actively working to make it difficult for Intervet to obtain discovery from the inventors and the foreign universities (for instance through the pending motion to dismiss the foreign Universities from this lawsuit). In light of this, the Court should take note of the following warning contained in the *Markman* guidelines attached to Defendants' brief: "a patentee with a weak case on the merits may favor early claim construction in the hope that the record will not be developed adequately to reveal those weaknesses." (D.I. 27 at Exhibit A, p. 8.)

apparently conducted by the Universities. Indeed, eight of the ten inventors named on the face of the '601 patent are affiliated with the Universities. The remaining two named inventors are employees of Merial SAS in France.

Clearly, much of the knowledge and documentation regarding the '601 patent is scattered around the world with these inventors. Further, great reliance will need to be placed on experts to help understand the 35 claims of the '601 patent, which are directed to vectors, immunogenic compositions and isolated DNA molecules. The claims of the '601 patent not only refer to relatively complex DNA sequences but also use uncommon technical terms like "PCV-2," "PCV-1," "porcine circovirus type II," "ORFs," "plasmid" and "epitope." In addition, the lengthy patent specification is rife with complex terms that are likewise not used in everyday parlance and will require a person possessing the requisite technical skills in the art to aid in understanding and deciphering them.

**B.     The Georgia Action**

In their points of authorities, Defendants exaggerate the preliminary injunction hearing proceedings from Civil Case No. 1:05-cv03168-CAP ("Georgia Action") and their effect on this case. The parties' preliminary arguments from the Georgia Action do not lay the proper groundwork for an early *Markman* hearing in this case. Defendants' assertion that "the parties have already developed and argued significant portions of their respective cases" is untrue, at least with respect to Intervet. (D.I. 27 at 5.)

Indeed, rather than being almost finished developing its case, Intervet has only barely started. Intervet has not received from Defendants any evidence related to the development of the '601 patent. In the Georgia Action, there was no inventor testimony, no document production by either side, and not a single deposition was taken. Also, no clear and express

claim constructions were offered by either party in those proceedings, and none was adopted by that court. Moreover, the proceedings came to an abrupt end on April 24, 2006 when the Georgia Action was dismissed for lack of standing and Merial's preliminary injunction motion was denied as moot.

## ARGUMENT

The Federal Circuit and this District have expressly recognized dangers in holding a *Markman* hearing in the premature manner that Defendants request. Also, the practice in the vast majority of the federal courts strongly suggests that an early *Markman* hearing in a case like this would be inappropriate. Holding the *Markman* hearing after complete fact and expert discovery on the other hand, as Intervet urges, would ensure that claim construction is done correctly at the first instance and in a way that the Federal Circuit can properly review on appeal.

### I. The Relative Complexity of the Patent-in-Suit and the Discovery Necessary for a Full Record Militate Against an Early *Markman* Hearing in this Case

The two types of evidence in claim construction are intrinsic evidence (consisting of the patent's claims, the remainder of its specification, and its prosecution history) and extrinsic evidence (including relevant dictionaries and testimony of witnesses such as inventors and experts). *Phillips v. AWH Corp.*, 415 F.3d 1303, 1311-1318 (Fed. Cir. 2005). Extrinsic evidence serves a variety of purposes and expert testimony is always admissible to educate the court. *Mantech Envtl. Corp. v. Hudson Envtl. Servs., Inc.*, 152 F.3d 1368, 1373 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1318 ("extrinsic evidence in the form of expert testimony can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects

4

of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field.").

Because of the role of extrinsic evidence in claim construction and educating the court, the Federal Circuit has stated that "it is entirely appropriate, *perhaps even preferable*, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with the clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field." *Pitney Bowes Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999) (emphasis added). Further, the Federal Circuit has remanded cases where the district court conducted its claim construction without developing a sufficient record of evidence that permits the Federal Circuit to properly analyze the claim construction on appeal. *See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330 (Fed. Cir. 2006).

Nevertheless, Defendants have requested an early *Markman* hearing based on their unsupported contention that claim construction will be a straightforward affair requiring little extrinsic evidence. The '601 patent has 35 claims, most of which refer to complex DNA sequences, and a 30-plus page specification. (D.I. 1 at Exhibit A.) Given the complex nature of the patent-in-suit, it should be evident that the *Markman* hearing will be complicated, will require a great deal of preparation and discovery, and most definitely will involve extrinsic evidence. It apparently took *ten* inventors spanning the globe to develop the vaccine that is the subject of the '601 patent. These inventors clearly have relevant knowledge regarding the '601 patent and its claims and should be deposed before the *Markman* hearing. The Court, like most people without an advanced degree in molecular biology, will likely require expert assistance to

5

understand the '601 patent and its claims. Even a cursory review of the '601 patent claims belies Defendants' suggestion that claim construction in this case is a trivial undertaking.

Additionally, it is unclear whether the *Markman* ruling will ultimately be dispositive of any issues in the case. In other words, Intervet submits that there may well remain questions of fact relating to invalidity and infringement even after the Court issues a *Markman* ruling. There is no basis for believing, at this point in time, that an early *Markman* ruling will correspond to an early end to this litigation. Any benefit to an early *Markman* is purely speculative at this point.

Defendants' proposed schedule would, however, deny this Court the advantages of a full record of intrinsic and extrinsic evidence because contrary to Defendants' assertion, no such record was "developed" during the brief consideration of Defendants' preliminary injunction motion in the Georgia Action. A record must still be created from scratch in this case. The Federal Circuit has specifically noted that it "recognizes the difficulty imposed on a trial court to construe claim terms based on a preliminary 'likelihood' record." *Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1375 (Fed. Cir. 2005); *see also CVI/Beta Ventures, Inc. v. Tura, LP*, 112 F.3d 1146, 1160 n.7 (Fed. Cir. 1997) (reversing its own claim construction, formerly based on a preliminary injunction "likelihood" record, in light of a complete factual record). Here, as recognized by the Federal Circuit, Defendants invite improper and potentially multiple claim constructions in their attempt to rely on the preliminary "likelihood of success" arguments made in the Georgia Action as a basis for claim construction in this action.

**II.   This District Has a Stated Preference for Holding *Markman* Hearings After the Close of Fact and Expert Discovery**

Like the Federal Circuit, this District has also acknowledged the dangers in early *Markman* hearings that do not fully consider both intrinsic and extrinsic evidence. *Thomson*

6

*Consumer Elecs., Inc. v. Innovatron, S.A.*, 3 F. Supp. 2d 49, 51-52 (D.D.C. 1998).  Specifically, the Court in *Thomson* recognized that it was preferable to collect all extrinsic evidence prior to the *Markman* hearing and that it should fully consider all extrinsic evidence.

> The Court may ultimately decide that after consideration of "intrinsic evidence" the claims are unambiguous, and if so, will disregard any extrinsic evidence presented.  ***But the Court would prefer to receive the full presentation in one hearing***, and it will be up to the parties to allocate their presentation between intrinsic and extrinsic evidence.
>
> ***Limiting the Markman hearing to "intrinsic" evidence would be problematic*** for two reasons.  First, expert testimony in the claim construction context, although technically "evidence," often is a mix of legal argument and "fact" testimony.  The line between the two often is hardly iridescent, in fact it can be quite dim.  Second, as a matter of judicial economy, because the Federal Circuit will review claim construction determinations *de novo*, ***it is more efficient to develop the full record at one time***.  If the Court were to adopt Thomson's proposal and receive only "intrinsic" evidence at the *Markman* hearing, consider the following scenario:
>
> Assume for this example only that this Court, after receiving only intrinsic evidence, decides that the claims are unambiguous and proceeds to announce the meaning of the patent without receiving extrinsic evidence.  Assume further that a trial is held on the basis of that interpretation.  If one of the parties were then to appeal on the issue of claim construction, the Federal Circuit may disagree with the construction and determine that even after consideration of intrinsic evidence the claims are ambiguous.  Without any extrinsic evidence in the record to aid interpretation, that court would then be forced to choose between holding an additional *Markman* hearing itself to receive extrinsic evidence -- which in theory it could do to decide an issue of pure law -- or, more likely, remand for a second *Markman* hearing and trial on liability.

*Id.* at 52 (emphasis added) (internal citations omitted).

Defendants' request that the *Markman* hearing be held before conclusion of discovery and the collection of all extrinsic evidence is inconsistent with *Thomson*.  As this District recognized in *Thomson*, Intervet should be able to conclude discovery of all relevant extrinsic evidence, especially expert discovery and discovery from inventors, prior to the *Markman* hearing.

7

**III.     Defendants' Request is Contrary to the General Practice in the District Courts**

In support of their argument that "early claim construction is generally favored," Defendants cite the specialized patent rules of the Eastern District of Texas, Northern District of California, and Northern District of Georgia as permitting "Courts to render their claim construction rulings while discovery is ongoing." (D.I. 27 at 4.) However, these three districts all specifically provide that discovery and depositions of witnesses and experts related to claim construction should occur ***before*** claim construction briefing and the *Markman* hearing. *See* E.D. Tex. and N.D. Cal. Patent Local Rules 4-4 through 4-6; *see also* N.D. Ga. Patent Local Rules 6.4 through 6.6. Further, Chief Judge Robinson of the District of Delaware, who handles numerous patent cases and whose rules are cited in the *Markman* guidelines attached to Defendants' notice of authorities, handles claim construction issues later in the proceedings along with summary judgment motions. *See* Standard Scheduling Order of Chief Judge Robinson at 5 (attached as Exhibit 1).

Defendants' assertion that early claim construction is generally favored is also statistically untrue. In 2000, the American Bar Association ("ABA") released the results of a survey that it conducted that asked practicing attorneys specific questions about the timing and handling of *Markman* hearings in the federal courts. The ABA's questions related to timing established the following:



*Source:* Markman Survey, 18 No. 3 Intell. Prop. L. News.12 (Spring, 2000)

ABA Intellectual Prop. Law Newsletter, *Markman Survey*, 18 N.O. 3 Intell. Prop. L. Newsl. 12 (2000) (attached as Exhibit 2).[2]

According to the ABA survey, 70% of *Markman* hearings took place after the close of all discovery, as opposed to only 30% of hearings that took place before the close of discovery. *Id.* On the specific issue of extrinsic evidence, 83% of the cases involved the introduction of extrinsic evidence. *Id.* In cases that allowed extrinsic evidence, 80% permitted expert testimony while only 8% excluded experts. Also, in cases that permitted extrinsic evidence, inventor testimony was permitted 48% of the time and rejected on only 8% of occasions. In summary, the practices of the federal courts, including the Eastern District of Texas, Northern District of California, and Northern District of Georgia, support Intervet's request that it be permitted to take fact and expert discovery prior to the *Markman* hearing in this case.

---

[2] For the actual figure above, *see* 837 PLI/Pat 165, David M. Airan, *Before the Actual Markman Hearing – Timing, Discovery and Alternatives*, July 2005, at 4 (from the Practicing Law Institute's How to Prepare & Conduct Markman Hearings 2005).

## CONCLUSION

For the aforementioned reasons, the Court should provide that the *Markman* hearing will take place after the close of fact and expert discovery, as set forth in Intervet's Proposed Scheduling Order.

Dated: July 28, 2006                                         Respectfully Submitted,


　　　　　　　　　　　　　　　　　　　　　　　　　　　　/s/  John Hutchins
　　　　　　　　　　　　　　　　　　　　　　　　　John R. Hutchins (D.C. Bar # 456749)
　　　　　　　　　　　　　　　　　　　　　　　　　KENYON & KENYON LLP
　　　　　　　　　　　　　　　　　　　　　　　　　1500 K Street N.W., Suite 700
　　　　　　　　　　　　　　　　　　　　　　　　　Washington, DC. 20005
　　　　　　　　　　　　　　　　　　　　　　　　　(202) 220-4200 (telephone)
　　　　　　　　　　　　　　　　　　　　　　　　　(202) 220-4201 (facsimile)
　　　　　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　　　　　　　　　Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN,<br><br>*Defendants.* | Civil Action No. 1:06-cv-00658 (HHK) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of July, 2006, I electronically filed *Plaintiff Intervet's Notice of Authorities In Opposition to Defendants' Proposed Scheduling Order* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

>Judy Jarecki-Black, Ph.D.
>MERIAL LIMITED
>3239 Satellite Blvd.
>Duluth, GA 30096-4640
>Tel: (678) 638-3805
>Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200