# Exhibit 2

18 No. 3 IPLN 12                                                                              Page 1
18 NO. 3 Intell. Prop. L. Newsl. 12
**(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)**

c

Intellectual Property Law Newsletter

Spring, 2000

**\*12** AMERICAN BAR ASSOCIATION SECTION OF INTELLECTUAL PROPERTY LAW 1999
**MARKMAN SURVEY**

Copyright © 2000 by the American Bar Association

## I. Foreword

In 1997 and 1998, Committee 601 (Federal Practice and Procedure) of the ABA's Section of Intellectual Property Law **surveyed** its members about the practices and timing adopted by trial courts to interpret patent claims. This year, the **survey** was expanded to the entire Section. The **survey** yielded seventy-one responses about practices in thirty-three different district court jurisdictions from ten different federal circuits (all but the First Circuit), and follows an introduction that aims to put its results in substantive context.

The results of the survey are limited to responses that could be compiled on a percentage or numerical basis (e.g., yes or no answers). A number of practitioners provided insightful narrative responses that we have compiled separately. Should you wish a copy, please contact Betsi Roach at roachb @staff.abanet.org.

We thank the Section members and leadership for supporting this year's **Markman Survey** and invite comments or questions to Luke L. Dauchot at ldauchot@thf.com. [FN1]

## II. Introduction [FN2]

In **Markman** v. Westview Instruments, Inc. the Court of Appeals for the Federal Circuit (CAFC) held that patent claim construction is a matter exclusively within the province of the courts, initially the federal district courts. That holding was affirmed by the United States Supreme Court. The Markman decisions, however, left unsettled the question of precisely when and how trial courts should go about the process of interpreting patent claims.

A. Timing of Claim Construction

Patent claim construction can occur at various stages of a lawsuit: (1) before discovery; (2) during discovery; (3) between discovery and trial; and 4) after commencement of trial. [FN3] The timing of patent claim construction is left to the trial court's discretion. [FN4] Some courts prefer an early decision, [FN5] others address the question following discovery, at times in combination with summary judgment motions, [FN6] and yet others resolve the matter at trial. [FN7]

According to the survey, most claim construction rulings (58%) occur after discovery but before trial, [FN8] with a sizeable number (22%) held during discovery and some taking place at trial (12%). [FN9] Few are held before discovery (8%). [FN10] In that regard, one court warned in dicta that if Markman hearings are held too early in a case, before issues have crystallized sufficiently, a court's decision on claim interpretation may constitute an unconstitutional advisory opinion having no effect on the ultimate outcome of the case. [FN11]

The Federal Rules of Civil Procedure do not provide rules tailored to patent cases. To date, the United States District Court for the Northern District of California is the only jurisdiction that has instituted Local Rules governing the conduct of patent cases, including the timing of claim construction. [FN12] Similar rules are being considered in the Northern District of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 No. 3 IPLN 12                                                                                          Page 2
18 NO. 3 Intell. Prop. L. Newsl. 12
(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)

Illinois, and some individual trial courts have adopted such rules. [FN13] As confirmed by the survey, however, most claim construction proceedings are not governed by patent-specific procedural rules. Only 12 percent of all reported cases applied such local or courtroom rules, with all but three of those cases from the Northern District of California. [FN14]

B. Claim Construction Impact on Discovery

The timing of claim construction can have a substantial impact on discovery in patent cases. As one commentator notes:
The timing of a hearing is critically important to many patent litigators. Many defendants urge that the hearing be conducted early in a case, and without any discovery. Their strategy is to keep the plaintiff in a discovery 'black hole,' and get a claim interpretation that will set up a summary judgment motion for non-infringement or invalidity, leading to a quick exit from the case. On the other hand, plaintiffs often, though not always, want discovery and therefore are usually not eager for early Markman hearings. [FN15]

Indeed, some courts have advocated their jurisdiction over claim interpretation as a useful tool to curb discovery, both before and after claim construction. [FN16]

In Vivid Technologies, Inc. v. American Science & Engineering, Inc. [FN17] the plaintiff, Vivid Technologies, Inc. (Vivid) filed an action seeking a declaratory judgment of invalidity and non-infringement of certain patents held by defendant American Science & Engineering, Inc. (ASE). ASE counterclaimed, alleging that Vivid infringed eight of its patents. Vivid moved to strike the counterclaim pursuant to Fed. R. Civ. P. 11 on the basis that ASE had insufficient factual grounds to allege infringement and moved to stay all discovery. The court granted both motions. Following claim construction, Vivid moved for summary judgment on the subject of infringement. Pursuant to Fed. R. 56 (f), ASE responded that it needed discovery. The trial court denied the request and entered summary judgment in favor of Vivid. ASE appealed the claim construction, summary judgment, and denial of discovery.

*13 On the subject of discovery, ASE argued "that claim construction should be done no earlier than the end of discovery and urge[d] [the] court to adopt a uniform rule to this effect." The CAFC rejected the request and stated as follows:

A district court has broad powers of case management, including the power to limit discovery to relevant subject matter and to adjust discovery as appropriate to each phase of litigation. When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved. Thus, the court's management of discovery at the claim construction stage may serve the salutary goals of speed and economy, and is appropriate in cases in which the dispute may be resolved at this stage without compromise of justice. [FN18]

According to the **survey**, however, most courts remain shy about limiting discovery prior to claim construction. As noted above, 70 percent of claim construction proceedings were held after the close of discovery. Where the court held a **Markman** hearing prior to the close of discovery, in only 17 percent of the cases did courts limit discovery before the **Markman** hearing, [FN19] and in only 7 percent of the cases did courts limit discovery after the hearing. [FN20] Eighty-three percent of the cases that were reported had no patent-specific discovery rules. [FN21] Of the 17 percent that did, all but three were from the Northern District of California. [FN22]

C. Conduct of Claim Construction

As one court recently noted, Markman hearings "run the gamut from mid-trial sidebar conferences that undergird relevance rulings... to virtual mini-trials extending over several days and generating extensive evidentiary records." Mediacom Corp. v. Rates Technology, Inc., 4 F.Supp. 2d 17, 21-22 (D.Mass. 1998). While courts need not undertake a hearing to construct pat-

18 No. 3 IPLN 12                                                                                                                 Page 3
18 NO. 3 Intell. Prop. L. Newsl. 12
(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)

ent claims, most do. According to the survey, a little more than 81 percent of the courts held hearings on construction rather than decide the issue on briefs. [FN23] Most of these cases involved hearings lasting no more than a day, with the patentee proceeding first in order of proof in 90 percent of the cases. [FN24]

Most courts admit at least some testimony, whether live or by affidavit. According to the survey, the use of testimony was excluded altogether in only about 17 percent of cases. [FN25] In those cases where some form of testimony was allowed, courts tended to prefer live testimony. [FN26] In only 28 percent of cases did the court accept both forms of testimony.

Although the CAFC in Vitronics Corp. v. Conceptronic, Inc. [FN27] appeared to discourage the use of extrinsic evidence in all but the "rare" instance where the "intrinsic" record (i.e. the patent and prosecution history), left sufficient ambiguity about the meaning of claim language to justify its use, the court in Pitney Bowes Inc v. Hewlett-Packard Company [FN28] clarified that "under Vitronics it is entirely appropriate, perhaps even preferable, for a court to consult trustworthy extrinsic evidence to ensure that the claim construction it is tending to from the patent file is not inconsistent with clearly expressed, plainly apposite, and widely held understandings in the pertinent technical field," [FN29] regardless of the clarity of the intrinsic record. Most recently, in Wang Laboratories, Inc. v. America Online, Inc. and Netscape Communications Corp [FN30] decision, the CAFC upheld a trial court's claim construction based on its de novo review "of all of the arguments of both sides, with benefit of the summary judgment record including the views of the experts for both sides." [FN31]

As noted above, in 83 percent of the cases trial courts allowed the introduction of evidence extrinsic to the patent and prosecution history, [FN32] presumably because the intrinsic record was ambiguous or there was a need for technical explanation. In those cases where the court allowed extrinsic evidence, 80 percent allowed the use of technical expert testimony and 8 percent excluded expert testimony; put differently, courts appear ten times more likely to accept technical expert testimony than reject it. [FN33] Additionally, where courts allowed extrinsic evidence, 28 percent admitted fact testimony, and 12 percent rejected it. [FN34] Evidence of prior patents or publications was admitted 64 percent of the time and rejected in only 2 percent of the cases. [FN35] Notwithstanding the CAFC's stated prejudice against testimony from the inventor for purposes of construing claims, [FN36] the testimony of inventors is fairly common, having been affirmatively admitted in 48 percent of cases and affirmatively rejected in only 8 percent of cases. [FN37] Consistent with the CAFC's admonition that "opinion testimony on claim construction should be treated with utmost caution," [FN38] it appears that trial courts generally do not admit the testimony of legal experts; according to the survey only 18 percent of courts affirmatively admitted such testimony, whereas 20 percent of them affirmatively rejected such testimony. [FN39]

Though it encouraged the use of extrinsic evidence, the court in Pitney Bowes sought to draw a distinction between the mere examination of extrinsic evidence on the one hand, and reliance on extrinsic evidence to construct claims, on the other. The court embraced the former even in the context of an unambiguous intrinsic record, and deemed it "particularly appropriate to ensure that [the judge's] understanding of the technical aspects of the patent is not entirely at variance with the understanding of one in the art." [FN40] The latter, reiterated the court, was "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence," [FN41] and then only to the extent that such reliance does not "contradict the claim construction unambiguously apparent from the intrinsic evidence." [FN42] According to the survey, in 51 percent of the cases where extrinsic evidence was accepted in the Markman process the court was said not to rely on that evidence. [FN43]

D. Appellate Reversal and Settlement

In Cybor Corp. v. FAS Techs., Inc. [FN44] the CAFC held en banc that a trial court's claim construction always is subject to de novo review, even when extrinsic evidence is used to interpret the patent claims. In the survey, six practitioners reported

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 No. 3 IPLN 12                                                                                    Page 4
18 NO. 3 Intell. Prop. L. Newsl. 12
**(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)**

on appeals of the trial court's claim construction; 83 percent of those decisions were overruled on appeal. [FN45] According
to one commentator, the reversal rate on the basis of claim construction is nearly 40 percent. [FN46] According to the
**survey**, in only twenty-nine of the cases involving a **Markman** hearing did the outcome of that hearing lead to a settlement
prior to trial. [FN47]

**\*14 III. Survey** on Claim Interpretation Proceedings

**Total Number of Respondents: 71**

**Questions 1** and **2** are threshold questions.

**Question 3.** Was there a jury demand?

```
YES  84

NO   16
```

**Question 4.** At what point in the litigation did the claim construction proceedings occur?

```
AFTER DISCOVERY BUT BEFORE TRIAL       57.8%

DURING DISCOVERY                       21.9%

PRIOR TO DISCOVERY                      7.8%

DURING TRIAL, BEFORE CLOSING ARGUMENTS  6.25%

DURING TRIAL, AFTER CLOSING ARGUMENTS   6.25%
```

**Question 5.** Was the timing of the claim construction proceeding the subject of a local or courtroom rule?

```
YES  12.1%

NO   87.9%
```

**Question 6.** Did you consider the court's timing on the claim construction proceeding to be effective and appropriate?

```
YES  75%

NO   25%
```

18 No. 3 IPLN 12                                                                                      Page 5
18 NO. 3 Intell. Prop. L. Newsl. 12
**(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)**

**Question 7.** In those cases where the court held a Markman hearing prior to the close of discovery, did the court limit the discovery before the Markman hearing?

```
YES  17%

NO   83%
```

**Question 8.** In those cases where the court held a Markman hearing prior to the close of discovery, did the court limit discovery after its claim interpretation?

```
YES   6.9%

NO   93.1%
```

**Question 9.** Was discovery regulated by any local or courtroom rules directed specifically to patent cases?

```
YES  17%

NO   83%
```

**Question 10.** What kinds of evidence (other than patent and file history) did the court admit and reject in the context of its claim interpretation process?

```
Technical Expert Testimony

(Percentage of total responses for cases where court allowed extrinsic

  evidence)

ADMITTED                                                                      80%

REJECTED                                                                       8%


Legal Expert Testimony

ADMITTED                                                                      18%

REJECTED                                                                      20%
```

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 No. 3 IPLN 12                                                                                           Page 6
18 NO. 3 Intell. Prop. L. Newsl. 12
**(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)**

```
Inventor Testimony

ADMITTED                                                               48%

REJECTED                                                                8%


Non-inventor Factual Testimony

ADMITTED                                                               28%

REJECTED                                                               12%


Prior Patents or Publications

ADMITTED                                                               64%

REJECTED                                                                2%
```

**Question 11.** In ruling on claim construction, did the court ultimately rely on any of the above evidence?

```
YES   48.9%

NO    51.1%
```

**Question 12.** Did the court hold a hearing on claim construction, as opposed to ruling on briefs?

```
YES   81.5%

NO    18.5%
```

**Question 13.** Did the court permit testimony by affidavit?

```
YES   50.9%

NO    49.1%
```

**Question 14.** Did the court permit live testimony?

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

```
YES  58.1%

NO   41.9%
```

**Question 15.** Who proceeded first in the order of proof?

```
PATENTEE   90.2%

INFRINGER   9.8%
```

**Question 16.** Was the hearing limited to literal claim construction issues?

```
YES  77.8%

NO   22.2%
```

**Question 17.** How long (number of days) did the hearing last?

```
AVERAGE HEARING LENGTH                              1.36 days

PERCENTAGE OF CASES WHERE HEARING WAS LONGER THAN ONE DAY    31.5%
```

**\*15 Question 18.** Did the hearing outcome lead to a settlement prior to trial?

```
YES  29%

NO   71%
```

**Question 19.** Did you ask the trial court to certify its claim construction ruling for immediate appeal pursuant to 28 U.S.C. § 1292?

```
YES   7%

NO   93%
```

**Question 20.** Did the trial court certify the ruling?

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

18 No. 3 IPLN 12                                                                                          Page 8
18 NO. 3 Intell. Prop. L. Newsl. 12
**(Cite as: 18 NO. 3 Intell. Prop. L. Newsl. 12)**


```
YES   4%

NO   96%
```


**Question 21.** Did you apply for an appeal of the certified order with the CAFC?


```
YES   4%

NO   96%
```


**Question 22.** The author is aware of no case in which the CAFC has accepted such an application. If your experience is to the contrary, please explain:
Respondent 133 writes, "The Fed Circuit ruled in an unpublished opinion reversing the trial court." No other respondent offered commentary on this issue.

**Question 23.** Did you otherwise appeal the trial court's claim interpretation before trial (e.g., consent to summary judgment, appeal of preliminary injunction ruling)?


```
YES   11.1%

NO   88.9%
```


**Question 24.** Was the trial court's claim interpretation upheld on appeal?
Caution: Based on only six respondents.


```
YES   17%

NO   83%
```


**Question 25.** If the trial court's claim interpretation was not in whole upheld on appeal, did the CAFC remand for further pro-ceedings?
Caution: Based on only four respondents.


```
YES   75%

NO   25%
```


© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

FN1. Mr. Dauchot can also be reached at the following address:
Thompson Hine & Flory LLP
3900 Key Center
127 Public Square
Cleveland Ohio 44114-1216
Tel (216) 566-5863
Fax (216) 566-5800

FN2. By Luke L. Dauchot and Karl M. Laskas. Luke Dauchot is a partner of Thompson Hine & Flory. Karl Laskas is an associate with the firm.

FN3. For an in-depth analysis of the timing of claim interpretation, see David B. Pieper, The Appropriate Judicial Actor for Patent Interpretation: A Commentary on the Supreme Court's Decision in Markman v. Westview Instruments, Inc., 51 ARK. L. REV. 159, 184-85 (1998).

FN4. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir.1996) ("A trial court may exercise its discretion to interpret the claim whenever parties have presented a full picture of the claimed invention and the prior art.").

FN5. See Charles E. Hill Associates, Inc. v. Compuserve, Inc., 65 F.Supp. 2d 924, 926 (S.D. Ind. 1999).

FN6. Utah Medical Products, Inc. v. Clinical Innovations, Inc., 1999 U.S. Dist. LEXIS 18392, at 16 (D.Ut.) ("[C]ombining the Markman hearing and the motion for summary judgment [into one proceeding] is an efficient and sensible approach to what could otherwise be an unnecessarily lengthy and multi-phased process.").

FN7. See, e.g., Johns Hopkins Univ. v. Cellpro, 894 F.Supp. 819, 826 (D.Del. 1995).

FN8. See Survey Question 4.

FN9. See Survey Question 4.

FN10. See Survey Question 4.

FN11. Thomson Consumer Electronics, Inc. v. Innovatron, S.A., 43 F.Supp. 2d 26 (D.D.C. 1999).

FN12. U.S. Dist. Ct. Rules N.D. Calif., Civil L. R. 16-6 to 16-11 (1997).

FN13. Precision Shooting Equipment, Inc. v. High Country Archery, 1 F.Supp. 2d 1041, 1042 (D.Ariz. Mar. 11, 1998); Interactive Gift Express Inc. v. Compuserve Inc., 1998 U.S. Dist. LEXIS 7081 at *2 (S.D.N.Y. May 15, 1998); Datapoint Corp. v. Standard Microsystems Corp., 96 CV 1685 (E.D. N.Y. Sept, 19, 1997) (not available on LEXIS); Thomson Consumer Electronics, Inc. v. Innovatron, S.A., 43 F.Supp. 2d 26, 29 [fn. 1] (D. D.C. 1999). For a more detailed analysis, see 16 INTELL. PROP. L. NEWSL., Spring 1998, at 2.

FN14. See Survey Question 5. Three practitioners reported use of patent-specific procedural rules in court rooms outside the Northern District of California, specifically, in the Western District of Tennessee (which adopted the California rules), the District of Delaware, and the Western District of Michigan.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

FN15. Joseph N. Hosteny, Another Trip Through Markman, INTELLECTUAL PROPERTY TODAY, Oct. 1999. See also Brian T. Foley, Who Decides What the Patent Covers?, N.J. L. J., Nov. 9, 1998 (describing one effective trial strategy as urging the court "to limit discovery initially to claim interpretation issues.").

FN16. Interactive Gift Express Inc. v. Compuserve Inc., 1998 U.S. Dist. LEXIS 7081 at *2 (S.D.N.Y. 1998) (court "limited discovery to claim construction matters."); Mediacom Corp. v. Rates Technology, Inc., 4 F.Supp. 2d 17, 22 (D.Mass. 1998) ("Questions regarding the construction of patent claims can now safely be addressed in many circumstances prior to the completion of fact discovery, and certainly before trial. In this case, the Court determined that an early Markman hearing was a salutary mechanism for narrowing the disputed issues and securing prompt disposition of those matters as to which there were no genuine factual disputes."). See also Philip J. McCabe, Courts Order "Markman Hearings" Early in Cases, NAT'L L.J., Oct 19, 1998.

FN17. No. 98-1301, 1999 U.S. App. LEXIS 34428 (Fed Cir. Dec. 29, 1999).

FN18. Vivid Technologies, Inc. v. American Science & Engineering, Inc., No. 98-1303, 1999 U.S. App. LEXIS 34428, at 15 (Fed. Cir. Dec. 29, 1999).

FN19. See **Survey** Question 7.

FN20. See **Survey** Question 8.

FN21. See **Survey** Question 9.

FN22. The three other courts that were reported to have adopted local rules regarding **Markman** procedures were from the Western District of Tennessee, the District of Delaware and the Western District of Michigan.

FN23. See **Survey** Question 12.

FN24. See **Survey** Questions 17, 15.

FN25. Derived from responses to **Survey** Questions 13 and 14.

FN26. Live testimony was admitted in 72 percent of cases that admitted some testimony, as compared to 56 percent for affidavit testimony.

FN27. 90 F.3d 1576 (Fed. Cir.1996).

FN28. 182 F.3d 1298 (Fed. Cir.1999).

FN29. Id. at 1309 (emphasis added).

FN30. No. 98-1363, 1999 U.S. App. LEXIS 32841 (Fed. Cir. Dec. 17, 1999).

FN31. Id. at 16 (emphasis added).

FN32. Derived from Survey Questions 13 and 14.

FN33. See Survey Question 10.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN34. See Survey Question 10.

FN35. See Survey Question 10.

FN36. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, at 1584 (Fed. Cir.1996).

FN37. See Survey Question 10.

FN38. Vidtronics, supra note 36 at 1583 (Fed. Cir.1996).

FN39. See Survey Question 10.

FN40. 182 F.3d at 1309 (Fed. Cir.1999).

FN41. Id. at 1308 (quoting Bell & Howell Document Management Prods. Co. v. Altek Sys., 132 F.3d 701,706 (Fed. Cir.1997).

FN42. Supra note 28 at 1309.

FN43. See Survey Question 11.

FN44. 138 F.3d 1448 (Fed. Cir.1998).

FN45. See Survey Question 24.

FN46. "The Federal Circuit has overruled district courts on the issue of claim interpretation at a rate of nearly 40% and, in so doing, has frequently criticized the district judge's improper use of expert testimony." Jennifer Urban, Intellectual Property: B. Patent: 1. Claim Construction: b) Extrinsic evidence: Bell & Howell v. Altek, 14 BERKELEY TECH. L.J. 103, 110 (1999).

FN47. See Survey Question 18.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.