UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN,<br><br>    Defendants. | Civil Action No. 1:06-cv-00658 (HHK) |

**REPLY BRIEF
IN SUPPORT OF DEFENDANTS THE QUEEN'S UNIVERSITY OF BELFAST'S AND
THE UNIVERSITY OF SASKATCHEWAN'S
<u>MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>**

### Introduction

Intervet does not seriously dispute the facts that (i) no case or controversy existed between Intervet and the Universities[1] at the time Intervet filed its declaratory judgment suit, or (ii) the recent amendment to the Tripartite Agreement, pursuant to which the Universities conveyed to Merial SAS any right they had to enforce the '601 patent, divests this Court of subject matter jurisdiction over the Universities.  Instead, Intervet attempts to leverage what this Court must do, *i.e.*, dismiss the Universities, into premature, tactical advantages in discovery by speculating that the Merial entities will use the dismissal of the Universities to block Intervet's access to the named inventors, something the Merial entities cannot do in light of the Hague Convention, as other courts have pointed out.   There has been no discovery yet, and Intervet has not encountered, and it is entirely speculative as to whether it will encounter, any discovery

---

[1] The Queen's University of Belfast and The University of Saskatchewan are herein termed "QUB" and "USASK," respectively, and  "the Universities," collectively.  Merial Limited and Merial SAS are herein termed, "the Merial entities".

problems. Intervet's proposed discovery orders should therefore be denied; and the Universities' proposed order providing for unconditional dismissal should be entered.

**Argument and Authorities**

I. **This Court Does not have Subject Matter Jurisdiction over the Universities.**

*First*, Intervet does not assert that it has ever been under any reasonable apprehension of suit by the Universities. Indeed, no justiciable case or controversy between the Universities and Intervet is alleged in Intervet's Complaint. And in fact, Intervet has admitted that "[t]he Universities never themselves directly threatened suit against Intervet…." (Pl.'s 7/24/2006 Opp'n at 7.) Absent such a threat, no subject matter jurisdiction exists under the Declaratory Judgment Statute. *See Sherman Treaters, Ltd. v. Ahlbrandt*, 607 F. Supp. 939, 943 (D.D.C. 1985); *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995). *Accord BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

*Second*, when Merial SAS and the Universities amended the Tripartite Agreement, the Universities assigned to Merial SAS all right, title and interest in the '601 patent, including the right to sue for infringement. The law is crystal clear that, regardless of the motivation for the assignment, the assignment "divests this Court of declaratory judgment jurisdiction. . . ." *Pharmachemie B.V. v. Pharmacia S.P.A.*, 934 F. Supp. 484, 489 (D. Mass. 1996); *see also Int'l Med. Prosthetics Research Assocs., Inc. v. Gore Enter. Holdings, Inc.,* 787 F.2d 572, 575 (Fed. Cir. 1986) (burden is on declaratory-judgment plaintiff "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the complaint was filed"); *accord Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("actual controversy must be extant at all stage of review").

The most that Intervet can muster in response to this dispositive legal principle is the undisputed – but irrelevant – assertion that most of the named inventors were at one point in time

associated with the Universities. That assertion says nothing with respect to subject matter jurisdiction, which requires that Intervet face a reasonable apprehension of suit by the Universities throughout the entire course of this litigation. *See Int'l Med. Prosthetics Research Assocs., Inc.,* 787 F.2d at 575. Indeed, were there any merit to Intervet's argument, all foreign persons or entities possessing relevant information in a patent infringement suit would, *ipso facto*, be subject to the jurisdiction of the U.S. Courts.

*Third*, the cases on which Intervet relies to support its assertion that the Universities remain necessary parties because they still have rights and obligations under the amended Tripartite Agreement are distinguishable. In *Sicom Systems Ltd. v. Agilent Techs., Inc.*, the Federal Circuit held that "[i]n light of Canada's right to permit infringement in certain cases, the requirement that Sicom consent to certain actions and be consulted in others, and the limits on Sicom's right to assign its interests in the patent, … the Agreement transfers fewer than all substantial rights in the patent from Canada to Sicom." *Sicom Sys. Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 980 (Fed. Cir. 2005). In *Abbott Laboratories v. Diamedix Corp.*, the Federal Circuit held that under Abbott's license, Abbott was a licensee without all substantial rights because:

- Abbot's license was subject to prior licenses granted by Diamedix (the patentee);

- Diamedix retained a right to sell the patented invention to parties with whom Diamedix had pre-existing contracts;

- If Diamedix asked Abbott to bring suit and Abbot refused, Diamedix could bring suit, *i.e.*, Diamedix retained a right to bring suit;

- If Abbott brought suit, it could not "prejudice or impair the patent rights in connection with such prosecution or settlement," *i.e.*, Diamedix retained a right in the prosecution of any patent suit or its settlement; and

- Diamedix could participate in any suit because it was "entitled to be represented therein by counsel of its own selection at its own expense," *i.e.*, Diamedix retained a right to participate in any suit

*Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995).

Here, by contrast, the Universities did not (i) subject Merial's rights to prior licenses that the Universities granted, (ii) retain a right to sell the patented invention to pre-existing contractual parties, (iii) retain a right to bring suit if Merial SAS refused to do so, (iv) did not attach conditions to any suit Merial SAS could bring under the '601 patent, or (v) retain a right to representation in any suit by counsel of their own choice and at their own expense. And any rights retained by the Universities have no relevance to the '601 patent because, as domiciliaries of the United Kingdom and Canada, QUB and USASK only retained rights to use foreign patents, not the '601 patent, which is a U.S. patent. Instead, the Universities granted Merial SAS all rights, title and interest in, to and under the '601 patent, including the right to sue in its own name for infringement of the '601 patent. Thus, the Universities clearly divested themselves of "all substantial rights."

As a result, there was no jurisdiction over the Universities at the time the Complaint was filed, and there is no jurisdiction over the Universities now. The Universities should be dismissed from this Action.

**II.    Intervet is not entitled to the Premature, Oppressive Discovery Orders it Seeks.**

Realizing it cannot sustain subject matter jurisdiction over the Universities, Intervet attempts to secure premature discovery orders from this Court to which Intervet is not entitled. Procedurally, there has been no discovery in this Action; and Intervet has not encountered discovery problems, and it is entirely speculative as to whether it will encounter discovery problems in the future. Moreover, once again, the *Pharmachemie* decision provides the swift rebuttal to Intervet's over-reaching:

4

> *First*, this Court discounts as premature Pharmachemie's foreboding that it will encounter great difficulties in obtaining discovery regarding patent validity if S.P.A. is dismissed as a party. … Pharmachemie itself acknowledges that other procedural devices, such as the Hague Evidence Convention, are available to obtain documents from S.P.A. Although plaintiff's characterization of such procedures as "time consuming [and] cumbersome" may be correct, the President and United States Senate have determined that the Convention creates an appropriate mechanism to obtain discovery from foreign non-parties. In short, **any perceived or anticipated difficulty with discovery does not provide support for this Court's subject matter jurisdiction where none otherwise exists**.

*Pharmachemie*, 934 F.Supp. at 489 (emphasis added). Thus, Intervet can secure the discovery it needs via the Hague Convention without resort to special orders from this Court and any difficulties it might encounter in that process in no way confers subject matter jurisdiction where it does not otherwise exist.[2] Further, the Universities' status as parties or non-parties is irrelevant to discovery under the Hague Convention. *See Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 541 (1987). In that case, the Supreme Court explained that "the text of the Convention draws no distinction between evidence obtained from third parties and that obtained from the litigants themselves." *Id*.

The *Minebea* decision does not provide Intervet with any comfort. As the Court explained in that "unique" case, the inventors "had all executed written assignment agreements which contained express agreements to provide testimony at the request of [the assignee]." *Minebea Co. Ltd. v. Papst*, 370 F.Supp. 2nd 302, 309-310 (D.D.C. 2005). Here, no such agreements exist. While the Universities through the Tripartite Agreement have agreed to cooperate with Merial in this litigation, there is no such obligation on the part of the inventors, at

---

[2] At the July 31, 2006, conference with the Court, counsel for the Declaratory Judgment Defendants represented that, under appropriate circumstances, the Merial entities might attempt to prevail upon the Universities to submit to discovery <u>without</u> resort to Hague Convention formalities. Accordingly, the Universities' reliance on the *Pharmachemie* decision and the authorities cited therein should not be taken to mean that the Merial entities or the Universities will necessarily insist that the Hague Convention formalities be followed, even though it is their right to do so. Rather, the salient point is that, because of the Hague Convention, the Merial entities and the Universities

5

least some of whom are no longer associated with the Universities. Thus, Intervet's bizarre theory, as expressed at page eleven of its brief, that it is somehow a third party beneficiary under the Tripartite Agreement between the Universities (but not the inventors) and Merial SAS lacks merit. Intervet enjoys no rights under that Agreement, and, therefore, should the Universities (but not the inventors) "refuse to perform their contractual obligations and provide the necessary discovery" bears no relevance to the current motion. Accordingly, this Court should decline to grant the discovery orders that Intervet seeks since (i) Intervet's arguments are premised entirely upon speculation that it may encounter future difficulties in the discovery process and (ii) are unsupported by the law. The order of unconditional dismissal proposed by the Universities should thus be entered.

## Conclusion

For the reasons set forth herein and in the Universities' prior brief, the Universities should be unconditionally dismissed and Intervet's request for premature discovery orders denied.

---

could not block Intervet's efforts to secure discovery from the inventors even if the Merial inventors and the Universities were inclined to do so.

Respectfully submitted this 8th day of August, 2006.

        /s/ Timothy Ngau
        ALSTON & BIRD LLP
        Timothy Ngau
        DC Bar No. 339333
        950 F Street, NW
        Washington, DC  20004
        Phone: 202-756-3300
        Fax: 202-756-3333

        Judy Jarecki-Black, Ph.D.
        Merial Limited
        3239 Satellite Blvd.
        Duluth, GA  30096-4640
        Tel.: (678) 638-3805
        Fax: (678) 638-3350

        Thomas J. Kowalski
        Steven M. Amundson
        DC Bar No. 412196
        Frommer Lawrence & Haug LLP
        745 Fifth Avenue
        New York, New York 10151
        Tel.: (212) 588-0800
        Fax: (212) 588-0500

        Frank G. Smith, III
        Robert L. Lee
        J. Patrick Elsevier
        Elizabeth K. Haynes
        Alston & Bird LLP
        1201 West Peachtree Street
        Atlanta, Georgia 30309-3424
        Tel.: (404) 881-7000
        Fax: (404) 881-7777

        Counsel for the Queen's University of Belfast
        and the University of Saskatchewan

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN,<br><br>    Defendants. | Civil Action No. 1:06-cv-00658 (HHK) |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of August, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

**Counsel for Intervet, Inc.**

John R. Hutchins
William G. James, II
Cedric C. Y. Tan
Kenyon & Kenyon
1500 K Street, N.W.
Suite 700
Washington, DC 20005-1257

Richard L. DeLucia
Michael Douglas Loughnane
Kenyon & Kenyon
One Broadway
New York, NY 10004

                                    /s/ Timothy A. Ngau
                                    ALSTON & BIRD, LLP
                                    Timothy A. Ngau
                                    DC Bar No. 339333
                                    950 F Street, NW
                                    Washington, DC  20004
                                    Phone: 202-756-3300

Fax: 202-756-3333

Counsel for the Queen's University of Belfast
and the University of Saskatchewan