UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, <br><br> *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK) |

**PLAINTIFF INTERVET'S OPPOSITION TO
DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Plaintiff Intervet Inc. ("Intervet") hereby opposes Defendants Merial Limited's, Merial SAS's, The Queen's University of Belfast's and the University of Saskatchewan's ("Defendants") motion for entry of a protective order that would allow in-house counsel Dr. Judy Jarecki-Black access to all restricted confidential documents and information. Intervet should not be forced to expose highly confidential technical and business information regarding its animal health products, including its porcine circovirus vaccines, to its largest direct competitor. In light of the clear potential for prejudice, the Court should deny Defendants' motion, and should instead enter a two-tier protective order structure that gives in-house and patent prosecution counsel, such as Dr. Jarecki-Black, access to only lower-tier confidential information. Such an order has been attached as Exhibit A.

# TABLE OF CONTENTS

                                                                  **Page**

STATEMENT OF FACTS ...........................................................................................................1

    A. Background ...................................................................................................................1

    B. Dr. Judy Jarecki-Black ..................................................................................................3

ARGUMENT .................................................................................................................................3

    A. Dr. Jarecki-Black Is a Competitive Decision Maker and the Risk of
       Inadvertent Disclosure Is Great ....................................................................................5

       1. Dr. Jarecki-Black Is Involved in Decisions Pertaining To Settling
          Cases and Entering License Arrangements.............................................................5

       2. Dr. Jarecki-Black and All Attorneys Involved with Prosecuting Merial's Patents
          Should be Precluded from Having Access to Intervet's Highly Confidential
          Documents under the Protective Order……………………………………………….6

       3. Dr. Jarecki-Black Likely Advises Senior Corporate Executives at Merial ............10

    B. Defendants Offer No Legitimate or Compelling Need for Dr. Jarecki-Black
       to See Intervet's Highly Sensitive Technical and Financial Information ....................11

CONCLUSION.............................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*A. Hirsh Inc. v. United States*, 657 F. Supp. 1297 (C.I.T.C. 1987) ............................................... 11

*Andrx Pharms., LLC v. GlaxoSmithKline, PLC*, No. 05-23264, 2006 U.S. Dist. LEXIS 50089
  (S.D. Fla. July 7, 2006) ..................................................................................................... 7, 8

*Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, No. 89-484, 1990
  U.S. Dist. LEXIS 14075, 18 U.S.P.Q.2d 1166 (D. Del. 1990) ...................................................... 7

*\*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) .............................. 4, 10

*Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24 (E.D. Pa. 1990) ......................................... 6

*\*Chan v. Intuit, Inc.*, 218 F.R.D. 659 (N.D. Cal. 2003) ............................................................. 7, 9

*\*Commissariat a L'Energie Atornique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004
  U.S. Dist. LEXIS 12782 (D. Del. May 25, 2004) ............................................................... 7, 8, 9

*Glaxo, Inc. v. Genpharm Pharmaceuticals, Inc.*, 796 F. Supp. 872 (E.D.N.C. 1992) .................... 7

*\*In re Pabst Licensing*, 99-3118, No. MDL 1278, 2000 WL 554219
  (E.D. La. May 4, 2000) ......................................................................................................... 7, 8

*\*Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000) ............................... 4, 6, 10, 11

*Merial Ltd. v. Intervet, Inc.*, Case No. 05-CV-3168 (N.D. Ga. Apr. 24, 2006) ............................. 2

*Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist.
  LEXIS 20714 (D. Del. Dec. 19, 1994) ...................................................................................... 7

*\*U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) .................................. 5, 7, 10

**Statutes**

Fed. R. Civ. P. 26(c) ........................................................................................................................ 4

**STATEMENT OF FACTS**

A.   **Background**

Intervet is the world's third largest animal health company. Intervet is a leading supplier of innovative, high-quality products to veterinarians, farmers and pet owners. Intervet's broad product lines include medicines for use in all major companion animal and food-producing species, including pigs. Intervet's business is supported by comprehensive research and manufacturing capabilities including a global distribution network that spans more than 100 countries, operates subsidiaries in over 50 countries, and employs a total staff of 5,200.

Merial Limited ("Merial") is also an enormous animal health company involved with the development and production of pharmaceutical products and vaccines, and is Intervet's largest direct competitor. Merial is a joint venture between Merck & Co. and Sanofi-Aventis. In 2005, Merial reported that its sales were in excess of $1.9 billion. Like Intervet, Merial offers products and services aimed at enhancing the health of pigs and numerous other animals. Merial employs nearly 5,000 people and operates in more than 150 countries around the world.[1]

On April 11, 2006, Intervet filed a Complaint seeking a declaratory judgment of invalidity, unenforceability and noninfringement of U.S. Patent No. 6,368,601 ("'601 patent"), the patent-in-suit in the present action. (D.I. 1.) Intervet had been threatened with infringement of the '601 patent due to Intervet's development and sale of a vaccine for porcine circovirus type II ("PCV-2"). Defendants are lagging behind Intervet and do not yet have a viable PCV-2 vaccine on the United States market. As of April 24th of this year, Merial did not have U.S.D.A.

---

[1]   Information obtained from Merial's website, www.merial.com.

1

approval to sell its PCV-2 vaccine in the United States, had not set a price for its vaccine, and had not ramped up production to the point where it could sufficiently supply the domestic porcine market with its vaccine.[2] If or when Merial overcomes these various obstacles, its PCV-2 vaccine will, according to Merial, compete directly with Intervet's accused vaccine. *See* Jean Decl. Exh. 1 at 92:8-16, 99:13-100:3.

In this case, discovery between Merial and Intervet began on August 11, 2006. (D.I. 35.) Even at this early stage of discovery, Defendants have made it clear that they want access to Intervet's most highly confidential information related to Intervet's costs, pricing, technical development, and even possible patenting of its PCV-2 vaccines.[3] At the same time, Defendants have moved for entry of a protective order that would allow their in-house counsel, Dr. Jarecki-Black, access to *all* documents produced by Intervet in this action, including the most highly confidential information. (D.I. 34.) As noted in Defendants' opening brief, the parties are in agreement that a protective order should be issued for this litigation. (D.I. 34-2 at 2.) Intervet, however, does not agree with Defendants that Dr. Jarecki-Black should have access to highly confidential technical and commercial information regarding Intervet's porcine circovirus vaccine. Given the size of the parties involved, their relationship as direct competitors, and the fact that Merial is currently developing a vaccine (or at least the manufacturing, marketing and

---

[2] *See* Transcript of Hearing on Various Motions at 99:13-100:23, 108:18-21, 111:21-112:9, *Merial Ltd. v. Intervet, Inc.*, Case No. 05-CV-3168 (N.D. Ga. Apr. 24, 2006) (attached as Exhibit 1 to the Declaration of Patrice P. Jean, Ph.D. submitted in support hereof (hereinafter "Jean Decl. Exh. __")).

[3] For example, Defendants have requested "[a]ll documents concerning any decision to market, launch, introduce, import, offer for sale or sell Intervet's PCV-2 vaccine," "[a]ll sales projections or forecasts for Intervet's PCV-2 vaccine," "[a]ll financial records, business records, and other documents that evidence, summarize, analyze, forecast, project, refer to, or relate to any aspect of the business of manufacturing or selling Intervet's PCV-2 vaccine," "[a]ll documents concerning any applications for a patent relating to any Intervet PCV-2 vaccine and any prosecution thereof," "[a]ll documents concerning any licenses, assignments, or grants of patent rights which cover or relate to any Intervet PCV-2 vaccine," and "[e]ach document or thing concerning the price elasticity of any

2

business plans for a vaccine) that it represents will directly compete with the accused product, any leak of confidential information from one side could provide an enormous, global advantage to the other.

### B. Dr. Judy Jarecki-Black

Dr. Jarecki-Black is Global Head of Intellectual Property for Merial and is responsible for advising Merial and coordinating all patent legal matters for all Merial companies and subsidiaries. These responsibilities include involvement in licensing decisions, settlement discussions, patent portfolio development and prosecution work, and management of litigation. (*See, generally*, D.I. 34-4.)

Though mentioned nowhere in Defendants' motion or Dr. Jarecki-Black's declaration in support of it, Dr. Jarecki-Black is currently involved in the prosecution of dozens of patents around the world on behalf of Merial. Of these, over 20 are related to animal vaccine technology, including porcine circovirus vaccines, the subject of the patent-in-suit. In addition, the United States Patent and Trademark Office (USPTO) currently lists seven pending patent applications claiming the benefit of U.S. Application No. 09/082,558, which is the application that issued as the patent-in-suit.[4] (*See* U.S. Application Nos. 10/624,049 (filed July 21, 2003); 10/653,849 (filed Sept. 2, 2003); 10/780,318 (filed Feb. 17, 2004); 11/107,219 (filed Apr. 15, 2005); 11/217,562 (filed Sept. 1, 2005); 11/485,240; 11/485,525.)

---

swine vaccine, including Intervet's PCV-2 vaccine." (Jean Decl. Exh. 2, ¶¶ 30, 31, 32, 44, 47, 78). For additional examples, *see* Jean Decl. Exh. 2, ¶¶ 34-41, 43, and 81.

[4] In light of these seven pending applications, Dr. Jarecki-Black's statement in her declaration that "there is only one (1) pending application *directly* descended from the application from which the '601 patent issues" is misleading. (*See* D.I. 34-4, ¶ 8) (emphasis added).

3

## ARGUMENT

Rule 26(c) of the Federal Rules of Civil Procedure authorizes courts to minimize the burden on a producing party by ordering "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c). To determine whether a protective order is warranted, courts balance "the risk of inadvertent disclosure of trade secrets to a competitor, against the risk . . . that protection of . . . trade secrets impaired prosecution [of the discovering party's] claims." *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (denying access to in-house counsel) (citation omitted); *see also Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1470 (9th Cir. 1992).

Intervet would suffer severe prejudice if its most highly confidential technical and business information fell into the hands of a key Merial employee, such as Dr. Jarecki-Black, given Merial's direct and continuous competition with Intervet in various animal healthcare markets, and Merial's stated goal of competing directly against Intervet in the PCV-2 vaccine market. As the party seeking the disclosure of confidential information, Defendants bear the burden of establishing a sufficient need to show Dr. Jarecki-Black this information. *See Intel*, 198 F.R.D. at 528 ("because it seeks disclosure of information that would otherwise be confidential, Intel bears the burden of establishing a sufficient need for the information which outweighs the risk of injury to VIA."); *see also Brown Bag Software* 960 F.2d at 1470 (motion to modify protective order was denied because the moving party "failed to demonstrate how the protective order actually could have or did prejudice its case."). Defendants have not met their burden.

Intervet's opposition to this motion is neither an attack on Dr. Jarecki-Black, nor an attempt to prevent Dr. Jarecki-Black from seeing *all* confidential information and non-public materials produced by Intervet. Intervet merely seeks to protect its most sensitive and highly confidential information from the risk of inadvertent disclosure or unconscious use by Dr. Jarecki-Black as she performs those duties essential to her role as Global Head of Intellectual Property for Merial. Here, Dr. Jarecki-Black's prominent role in licensing and settlement discussions, prosecuting porcine vaccine patents, and her likely interaction with other decision makers, such as corporation executives, while advising Merial all warrant restricting her (and other in-house personnel with similar roles) from access to Intervet's most sensitive and highly confidential information.

### A.     Dr. Jarecki-Black Is a Competitive Decision Maker and the Risk of Inadvertent Disclosure Is Great

Defendants are simply wrong when they assert that Dr. Jarecki-Black is not a "competitive decision maker" at Merial. (D.I. 34-1 at 4-5.) Under the law, Dr. Jarecki-Black's admitted involvement in settlement and licensing discussions, patent prosecution, and her role as a corporate advisor to Merial make her without doubt a competitive decision maker for Merial. Thus, Dr. Jarecki-Black should not be given access to Intervet's most highly confidential materials. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-69 (Fed. Cir. 1984).

#### 1.     Dr. Jarecki-Black Is Involved in Decisions Pertaining To Settling Cases and Entering License Arrangements

Dr. Jarecki-Black admits that one of the reasons that she seeks access to Intervet's most confidential information is to potentially develop a settlement strategy. (*See, e.g.,* D.I. 34-2 at 6; D.I. 34-4 ¶ 3.) This is sufficient reason alone to deny her such access. Involvement in licensing patents and settling lawsuits renders an in-house counsel a competitive decision maker who

5

should be restricted from access to highly confidential materials. *Intel*, 198 F.R.D. at 529-30; *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28-29 (E.D. Pa. 1990) (authority to settle cases suggests that the person is a competitive decision maker).

In *Intel*, the court faced a very similar argument to the one Defendants make here. The court in that case held that in-house counsel's involvement in licensing rendered her a competitive decision maker and thus denied her access to highly confidential materials. 198 F.R.D. at 529-30 ("Ms. Fu's involvement in licensing through litigation constitutes competitive decision making, because her advice and counsel necessarily affect licensing decisions."). Just as in *Intel*, Dr. Jarecki-Black's involvement in licensing decisions in furtherance of settlement makes her a competitive decision maker which creates a high risk of inadvertent disclosure and could provide a competitive advantage to Defendants in negotiating related licenses in the future, both with Intervet and with other entities.

> **2.      Dr. Jarecki-Black and All Attorneys Involved with Prosecuting Merial's Patents Should Be Precluded from Having Access to Intervet's Highly Confidential Documents under the Protective Order**

Setting aside Dr. Jarecki-Black's role in licensing or status as in-house counsel, she should still be precluded from the highest tier of the protective order because she is heavily involved in (and is ultimately responsible for) patent prosecution for Merial. While Defendants and Dr. Jarecki-Black attempt to diminish her duties as in-house counsel, they never address her involvement in patent prosecution. It is common practice in patent litigation to exclude counsel

responsible for prosecuting patents from the top tier of protective orders, regardless of their status as either in-house or retained outside counsel.[5]

Numerous courts have explicitly held that counsel who give advice related to patent prosecution and/or the scope of patent claims are competitive decision makers and have thus precluded such counsel from having access to highly confidential information.[6] *See In re Papst Licensing*, 99-3118, No. MDL 1278, 2000 WL 554219, *3-*5 (E.D. La. May 4, 2000) (finding that patent prosecution constituted competitive decision-making and requiring in-house and retained outside counsel to refrain from patent prosecution for one year after the conclusion of the litigation, including appeals); *Commissariat a L'Energie Atornique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782, at *7-*8 (D. Del. May 25, 2004) ("Prosecuting patent applications 'involves decisions of scope and emphasis' that implicate competitive decision-making . . .") (quoting *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, at *11 (D. Del. Dec. 19, 1994)); *Andrx Pharms., LLC v. GlaxoSmithKline, PLC*, No. 05-23264, 2006 U.S. Dist. LEXIS 50089, at *13 (S.D. Fla. July 7, 2006) (restricting access to highly confidential documents because Andrx's patent prosecution counsel "actively participates in competitive decision-making."); *Chan v. Intuit, Inc.*, 218 F.R.D. 659, 661-62 (N.D. Cal. 2003) ("This Court finds that if advice related to patent prosecution is defined as competitive decision-making . . . then advice on the scope of patent claims must also

---

[5]   The Federal Circuit has held that "access should be denied or granted on the basis of each individual counsel's activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained." *U.S. Steel,* 730 F.2d at 1469.

[6]   In fact, two of the cases upon which Defendants rely specifically required counsel to abstain from future prosecution work in order to be granted access to confidential information. *See Glaxo, Inc. v. Genpharm Pharms., Inc.*, 796 F. Supp. 872, 874 (E.D.N.C. 1992) (in-house counsel stated that he would not participate in any other matter involving the technology at issue except for other litigations); *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.*, No. 89-484, 1990 U.S. Dist. LEXIS 14075, *4, 18 U.S.P.Q.2d 1166, 1168 (D. Del. 1990)

be defined as competitive decision-making."). Thus, independent of her status as in-house counsel, Dr. Jarecki-Black should be precluded her from having access to Intervet's most confidential materials.[7] *Andrx,* 2006 U.S. Dist. LEXIS 50089 at *12 (restricting outside patent prosecution counsel's access to highly confidential documents because the risk of inadvertent disclosure outweighed the need to have that attorney assist the two additional law firms that represented Andrx); *In re Papst*, 2000 WL 554219 at *5 ("because the risk of inadvertent disclosure or misuse is identical whether counsel . . . is inside or retained counsel, . . . the restriction applies to all counsel . . . prosecuting, supervising or assisting in the prosecution of patent applications related to the subject matter of the patents in suit"); *see also Commissariat*, 2004 U.S. Dist. LEXIS 12782 at *9 (finding that patent prosecution counsel should not have access to highly confidential information).

Dr. Jarecki-Black incorrectly claims that "nothing that [she] may learn from discovery in this Action could ever provide any competitive advantage to Merial." (D.I. 34-4 at 5.) Incredibly, this statement ignores the fact that Dr. Jarecki-Black has recently filed patent applications and is still prosecuting patent applications related to porcine vaccines on behalf of Merial. *See, e.g.,* U.S. Patent Publ'n No. 2006/0122142 (listing Dr. Jarecki-Black as the person that correspondence should be directed to); U.S. Patent Publ'n No. 2006/0002952 (entitled

---

(finding that in-house attorneys could have access to highly confidential information as long as they excluded themselves from future conflicting work).

[7] In addition to Dr. Jarecki-Black, another of Defendants' attorneys of record, Thomas J. Kowalski of Frommer Lawrence & Haug LLP, is also still heavily involved in patent prosecution for Merial. Information accessible on the USPTO website lists Mr. Kowalski as the prosecuting attorney on more than 60 patents and published patent applications filed by Merial. *See, e.g.,* U.S. Patent Publ'n No. 2006/0122142 "DNA vaccines for farm animals, in particular bovines and porcines" (filed January 30, 2006) (application listing Mr. Kowalski as one of the prosecuting attorneys); U.S. Patent Publ'n No. 2006/0002952 A1 "Postweaning Multisystemic Wasting Syndrome and Porcine Circovirus from Pigs" (filed September 1, 2005) (same); U.S. Patent No. 7,078,388 "DNA vaccines for farm animals, in particular bovines and porcines" (issued July 18, 2006) (same). Because Mr. Kowalski remains heavily involved in prosecuting patents for Merial, he, like Dr. Jarecki-Black, should also be precluded from having access to information produced under the top tier of the protective order.

8

"Postweaning multisystemic wasting syndrome and porcine circovirus from pigs," for which the USPTO website lists Dr. Jarecki-Black as one of the patent attorneys handling the matter); U.S. Patent No. 7,078,388 (naming Dr. Jarecki-Black as one of the patent attorneys handling the matter).  Moreover, at any time during the course of this lawsuit, Dr. Jarecki-Black may become responsible for new patent applications that overlap in subject matter with confidential Intervet material.  Thus, despite her assertion that she is "not involved in the design of any Merial product" (D.I. 34-4 at 3), Dr. Jarecki-Black is responsible for and involved in the development of Merial's vaccine patent portfolio, a portfolio that (i) in many cases indeed governs the ultimate design of Merial's products, and (ii) without question can provide competitive advantages.

Further, in her role as prosecuting counsel, Dr. Jarecki-Black will necessarily interact with inventors at Merial, Merial SAS, and possibly the foreign university defendants regarding their future or pending patent applications.  While doing so, she also wants to have access to Intervet's most sensitive information.  There is a strong chance that, during these interactions, Dr. Jarecki-Black could inadvertently disclose confidential information.  *See Chan*, 218 F.R.D. at 662; *Commissariat*, 2004 U.S. Dist. LEXIS 12782 at *9 ("patent prosecution attorneys should not have unfettered access to . . . highly confidential information.  There is a substantial risk of inadvertent disclosure of such information, given that [those] patent attorneys are prosecuting and will continue to prosecute patents in the field . . .").  Finally, in drafting claims to cover future inventions or related applications, there is the ever-present risk that Merial could inadvertently use Intervet's most confidential information to specifically draft claims to encompass Intervet's planned products.

Dr. Jarecki-Black can offer no assurances that she has not and will not engage in patent prosecution, that she will suspend her current advisory role in patent prosecution for Merial, or

9

that she will segregate herself from future conflicting work. Indeed, these activities are at the very essence of her duties at Merial. As such, it is singularly inappropriate to grant her access to *all* information being sought by Merial from Intervet in this case.

### 3. Dr. Jarecki-Black Likely Advises Senior Corporate Executives at Merial

Dr. Jarecki-Black also admits that she is obligated to "advise Merial" regarding all patent litigation matters, including settlement. (*See, e.g.,* D.I. 34-4, ¶ 3.) It is clear from Dr. Jarecki-Black's declaration that she is closely involved in many of the decisions that the officers and executives of Merial make. Intervet's concerns of inadvertent disclosures of its highly confidential information are thus specifically exacerbated by her potential interaction and advice to other decision makers such as Merial's General Counsel (who is a member of Merial's Management Leadership Team) and senior Merial executives. If given unfettered access to Intervet's highly confidential information in this case, Dr. Jarecki-Black's advice to the officers and executives of Merial would almost inevitably contain or be based upon Intervet's protected information. Though she may not purposefully or knowingly evaluate a settlement agreement or offer certain advice in light of such protected information, the difficulty in "locking up trade secrets in her mind" makes protections against inadvertent disclosure necessary. *Intel*, 198 F.R.D. at 530 (citing *Brown Bag*, 960 F.2d at 1471).

As the courts have observed, "[i]t is humanly impossible to control the inadvertent disclosure of some of this information in any prolonged working relationship." *Id.* at 530 (citing *U.S. Steel*, 730 F.2d at 1467). In light of Dr. Jarecki-Black's high position within Merial and thus close working relationship as an advisor to Merial officers and executives, Defendants' assertion that "she is not in a situation in which she might inadvertently use information gained in this case for competitive purposes" should be rejected as the *ipse dixit* it is. (D.I. 34-2 at 7.)

10

### B. Defendants Offer No Legitimate or Compelling Need for Dr. Jarecki-Black to See Intervet's Highly Sensitive Technical and Financial Information

Defendants assert that Dr. Jarecki-Black needs to see Intervet's most highly confidential technical and financial information in part because she acts as an interface for all outside counsel and "generally manages all of Merial's patent litigations." (D.I. 34-1 at 6.) These functions, however, do not warrant providing her access to Intervet's highly confidential information under the protective order. *See Intel*, 198 F.R.D. at 528. For Defendants' motion to be granted, they must demonstrate that restricting disclosure would "actually prejudice presentation of [Defendants'] case, not merely increase the difficulty of managing the litigation." *Intel*, 198 F.R.D. at 528.

In *Intel*, the court held that in-house counsel's management concerns were insufficient reasons for the court to grant it access to highly confidential information. *Id*. at 528-29. Like the *Intel* case, Dr. Jarecki-Black has not alleged (nor could she credibly do so) that Defendants' ability to litigate through its numerous outside counsels and experts, including Alston & Bird, LLP, will be impaired if she is not allowed to see Intervet's confidential information. *See id.* at 529 (citing *A. Hirsh Inc. v. United States*, 657 F. Supp. 1297, 1305 (C.I.T.C. 1987) ("in view of retained counsel's competence, it is not clear how plaintiffs' position will be prejudiced by excluding [in-house] counsel from access."). Simply put, the raft of experienced outside counsel representing Defendants (along with any outside experts they hire) are more than capable of handling this litigation and advising Merial.[8]

---

[8] To date, Merial has listed seven outside attorneys of record, including Patrick Elsevier, Elizabeth Haynes, Robert Lee, Frank Smith, and Timothy Ngau, all of Alston & Bird, LLP. With this many attorneys involved at a minimum, Defendants cannot seriously claim to be prejudiced if Dr. Jarecki-Black is not permitted to review highly confidential information herself. *See Intel*, 198 F.R.D. at 529 ("Requiring a party to rely on its competent outside counsel does not create an undue and unnecessary burden.") (internal quotations omitted).

11

Finally, there are no other compelling reasons for Dr. Jarecki-Black to be given access to Intervet's most highly confidential information. Any restrictions on her access would not pose an unfair disadvantage for Defendants because it would apply across-the-board and equally to Intervet's in-house counsel. And, if it truly becomes necessary for a particular document to be shown to Dr. Jarecki-Black (although it is hard to see how that could be possible), then the parties could agree to such production or raise the issue with the Court in the future on a case-by-case basis.

## CONCLUSION

For the aforementioned reasons, the Court should deny Defendants' Motion for Entry of a Protective Order that would allow in-house and patent prosecution counsel, including Dr. Judy Jarecki-Black, access to all highly confidential documents. Intervet respectfully requests that the Court instead enter the two-tier protective order attached hereto as Exhibit A.

Dated: August 18, 2006                                    Respectfully Submitted,


           /s/  John Hutchins
John R. Hutchins (D.C. Bar # 456749)
William G. James, II
Cedric C. Y. Tan (D.C. Bar # 464848)
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, DC. 20005
(202) 220-4200 (telephone)
(202) 220-4201 (facsimile)

Richard L. DeLucia
Michael D. Loughnane
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200 (telephone)
(212) 425-5288 (facsimile)

*Attorneys for Plaintiff*
*Intervet Inc.*

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, <br><br> *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 18[h] day of August, 2006, I electronically filed *Plaintiff Intervet's Opposition To Defendants' Motion For Entry Of A Protective Order* and the *Declaration Of Patrice P. Jean, PH.D.* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

    Judy Jarecki-Black, Ph.D.
    MERIAL LIMITED
    3239 Satellite Blvd.
    Duluth, GA 30096-4640
    Tel: (678) 638-3805
    Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

2