**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN, <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK) |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR ENTRY OF A PROTECTIVE ORDER**

**I.     INTRODUCTION**

With this brief Merial submits a modified protective order that addresses the concerns that Intervet outlined in its brief (attached as Exhibit A).  At the same time, the modified protective order allows Dr. Judy Jarecki-Black and Mr. Thomas Kowalski fair access to designated materials, a condition absent from Intervet's proposed protective order.

More particularly, Merial proposes a two-tier protective order with Confidential and Attorneys' Eyes Only designations.  In order to give proper protection to Intervet's confidential materials, under Merial's modified protective order all persons granted access to Attorneys' Eyes Only materials must refrain from prosecuting patents relating to PCV-2 viruses or vaccines during this litigation and for one year after its final resolution, including any appeal.

Intervet argues that the Court should deny Dr. Jarecki-Black and anyone involved in patent prosecution for the defendants (collectively "Merial"), specifically alluding to Mr. Kowalski, access to Intervet's Highly Confidential-Attorneys' Eyes Only ("Highly

Confidential") materials. What's more, Intervet argues—without explanation—that the Court should deny outside counsel involved in patent prosecution, again alluding to Mr. Kowalski, access to Intervet's Confidential materials. This position is nonsensical and not supported by law.

Even more, Intervet attempts to deny access to Highly Confidential Materials to Dr. Jarecki-Black based on its allegations that she is a competitive decisionmaker. Intervet bases its restrictions on incorrect assumptions. Dr. Jarecki-Black does not engage in competitive decisionmaking for Merial, but rather plays an integral role as part of Merial's litigation team.

Finally, the order proposed by Intervet is far too open-ended and vague in terms of what Intervet is permitted to designate as Highly Confidential; rather, the categories of such materials should be specifically defined and limited, as set for in paragraph 1(b) of Merial's modified Protective Order, to information that is truly confidential, proprietary information.

## II.    ARGUMENT AND AUTHORITIES

### A. Under Merial's Proposed Order, Individuals with Access to Highly Confidential Information Will Not Prosecute Patents.

Intervet asserts that access to unspecified, but Highly Confidential, information by Merial's patent prosecution attorneys (and presumably Intervet's patent prosecution attorneys) would create an unfair risk of inadvertent disclosure or information misuse that justifies excluding these individuals. Intervet Opp'n at 9. In particular, Intervet states that Dr. Jarecki-Black's participation in patent prosecution makes it "singularly inappropriate" to grant her access to certain information. Intervet Opp'n at 10. Intervet raises similar concerns about Merial's outside counsel, Mr. Kowalski. Intervet Opp'n at 8, n.7. Merial's modified protective order renders these concerns moot. No person involved with prosecuting patents related to PCV-2

vaccines or viruses will have access to Intervet's Highly Confidential materials and Dr. Jarecki-Black and Mr. Kowalski agree to be bound by these provisions. Thus, the cases Intervet cited for the proposition that courts preclude attorneys who prosecute patents related to the patent–in-suit from confidential materials become irrelevant as to precluding Dr. Jarecki-Black and Mr. Kowalski from confidential materials.  *See In re Papst Licensing, GmbH, Patent Litig.,* No. MDL 1298, 2000 WL 554219 (E.D. La. May, 4, 2000); *Commissariat a L'Energie Atomique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782 (D. Del. May 25, 2004); *Glaxo Inc. v. Genpharm Pharms., Inc.,* 796 F. Supp. 872, 874 (E.D.N.C. 1992); *Boehringer Ingelheim Pharms., Inc. v. Hercon Labs. Corp.,* No. 89-484-CMW, 1990 U.S. Dist. LEXIS 14075, at *4, (D. Del. Oct. 12, 1990).

In fact, case law supports granting access to Intervet's Highly Confidential information to Dr. Jarecki-Black and outside counsel under the conditions in Merial's modified protective order. *See, e.g., In re Papst,* 2000 WL 554219 (restricting counsel with access to confidential prosecution bar materials from prosecuting patents on the subject matter of the patents-in-suit for the duration of the case plus one year); *Commissariat a L'Energie Atornique v. Dell Computer Corp.,* No. 03-484-KAJ, 2004 WL 1196965, at *2-*3 (D. Del. May 25, 2004) (allowing attorneys access to confidential materials so long as they did not prosecute, supervise, or assist with the prosecution of patents related to the subject matter of patent in suit during litigation and one year thereafter).  Merial submits that such restrictions should satisfy any legitimate concern Intervet may have over Dr. Jarecki-Black or Mr. Kowalski having access to Intervet's Highly Confidential documents and information.

**B. Dr. Jarecki-Black Is Necessary to Merial's Case Preparation and Should Have Access to Discovery Materials.**

**1. Neither Dr. Jarecki-Black's Status as In-house Counsel nor Her Duties Within Merial Disqualify Her from Access to Discovery Materials.**

Citing *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed. Cir. 1984), Intervet acknowledges that Dr. Jarecki-Black should not be excluded from access to information on the basis of her status as in-house counsel. Intervet Opp'n at 7, n. 5. Intervet then erroneously argues that Dr. Jarecki-Black makes competitive decisions which disqualifies her from having access to Intervet's Highly Confidential information. Intervet misstates the facts and misapplies the law.

**a. Dr. Jarecki-Black's Duties Do Not Involve Competitive Decisionmaking.**

Again citing *U.S. Steel*, Intervet erroneously claims that Dr. Jarecki-Black is a competitive decision maker due to her involvement in "settlement and licensing discussions, patent prosecution, and her role as a corporate advisor to Merial." Intervet Opp'n at 5. But *U.S. Steel*, the leading case on this issue,[1] does not include any of these activities in its definition of "competitive decisionmaking" or in its discussion of what activities may preclude an in-house attorney from having access to confidential information. Instead, *U.S. Steel* provides the following widely-accepted definition of "competitive decisionmaking":

> a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

*U.S. Steel*, 730 F.2d at 1468 n.3.

When in-house counsel do not participate in competitive decisionmaking activities, they should not be denied access to discovery materials. *U.S. Steel*, 730 F.2d at 1468 (refusing to deny access to attorneys who were not competitive decisionmakers); *Matsushita Elec. Indus. Co. v. United States*, 929 F.2d 1577, 1579-80 (Fed. Cir. 1991) (granting access to discovery materials to in-house attorney who was "insulated from competitive decisionmaking" because he was not involved with selection of vendors, competitive business terms in purchase orders, or decisions regarding competing products or marketing strategies, and his contact with those who make marketing, purchasing, and strategic decisions was minimal and in the context of a legal problem); *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 27-28 (E.D. Pa. 1990) (allowing access to discovery materials to an in-house attorney who was not involved in competitive decisionmaking based on his declaration that he had "no involvement in decisions regarding pricing of products or services" and did not "participate in marketing decisions.")

Dr. Jarecki-Black does not participate in any of Merial's sales or business decisions, nor does she participate in or advise on decisions regarding pricing, design, or development of Merial products. Jarecki-Black Decl. at ¶ 6 (A copy of Dr. Jarecki-Black's Declaration is attached as Exhibit B). Thus, Dr. Jarecki-Black is not a competitive decisionmaker and should not be excluded from access to discovery materials in this case.

Intervet's speculation that "Dr. Jarecki-Black Likely Advises Senior Corporate Executives" at Merial and that she is "closely involved in many of the decisions that the officers and executives of Merial make," Intervet Opp'n at 10, are not only legally insufficient to justify

---

[1] *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992) (stating that *U.S. Steel* is the "leading authority" on protective orders distinguishing between outside and in-house counsel); *U.S. v. Sungard Data Sys., Inc.*, 173 F. Supp. 2d 20, 23-24 (D.D.C. 2001) (same).

LEGAL02/30071047v2

5

excluding her from access to information, but are also factually incorrect. In her declaration, Dr. Jarecki-Black described the scope of her duties at Merial. In particular, she does not participate in or advise others regarding competitive decisions as defined in *U.S. Steel.* Jarecki-Black Decl. at ¶ 6.

Intervet asserts that Dr. Jarecki-Black's "interaction" with Merial executives and individuals who are involved in competitive decisionmaking makes her more likely to disclose confidential information. Intervet Opp'n at 10. Even if this characterization of Dr. Jarecki-Black's role at Merial were true, which it is not, this argument was explicitly rejected in *Matsushita Electric Industrial Co. v. United States*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) (stating that the proper standard by which one may be excluded from access to documents is "not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking'."). Quite simply, Dr. Jarecki-Black does not participate in, nor does she advise others regarding, any of the activities which the leading cases define as "competitive decisionmaking." As a result, she should not be denied access to any materials in this case.

### b. Licensing Patents or Technology and Settling Cases Do Not Constitute Competitive Decisionmaking.

Intervet attempts to categorize Dr. Jarecki-Black as a competitive decisionmaker based on her involvement in licensing patents or technology and settling litigation. While it is true that Dr. Jarecki-Black works on legal issues relating to the licensing of patents or technology and provides legal advice relating to the settlement of legal disputes, Intervet misstates the holdings of the cases that it cites and ignores authority which rejects the inclusion of settling cases and licensing patents or technology under the umbrella of "competitive decisionmaking."

### i. Settling Cases Does Not Constitute Competitive Decisionmaking.

Although Dr. Jarecki-Black as in-house counsel for Merial may provide legal advice regarding settlement, contrary to Intervet's assertions, she lacks authority to settle legal disputes. Merial's Management Leadership Team has the sole authority to settle legal disputes. Dr. Jarecki-Black is not a member of that team. Even assuming that Dr. Jarecki-Black did have authority to settle cases, that authority does not meet the competitive decisionmaking prong to justify excluding her from confidential discovery materials.

Intervet only cites *Carpenter Technology Corp. v. Armco, Inc.,* 132 F.R.D. 24, 28-29 (E.D. Pa. 1990), to support its contention that authority to settle a case suggests that one is a competitive decisionmaker. *Carpenter* stands for no such proposition. Rather, the Court in *Carpenter* allowed one in-house attorney to have access to discovery materials, but denied access to another. *Id.* at 28-29. The court granted one attorney access because he stated in an affidavit that he had no involvement in decisions regarding product pricing, design, or marketing. *Id.* at 27-28. The Court denied access to the second attorney who only stated in an affidavit that he had no "direct" role in these same activities. *Id.* at 28. The Court was clear that this difference was the distinction on which it based its decision to grant one attorney access while denying access to the other. *Id.* at 28-29. In denying access to the attorney with settlement authority, the court observed that the attorney who lacked settlement authority could provide information and advise those who did have settlement authority. *Id.* Here, Dr. Jarecki-Black will be in the same position as the attorney who was granted access in *Carpenter.* That is to say, she will advise individuals who possess the authority to settle litigation. Thus, the only case that Intervet cites to support its position that "authority to settle cases suggests that the person is a competitive

LEGAL02/30071047v2

7

decision maker" (Intervet Opp'n at 6) in fact suggests that Dr. Jarecki-Black should be allowed access to all materials in this case.

Further, the "suggestion" that settlement authority makes one a competitive decisionmaker was explicitly rejected in *Trading Technologies International, Inc. v. eSpeed, Inc*. There, the district court rejected:

> the notion advanced by some that licensing and settlement negotiations are necessarily part of competitive decision-making, leading to the exclusion of participating attorneys from access to information. The settlement of patent cases, usually by licensing, is part of litigation.

No. 04 C 5312, 2006 WL 1994541, at *2 (N.D. Ill. July 13, 2006).

### ii. Licensing Does Not Constitute Competitive Decisionmaking.

Although the Court in *Intel Corp. v. VIA Technologies., Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000), appears to have considered licensing as a factor in its determination that counsel was engaged in "competitive decisionmaking," the great weight of authority explicitly or implicitly rejects that notion. As stated above, *Trading Technologies* found that licensing is simply a "part of litigation," and should not to be considered competitive decisionmaking. 2006 WL 1994541, at *2. This view comports with the majority of cases on this subject. For instance, *U.S. Steel* and the majority of cases that have addressed this issue do not consider "licensing" as competitive decisionmaking.[2] The Federal Circuit has also rejected classifying duties generally associated with in-house counsel positions as the type of "competitive decisionmaking" that might disqualify in-house counsel from accessing confidential discovery materials. *See*

---

[2] *See, e.g., U.S. Steel*, 730 F.2d at 1468 n.3; *Matsushita Elec. Indus. Co.*, 929 F.2d at 1579-80; *Carpenter Tech. Corp.*, 132 F.R.D. 24; *In re Sibia Neurosciences, Inc.*, No. 525, 1997 WL 688174 (Fed. Cir. Oct. 22, 1997)(unpublished); *Glaxo, Inc.*, 796 F. Supp. at 874; *A. Hirsch, Inc. v. United States*, 657 F. Supp. 1297 (Ct. Int'l Trade 1987); *In re Papst Licensing,* 2000 WL 554219; *Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 U.S. Dist. LEXIS 20714, (D. Del. Dec. 19, 1994).

LEGAL02/30071047v2

*Matsushita,* 929 F.2d at 1580 (rejecting as "competitive decisionmaking" a "criterion which would disqualify almost *all* in-house counsel and thus effectively constitute the very per se rule we rejected in *U.S. Steel*").

### C. Dr. Jarecki-Black Is Necessary to Merial's Case Preparation.

Dr. Jarecki-Black is the attorney on the case who is most intimately familiar with Merial's PCV-2 product, and Merial will be prejudiced if they have to prepare their case without her full knowledge and participation. In cases involving technical subject matter and in which in-house counsel has "specialized knowledge…necessary to supervise the litigation," the need for such counsel to have access to discovery materials outweighs the risk of inadvertent disclosure. *Intel,* 198 F.R.D. at 528; *see also Carpenter Techs.*, 132 F.R.D. at 28 ("[g]iven the technical nature of this case, the advice of in-house counsel with specialized knowledge of the steel industry could be essential to the proper handling of this litigation by outside counsel").

Given the safeguards—which Intervet ignores—that Merial has included in its version of the Protective Order to ensure that the risk of inadvertent disclosure of information is virtually eliminated, *See* Exhibit A, ¶ 9, and given Dr. Jarecki-Black's familiarity with the technology and deep understanding of the issues in this case, Merial will be prejudiced without her aid in handling this litigation. *See Sungard Data Sys., Inc.*, 173 F. Supp. 2d at 21 ("[t]o deny outside counsel access to the lawyers most familiar with their clients' business and the industry in which they compete and who will have a much deeper and complete understanding of the documents being produced and of the expert testimony to be derived from it is to make [the parties] fight with one hand behind their backs.").

Additionally, in recent years Merial has had Mr. Kowalski play an active role in all patent litigation matters in which any Merial company is a party, including being an attorney of record in U.S. patent litigation matters. Merial considers it imperative that he participate in these matters, including having full access to all documents that Intervet provides.[3]

Furthermore, Mr. Kowalski has been practicing in the patent field with respect to PCV-2 since the discovery of its role as a causative agent of post-weaning multisystemic wasting syndrome. Moreover, in all litigated matters in which Mr. Kowalski has been involved, no court or opposing party has placed restrictions on his access to produced documents. Thus, if the Court denies Mr. Kowalski access to Intervet's documents, Merial will suffer because Mr. Kowalski will be unable to provide well-grounded, experience-based advice to Merial. This harm to Merial outweighs Intervet's concerns, especially given the fact that counsel, including Mr. Kowalski, will refrain from prosecuting patents related to PCV-2 viruses or vaccines during this litigation and one year after.

**D. Intervet Proposes an Overly Broad Protective Order.**

Intervet proposes an extremely broad and amorphous definition for Highly Confidential materials. Intervet Opp'n, Exhibit A at ¶ 1(b) (allowing "any material that contains trade secrets or other highly confidential research, development, commercial, or proprietary information that the producing party or nonparty believes in good faith to be so commercially sensitive or highly confidential that disclosure would have the effect of causing harm to the competitive commercial position of the designating entity" to be marked Highly Confidential-Attorneys' Eyes Only). Under Intervet's proposed definition, Intervet has the ability to designate any material it chooses

---

[3] Mr. Kowalski, however, is not a competitive decisionmaker for Merial. He does not interface with any competitive decisionmaker within or to Merial. He only interfaces with Dr. Jarecki-Black and those working for

LEGAL02/30071047v2

10

as Highly Confidential.  In contrast, Merial articulates specific categories of information that may be designated as Attorneys' Eyes Only.  Merial's definition identifies materials comprising current and future sensitive business information and research data.  Merial's Exhibit A at ¶ 1(b). The chart below summarizes the party's definitions:

| Term | Intervet's Proposed Definition | Merial's Proposed Definition |
| --- | --- | --- |
| Confidential | Material that contains trade secrets or other confidential research, development, commercial, or proprietary information. | Material that contains trade secrets or other confidential research, development, commercial, or proprietary information |
| Highly Confidential -Attorneys' Eyes Only [Intervet Definition] or Attorneys' Eyes Only [Merial Definition] | Material that contains trade secrets or other confidential research, development, commercial, or proprietary information so commercially sensitive or highly confidential that disclosure would have the effect of causing harm to the competitive commercial position of the designating entity or a third party. | Material that contains commercially sensitive, confidential or proprietary information regarding: (i) USDA Outline of Production; (ii)  scientific research or technical data, (iii) individual sales prices to specific customers (as distinguished from general price listings), (iv) customer lists or contact information (v) sales by customer, (vi) methods and costs of production, (vii) strategic business plans (including financial and market analyses, forecasts and budgets), (viii) non-commercialized product composition, or (iv) profit information which disclosure to persons other than those authorized under paragraph 7 would have the effect of causing harm to the competitive commercial position of the designating entity or a third party, |

In sum, Merial's version of the Protective Order reduces the chance that documents will be improperly designated and lessens the potential prejudice to the receiving party.

---

her.

LEGAL02/30071047v2

### III. CONCLUSION

For the reasons and on the authorities set forth herein and in their first brief, Merial's Motion should be granted and its version of the Protective Order, attached hereto as Exhibit A, entered.

Respectfully submitted, this 8th day of September, 2006.

/s/ Tim Ngau
ALSTON & BIRD, LLP
Timothy Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC 20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA 30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Merial Limited, Merial SAS, The Queen's University of Belfast, and The University of Saskatchewan*