UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

INTERVET INC.,

*Plaintiff,*

v.

MERIAL LIMITED, MERIAL SAS,
THE QUEEN'S UNIVERSITY OF
BELFAST, and UNIVERSITY OF
SASKATCHEWAN,

*Defendants.*

Civil Action No. 1:06-cv-00658 (HHK)

**PLAINTIFF INTERVET'S SURREPLY TO
DEFENDANTS' MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Plaintiff Intervet Inc. ("Intervet") submits this surreply brief in opposition to Defendants' reply in Support of Their Motion for Entry of a Protective Order because the reply proposes a newly revised protective order that had not previously been presented to, or discussed with, Intervet or the Court. Intervet thus files this surreply brief to respond to this newly revised protective order and the arguments that Defendants make in support of it.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..........................................................................................................................1

ARGUMENT .................................................................................................................................2

    A. Merial Has Yet To Provide a Sufficient Reason To Disclose Highly Confidential Information That Outweighs the Risk of Inadvertent Injury to Intervet .......................2

    B. Intervet's Proposed Protective Order Is Not Overly Broad ............................................4

    C. Dr. Jarecki-Black's Role at Merial—Independent of Her Patent Prosecution—Should Preclude Her from Access to Intervet's Highly Confidential Material .........................5

    D. Merial's Revised Proposed Protective Order Does Not Address Intervet's Concerns Regarding Risk of Inadvertent Disclosure by Attorneys Involved in the Prosecution of Merial's Patents ..........................................................................................................6

        1. Exclusion Only from Personal Involvement in Preparing and Prosecuting Patents Is Not Sufficient to Protect Intervet from Potential Injury ...........................................6

        2. Exclusion Only from Prosecuting PCV-2 Patent Applications Is Not Sufficient to Protect Intervet from Potential Injury Because the Potential Advantage To Be Gained by Merial Is Far More Broad Than an Advantage in Generating a PCV-2 Product ......................................................................................7

        3. Exclusion Only for "One Year" Is Not Sufficient to Protect Intervet from Potential Injury ...............................................................................................................................9

CONCLUSION ............................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Andrx Pharms., LLC v. GlaxoSmithKline, PLC*, No. 05-23264,
  2006 U.S. Dist. LEXIS 50089 (S.D. Fla. July 7, 2006)..................................................6, 8, 9

*Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992) .....................................2

*Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24 (E.D. Pa. 1990) ...........................................3

*Commissariat a L'Energie Atornique v. Dell Computer Corp.*, No. 03-484-KAJ,
  2004 U.S. Dist. LEXIS 12782 (D. Del. May 25, 2004) ............................................................6, 8

*Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525 (N.D. Cal. 2000) ............................................. 2-6

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 1994541,
  (N.D. Ill. July 13, 2006)................................................................................................................6

*United States v. Sungard Data Sys., Inc.* 173 F. Supp. 2d 20 (D.D.C. 2001) ..............................3, 4

*U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) ............................................5, 6

## INTRODUCTION

Intervet and Merial are two of the world's largest animal health companies. To date, Intervet is still the only party to this litigation with a viable PCV-2 vaccine on the United States market. Merial, however, has made it clear that when and if it overcomes various obstacles, it plans to enter the United States market with its own PCV-2 vaccine that, according to Merial, will compete directly with Intervet's accused vaccine. (*See* D.I. 39, Jean Decl. Exh. 1 at 92:8-16, 99:13-100:3.) Defendants have also made it clear that they want access to Intervet's most highly confidential information related to Intervet's costs, pricing, technical development, and even possible patenting of its PCV-2 vaccines. (D.I. 39 at 2.)

Now, after the submission of Intervet's opposition brief (D.I. 39), Merial has moved for entry of a revised protective order ("Merial's Revised Proposed Protective Order") (D.I. 42 at Exhibit A) that it has recently introduced in its reply brief (without satisfying its obligation to meet and confer with Intervet). Intervet, however, remains opposed to Merial's Revised Proposed Protective Order because it still allows in-house patent counsel, Dr. Jarecki-Black, and outside patent prosecution counsel, such as Mr. Kowalski, access to *all* documents produced by Intervet in this action, including the most highly confidential technical and commercial information. Further, Merial still cannot provide any legitimate reason for the necessity of this wholesale disclosure. (*See, generally,* D.I. 42.)

The main change in Merial's position is that Merial now wants Dr. Jarecki-Black and Mr. Kowalski to see all Intervet materials, yet states that they will agree "not [to] be personally involved in the preparation or prosecution of any patent application related to PCV-2 viruses or vaccines during the litigation and for one year after its resolution, including any appeal." (D.I. 42 at Exhibit A, p. 6.) Merial would have this Court believe that Merial's Revised Proposed Protective Order renders Intervet's concerns moot. (D.I. 42.) This, however, is not the case. As

1

explained below, Dr. Jarecki-Black should be precluded from access to Intervet's most confidential materials for several reasons, only some of which relate to her involvement in and supervision of patent prosecution. Moreover, the provision Merial has belatedly added to its protective order provides little to no actual protection. It still would allow Dr. Jarecki-Black to prosecute patent applications related to animal vaccines and viruses generally, and also to supervise and discuss all of Merial's patent prosecution, including prosecution on porcine and PCV-2 vaccines and viruses specifically. Just as troubling, Merial's newly proposed protective order would permit its in-house counsel access to Intervet's highly confidential business, financial and marketing information. For these reasons and for the additional reasons set forth below, Merial's Revised Proposed Protective Order does not address Intervet's concerns regarding the risk of prejudice to Intervet if its highly confidential information is disclosed to Dr. Jarecki-Black and Mr. Kowalski. The Court should enter Intervet's proposed protective order (D.I. 39 at Exhibit A).

## ARGUMENT

### A. Merial Has Yet To Provide a Sufficient Reason To Disclose Highly Confidential Information That Outweighs the Risk of Inadvertent Injury to Intervet

As the party seeking the disclosure of confidential information, Defendants bear the burden of establishing a sufficient need to show Dr. Jarecki-Black, and other similarly situated patent attorneys, Intervet's highly confidential information. *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000); *see also Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1470 (9th Cir. 1992). Defendants have not met their burden.

After having first argued that Dr. Jarecki-Black needed access to Intervet's highly confidential technical and financial information because she acts as an interface for all outside counsel and "generally manages all of Merial's patent litigations" (D.I. 34-1 at 6), Merial now

2

appears to have abandoned this argument and argues that Dr. Jarecki-Black requires access to highly confidential information because it is necessary to Merial's case preparation since this case involves technical subject matter that would require her specialized knowledge. (D.I. 42 at 9-10.) Considering the actual facts of this case, however, neither Merial's first reason nor the newly asserted reason in its reply brief, warrant providing Dr. Jarecki-Black access to Intervet's highly confidential information under any protective order. (*See* D.I. 39 at 11-12.)

Merial seeks to rely on *Intel's* citation of the *Carpenter* case and the *Sungard* case as support for its new rational as to why it is necessary for Dr. Jarecki-Black to have access to Intervet's highly confidential materials. (D.I. 42 at 9-10.) *See also Intel*, 198 F.R.D. at 528; *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 28 (E.D. Pa. 1990); *United States v. Sungard Data Sys., Inc.* 173 F. Supp. 2d 20 (D.D.C. 2001). However, in *Carpenter*, the court explicitly noted that one of the reasons why in-house counsel would be allowed access to confidential information was because "he has no involvement with scientific research." *Carpenter*, 132 F.R.D. at 27-28. Thus, Dr. Jarecki-Black's involvement with Merial as a scientist, a named inventor on some of Merial's patents, as well as its global head of patents distinguishes the facts of *Carpenter* from the facts in this case.[1]

In the *Sungard* case, the Court held that it would allow in-house counsel with specialized knowledge access to highly confidential information only because discovery would end in a few days and the hearing was a mere 16 days away. *Sungard*, 173 F. Supp. 2d at 21, 24 ("Had the hearing schedule been more forgiving, I might have been more willing to burden outside counsel with having to prepare their case without in-house counsel's help on the confidential documents.

---

[1] *See, e.g.*, U.S. Patent No. 6,368,603 (issued Apr. 9, 2002) (naming Dr. Jarecki-Black as the sole inventor, naming Merial Limited as the assignee, and naming Mr. Kowalski as the prosecuting patent attorney).

3

I cannot do that now without seriously jeopardizing defendants' right to a fair trial.").[2] Here, however, fact discovery has just begun and is not scheduled to close until August 24, 2007; and expert discovery is not scheduled to conclude until December 14, 2007. (D.I. 35.) Unlike in *Sungard*, ample time remains for Merial's numerous outside counsel and technical experts to become familiar with the issues, and adequately prepare the case for a fair trial sometime in 2008.[3] See *Intel*, 198 F.R.D. at 529. Cf. *Sungard*, 173 F. Supp. 2d at 21, 24. Simply put, Merial has over a year before expert discovery ends in this case and a fleet of experienced outside counsel representing Defendants (along with any outside experts they hire) who are more than capable of handling this litigation and advising Merial. (*See also* D.I. 39 at 11.)

### B.  Intervet's Proposed Protective Order Is Not Overly Broad

Merial's assertion that Intervet's proposed protective order prejudices the receiving party because it is overly broad is utterly absurd. (D.I. 42 at 10-11.) To begin with, it is a rather routine two-tier protective order utilized in a vast number of patent lawsuits. Moreover, under Intervet's proposed order, Dr. Jarecki-Black would still have access to material designated by Intervet as "Confidential" under the protective order. Thus, it is not as if Intervet is blocking Dr.

---

[2]  As a testament to the very material concerns involved in disclosing confidential information to adverse parties, the *Sungard* Court held a hearing and heard testimony under oath before deciding to allow in-house counsel access to confidential information. Furthermore, the Court also provided for very severe punishment if the use of confidential information, including inadvertent use of such information, was used for any purpose other than in the lawsuit at bar. *Sungard*, 173 F. Supp. 2d at 21-22, 24 (*i.e.*, a $250,000 fine would have to be paid by the violating attorney without any reimbursement by their employers and the Court would report the behavior to the appropriate authorities recommending either suspension or disbarment.).

[3]  Moreover, in the *Sungard* case, the specialized technology at issue was state of the art computer technology and the outside counsel were antitrust attorneys. *Sungard*, 173 F. Supp. 2d at 21, 24 ("I have to suppose the computer technology driving their competition is state of the art. While antitrust lawyers must be quick studies and absorb information quickly, it is asking too much for them to do it alone in this case in which discovery will end in a few days and when the hearing is a mere 16 days away."). In the present case, Merial has hired patent litigation counsel that have expertise in the relevant technical area. And to the extent Merial's chosen outside counsel are not appropriately suited to litigate patent issues concerning technology of this type (which they clearly are), there are numerous outside technical experts that could be hired to provide the necessary technical support.

4

Jarecki-Black from seeing all non-public documents produced by Intervet. Rather, Intervet is preventing her from access only to Intervet's most sensitive materials, *i.e.*, those designated "Highly Confidential – Attorneys' Eyes Only." Finally, under Intervet's proposed protective order, to the extent that any party wishes to obtain access to specific highly confidential information, that party can challenge the designation of materials that it believes has been incorrectly designated if the parties cannot agree to a limited disclosure. (*See* D.I. 39 at Exhibit A.). A case-by-case determination of whether access should be given to Dr. Jarecki-Black (and Mr. Kowalski) for any such highly confidential materials would be a safer and more appropriate way to protect both parties.

### C. Dr. Jarecki-Black's Role at Merial—Independent of Her Patent Prosecution—Should Preclude Her from Access to Intervet's Highly Confidential Material

Dr. Jarecki-Black's role in licensing and settlement decisions and her constant contact with members of Merial's Leadership Team and Merial's scientists and inventors (including herself) should preclude her from having access to Intervet's most sensitive materials. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467-69 (Fed. Cir. 1984); *Intel*, 198 F.R.D. at 529-30. Defendants are simply incorrect when they assert that Dr. Jarecki-Black is not a "competitive decision maker" at Merial. (D.I. 39 at 5-6, 10; D.I. 42 at 4-9). Defendants even admit that *Intel* considered in-house counsel's licensing activities as a determining factor in deciding that she was indeed a competitive decision maker and in denying her access to confidential information. (D.I. 42 at 8.) Moreover, as Merial's global head of intellectual property, her constant contact

with executives and scientists at Merial pose even a greater risk of inadvertent disclosure. *Intel*, 198 F.R.D. at 530 (citing *U.S. Steel*, 730 F.2d at 1467).[4]

### D. Merial's Revised Proposed Protective Order Does Not Address Intervet's Concerns Regarding Risk of Inadvertent Disclosure by Attorneys Involved in the Prosecution of Merial's Patents

As explained below, Merial's Revised Proposed Protective Order provides little or no real protection to Intervet against the accidental and harmful disclosure of Intervet's highly confidential technical, financial and business information. Accordingly, this Court should follow the lead of the other courts that have simply precluded prosecuting attorneys such as Dr. Jarecki-Black and Mr. Kowalski from access to an opponents highly confidential material. *See, e.g., Andrx Pharms., LLC v. GlaxoSmithKline, PLC*, No. 05-23264, 2006 U.S. Dist. LEXIS 50089, at *13 (S.D. Fla. July 7, 2006).

#### 1. Exclusion Only from Personal Involvement in Preparing and Prosecuting Patents Is Not Sufficient to Protect Intervet from Potential Injury

In the *Commissariat* case relied on by Defendants, the attorneys were allowed access to confidential information so long as ***they did not participate in, direct, supervise or assist in any patent prosecution activity*** involving the entire field of liquid crystal display ("LCD") technology. *Commissariat a L'Energie Atornique v. Dell Computer Corp.*, No. 03-484-KAJ, 2004 U.S. Dist. LEXIS 12782, at *11 (D. Del. May 25, 2004). On the other hand, Merial's Revised Proposed Protective Order does not explicitly prevent Dr. Jarecki-Black, Mr. Kowalski

---

[4] The only new case that Defendants assert for their argument on this issue is *Trading Technologies International, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 1994541, at *2 (N.D. Ill. July 13, 2006). *Trading Technologies*, however, does not address the high risk of inadvertent disclosure, potential competitive advantage to Merial, and/or potential injury to Intervet that Dr. Jarecki-Black's involvement with licensing decisions may have on transactions with entities that are not parties to this litigation.

and any other attorney allowed access to Intervet's highly confidential information from assisting, directing or supervising the prosecution of patents. Merial's Revised Proposed Protective Order provides only that certain persons agree "not [to] be *personally involved in the preparation or prosecution* of any patent application related to PCV-2 viruses or vaccines during the litigation and for one year after its resolution, including any appeal." (D.I. 42 at Exhibit A (emphasis added).) Personal involvement in the preparation or prosecution of any patent application does not necessarily address supervising, directing or assisting in patent prosecution activities. Thus, Intervet's concerns have not been addressed by Merial's Revised Proposed Protective Order. Further, Dr. Jarecki-Black's role as the person directly and ultimately responsible for Merial's patent portfolio would seemingly prevent her from undertaking an obligation to have absolutely no role in patent prosecution matters, and still perform her job.

2. **Exclusion Only from Prosecuting PCV-2 Patent Applications Is Not Sufficient to Protect Intervet from Potential Injury Because the Potential Advantage To Be Gained by Merial Is Far More Broad Than an Advantage in Generating a PCV-2 Product**

Merial's Revised Proposed Protective Order provides only that certain persons agree "not to be personally involved in the preparation or prosecution of any patent application *related to PCV-2 viruses or vaccines* during the litigation and for one year after its resolution, including any appeal." (D.I. 42 at Exhibit A (emphasis added).) This restriction is so narrow in subject matter as to provide almost no protection for highly confidential technical information, and no protection at all for financial and business information.[5]

---

[5] This is especially true considering the extensive scope of the information that Defendants have requested from Intervet. (*See, e.g.*, D.I. 39, Jean Decl. Exh. 2, ¶¶ 18, 81 ("All documents and things referring to any of the Defendants in relation to any of the subject matter of this lawsuit, including, but not limited to, any Porcine Circovirus, the swine market, any Porcine Circovirus Vaccine, post-weaning multisystemic wasting syndrome or PMWS, and/or the '601 patent" and "All business plans, strategic-planning documents, and organizational reviews

7

In the *Commissariat* case relied on by Merial, the Court held that attorneys granted access to highly confidential information would "be barred from prosecuting patents 'relating to the broad subject matter of the patents in suit.'" *Commissariat*, 2004 U.S. Dist. LEXIS 12782, at *10-*11 ("I will not pick and choose which categories of LCD technology are fair game for CEA's patent prosecution attorneys and those which are not. If CEA's patent prosecution attorneys have access to the Defendant's highly confidential information, they will be barred from prosecuting patents 'relating to the broad subject matter of the patents in suit,' that is, LCD technology...").[6] The animal virus and vaccine field encompasses more than just the porcine circovirus type 2 virus and vaccine. Dr. Jarecki-Black and Mr. Kowalski intend to continue to prosecute patents in the field of animal vaccines and viruses. Thus, disclosure of Intervet's highly confidential technical and commercial information to persons such as Dr. Jarecki-Black and Mr. Kowalski could potentially prejudice Intervet with respect to other animal viruses and vaccines.[7] Such risk is exacerbated here by the size of the parties involved, their relationship as direct competitors, and the fact that Merial is currently developing a number of animal vaccines that could potentially compete with any one of Intervet's products. Accordingly, Merial's Revised Proposed Protective Order is insufficient at least because it does not address patent

---

for any business entity or business unit involved with any swine vaccine, including Intervet's PCV-2 vaccine." ).) For additional examples, *see* D.I. 39, Jean Decl. Exh. 2, ¶¶ 28, 48, 66, 73-75, and 77-78.

[6] *See also Andrx*, 2006 U.S. Dist. LEXIS 50089 at *12-*13 (holding that even though Andrx had offered that Mr. Endres would refrain from participating in the prosecution of patents relating to the delayed/sustained-release drug buproprion, Mr. Endres would be precluded from access to confidential material because Andrx had not offered that Mr. Endres would refrain from the prosecution of patents for Andrx and other clients in the broader technology fields of "delayed/sustained-release technology or blood plasma drug levels and testing").

[7] Indeed, it is telling that Dr. Jarecki-Black and Mr. Kowalski are fighting so strenuously to be able to continue to prosecute patents in the field of animal vaccines and viruses while simultaneously perusing Intervet's most secret technical and business information.

prosecution of other animal vaccines and viruses, and should be rejected. *Andrx,* 2006 U.S. Dist. LEXIS 50089 at *12-*13.

### 3. Exclusion Only for "One Year" Is Not Sufficient to Protect Intervet from Potential Injury

The risk of potential harm and prejudice to Intervet is great if Merial's Revised Proposed Protective Order is adopted for the additional reason that the one year period (following the litigation) it proscribes is insufficient to protect Intervet from the potential injury that it may face if one of its biggest competitors is allowed access to its highly confidential information. For instance, the patent-in-suit (U.S. Patent No. 6,368,601 (the "'601 patent")) was filed as U.S. Application No. 09/082,558 (the "'558 application") on May 21, 1998 and issued almost three years later in April 9, 2002. However, the issuance of the '558 patent application into a patent did not conclude the patent prosecution activity for this application. In fact, numerous continuation patent applications have been filed claiming benefit to the original '558 application, and prosecution activity has gone on for more than eight years and is still continuing.[8] Under Merial's Revised Proposed Protective Order there is nothing preventing Dr. Jarecki-Black or Mr. Kowalski from viewing Intervet's highly confidential information, and then one short year after any resolution (including settlement) of this matter, returning to the prosecution of the very animal virus and vaccine prosecution files they were banned from under Merial's Revised Proposed Protective Order. A one year abstention from patent prosecution is simply insufficient to protect Intervet's interests considering the amount of time that prosecution activity can go on for this type of technology.

---

[8] Currently, the USPTO lists seven pending patent applications claiming the benefit of the '558 application including U.S. Application Nos. 10/624,049 (filed July 21, 2003); 10/653,849 (filed Sept. 2, 2003); 10/780,318 (filed Feb. 17, 2004); 11/107,219 (filed Apr. 15, 2005); 11/217,562 (filed Sept. 1, 2005); 11/485,240 (filed July 12, 2006); 11/485,525 (filed on or after July 12, 2006).

## CONCLUSION

For the aforementioned reasons, the Court should deny Defendants' Motion for Entry of a Protective Order that would allow in-house patent prosecution counsel, including Dr. Judy Jarecki-Black, and outside patent prosecution counsel, including Mr. Kowalski, access to all highly confidential documents. Intervet respectfully requests that the Court enter the two-tier protective order attached to Intervet's opposition brief as Exhibit A. (D.I. 39.)

Dated: September 18, 2006                                    Respectfully Submitted,

/s/ John R. Hutchins
John R. Hutchins (D.C. Bar # 456749)
William G. James, II
Cedric C. Y. Tan (D.C. Bar # 464848)
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, DC. 20005
(202) 220-4200 (telephone)
(202) 220-4201 (facsimile)

Richard L. DeLucia
Michael D. Loughnane
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200 (telephone)
(212) 425-5288 (facsimile)

*Attorneys for Plaintiff*
*Intervet Inc.*