UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN,<br><br>    Defendants. | Civil Action No. 1:06-cv-00658 (HHK) |

**DEFENDANTS' BRIEF IN RESPONSE TO INTERVET'S SURREPLY
IN SUPPORT OF DEFENDANTS' REVISED PROTECTIVE ORDER**

**I.     Introduction**

The Court should enter Defendants' (collectively "Merial's") revised protective order because—unlike Intervet's proposal—Merial's revised protective order properly balances a party's need to safeguard confidential materials and a party's need for fair representation by counsel of choice in this litigation. Merial's revised protective order proposes (1) clearly defined and well-tailored categories of Confidential and Attorneys' Eyes Only materials, and (2) appropriate limitations upon those who review Attorneys' Eyes Only materials.

In contrast, Intervet's protective order proposes (1) unnecessary restrictions to Highly Confidential materials, (2) irrational and discriminatory restrictions to Confidential materials, and (3) ambiguous and malleable Confidential and Highly Confidential tier definitions.

**II.    The Court Should Enter Merial's Proposed Protective Order
Because It Provides Suitable Protection for Intervet's
Proprietary Information Without Unduly Handicapping Merial**

Merial and Intervet have reached an impasse concerning the terms of a suitable protective order. Despite Merial's revised protective order, Intervet continues to assert that it will be harmed if Dr. Jarecki-Black and outside patent counsel, Mr. Kowalski, have access to Intervet's

Highly Confidential materials. Intervet's assertion lacks merit. Intervet will suffer no harm because Merial's revised protective order contains a prosecution prohibition clause regarding all those who view Attorneys' Eyes Only materials. Specifically, both Dr. Jarecki-Black and Mr. Kowalski must refrain from prosecution activities concerning PCV-2 viruses and vaccines during this litigation and for one year thereafter.

Additionally, neither Dr. Jarecki-Black nor Mr. Kowalski is a competitive decisionmaker. Instead, both are integral players on Merial's litigation team. They offer unique assistance and insight from their experience with Merial's discovery of PCV-2 viruses and vaccines.

Intervet's surreply identifies three main issues with Merial's protective order. Intervet argues that Merial's proposed protective order (1) allows supervision of and assistance with PCV-2 patent prosecutions by Dr. Jarecki-Black and Mr. Kowalski, (2) permits patent prosecution of other animal vaccines by Dr. Jarecki-Black and Mr. Kowalski, and (3) lacks an adequate time period after this litigation's end to refrain from prosecution. Merial's discussion of these issues below demonstrates that they each lack merit.

### A. Merial's Protective Order Fairly Restricts Patent Prosecution Activities

Intervet mischaracterizes the scope of Merial's proposed protective order. In particular, Intervet wrongly asserts that Merial's protective order allows a person who sees Attorneys' Eyes Only materials to participate, direct, supervise, or assist with the prosecution of PCV-2 related patents. Intervet's Surreply at 6-7.

Merial's revised protective order, however, states that people with access to Attorneys' Eyes Only materials will "not be personally **involved in** the preparation or prosecution of any patent application related to PCV-2 viruses or vaccines during the litigation and for one year after its resolution, including any appeal." Merial's Prot. Order at 6 (emphasis added). The term

"involved" encompasses participating, supervising, directing, or assisting with the prosecution of any patent related to PCV-2 viruses or vaccines. A proper reading of Merial's proposed protective order renders Intervet's assertion moot.

**B.   Merial's Protective Order Fairly Delimits the
Subject Matter of the Prosecution Prohibition**

Intervet also contends that the prosecution prohibition phrase "related to PCV-2 viruses or vaccines" fails to provide adequate protection. Intervet Surreply at 7-8. Specifically, Intervet asserts that the phrase's subject matter is too narrowly drawn and ought to include other animal viruses and vaccines. Intervet Surreply at 8-9.

Case law instructs that the subject matter of the patent in suit delimits the breadth of any patent prosecution prohibition. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* No. 04 CV 5312, 2006 WL 1994541, at *2 (N.D. Ill, July 13, 2006) (confining patent prosecution prohibition to matters related to "graphical user interface for manual order entry"; declining defendant's request to extend patent prosecution prohibition to cover other analytic products). Because Intervet fails to appreciate the subject matter of the '601 patent, it argues for an overly broad restriction.

Merial's protective order properly states the '601 patent's subject matter and gives adequate prosecution prohibitions. The broad subject matter of the '601 patent concerns PCV-2 viruses and vaccines. The title of the '601 patent reads, "Porcine Circovirus Vaccine and Diagnostics Reagents." Ex. A, '601 Patent. The abstract describes the invention as relating to "new porcine circovirus strains...[and] purified preparations of these strains…." Ex. A, '601 Patent. Thus, the '601 patent clearly concerns PCV-2 viruses and vaccines, and not all animal viruses and vaccines.

Moreover, companies in the animal health field, and more particularly the animal vaccine field, routinely differentiate vaccines according to particular animal pathogens. Intervet itself organizes its vaccine products according to species-specific pathogens or diseases. Attached Exhibit C illustrates this point. Exhibit C includes two pages from Intervet's website pertaining to "Swine" and "Equine" showing that Intervet itself categorizes its products according to diseases, such as "Eastern & Western Encephalomyelitis" and "Equine Influenza" for horses versus "Bordetella bronchiseptica (swine)" and "Atrophic Rhinitis" for pigs.

Thus, Intervet incorrectly contends that Dr. Jarecki-Black or Mr. Kowlaski could use Intervet's Highly Confidential information concerning its **porcine** (pig) circovirus, type 2 (PCV-2) vaccine in Merial's patenting of other, unrelated vaccines, such as a vaccine against a **horse** pathogen, to Intervet's detriment. Intervet's contention not only lacks support, but rests on mere speculation and incorrect assumptions about the transferability of information concerning PCV-2 viruses and vaccines to other animal pathogens. Nowhere does Intervet tell the Court how its allegedly Highly Confidential information regarding its **pig** vaccine, against **porcine** circovirus, type 2, has **any** bearing on **any** other animal vaccine—or even any other pig vaccine.

The *Commissariat* decision, relied upon by Intervet, does not stand for the proposition that any patent prosecution prohibition in this case must include all animal vaccines. *See generally*, *Commissariat a L'Energie Atornique v. Dell Computer Corp.,* No. 03-484, 2004 WL 1196965, at *3 (D. Del. May 25, 2004). In *Commissariat*, the district court structured the protective order to restrict prosecution of patents to the subject matter of the patent in suit. *Id.* In contrast to Intervet's request, the subject matter of the '601 patent does not extend to all animal viruses and vaccines. Rather, the '601 patent pertains only to PCV-2 viruses and vaccines. Furthermore, the animal health field is not analogous to the LCD technologies in

– 4 –

*Commissariat*. The animal health field, as discussed and illustrated by Exhibit C, is divided according to animal species-particular pathogens or diseases. A species-particular vaccine is not widely applicable across multiple species or diseases in the way that LCD technologies in *Commissariat* encompassed various technologies. In particular, the porcine circovirus, type 2 technology of the '601 patent does not have, and has not been shown to have, **any** bearing on **any** other animal vaccine—or even any other pig vaccine.

Therefore, contrary to Intervet's contention, the patent prosecution prohibition in a protective order for this case should not extend beyond the subject matter of the '601 patent so as to encompass all animal vaccines. Instead, the patent prosecution prohibition should be tailored to the '601 patent's subject matter—PCV2 viruses and vaccines—as proposed by Merial. *See Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 CV 5312, 2006 WL 1994541, at *2 (N.D. Ill. July 13, 2006) (confining patent prosecution prohibition to prosecution related to "graphical user interface for manual order entry"; declining defendant's request to extend patent prosecution prohibition to cover other analytic products).

C.   <u>**Merial Proposes an Adequate One-Year Prosecution Prohibition**</u>

Intervet argues that Merial's one-year prosecution prohibition after this litigation's end fails to provide adequate assurance that Merial will not misuse information gleaned from Intervet's Attorneys' Eyes Only materials. Intervet Surreply at 9. Intervet cites no case law to support its position. And Intervet proffers no time period it would consider suitable.

In contrast, the case law cited by Merial supports a one-year prohibition on prosecution after this litigation's end. *See In re Papst Licensing, GmbH, Patent Lit.,* No. MDL 1298, 2000 WL 554219, at *5 (E.D. La. May 4, 2000); *Commissariat*, 2004 WL 1196965, at *3. Further, as asserted by Merial and confirmed by Intervet's own papers, the '601 patent portfolio is very

mature and open to public inspection. Accordingly, Merial proposes an appropriate time restriction.

### III. Mr. Kowalski Should Have Access to All of Intervet's Proprietary Information Because He Does Not Act as One of Merial's Competitive Decisionmakers and Will Not Prosecute Patent Applications Concerning This Lawsuit's Subject Matter

Intervet does not contend that Thomas Kowalski is one of Merial's competitive decisionmakers. Instead, it argues that he could misuse Intervet's proprietary information for patent-prosecution purposes. As explained above, however, Merial's proposed protective order provides suitable safeguards against such misuse.

Mr. Kowalski will be restricted from participating, directing, supervising, or assisting with the prosecution of patents relating to PCV-2 vaccines and viruses during this litigation and for one year thereafter. Moreover, Mr. Kowalski's professionalism is beyond reproach: He is admitted to practice before this Court *pro hac vice*, and is a member in good standing of the bar of the State of New York and several federal court bars, as well as registered to practice before the United States Patent and Trademark Office ("USPTO"). He appreciates his professional obligations to this Court and to the USPTO, and his obligations to the USPTO under 37 C.F.R. § 1.56 (the duty-of-candor requirement). Intervet's information will be not be misused by Mr. Kowalski.

Further, Mr. Kowalski is not simply Merial's outside patent prosecution counsel. He is Merial's outside counsel, handling both prosecution and litigation matters. Because of his extensive involvement with PCV-2 since its discovery, he has special expertise in the PCV-2 field. Under Merial's protective order, he is willing to forgo using that expertise in patent prosecution by foregoing participating, directing, supervising, or assisting with the prosecution of PCV-2 related patents. Instead, he will use his knowledge to assist Merial with this litigation.

Similarly, Merial is willing to forgo his assistance with prosecuting or supervising the prosecution of patents related to PCV-2. Thus, Merial recognizes that Mr. Kowalski can provide unique assistance with this case. In order to do that fully, Mr. Kowalski must have access to all of Intervet's materials.

IV.   **Dr. Jarecki-Black Should Have Access to All of Intervet's Proprietary Information Because She Does Not Act as One of Merial's Competitive Decisionmakers and Will Not Prosecute Patent Applications Concerning This Lawsuit's Subject Matter**

Dr. Jarecki-Black does not constitute a competitive decisionmaker within Merial. Additionally, she will refrain from participating, directing, supervising, or assisting with the prosecution of patents relating to PCV-2 viruses and vaccines during this litigation and for one year thereafter.

In its attempt to exclude Dr. Jarecki-Black from access to Attorneys' Eyes Only materials, Intervet mischaracterizes her as a research scientist. Intervet Surreply at 3. In doing so, Intervet erroneously endeavors to circumvent the authorities cited in Merial's reply. Merial cited *Carpenter Technology Corp. v. Armco, Inc.*, 132 F.R.D. 24 (E.D. Pa. 1990), in support of Dr. Jarecki-Black's access to Attorneys' Eyes Only materials. Merial Reply Br. at 5. Intervet argues that *Carpenter* can be distinguished because it allowed in-house counsel access to confidential material on the basis that counsel had "no involvement with scientific research." Intervet Surreply at 3. But Dr. Jarecki-Black is no longer involved with scientific research. Indeed Dr. Jarecki-Black has not been a scientist for more than a decade. Her role within Merial is exclusively that of an attorney.

Intervet cites a patent filed more than nine-and-a-half years ago in its attempt to characterize Dr. Jarecki-Black as a research scientist. Intervet Surreply at 3, n.1. The research she conducted concerning that patent occurred at least ten years ago. Just as in-house counsel in

– 7 –

*Carpenter* was not a research scientist, Dr. Jarecki-Black is not currently a research scientist; and again, has not been a research scientist for at least ten years.

Additionally, Dr. Jarecki-Black does not make or advise others regarding competitive or business decisions within Merial.  *See* Ex. B, Jarecki-Black Decl. at ¶ 6, Merial's Brf. 9/8/2006 at 4-9; Merial's 7/28/2006 Brf. at 5.  Specifically, Dr. Jarecki-Black is not a member of Merial's Management Leadership Team, nor does she participate in or advise on sales, product pricing, design, or development.  Ex. B, Jarecki-Black Decl. at ¶ 6.  Intervet cites no example where Dr. Jarecki-Black acts as a competitive decisionmaker, but instead, advances unsupported speculation about her role at Merial, while ignoring the facts stated in her declaration.

Furthermore, Dr. Jarecki-Black's professionalism is beyond reproach: She is admitted to practice before this Court *pro hac vice*, and is a member in good standing of the bars of the States of Georgia and South Carolina, and several federal court bars, as well as registered to practice before the USPTO.  She appreciates her professional obligations to this Court and to the USPTO, and her obligations to the USPTO under 37 C.F.R. § 1.56.  Intervet's information will be not be misused by Dr. Jarecki-Black.

V.  **In Analyzing the Protective-Order Issues, the Court Should Treat In-House Counsel the Same as Outside Counsel**

Under *U.S. Steel*, in-house and outside counsel should be treated the same in analyzing protective order issues.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).  Yet, Intervet proposes a protective order that ignores this basic principal.  Specifically, Intervet proposes a protective order that discriminates between Dr. Jarecki-Black and Mr. Kowalski by

allowing Dr. Jarecki-Black to access Confidential materials, but not Mr. Kowalski.[1] The table below summarizes the parties' positions:

| Person | Intervet's Protective Order | Merial's Modified Protective Order |
|---|---|---|
| Outside Counsel, namely Mr. Kowalski | No Restriction on Patent Prosecution; Denied Access to Confidential Materials; Denied Access to Highly Confidential Materials | One Year Ban on Related Patent Prosecution Post Litigation; Permitted Access to Confidential Materials; Permitted Access to Attorneys' Eyes Only Materials |
| Dr. Judy Jarecki-Black | No Restriction on Patent Prosecution; Permitted Access to Confidential Materials; Denied Access to Highly Confidential Materials | One Year Ban on Related Patent Prosecution Post Litigation; Permitted Access to Confidential Materials; Permitted Access to Attorneys' Eyes Only Materials |

Intervet gives no reason for denying access to Confidential materials to Mr. Kowalski while at the same time granting access to Dr. Jarecki-Black, who Intervet alleges is heavily involved in PCV-2 patent prosecution and competitive decision making. Intervet provides no distinction, nor cites any case law, explaining how Mr. Kowalski's role differs from that of Dr. Jarecki-Black such that Confidential materials can be disclosed to one and not the other. Intervet simply seeks to do all that it can to bar Mr. Kowalski from involvement with this litigation, ignoring any need for legal justification in the process. Intervet's distinction between Dr. Jarecki-Black and Mr. Kowalski serves to highlight further that Intervet's proposed protective order is neither usual nor rational, but instead conflicts with case law, such as *U.S. Steel*.

## VI.     Conclusion

The Court should adopt Merial's revised protective order. It signifies the only proposed protective order before the Court that addresses Intervet's concerns about information misuse

---

[1] *See* Intervet Surreply at 4-5 ("Moreover, under Intervet's proposed order, Dr. Jarecki-Black would still have access to materials designated by Intervet as "Confidential" under the protective order. Thus, it is not as if Intervet is

while also protecting Merial's right to the trial representation of its choosing, including Dr. Jarecki-Black and outside counsel Mr. Kowalski.

Respectfully submitted, this 22nd day of September, 2006.

/s/ *Timothy A. Ngau*
ALSTON & BIRD, LLP
Timothy Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC  20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

---

blocking Dr. Jarecki-Black from seeing all non-public documents produced by Intervet."); Intervet's Proposed Protective Order at Section 7 (Exhibit A to Intervet Opposition).

– 11 –

*Counsel for Merial Limited, Merial SAS, The Queen's University of Belfast, and The University of Saskatchewan*