# DECLARATION OF CEDRIC TAN

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC.<br><br>*Plaintiff,*<br><br>v.<br><br>MERIAL LIMITED; MERIAL SAS;<br>THE QUEEN'S UNIVERSITY OF<br>BELFAST; and<br>UNIVERSITY OF SASKATCHEWAN,<br><br>*Defendants.* | Civil Action No. 1:06-cv-00658 (HHK) |

**PLAINTIFF INTERVET'S FIRST REQUEST FOR THE PRODUCTION OF**
**DOCUMENTS AND THINGS TO DEFENDANTS**
**THE UNIVERSITY OF SASKATCHEWAN AND THE**
**QUEEN'S UNIVERSITY OF BELFAST**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Intervet

Inc. ("Intervet") hereby requests that the University of Saskatchewan and The Queen's

University of Belfast ("Universities") produce the documents and things that are set forth below

at the offices of Kenyon & Kenyon LLP, 1500 K Street, N.W., Suite 700, Washington, D.C.

20005-1257 within thirty (30) days after service of this request, or at such other time and place as

shall be agreed upon by the parties or determined by the Court.  All documents and things that

are within the Universities' possession, custody or control shall be produced in response to these

requests including those documents and things within the custody or control of any of the named

inventors of the patent-in-suit, United States Patent No. 6,368,601, that were or are affiliated

with the Universities.

These discovery requests are deemed to be continuing.  With respect to any of the

following document requests as to which the Universities, after responding, discover or acquire

additional responsive material, Intervet requests that the Universities produce such additional

material, in accordance with Rule 26(e) of the Federal Rules of Civil Procedure, no more than

thirty days (30) after the Universities discover or acquire such additional material.

## DEFINITIONS AND RULES OF CONSTRUCTION

1.      The term "'601 patent" shall mean United States Patent No. 6,368,601.

2.      The terms "all" and "each" shall be construed as all and each.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively

as necessary to give the broadest possible scope, bringing within the scope of the discovery

request all responses that might otherwise be construed to be outside its scope.

4.      The term "CIRCOVAC®" refers to any porcine circovirus vaccine type II product of

Merial for which marketing approval has been sought or which has been approved for marketing

in Europe, Canada and the United States.

5.      The term "communication" means the transmittal of information (in the form of facts,

ideas, inquiries or otherwise).

6.      The term "concerning" means relating to, referring to describing, evidencing, or

constituting.

7.      The term "Universities" shall mean The Queen's University of Belfast and/or the

University of Saskatchewan, including any predecessors, successors, partners, affiliates, joint-

ventures, subsidiaries, associates, officers, directors, employees, agents, or others acting on

behalf of any of the foregoing entities.

8.      The term "document" or "documents" is used herein in a comprehensive sense as set

forth in Rule 34(a) of the Federal Rules of Civil Procedure, and shall be defined to include,

2

without limitation, all tangible things, all written, printed, typed, photocopies, photographic, graphic or recorded matter of any kind, any recorded material however produced or reproduced, including agreements, books, calendars, charts, contracts, communications, computer databases, computer memory media, computer printouts, correspondence, desk pads, diaries, drafts, drawings, entries in books of account, electronic mail, facsimile transmissions, files, folders, graphs, guidelines, instructions, lists, manuals, memoranda, minutes, notes, operating procedures, pamphlets, reports, rules, studies, telegrams, teletypes, and all written or tangible things that can be derived from any computer database, microfilm, microfiche, or other storage medium. A draft or non-identical copy is a separate document within the meaning of this term.

9.     FR 97 12382. The term "FR 97 12382" shall mean French Patent Application FR 97 12382 filed on Oct. 3, 1997.

10.     FR 98 03707. The term "FR 98 03707" shall mean French Patent Application FR 98 03707 filed on March 20, 1998.

11.     FR 98 00873. The term "FR 98 00873" shall mean French Patent Application FR 98 00873 filed on January 22, 1998.

12.     GenBank submission of Jan. 1998. The term "GenBank submission of Jan. 1998" refers to GenBank Accession No. AJ223185 entitled "Detection of a novel strain of porcine circovirus in pigs with postweaning multisystemic wasting syndrome" submitted by Morozov *et al.* on January 2, 1998.

13.     GenBank submission of March 1998. The term "GenBank submission of March 1998" refers to GenBank Accession No. AF055391 entitled "Characterization of novel circovirus DNAs associated with wasting" submitted by Meehan *et al.* on March 26, 1998.

14.     GenBank submission of Sept. 1997.  The term "GenBank submission of Sept. 1997"

refers to GenBank Accession No. AF027217 entitled "Complete Nucleotide Sequence of Porcine

Circovirus Associated with Post Weaning Multisystemic Wasting Syndrome in Pigs" submitted

by Hamel *et al.* on September 26, 1997.

15.     When referring to a person, "identify" means to give, to the extent known, the person's

full name, present or last known address, and when referring to a natural person, additionally, the

present or last known place of employment.

16.     When referring to documents, "identify" means to give, to the extent known, the: (i) type

of document; (ii) general subject matter; (iii) date of the document; and (iv) the author(s),

addressee(s), and recipient(s).

17.     The term "including" means without limitation.

18.     The term "Merial" shall mean the defendants Merial Limited and Merial SAS

collectively, and any parent entities, predecessors, successors, subsidiaries, affiliates, partners,

joint-venture partners, associates, officers, directors, employees, agents, or others acting on

behalf of any of the foregoing entities.

19.     The phrase "*Merial Limited v. Intervet Inc.*" refers to the litigation entitled *Merial

Limited v. Intervet Inc.* Civil Action No. 1:05CV3168, previously pending in the United States

District Court for the Northern District of Georgia.

20.     Nayar *et al.* refers to the publication by Nayar *et al.* entitled "Detection and

Characterization of porcine circovirus associated with postweaning multisystemic wasting

syndrome in pigs," *Can. Vet. J.* 38:6 pp. 385-386 (1997).

21.    "Pending litigation" shall mean the lawsuit entitled Intervet, Inc. v. Merial Ltd., Merial

SAS, The Queen's University of Belfast and University of Saskatchewan, civil action number

1:06-cv-00658 in the United States District Court for the District of Columbia.

22.    "PMWS" means Post-Weaning Multisystemic Wasting Syndrome.

23.    The term "person" is defined as any natural person or any business, legal or

governmental entity or association.

24.    "Porcine circovirus" shall include PCV, PCV-1 (PCV-I) and PCV-2 (PCV-II).

25.    "Porcine circovirus product" shall include PCV-1 (PCV-I) and PCV-2 (PCV-II) vaccines,

including CIRCOVAC®, as well as any product including or generated using DNA sequences

derived or obtained from porcine circoviruses.

26.    "Porcine circovirus type II" shall be interchangeable with the terms "porcine circovirus

group II", "PCV-II" and "PCV-2", and shall be interpreted to mean the virus(es) alleged to cause

or be involved in causing PMWS.

27.    "Prior art" shall mean any patent, printed publication, knowledge, use, sale or offer of

sale, or other act or event disclosed and defined within 35 U.S.C. §102, taken singly or in

combination.

28.    "USPTO" shall mean the United States Patent and Trademark Office.

29.    "The Queen's University of Belfast" shall mean The Queen's University of Belfast and

any parent entities, predecessors, successors, subsidiaries, affiliates, partners, joint-venture

partners, associates, officers, directors, employees, agents, or others acting on behalf of any of

the foregoing entities.

30.    Something is "relating to" a subject if it makes a statement about, refers to, mentions,

discusses, describes, reflects, deals with, consists of, constitutes, comprises, concerns, evidences,

5

records, or in any way pertains to the subject, either in whole or in part, and either directly or indirectly.

31.    "University of Saskatchewan" shall mean the University of Saskatchewan and any parent entities, predecessors, successors, subsidiaries, affiliates, partners, joint-venture partners, associates, officers, directors, employees, agents, or others acting on behalf of any of the foregoing entities.

32.    "Universities" shall mean the University of Saskatchewan and/or The Queen's University of Belfast.

33.    "USDA" shall mean the United States Department of Agriculture.

34.    The terms "you" and "your" shall refer to the Universities as enumerated above.

35.    The use of the singular form of any word includes the plural and vice versa.

## INSTRUCTIONS

1.    No request shall be construed with reference to any other request for purposes of limitation.

2.    Each requested document shall be produced in its entirety, including all attachments and enclosures.  If a portion of a document is responsive to a request, produce the entire document, including all attachments, enclosures, "post-it"-type notes, and any other matter physically attached to the document.  If a document responsive to any request cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.

3.    If a document responsive to any request is no longer in your possession, custody, or control, state: (i) its date; (ii) author(s); (iii) recipient(s); (iv) subject matter; (v) when such

6

document was most recently in your possession, custody, or control; (vi) what disposition was made of the document; and, (vii) the person or entity, if any, now in possession, custody, or control of the document. If a document has been destroyed, identify: (i) the date of destruction; (ii) the person who destroyed the document(s); (iii) the person who directed the document to be destroyed; and, (iv) the reason(s) for its destruction.

4.      All documents produced in response to these requests shall be produced in the same manner and order as they are kept in the ordinary course of business and, where attached, shall not be separated or disassembled. If documents responsive to any request are normally kept in a file or folder, also produce that file or folder with any labels attached thereto, and indicate the company, division, department, and/or individual from whose files the document is being produced. If responsive documents are segregated or separated from other documents, whether by inclusion in binders, files, sub-files, or by use of dividers, tabs or any other method, produce such documents in that manner.

5.      If, in responding to these document requests, you claim any ambiguity in interpreting either a request or a definition or instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond, but you shall set forth as part of your response to the request the language deemed to be ambiguous and the interpretation chosen to be used in responding to the request.

6.      If, in responding to these document requests, you assert a privilege to any particular request, you must identify the nature of the privilege (including work product) that is being claimed, and, if the privilege is governed by state law, indicate the state's privilege rule being invoked. In addition, the following information shall be provided in the objection:

7

a.  For documents: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other;

b.  For oral communications: (i) the name of the person making the communication and the names of persons present at the time the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of the communication; and (iii) the general subject matter of the communication.

7.  Each request for documents is continuing in nature.  If, after responding to these requests, you obtain or become aware of further documents responsive to any request, such documents shall be produced promptly in accordance with Rule 26(e) of the Federal Rules of Civil Procedure and the definitions and instructions herein.

## PRODUCTION REQUESTS

Production Request No. 1:

All documents concerning any allegation or other factual base that the manufacture, sale, offer for sale, use or importation of Intervet's porcine circovirus type II vaccine is infringing, will infringe, has contributed to and/or has induced the infringement of any claim of the '601 patent.

Production Request No. 2:

All testing, studies and analyses concerning any Intervet porcine circovirus type II product.

Production Request No. 3:

All documents concerning the subject matter disclosed in the '601 patent, the patent applications from which the '601 patent issued and/or any foreign counterparts thereto.

Production Request No. 4:

All documents concerning the '601 patent, the patent applications from which the '601 patent issued and/or any foreign counterparts thereto.

Production Request No. 5:

All documents concerning the conception, research, design, development, initial disclosure and/or reduction to practice of the subject matter disclosed in the '601 patent.

Production Request No. 6:

All documents concerning the novelty, patentability, validity, infringement, state of the art, or right-to-use of any of the subject matter disclosed in the '601 patent.


Production Request No. 7:

All opinions concerning the infringement, patentability or enforcement of the '601 patent or any foreign counterpart thereto.


Production Request No. 8:

All documents that refer or relate to the isolation and characterization of porcine circovirus type II, including, but not limited to, laboratory notebooks, sequencing records, specimens or tissue inventory logs, laboratory assays, periodic reports, invention disclosures, or records of invention.


Production Request No. 9:

All documents that refer or relate to the research or discovery of porcine circovirus type II, including, but not limited to, the detection, identification and/or verification of porcine circovirus type II.


Production Request No. 10:

All documents concerning the examples disclosed in the '601 patent, including, but not limited to, laboratory notebooks and analytical reports.

Production Request No. 11:

All documents concerning any U.S. patent related to the '601 patent and the patent applications that resulted in these related patents, including pending or rejected applications.

Production Request No. 12:

All documents upon which the Universities rely on to support a claim of priority for any of the claims of the '601 patent.

Production Request No. 13:

All documents prepared for submission to, submitted to, filed with, and/or received from the USPTO concerning any porcine circovirus and/or any vaccine for a porcine circovirus, including, but not limited to, porcine circovirus type II.

Production Request No. 14:

All documents concerning any U.S. or foreign patent applications relating to any porcine circovirus and/or any vaccine for a porcine circovirus, including, but not limited to, porcine circovirus type II, that were filed by or on behalf of Merial or the Universities.

Production Request No. 15:

All documents prepared for submission to, submitted or sent to, filed with, and/or received from the European Patent Office and/or any other non-U.S. patent office concerning any porcine circovirus and/or vaccines for any porcine circovirus including, but not limited to, porcine circovirus type II.

Production Request No. 16:

Any document concerning the submission of prior art and/or other information submitted or contemplated for submission to the USPTO or any foreign patent office during the prosecution of the applications that led to '601 patent including any foreign counterpart patents or patent applications thereto.


Production Request No. 17:

All prior art considered by an inventor or any other person involved in the prosecution of the applications that led to the '601 patent including any foreign counterpart applications thereto.


Production Request No. 18:

All prior art concerning the '601 patent and/or any foreign counterpart thereto called to the Universities' attention by any third party.


Production Request No. 19:

All documents related to any action or proceeding (whether judicial, quasi-judicial or administrative) in which either the validity or enforceability of any claim of the '601 patent (or any foreign counterpart patent thereof) or the patentability of the subject matter disclosed in the '601 patent has been challenged or otherwise placed in issue (whether by claim, counterclaim, affirmative defense, opposition or otherwise).

Production Request No. 20:

All documents concerning any U.S. or foreign patent applications concerning any porcine circovirus product.

Production Request No. 21:

All documents that the Universities will rely upon to establish that any of the claims of the '601 patent are not obvious under 35 U.S.C. §103.

Production Request No. 22:

If the Universities contend that one or more secondary consideration of non-obviousness tends to show that the subject matter of one or more claims of the '601 patent is not invalid under 35 U.S.C. § 103, all documents supporting the Universities' contention as to each such secondary consideration.

Production Request No. 23:

All documents concerning the preparation, decision to file, acquisition of a foreign filing license, filing and prosecution in any country of any patent application related to porcine circovirus type II, including but not limited to:

    (a) the complete prosecution file for each and every application or draft application;

    (b) all documents that provided any part of the basis for the preparation of each and every application;

(c) all documents that constitute, refer or relate to any communication between the inventors, patentee, Merial or the Universities and any patent attorney or agent;

(d) all drafts of every patent application or any paper filed during the prosecution of any such application; and

(e) English-language translations of any non-English language documents requested above.

Production Request No. 24:

All documents concerning communications between and among any employees or representatives of Merial, The Queen's University of Belfast, and/or the University of Saskatchewan relating to the '601 patent, the patent applications from which it issued, or any foreign counterparts thereto.

Production Request No. 25:

All documents concerning communications between and among employees or representatives of Merial, The Queen's University of Belfast, and/or the University of Saskatchewan and any third party relating to the '601 patent, the patent applications from which it issued, or any foreign counterparts thereto.

Production Request No. 26:

All documents concerning communications between any one or more of the named inventors of the '601 patent (*i.e.*, Gordon Allan, Brian Meehan, Edward Clark, John Ellis,

Deborah Haines, Lori Hassard, John Harding, Catherine Elisabeth Charreyre, Giles Emile Chappuis, Francis McNeilly) and employees or representatives of Merial Limited, Merial SAS, The Queen's University of Belfast, or the University of Saskatchewan relating to the '601 patent, the patent applications from which it issued, or any foreign counterparts thereto, and the subject matter disclosed in any of the foregoing.

Production Request No. 27:

All documents (including polices and procedures) concerning communications between any one or more of the named inventors of the '601 patent (*i.e.*, Gordon Allan, Brian Meehan, Edward Clark, John Ellis, Deborah Haines, Lori Hassard, John Harding, Catherine Elisabeth Charreyre, Giles Emile Chappuis, Francis McNeilly) and Merial Limited, Merial SAS, The Queen's University of Belfast, or the University of Saskatchewan relating to their employment and/or rights and obligations with respect to discoveries that are the subject of patent applications or patents.

Production Request No. 28:

All documents concerning communications between any one or more of the named inventors of the '601 patent (*i.e.,* Gordon Allan, Brian Meehan, Edward Clark, John Ellis, Deborah Haines, Lori Hassard, John Harding, Catherine Elisabeth Charreyre, Giles Emile Chappuis, Francis McNeilly) and any third party relating to the '601 patent, the patent applications from which it issued, or any foreign counterparts thereto, and the subject matter disclosed in any of the foregoing.

15

Production Request No. 29:

All documents concerning assignments of the '601 patent, the patent applications from which it issued, or any U.S. or foreign counterpart applications or patents thereto.

Production Request No. 30:

All documents generated, maintained or filed by any named inventor of the '601 patent or patent attorney or agent for Merial and/or the Universities concerning porcine circovirus type II, porcine circovirus product or the '601 patent, including, but not limited to, drafts, prior art patents and publications, cited references, uncited patents and publications, notes, correspondence, and memoranda.

Production Request No. 31:

All documents concerning the preparation, decision to file and filing of the "Amendment With Requests For Extension Of Time And For Interview" faxed on September 14, 2000 during prosecution of the application that led to the '601 patent.

Production Request No. 32:

All documents concerning any submission to Genbank or other public database relating to a porcine circovirus, including, but not limited to, the GenBank submission of Sept. 1997, the GenBank submission of Jan. 1998, and the GenBank submission of March 1998.

Production Request No. 33:

All communications between inventors and any party concerning any submission to Genbank or other public database relating to a porcine circovirus, including, but not limited to, the GenBank submission of Sept. 1997, the GenBank submission of Jan. 1998, and the GenBank submission of March 1998.

Production Request No. 34:

All documents concerning any of the following (including the subject matters disclosed therein):

       (a)  FR 97 12382;

       (b)  FR 98 03707;

       (c)  FR 98 00873;

       (d)  GenBank submission of Jan. 1998;

       (e)  GenBank submission of March 1998;

       (f)  GenBank submission of Sept. 1997; or

       (g)  Nayar *et al.*

Production Request No. 35:

All documents concerning porcine circovirus deposits submitted to the European Collection of Cell Cultures or other depository body.

Production Request No. 36:

      All documents relating to or concerning the making, manufacture, use, sale, or offer for sale of any product practicing any of the subject matter of the '601 patent.


Production Request No. 37:

      All documents that refer or relate to CIRCOVAC®.


Production Request No. 38:

      All documents, materials and things relating to or concerning the sale, offer for sale and/or shipment of a porcine circovirus vaccine to or by Merial and/or the Universities, including, but not limited to, CIRCOVAC®.


Production Request No. 39:

      All documents including, but not limited to, purchase orders, offers for sale, shipping documents, certificates of analysis, product specifications, testing data, and laboratory notebooks related to or concerning the shipment or sale of specific batches or lots of porcine circovirus vaccines in any form by Merial and/or the Universities, to Merial and/or the Universities and/or between the Universities.


Production Request No. 40:

      All offers for sale concerning any porcine circovirus type II vaccine, including, but not limited to, CIRCOVAC®.

Production Request No. 41:

Representative samples of the porcine circovirus product from any lot or batch shipped, sold or offered for sale by, to or between the named Defendants in this action.

Production Request No. 42:

All documents that refer or relate to efforts, by Merial or on behalf of Merial, to obtain U.S. or foreign regulatory approval to manufacture, sell, use, or import porcine circovirus vaccines, including porcine circovirus type II vaccines.

Production Request No. 43:

All documents that refer or relate to efforts, by Merial or on behalf of Merial, to obtain regulatory approval to market any product that falls within the scope of any claim of the '601 patent.

Production Request No. 44:

All documents that refer or relate to Merial's decision to prepare or file a request with the USDA for approval to market and/or sell a porcine circovirus vaccine.

Production Request No. 45:

All documents including drafts prepared for submission to, submitted to, filed with, and/or received from the USDA or any foreign regulatory agency relating to or concerning a porcine circovirus type II vaccine, including, but not limited to, in-process procedures and validation reports, immunogenicity/efficacy reports, potency test reports, product safety reports,

19

stability reports, Veterinary Biologics Production and Test Reports, laboratory assay studies, product stability studies, efficacy studies, field studies, minimal doses finding studies, duration of immunity studies, interference data, and labels and/or label submissions.

<u>Production Request No. 46:</u>

      All documents concerning any and all studies, tests, analyses, or reports prepared by or performed at the direction of Merial or the Universities relating to a porcine circovirus or vaccine for a porcine circovirus, including, but not limited to:

      (a)    all documents concerning any confidentiality agreements with, by or between any parties involved in any way with each such study or test;

      (b)    all documents that identify the porcine circovirus vaccine used in each study or test;

      (c)    all documents that describe the characteristics of the porcine circovirus vaccine used in each study or test, or concern porcine circovirus vaccine in any way;

      (d)    all documents concerning the purpose or nature of each study or test;

      (e)    all documents concerning the date on which any study or test occurred; and

      (f)    representative samples of the porcine circovirus vaccine used in each study or test.

Production Request No. 47:

All documents concerning the manufacture, storage, labeling, and packaging of any porcine circovirus product.

Production Request No. 48:

All documents concerning the manufacture, storage, and packaging of any porcine circovirus vaccine including, but not limited to CIRCOVAC®.

Production Request No. 49:

All documents concerning the immunogenic, pharmacological properties or efficacy of any porcine circovirus product.

Production Request No. 50:

All monthly or periodic reports relating to any porcine circovirus product, including, but not limited to, CIRCOVAC®.

Production Request No. 51:

All documents related to any valuation of the '601 patent.

Production Request No. 52:

All monthly or periodic reports relating to the quantity of sales, pricing, or revenue generated by any porcine circovirus product, including, but not limited to, CIRCOVAC®.

Production Request No. 53:

All documents relating to licensing agreements or negotiations concerning the '601 patent.

Production Request No. 54:

All documents relating to any licenses, offers to license, negotiations, assignments, contracts, agreements, settlements, or other arrangements concerning either the '601 patent (and any foreign counterpart patent or application thereto) or any porcine circovirus product described in the '601 patent.

Production Request No. 55:

All documents concerning any proposed, contemplated, or actual business or marketing plan, analysis, study and/or survey concerning any proposed, contemplated, or actual sale, offer to sell, and/or importation in the United States of any porcine circovirus product or any product that falls within the scope of any claim of the '601 patent.

Production Request No. 56:

All documents concerning the royalty rate that should be used to determine a reasonable royalty payment for the '601 patent.

Production Request No. 57:

All documents concerning industry customs and/or licensing royalties concerning animal health products, including, but not limited, to any porcine circovirus product.

<u>Production Request No. 58:</u>

All documents concerning marketing efforts for any porcine circovirus product, including CIRCOVAC®.

<u>Production Request No. 59:</u>

All documents embodying understandings, agreements or contracts between the Universities and any other person concerning the sale or marketing of any porcine circovirus product.

<u>Production Request No. 60:</u>

All documents embodying understandings, agreements or contracts between the Universities and Merial Limited, Merial SAS, or any other Merial entity concerning the '601 patent (or any foreign counterpart thereto), or the rights to manufacture or market the product which is the subject of that patent, or any rights to profits or proceeds from the sale of that product.

<u>Production Request No. 61:</u>

All documents concerning any assignment, license, understanding or agreement between Merial Limited and Merial SAS relating to or concerning a porcine circovirus type II or a porcine circovirus product, including, but not limited to, a porcine circovirus type II vaccine.

Production Request No. 62:

All minutes (as well as drafts, memoranda, notes, and supporting materials) of meetings of the Universities' boards of directors, executives, managers or employees, and all documents distributed to directors, executives, managers or employees in connection with such meetings, relating to porcine circovirus type II, the '601 patent, the subject matter disclosed in the '601 patent (or any foreign counterpart thereto) or any litigation relating to the '601 patent (or any foreign counterpart thereto).

Production Request No. 63:

All minutes (as well as drafts, memoranda, notes, and supporting materials) of meetings of the Universities' board of directors, executives, managers or employees, and all documents distributed to directors, executives, managers or employees in connection with such meetings, relating to porcine circovirus type II, PMWS, porcine circovirus products, and/or CIRCOVAC®.

Production Request No. 64:

All documents concerning any assignment, license, understanding or agreement between or among Merial Limited, Merial SAS, The Queen's University of Belfast and/or University of Saskatchewan relating to or concerning a porcine circovirus type II or a porcine circovirus product, including, but not limited to, a porcine circovirus type II vaccine.

Production Request No. 65:

All documents relating to or referring to any license, understanding or agreement between Merial and either The Queen's University of Belfast or University of Saskatchewan

24

concerning porcine circovirus type II, a porcine circovirus product or porcine circovirus type II vaccine.

Production Request No. 66:

The Tripartite Agreement referenced in "Defendants The Queen's University of Belfast's and the University of Saskatchewan's Motion to Dismiss for Lack of Subject Matter Jurisdiction" including any documents relating to or concerning this Tripartite Agreement.

Production Request No. 67:

All documents concerning any income, royalties, revenues, profits, or payments that the Universities derived from the Tripartite Agreement referenced in "Defendants The Queen's University of Belfast's and the University of Saskatchewan's Motion to Dismiss for Lack of Subject Matter Jurisdiction."

Production Request No. 68:

All documents concerning any of the Universities' policies and procedures for making, distributing, storing, retaining and/or destroying documents and records.

Production Request No. 69:

All documents referred to or relied upon in response to interrogatories served by Intervet on the Universities.

Production Request No. 70:

All documents including, but not limited to, pleadings, discovery responses and productions, transcripts, expert reports, declarations, orders, opinions, and exhibits from or relating to any litigation concerning the '601 patent or its foreign equivalents or any of the subject matter disclosed in the '601 patent or any of its foreign equivalents.

Production Request No. 71:

All documents that any of the Universities have produced or provided to any party, expert, consultant or any other third-party, for the current litigation or any other U.S. or foreign litigation relating to or concerning porcine circoviruses and/or a porcine circovirus product, including, but not limited to, *Merial Limited v. Intervet Inc.*

Production Request No. 72:

All documents that any party, expert, consultant, or any other third-party has drafted or otherwise prepared on behalf of any of the Universities or Merial and/or the Universities' or Merial's attorneys and/or agents (including all drafts) for this or any other U.S. or foreign litigation relating to or concerning porcine circoviruses and/or a porcine circovirus product, including, but not limited to, *Merial Limited v. Intervet Inc.*

Production Request No. 73:

All deposition transcripts (including any translations and all exhibits) of any witness deposed in any U.S. or foreign litigation concerning porcine circovirus type II or any porcine circovirus product, including, but not limited to, *Merial Limited v. Intervet Inc.*

Production Request No. 74:

All documents related to any settlement agreements or licenses entered into between any of the Universities and any third party concerning the '601 patent, the subject matter of the '601 patent or any foreign counterpart thereto.

Production Request No. 75:

All documents, communications, and things that the Universities intend to rely on (or have relied on) in connection with any of its claims and/or defenses at trial or during any injunction proceeding.

Production Request No. 76:

All documents provided to any expert, consultant, or third-party on whom the Universities intend to rely on at trial or during any injunction proceeding.

Production Request No. 77:

All communications to and from any expert, consultant or third party concerning the '601 patent or the subject matter disclosed therein.

Production Request No. 78:

All documents concerning any of the subject matter disclosed in the '601 patent referenced by or relied on by Merial for the April 24, 2006 hearing before Judge Charles Pannell

Jr. in the United States District Court for the Northern District of Georgia in Civil Case No. 1:05-CV-3168.

Production Request No. 79:

All English translations of any foreign-language documents requested in Intervet's document production requests.

Respectfully submitted,

Date: September 8, 2006

_____

John R. Hutchins, Esq. (D.C. Bar # 456749)
Cedric C. Tan, Esq. (D.C. Bar # 464848)
KENYON & KENYON LLP
1500 K Street, NW, Suite 700
Washington, DC 20005-1257
Tel:  (202) 220-4200
Fax: (202) 220-4201
Attorneys for Plaintiff
Intervet Inc.