UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN, <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK-JMF) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS
THE UNIVERSITY OF SASKATCHEWAN'S AND THE QUEEN'S
UNIVERSITY OF BELFAST'S MOTION FOR A PROTECTIVE ORDER
AND IN OPPOSITION TO INTERVET'S MOTION TO COMPEL**

Defendants the University of Saskatchewan and The Queen's University of Belfast ("Universities") move for a protective order ("Motion for Protective Order") under Fed. R. Civ. P. 26(c) that formal discovery of the Universities may be had only if they receive an unfavorable ruling on their Motion to Dismiss for Lack of Subject-Matter Jurisdiction filed on June 26, 2006. (D.I. 21) ("Motion to Dismiss"). The Universities also oppose Intervet's Motion to Compel Discovery. (*See* D.I. 55) ("Motion to Compel").

**INTRODUCTION**

The Universities' Motion to Dismiss, their Motion for Protective Order, and Intervet's Motion to Compel all stem from a single issue: whether the Universities are proper parties to this action. As explained in the Universities' Motion to Dismiss, because the Court lacks subject-matter jurisdiction over Intervet's declaratory-judgment suit against them, they are not proper parties to this action.

Intervet, however, filed its declaratory judgment action against the Universities knowing that the Court lacked subject-matter jurisdiction over Intervet's claims against them. By doing so, and by filing its Motion to Compel, Intervet seeks to circumvent the protections afforded to non-parties, particularly foreign non-parties, in discovery.[1] For example, Intervet improperly seeks to compel the Universities to respond to interrogatories, which are not a proper form of discovery of non-parties. Intervet also seeks to compel the Universities to respond to numerous document requests, many of which far exceed the breadth of discovery to which the Universities, as foreign non-parties, would be expected to respond, particularly without receiving any compensation from Intervet for the expense of responding to such requests.[2]

Accordingly, the Universities will suffer unfairly if they must bear the burden and expense of responding to formal discovery as parties before the Court rules on their Motion to Dismiss. Intervet should not succeed in its ploy of naming improper parties solely to force them to incur extra burdens and expenses that they would otherwise not have to incur.

The Universities therefore ask that the Court (i) deny Intervet's Motion to compel; (ii) grant the Universities' Motion for Protective Order; and (iii) order, pursuant to Rule 26(c), that discovery of the Universities may be had only if they receive an unfavorable ruling on their Motion to Dismiss filed on June 26, 2006. Alternatively, the Court should, for reasons of

---

[1] The Court should afford the Universities the protections of non-parties, in particular those afforded to foreign non-parties by the Hague Convention or other governing treaties or policies. Intervet wrongly asserts that the University of Saskatchewan is subject to the Hague Evidence Convention. The University of Saskatchewan is located in Canada, which has not signed the Hague Evidence Convention. *See, e.g., U. S. Dept. of State, Bureau of Consular Affairs Advisory on Judicial Assistance in Canada*, http://travel.state.gov/law/info/judicial/judicial_682.html (last visited Nov. 21, 2006). Accordingly, any discovery of the University of Saskatchewan should occur under Canadian law.

[2] Notably, although not obligated to do so, the Universities have, at Merial's request, voluntarily provided Merial with documents relating to the subject matter of the patent-in-suit, and such documents are in the process of being reviewed by counsel for production.

judicial economy and for the other reasons set forth, defer ruling on both Intervet's Motion to Compel and the Universities' Motion for a Protective Order until after a decision is reached on the Universities' previously filed Motion to Dismiss, which will moot the other motions.[3]

## FACTUAL BACKGROUND

**I.  Intervet Knew When It Filed Suit that the Universities Were Not Proper Parties.**

When Intervet filed this declaratory-judgment suit, it knew that the Court lacked subject-matter jurisdiction over Intervet's claims against the Universities because the Universities never threatened Intervet with patent infringement, and Intervet could not have had a reasonable apprehension of suit by the Universities. (*See D.I. 21*). For this and the additional reasons discussed in the Universities' Motion to Dismiss, there is no case or controversy involving the Universities. (*See id.*). Consequently, the Court lacks subject-matter jurisdiction over Intervet's claims against them. (*See id.*). In response to Intervet's improper complaint against the Universities, the Universities timely filed their Motion to Dismiss. As such, the Universities have not filed an answer to Intervet's complaint.

**II.  The Parties and Court Recognized that Resolution of the Motion to Dismiss Should Occur Before Subjecting the Universities to Formal Discovery.**

The Universities should not be subject to the broad and expensive formal discovery that is expected of parties before the Court rules on their Motion to Dismiss. Believing that the Universities' Motion to Dismiss would be decided by September 8, 2006, the parties agreed that Intervet would not serve discovery requests on the Universities before that date. (D.I. 24 at ¶ 1).

---

[3] If the Court finds that it lacks subject-matter jurisdiction over Intervet's declaratory-judgment suit against the Universities and grants the Motion to Dismiss, then Intervet's Motion to Compel will be moot. Likewise, should the Court finds that it has jurisdiction over Intervet's declaratory-judgment suit against the Universities, they will withdraw their objections—based on their pending Motion to Dismiss—to Intervet's discovery requests and respond within 21 days.

The parties also agreed, and the Court ordered, that discovery of the Universities should be "consistent with the Court's decision on the Universities' Motion to Dismiss." (D.I. 35 at ¶ 1).

## ARGUMENT AND CITATION TO AUTHORITIES

I.  **The Court Should Grant the Universities' Protective Order Motion that Discovery of the Universities May Be Had Only After They Receive an Unfavorable Ruling on Their Motion to Dismiss.**

The Federal Rules and case law support staying discovery until the Court rules on the Motion to Dismiss. Rule 26(c)(2) allows a court to condition that "discovery may be had only on specified terms and conditions . . . ." Fed. R. Civ. Proc. 26(c)(2). Moreover, a decision "whether to stay discovery lies in the sound discretion of the district court." *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004). Courts grant motions to stay with "substantial frequency" when a motion to dismiss is pending. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005). Specifically, "stays are often deemed appropriate where the motion to dismiss can resolve the case—at least as to the moving party." *Id.* at 337. When a defendant files a motion to dismiss, a court may stay discovery concerning that defendant—until resolution of their motion—while discovery continues as to other defendants. *Alexis v. District of Columbia*, 77 F. Supp. 2d 35, 37 (D.D.C. 1999).

Accordingly, judges in this district have also often found that a stay of discovery is appropriate where a motion to dismiss is pending. *See, e.g.*, *Alexis*, 77 F. Supp. 2d at 37; *United Mine Workers of Am. Int'l Union v. Arch Mineral Corp.*, 145 F.R.D. 3, 6-7 (D.D.C. 1992); *Maljack Prods. Inc. v. Motion Picture Ass'n of Am.*, Civ. A. No. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990); *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 40 (D.D.C. 2004).

A stay is especially appropriate here because the Universities' Motion to Dismiss rests on a jurisdictional issue. *U.S. Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 79-80 (1988) ("It is a recognized and appropriate procedure for a court to limit discovery proceedings at the outset to a determination of jurisdictional matters."); *Sulfuric Acid*, 231 F.R.D. at 337 (stay is appropriate where the issue underlying a motion to dismiss is "a threshold one, such as jurisdiction"); *Novelty, Inc. v. Tandy*, No. 1:04-cv-1502-DFH-TAB, 2005 WL 2253599, at *4 (Sept. 1, 2006 S.D. Ind.) (staying discovery where only issue with regard to the pending motion to dismiss was jurisdictional issue). Even the cases on which Intervet relies suggest that a court may properly stay discovery where there is a pending motion to dismiss. *See, e.g., Daniel Hartwig Assocs., Inc. v. Kanner*, 913, F.2d 1213, 1223 (7th Cir. 1990) ("The proper course of action is to request that the district court enter a stay of discovery until all jurisdictional issues are decided.").

In similar situations, courts often decide a party's motion to dismiss before resolving any discovery issues, recognizing that the decision on the motion to dismiss moots the discovery issues. *See, e.g., Center for Law & Educ. v. U.S. Dept. of Educ.*, 315 F. Supp. 2d 15, 17-18 (D.D.C. 2004) (granting motion to dismiss, and denying as moot motion to compel production and motion to stay discovery); *Thomson, Cobb, Bazilio & Assoc. v. Grant Thornton LLP*, No. 99-8, 2002 WL 458997, at *2, n.2 (D.D.C. Mar. 25, 2002) (denying motion to dismiss, which rendered moot the motion to stay discovery)*; Atkin v. Lewis,* 232 F. Supp. 2d 770, 774 (N.D. Ohio 2002) (granting motion to dismiss, which rendered motions to compel and motion to stay discovery moot).[4]

---

[4] Indeed, some districts have a rule that automatically stays discovery pending a motion to dismiss, and all securities cases involve a similar automatic stay. *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 n.5 (N.D. Ill. 2005).

In addition, here, the Court's order that discovery be "consistent with the Court's decision on the Universities' Motion to Dismiss" requires a ruling on the Motion to Dismiss before ascertaining the proper scope of discovery regarding the Universities.

Despite the overwhelming and prevailing authority granting stays in similar situations, and despite the fact that the Universities are voluntarily providing relevant documents to Merial for production to Intervet, Intervet proceeded to file its Motion to Compel in an attempt to force the Universities to incur the burden and expense of responding to Intervet's formal discovery requests, to which the Universities, as non-parties, would not have to respond. Because it would be unfair to subject the Universities to Intervet's discovery requests until after the Court rules on the Universities' Motion to Dismiss, the Court should grant the Universities' Motion for Protective Order and temporarily stay discovery until it rules on their Motion to Dismiss.

**II.    The Universities Will Suffer Prejudice Without A Protective Order.**

The Universities will suffer prejudice if they must submit to formal discovery as parties before the Court resolves their Motion to Dismiss. One of the most significant reasons that courts stay discovery pending resolution of a motion to dismiss is to preserve judicial resources and to conserve the parties' efforts and resources. *See Stock v. Comm'r of the Internal Revenue Serv.*, No. CV 00-04670-E-BLW, 2000 WL 33138102, at *2 (D. Idaho Dec. 20, 2000). Forcing the Universities to participate in discovery as parties, when they are not proper parties, would deny them the protections afforded to all non-parties and would subject them to undue burdens and expense.

For example, the Universities should not have to incur the burden and expense of responding to Intervet's interrogatories, which are not a proper form of discovery of non-parties.

In addition, even though they are not obligated to do so, the Universities have, at Merial's request, voluntarily provided Merial with documents relating to the subject matter of the patent-in-suit for production to Intervet. Nonetheless, Intervet seeks to compel the Universities to respond to numerous formal document requests, many of which far exceed the breadth of discovery to which the Universities, as non-parties, would be expected to respond, particularly without receiving any compensation from Intervet for the expense of responding to such requests.[5] *See In re Letters Rogatory*, 144 F.R.D. 272, 278 (E.D. Pa. 1992) (stating that while party witnesses must bear the cost of discovery, non-party's expenses should be reimbursed or defrayed).

### III. A Protective Order Will Not Prejudice Intervet.

Staying discovery is less likely to cause prejudice when imposed early in proceedings. *Maljack Prods. Inc. v. Motion Picture Ass'n of Am.* Civ. A. No. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990) (finding a stay of discovery appropriate where the proceedings were in their early stages). Because this case is in its early stages—with approximately a year remaining for discovery—Intervet will suffer no prejudice from a temporary stay of discovery. ( D.I. 35, at 2).

Further, Intervet's general dilatory tactics regarding discovery, and the Universities' willingness to provide Merial with documents relating to the subject matter of the patent-in-suit,[6]

---

[5] Intervet has issued seventy-nine document requests to each University. Examples of some of Intervet's broad and burdensome requests include "[a]ll documents concerning the manufacture, storage, labeling, and packaging of any porcine circovirus product" and "[a]ll documents concerning industry customs and/or licensing royalties concerning animal health products, including, but not limited, to any porcine circovirus product."

[6] Notably—and contrary to Intervet's contentions—the Universities constitute separate and independent foreign entities that are not under Merial's control. Additionally, only three inventors remain under the control of the University of Saskatchewan and none of the inventors are under the control of The Queen's University of Belfast.

among other things, weaken Intervet's assertions of prejudice. Merial has repeatedly tried to advance the progress of this case but has faced obstructions from Intervet. For example, contrary to Intervet's assertions, early on and before Intervet filed its Motion to Compel, Merial offered to voluntarily produce to Intervet—on an attorneys' eyes only basis—its documents and the documents of the Universities and inventors. (*See* correspondence from Merial's counsel dated 9/26/2006, 10/31/2006 & 11/6/2006, submitted herewith as Exs. F, I, & K). In its October 31 letter, Merial stated that it would "begin producing its documents as well as any documents that it has obtained from the Universities and inventors . . . ." (Ex. I, 10/31/2006 Ltr.). And in its November 6 letter, Merial further reiterated this point by stating, in part, that it would produce "documents that it has obtained from the Universities . . . ." (Ex. K, 11/6/2006 Ltr.). Intervet, however, delayed before responding to Merial's document proposal.[7]

    Intervet has also delayed in responding to Merial's proposal that the parties produce all their documents (both paper and electronic) in an electronic format, i.e., .tiff files (with load files for viewing in a document production database platform such as Summation or Concordance) rather than as paper copies. In fact, as of the filing of this memorandum, Intervet had yet to respond to Merial's proposal, thereby introducing further delays in Merial's document production. (*See* Ex. M, 11/20/2006 email). Notwithstanding Intervet's delays and despite not

---

Even so, Merial has been attempting to obtain documents for production from each of the inventors on a voluntary basis.

[7] In addition to trying to move document production along, on October 6, Merial took the lead in proposing a procedure for e-discovery. (*See* Ex. G, 10/6/2006 e-mail). Intervet, however, took considerable time before responding to Merial's proposal. It did not reply until October 31, and then insisted on additional conditions, which delayed the parties from reaching an agreement until November 16, after Intervet filed its Motion to Compel. (*See* Exs. J & L, 10/31/2006 e-mail; 11/16/2006 e-mail).

having received any agreement from Intervet, Merial has begun its document production. (See Ex. N, 11/20/06 Ltr.).

Moreover, Merial has attempted to schedule the depositions of the inventors. (*See* Exs. A, B, C, D, E, and F, correspondence dated 8/14/2006, 8/17/2006, 9/12/2006, 9/15/2006, 9/19/2006, and 9/26/2006, respectively). Indeed, in a September 26 letter, Merial offered to make certain inventors available for depositions in October, and agreed to make those inventors' documents available in advance of their depositions. (*See* Ex. F, 9/26/2006 Ltr.). Despite subsequent correspondence on this issue from Merial's counsel, Intervet waited a month to reply to Merial's offer. (Ex. H, 10/26/2006 Ltr.). When Intervet finally replied on October 26, it balked on taking the inventors' depositions and insisted that it must receive *all* of the documents from *all* of the inventors and *all* of the parties before taking any inventor depositions. (*See id.*).

Nonetheless, even though, as explained above, Intervet has obstructed Merial's efforts, Intervet is obtaining relevant discovery. Should Intervet determine that it wants additional discovery beyond that which is voluntarily provided by the Universities and Merial, Intervet can pursue it through the appropriate international treaties and policies of their respective foreign governments. Indeed, in its Motion to Compel, Intervet admits that discovery of the Universities as non-parties can occur in compliance with international law. (D.I. 55, at 6). But, rather than taking appropriate steps to obtain reasonable discovery from the Universities as nonparties through compliance with international law, Intervet seeks to subject the Universities to extra burdens and costs they should not incur, such as responding to interrogatories and to numerous overly broad document requests, without compensation.[8]

---

[8] Further evidence that Intervet seeks to impose undue burden and expense on the Universities is that Intervet refused to share in the expense of bringing those inventors who were still affiliated with the Universities to the

Therefore, Intervet's asserted reasons its Motion to Compel lack merit.

## CONCLUSION

For the reasons set forth above, the Court should (i) deny Intervet's Motion to compel; (ii) grant the Universities' Motion for Protective Order; and (iii) order, pursuant to Rule 26(c), that discovery of the Universities may be had only if they receive an unfavorable ruling on their Motion to Dismiss.  Alternatively, the Court should defer ruling on both Intervet's Motion to Compel and the Universities' Motion for a Protective Order until after a decision is reached on the Universities' previously filed Motion to Dismiss.  If the Court finds that it lacks subject-matter jurisdiction over Intervet's declaratory-judgment suit against the Universities and grants the Motion to Dismiss, then Intervet's Motion to Compel will be moot.  Should the Court find that it does have subject-matter jurisdiction over Intervet's declaratory-judgment suit against the Universities, they will respond within 21 days to Intervet's discovery requests in full, subject to their other previously asserted objections.[9]

---

United States for depositions unless the Court dismissed the Universities. (*See* Exs. B, C, & D,  8/17/06 and 9/12/06, 9/15/06 Ltrs., respectively).  In other words, Intervet wants to make the Universities absorb certain expenses, even though if the Court decides that it lacks subject-jurisdiction over Intervet's claims against the Universities, Intervet would have to defray these non-party costs.  *See In re Letters Rogatory*, 144 F.R.D. 272, 278 (E.D. Pa. 1992) (stating that while party witnesses must bear the cost of discovery, non-party's expenses should be reimbursed or defrayed).

[9] Should the Court decide to grant Intervet's Motion to Compel, it should not grant the broad proposed order submitted by Intervet, which does not take into account the Universities' other specific objections to Intervet's discovery requests, such as objections based on privilege or overbreadth, which are not addressed in Intervet's Motion to Compel, and, therefore, were not briefed here by the Universities.

Dated:  November 22, 2006.

                              Respectfully submitted,

*/s/ Timothy A Ngau*
ALSTON & BIRD, LLP
Timothy Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC  20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for The Queen's University of Belfast and The University of Saskatchewan*