UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>   *Plaintiff*,<br><br>  v.<br><br>MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN,<br><br>   *Defendants*. | Civil Action No. 1:06-cv-00658 (HHK/JMF) |

**PLAINTIFF INTERVET'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL AND OPPOSITION TO DEFENDANTS THE UNIVERSITY OF SASKATCHEWAN'S AND THE QUEEN'S UNIVERSITY OF BELFAST'S MOTION FOR A <u>PROTECTIVE ORDER</u>**

Plaintiff Intervet Inc. ("Intervet") hereby submits this memorandum (1) as a reply in support of its Motion to Compel ("Intervet's Motion to Compel") (D.I. 55), and (2) in opposition to the University of Saskatchewan's and The Queen's University of Belfast's (collectively "Universities") belated motion for a protective order ("Universities' Motion for a Protective Order") (D.I. 60). The Universities filed a joint memorandum that served to support both their opposition to Intervet's Motion to Compel and their own Motion for a Protective Order. (*See* D.I. 59/60.) Intervet will likewise address both motions in a single memorandum. For the reasons set forth in this memorandum, the Court should (1) grant Intervet's Motion to Compel and order the Universities to respond to Intervet's outstanding discovery requests, and (2) deny the Universities' Motion for a Protective Order and refuse to stay discovery of the Universities.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................ 1

ARGUMENT.............................................................................................................................. 2

    I.     The Universities Should Be Compelled to Respond to Intervet's Discovery Requests Because the Universities Are Proper Parties and Are Required to Participate in Discovery in This Litigation............................................................. 3

    II.    A Stay Is Not Appropriate Because, Even if the Universities Are Dismissed, This Case Will Continue and the Universities Will Inevitably Have to Provide the Requested Discovery............................................................ 4

    III.   The Universities' Claims of "Undue" Prejudice Are Unfounded and the Balance of the Prejudices in this Case Favors Compelling the Universities to Respond to Intervet's Discovery Requests ......................................................... 8

    IV.   The Universities' Attempts to Hide Behind the Hague Convention Are Improper…………………………………………………………………………11

CONCLUSION......................................................................................................................... 13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                             **Page**

*Alexis v. District of Columbia*, 77 F. Supp. 2d 35 (D.D.C. 1999) .................................................. 7

*Atkin v. Lewis*, 232 F. Supp. 2d 770 (N.D. Ohio 2002) ................................................................... 8

*C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874 (Fed. Cir. 1983) ............................................................ 3

*Center for Law & Educ. v. U.S. Dept. of Educ.*, 315 F. Supp. 2d 15 (D.D.C. 2004) ....................................................................................................................................... 8

\* *Coca-Cola Bottling Co. of the Lehigh Valley v. Grol*, No. 92-7061, 1993 WL 13139559 (E.D. Pa. Mar. 8, 1993) .............................................................................. 6, 7

*Daniel Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213 (7th Cir. 1990) ................................. 7, 11

\* *Hachette Distribution, Inc. v. Hudson County News Co.*, Inc., 136 F.R.D. 356 (E.D.N.Y. 1991) ................................................................................................................... 6, 7

\* *In re Nifedipine Capsule Litig.*, No. 89 Civ. 1374, 1989 U.S. Dist. LEXIS 11061, 13 U.S.P.Q.2d 1574 (S.D.N.Y. Sept. 20, 1989) ......................................................................... 6

*Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33 (D.D.C. 2004) ............................................ 7

*Jennings v. Family Mgmt.*, 201 F.R.D. 272 (D.D.C. 2001) ............................................................. 8

*Maljack Prods. Inc. v. Motion Picture Ass'n of Am.*, No. 90-1121, 1990 WL 157900 (D.D.C. Oct. 3, 1990) .................................................................................................... 7

*Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357 (N.D. Ga. 2006) ............................................. 2

\* *Minebea Co., Ltd. v. Georg Pabst*, 370 F. Supp. 2d 302 (D.D.C. 2005) ..................................... 6

*Novelty, Inc. v. Tandy*, No. 104-cv-1502-DFH-TAB, 2005 WL 2253599 (S.D. Ind. Sept. 1, 2006) ........................................................................................................... 7

\* *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598 (C.D. Cal. 1995) ...................... 6, 7

*Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522 (1987) ........................................................................ 12

*Thomson, Cobb, Brazilio & Assoc. v. Grant Thornton LLP*, No. 99-8, 2002 WL 458997 (D.D.C. Mar. 25, 2002) ............................................................................................... 8

*United Mine Workers of Am. Int'l Union v. Arch Mineral Corp.*, 145 F.R.D. 3 (D.D.C. 1992) ................................................................................................................................ 7

*Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18 (D.D.C. 2005) .................................. 4, 8

## INTRODUCTION

The Universities allege that Intervet named them as parties "*knowing* that the Court lacked subject-matter jurisdiction[,]" and as part of Intervet's "ploy of naming improper parties solely to force them to incur extra burdens and expenses." (D.I. 59/60 at 2.) These accusations are untrue. Intervet's only goal here is proper, *i.e.*, to obtain the discovery from the Universities that Intervet must have to defend itself in this action. The Universities are proper parties to this action, and also are contractually obligated to cooperate in any litigation involving the patent-in-suit. There is nothing, therefore, improper about Intervet requesting and this Court compelling the Universities to provide the discovery that Intervet seeks.

## STATEMENT OF FACTS

The Universities have never denied that they possess much of the most relevant information related to the development of the patent-in-suit, U.S. Patent No. 6,368,601 ("the '601 patent"). Nor can the Universities deny that at the time Intervet filed this action they were co-owners of the '601 patent along with co-defendant Merial SAS, pursuant to the terms of the so-called "Tripartite Agreement," which set forth the rights and obligations of the defendants with respect to the patent-in-suit. (*See* D.I. 26 at 3.) Under the Tripartite Agreement, the Universities contractually agreed to "closely cooperate in a procedure and/or defense" related to the '601 patent.[1] (D.I. 26 at 4.) Accordingly, when defendant Merial Limited attempted to sue

---

[1] Additionally, when the inventors working for the Universities assigned their interest in the '601 patent to the Universities, they contractually agreed in the future to "communicate . . . all facts known to us . . . and to furnish all documents . . . or other physical exhibits . . . useful for establishing the facts of our conceptions, disclosures, and reduction to practice of said inventions and discoveries." (*See* D.I. 26 at n.4 and accompanying text.)

1

Intervet for infringement of the '601 patent in the Northern District of Georgia without the Universities' involvement, the court held that the Universities were necessary parties and co-owners of the patent-in-suit. *Merial Ltd. v. Intervet Inc.*, 430 F. Supp. 2d 1357, 1361-64 (N.D. Ga. 2006). It was under these circumstances that the Universities were named as parties to this action – not as part of any "ploy" by Intervet.

On June 26, 2006, two and a half months after Intervet filed this action, the Universities moved to dismiss themselves from this litigation. (D.I. 21.) On August 4, 2006, the Court issued a scheduling order in which it clearly provided that discovery of the Universities could commence on September 8, 2006. (D.I. 35.) In spite of the scheduling order, and without filing a timely motion for a protective order, the Universities simply refused to provide any discovery in response to Intervet's discovery requests. Intervet thus was forced to move to compel responses. (D.I. 55.) Then, on November 22, 2006, well over a month after their discovery responses were due, the Universities finally filed their Motion for a Protective Order to stay discovery. (D.I. 60.)

## ARGUMENT

The Universities' refusal to participate in discovery is based on their argument that they should not really be parties, and therefore should not have to participate in discovery. This argument is wrong for several reasons. First, the Court entered a scheduling order that allowed for discovery of the Universities commencing September 8, 2006, in the event that they had not been dismissed by then. Intervet is simply following this Order, the terms of which had previously been agreed upon by the parties. Second, even assuming (wrongly) that the Universities are not proper parties, the requested discovery materials are still under the custody or control of co-defendants Merial Limited and Merial SAS (collectively "Merial"), who

undisputedly are proper parties to this case. Accordingly, all of the requested materials that the Universities are presently refusing to produce are fully discoverable under the Federal Rules of Civil Procedure in any event.[2] There simply is no harm, therefore, in having the Universities participate in discovery. This is true even if the Universities are later dismissed as parties. Accordingly, the Universities should be compelled to participate in discovery and their Motion for a Protective Order should be denied.

**I.     The Universities Should Be Compelled to Respond to Intervet's Discovery Requests Because the Universities Are Proper Parties and Are Required to Participate in Discovery in This Litigation**

The theme underlying the Universities' objections to participating in discovery in this case is that, because they never explicitly threatened suit, Intervet "knew" that the Universities were not proper parties to this action. (D.I. 59/60 at 3.) This accusation is without merit, both legally and factually. An explicit threat is not required to create subject matter jurisdiction in a declaratory judgment action when the totality of the circumstances indicate that the accused infringer's apprehension of suit was reasonable. *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 880 (Fed. Cir. 1983). In this case, the totality of the circumstances when Intervet filed this action – *i.e.*, Intervet having already been sued for infringement by Merial Limited and the Universities' indisputable status as co-owners of the '601 patent – unequivocally gave Intervet a reasonable apprehension of suit and provided this Court with subject matter jurisdiction over Intervet's declaratory judgment action against all of the co-owners of the '601 patent. Indeed, the Universities were adjudged by the Georgia district court to be proper and necessary parties.

---

[2]   As a last resort, the Universities would also have to provide the requested discovery to Intervet under the Hague Convention on Taking Evidence Abroad in Civil or Commercial Matters ("Hague Convention") and/or Canadian law. There is no reason that Intervet should be required to go through these costly and time-consuming international proceedings, however, when the Universities are parties to this action and the requested materials are under the custody and control of Merial.

3

The Universities are parties to this action. As such, the Universities should provide discovery in accordance with the Federal Rules of Civil Procedure, as is required of every party to an action in federal district court. Moreover, the Scheduling Order in this case – which was agreed to by all of the parties prior to its submission to the Court – allows for discovery of the Universities now. The Universities have improperly disregarded this Order by failing to provide discovery or timely move for a protective order. While the Universities might wish it were otherwise, there is no justification for the Universities to continue to ignore the Court's Order and deny Intervet the important discovery it has requested regarding the patent-in-suit.

II. **A Protective Order Is Not Appropriate Because, Even if the Universities Are Dismissed, This Case Will Continue and the Universities Will Inevitably Have to Provide the Requested Discovery**

As stated by this Court:

> When moving for a protective order to limit discovery, the movant must establish good cause by demonstrating the specific evidence of the harm that would result. ***The burden is on the movant*** to establish that a protective order should be granted[.] . . . Furthermore, a party seeking a protective order prohibiting deposition testimony or document production must establish good cause and a specific need for protection, as opposed to simply making conclusory or speculative statements. ***The moving party has a heavy burden of showing extraordinary circumstances*** based on specific facts that would justify such an order.

*Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 21 (D.D.C. 2005) (emphasis added; internal citations and quotations omitted). The Universities have fallen well short of meeting their heavy burden of proving extraordinary circumstances. Even setting aside their status as proper parties, discovery on the Universities is far from extraordinary, it is inevitable.

If the Universities are eventually dismissed from this action, Intervet still will have the right to obtain the materials it is requesting from the Universities and/or their inventors. First, as discussed above and in Intervet's opposition to the Universities' motion to dismiss (D.I. 26 at 9-

4

11), the Universities and the inventors have contractual agreements that require their cooperation in this matter.  And, pursuant to these obligations, the Universities have, in fact, been closely working with Merial to support their objectives in this litigation.  As one example, the Universities (who were not parties to the Georgia action) filed with the court declarations at the behest of Merial in the Georgia action.  Merial has already proven, through its actions, that it can obtain materials from the Universities and inventors when it suits its needs in this litigation.  Accordingly, there should be no doubt that, if Merial were ordered to do so by the Court, it could obtain the requested materials from the Universities and their inventors.[3]

The Universities attempt to brush aside their contractual obligations to Merial by saying that Intervet cannot be a third party beneficiary of these obligations.  (*See* D.I. 36 at 5-6.)  In essence, the Universities argue that their contractual obligations are effective only when Merial decides that they are, and it is not in Merial's interest at this time to require that the Universities produce the requested information. This argument is wrong, and it misses the point.  The requested information and materials are *de facto* in the custody or control of Merial, even though they are presently possessed by the Universities and inventors, all of whom have entered into contracts with Merial agreeing to provide the requested materials and otherwise cooperate at the request of Merial.  It is enough that Merial could force this cooperation and could obtain these materials, if it so desired.  The fact that Merial does not really want to be forced to obtain these materials from the Universities and produce them in this litigation (because such actions may benefit Intervet or undermine Merial's assertions in this case) is of no import.

---

[3] For this reason, the Court should order both the Universities and Merial to produce the requested materials.

This District has squarely rejected the Universities' position and ruled that, in situations such as these, parties such as the Universities and inventors are under the control of a party and that discovery could be compelled.  *See Minebea Co., Ltd. v. Georg Pabst*, 370 F. Supp. 2d 302, 309-10 (D.D.C. 2005); *see also In re Nifedipine Capsule Litig.*, No. 89 Civ. 1374, 1989 U.S. Dist. LEXIS 11061, 13 U.S.P.Q.2d 1574 (S.D.N.Y. Sept. 20, 1989).

Further, discovery of the requested materials is inevitable under either the Hague Convention or Canadian law.  *See, generally*, United States Department of State, *Judicial Assistance in Canada* (available at http://travel.state.gov/law/info/judicial/judicial_682.html) (attached as Exhibit A to the Declaration of Cedric Tan in support of this memorandum ("Tan Declaration")); United States Department of State, *Judicial Assistance United Kingdom* (available at http://travel.state.gov/law/info/judicial/judicial_671.html) (attached as Exhibit B to the Tan Declaration).  This case will continue with or without the Universities as parties, and the Universities' discovery obligations will not be mooted in the event that they are eventually dismissed.  In situations such as this, a stay of discovery is simply unjustified.  *See Hachette Distribution, Inc. v. Hudson County News Co., Inc.*, 136 F.R.D. 356, 358-59 (E.D.N.Y. 1991); *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995); *Coca-Cola Bottling Co. of the Lehigh Valley v. Grol*, No. 92-7061, 1993 WL 13139559, at *2-3 (E.D. Pa. Mar. 8, 1993).

As stated by one court when faced with a strikingly similar request:

> At the outset, the Court notes that the defendants Warner and Time do not seek a stay of discovery at this time and are presently engaged in discovery. Warner and Time have not made dispositive motions.  Accordingly, even if the Wholesaler Defendants' motion is granted, it would not result in the termination of this action. This is significant since discovery will proceed in the case whether or not the Wholesaler Defendants' motion is granted. If the Wholesaler Defendants' motion is granted and the action is dismissed as against these defendants, the plaintiffs, and perhaps the remaining defendants as well, are likely to continue to conduct

> discovery with respect to the Wholesalers as non-parties. . . . In sum, discovery of the Wholesalers is inevitable, whether or not they remain in the case as parties.
> . . . .
> Accordingly, in the exercise of the Court's discretion, the application of a stay of discovery is denied.

*Hachette*, 136 F.R.D. at 358-59. *See also Skellerup*, 163 F.R.D. at 600-01 (denying a request for a stay because another defendant was participating in discovery, the motion to dismiss would not terminate the action, and, even if the motion to dismiss was granted, discovery as to the dismissed party would likely continue as non-party discovery); *Coca-Cola Bottling*, 1993 WL 13139559 at *2-3 (same). The reasoning of these cases applies fully to the case at bar, and the Universities' request for a stay should likewise be denied.

Unlike the above precedent, which conclusively supports Intervet's argument, the cases relied upon by the Universities are inapposite because in those cases a stay was granted during the pendency of a motion to dismiss that had the potential to be dispositive of the entire case.[4] Similarly unavailing is the Universities' attempt to broadly categorize this case as appropriate for a stay of discovery because their motion to dismiss is based on a jurisdictional issue[5] that "moots discovery issues."[6] In attempting to support each of these arguments, the Universities rely on

---

[4] Several of these cases were ones with a single defendant, where a motion to dismiss would have terminated the entirety of the case and there would be no continuing discovery on any party whatsoever. *See, e.g.*, *United Mine Workers of Am. Int'l Union v. Arch Mineral Corp.*, 145 F.R.D. 3, 6-7 (D.D.C. 1992); *Maljack Prods. Inc. v. Motion Picture Ass'n of Am.*, No. 90-1121, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990); *Institut Pasteur v. Chiron Corp.*, 315 F. Supp. 2d 33, 40 (D.D.C. 2004). In another case, the court found that the government official seeking dismissal had qualified immunity both from suit and discovery. *Alexis v. District of Columbia*, 77 F. Supp. 2d 35, 37-39 (D.D.C. 1999). The Universities have no such immunity from discovery.

[5] Again, the Universities rely on inapposite cases where the motion to dismiss would have terminated the entirety of the case. *See Novelty, Inc. v. Tandy*, No. 104-cv-1502-DFH-TAB, 2005 WL 2253599, at *4 (S.D. Ind. Sept. 1, 2006) (all defendants moving to dismiss); *Daniel Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1223 (7th Cir. 1990). The Universities' reliance on *Daniel Hartwig Assocs.* is especially ironic because the court in that case specifically condemned the practice of simply choosing to not engage in discovery pending an outstanding motion to dismiss rather than filing for a stay of discovery. 913 F.2d at 1223. The Universities chose this exact course of action for months, delaying the filing of a motion to stay discovery until only after Intervet moved to compel.

[6] The cases that the Universities rely on to for this proposition are cases in which either there was only a single defendant or all defendants moved to dismiss. Thus, the motions to dismiss in those cases carried the

7

cases in which the motion to dismiss would have disposed of the entirety of the litigation, including all underlying discovery issues.  This is simply not the case here because the Universities' motion to dismiss is not even dispositive as to their own obligations to participate in this case, much less the entire case.  Thus, a stay of discovery is not warranted.

### III.     The Universities' Claims of "Undue" Prejudice Are Unfounded and the Balance of the Prejudices in this Case Favors Compelling the Universities to Respond to Intervet's Discovery Requests

In order to carry the heavy burden of demonstrating that a protective order is warranted, a party seeking a protective order must show a "specific need for protection, as opposed to simply making conclusory or speculative statements." *Washington*, 230 F.R.D. at 21; *see also Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001).  The Universities have shown no such particular or specific need.  Instead, the Universities simply state that a stay is necessary because Intervet's discovery requests subject them to "undue burdens and expense." (D.I. 59/60 at 6.) The Universities go on to provide as an example of this "undue burden" that they will be required to answer interrogatories, a form of discovery to which non-parties are not required to respond. (D.I. 59/60 at 6.)  This hardly qualifies as an "undue" burden because Intervet served only ten interrogatories on the Universities, and counsel for the Universities is apparently already communicating with the Universities to begin collecting documents. (*See* Intervet's First Set of Interrogatories (attached as Exhibit A to the prior Tan declaration in support of D.I. 55).) Further, the Universities have already demonstrated their willingness to draft and produce written discovery, in the form of declarations, when they so desire.  It is difficult to see how

---

potential to dismiss the entirety of the case, including all outstanding discovery obligations.  *See, e.g.*, *Center for Law & Educ. v. U.S. Dept. of Educ.*, 315 F. Supp. 2d 15, 17-18 (D.D.C. 2004) (motion to dismiss would get rid of entire case); *Thomson, Cobb, Brazilio & Assoc. v. Grant Thornton LLP*, No. 99-8, 2002 WL 458997, at *2, n.2 (D.D.C. Mar. 25, 2002) (all defendants joined in motion that would dismiss the entire case); *Atkin v. Lewis*, 232 F. Supp. 2d 770, 774 (N.D. Ohio 2002) (same).  This is not the case here.

responding to these ten interrogatories is an undue burden, particularly since the Universities are contractually obligated to cooperate in litigation and have done so in the past. Furthermore, even if ultimately dismissed, the Universities eventually will have to provide this information in international discovery in deposition form.

The Universities also attempt to paint their obligations to respond to Intervet's document requests as an undue burden because the requests are broader than they would be if the Universities were required to respond as non-parties. The Universities argue that responding to Intervet's requests will be prohibitively expensive absent compensation from Intervet. (D.I. 59/60 at 7.) Again, the Universities' attempt to turn this into an undue burden is specious. First, the Universities are already working with their counsel to produce documents that they consider relevant, so they are already incurring much of these costs. Second, the Tripartite Agreement specifically states that these costs will be borne by Merial, not the Universities.[7] (D.I. 26 at 4.)

In contrast to the Universities' plainly inadequate showing of prejudice, Intervet will suffer clear and significant prejudice if the Universities are not compelled to respond to Intervet's discovery requests or if their request for a protective order is granted. First and foremost, the material being sought by Intervet is undisputedly relevant to the patent-in-suit and important to Intervet's defenses of patent noninfringement, invalidity, and unenforceability – eight of the ten inventors of the '601 patent are from the Universities, and it is highly likely that most, if not all, of the discovery that Intervet needs to defend itself resides with the Universities. Any further delay by the Universities in responding to Intervet's discovery requests will also effectively nullify Intervet's ability to use any of the Universities' documents or evidence in the

---

[7] Despite this provision in the Tripartite Agreement, Intervet has never stated that the Universities should bear the entire cost of discovery on them. The fact that the parties have not reached a cost-sharing arrangement does not justify the Universities' inexplicable conclusion that Intervet's entire motive in naming them as parties was to run up costs.

9

patent claim construction process because discovery on claim construction will conclude in less than four months.

The Universities' alleged "voluntary" cooperation does not blunt the need for a Court order here. The Universities apparently intend to produce only documents that *they* consider relevant, without any input from the Court or Intervet. Once these documents are produced (assuming they are ever produced), the Universities make clear that they will no longer be assisting in this litigation and Intervet must turn to international discovery. (D.I. 59/60 at 9.) Allowing the Universities to proceed in this manner clearly prejudices Intervet. Intervet's document requests and interrogatories are all proper, and Intervet is entitled to full, substantive responses to them. Intervet should not have to make do with a partial document production, in which Merial and the Universities are the sole arbiters of what gets produced to Intervet.

As one example of the inadequacy of the alleged efforts to "voluntarily" produce documents, the Universities allude to the fact that the inventor files that they will produce may come from only three of the eight inventors affiliated with the Universities.[8] (D.I. 59/60 at 7, n.6.) While Merial allegedly is "attempting" to obtain documents from the remaining inventors, a review of the correspondence between the parties indicates that these attempts will be half-hearted, at best. On September 12, 2006, counsel for the Universities indicated that it had "contacted all but one of the inventors regarding Intervet's request and [was] attempting to locate and contact the remaining inventor." (D.I. 59/60 at Ex. C.) Yet as time carried on, the Universities became much less forthcoming with information about the inventors, and Intervet's

---

[8] Along these lines, the Universities' offers of depositions of the inventors to this point have been hollow. It makes no sense to depose the inventors without first having had an opportunity to review the inventors' documents. Otherwise, inventors could have to be deposed more than once, as documents are made available to Intervet.

10

multiple subsequent inquiries into their whereabouts were ignored.[9]  All of these inventors have contractual obligations to produce documents, yet it is already apparent that Merial and the Universities will only "voluntarily" enforce these obligations on those inventors for whom it is convenient.

Finally, contrary to the Universities' assertion, their request for a stay is not "early in the proceedings."  (D.I. 59/60 at 7.)  This case has been pending for almost eight months, and the Universities' motion to dismiss was filed over five months ago.  Rather than properly requesting a stay months ago, as even the cases that they now rely on state to be the proper course of conduct,[10] the Universities waited, only being spurred into action by Intervet's motion to compel.  Further, it is not Intervet's fault that the Universities have refused to produce the discovery materials that are the subject of the present motion to compel.  Intervet properly filed discovery requests, as explicitly provided for in the Scheduling Order.  The Universities refused to produce the requested discovery, and refused to timely file a motion for a protective order.  In response, Intervet timely filed the present motion to compel, and is entitled to the discovery it seeks.

## IV.  The Universities' Attempts to Hide Behind the Hague Convention Are Improper

The Universities allege that "rather than taking the appropriate steps to obtain reasonable discovery from the Universities as nonparties through compliance with international law, Intervet

---

[9]   On October 26, 2006, Intervet inquired as to why Merial and the Universities were no longer discussing the availability of four of the inventors.  *See* October 26, 2006 letter from Tan to Ngau (attached as Exhibit C to the Tan Declaration).  Merial and the Universities ignored this inquiry.  *See* October 31, 2006 letter from Smith to Tan (attached as Exhibit D to the Tan declaration).  Intervet followed up on this inquiry, only to be ignored again by defendants.  *See* November 2, 2006 letter from Tan to Smith (attached as Exhibit D to the Tan Declaration); November 6, 2006 letter from Smith to Tan (attached as Exhibit E to the Tan Declaration).  Not surprisingly, the November 2 follow-up inquiry was not included or mentioned in the Universities' efforts to blame Intervet for its deficiencies in providing discovery.

[10]   *Daniel Hartwig Assocs.*, 913 F.2d at 1223.

11

seeks to subject the Universities to extra burdens and costs that they should not occur . . . without compensation." (D.I. 59/60 at 9.) This is a circular argument, which presupposes its own answer. The Universities are not non-parties because their motion to dismiss has not yet been decided. Because the Universities are parties to this action, Intervet has the right to first pursue discovery of the Universities under the Federal Rules of Civil Procedure, and is not required to immediately submit to the procedures of the Hague Convention. *Societe Nationale Industrielle Aerospatiale v. U.S. District Court for the Southern District of Iowa*, 482 U.S. 522, 541 (1987). Intervet also has the right to obtain the requested materials under the Federal Rules of Civil Procedure because they are in the custody or control of Merial. Intervet will, of course, turn to the Hague Convention or Canadian law if or when it becomes necessary (*i.e.*, if or when the Universities are actually dismissed and the Court refuses to enter an order that the requested material is under the custody or control of Merial by virtue of the Tripartite Agreement and the inventors' assignments).[11] Unfortunately, as a result of the Universities' decision to wait so long to seek to stay discovery, there is a chance that there will not be enough time to gather all necessary evidence even through international discovery channels. In any event, it should not be necessary for Intervet to attempt to obtain this plainly relevant discovery through international conventions, since Intervet is entitled to its production under the Federal Rules of Civil Procedure.

---

[11] It appears as though Intervet will be required to hire Canadian counsel to pursue international discovery in Canada. This is yet another example of how Intervet will be prejudiced if the Universities are not kept in this case (or at least found to be under Merial's control) and not compelled to respond to Intervet's discovery requests.

## CONCLUSION

For the aforementioned reasons, the Court should grant Intervet's Motion and Compel and deny the Universities' Motion for a Protective Order. The Universities should be ordered to immediately answer Intervet's First Set of Interrogatories and produce all documents responsive to Intervet's First Set of Document Requests.

Dated: December 7, 2006                    Respectfully Submitted,


      /s/  John Hutchins
 John R. Hutchins (D.C. Bar # 456749)

William G. James, II
Cedric C.Y. Tan (D.C. Bar # 464848)
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, DC 20005
(202) 220-4200 (telephone)
(202) 220-4201 (facsimile)

Richard L. DeLucia
Michael D. Loughnane
Patrice P. Jean, Ph.D. (D.C. Bar # 482968)
KENYON & KENYON LLP
One Broadway
New York, NY 10004
(212) 425-7200 (telephone)
(212) 425-5288 (facsimile)

Attorneys for Plaintiff
Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN,<br><br>*Defendants.* | Civil Action No. 1:06-cv-00658 (HHK/JMF) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2006, I electronically filed *Plaintiff Intervet's Reply in Support of Its Motion to Compel and Opposition to Defendants The University of Saskatchewan's and The Queen's University of Belfast's Motion for a Protective Order* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

>Judy Jarecki-Black, Ph.D.
>MERIAL LIMITED
>3239 Satellite Blvd.
>Duluth, GA 30096-4640
>Tel: (678) 638-3805
>Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

2