UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br>    Plaintiff,<br><br>  v.<br><br>MERIAL LIMITED, et al.,<br><br>    Defendants. | Civil Action 06-00658 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Before the court is defendants' motion to realign the parties [#28]. Upon consideration of the motion, the opposition thereto, and the record of the case, the court concludes that the motion should be denied.

**I. BACKGROUND**

Defendant Merial Limited previously filed an action for patent infringement against Intervet, Inc. ("Intervet") in the Northen District of Georgia. On Intervet's motion to dismiss, the district court held that Merial Limited lacked standing to enforce the patent. This action, which Intervet filed the same day as its motion to dismiss in the prior suit, seeks a declaratory judgment of invalidity and unenforceability, and noninfringement against Merial Limited, Merial SAS, the Queen's University of Belfast and the University of Saskatchewan. Defendants have moved to realign the party designations so that defendants can take what they deem their "natural" place as plaintiffs.

**II. DISCUSSION**

Whether to realign parties is a discretionary question for the court to answer.
*Anheuser-Busch, Inc. v. John Labatt, Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996); *Lloyd v.*

*Pendleton Land & Exploration, Inc.*, 22 F.3d 623, 625 (5th Cir. 1994). In cases similar to this one (where alleged patent infringers have sued under the Declaratory Judgment Act), courts have taken a variety of approaches to determining whether to realign the parties. *See Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, No. 03-01431, 2006 WL 1646110, at *1 (N.D. Cal. June 12, 2006) (collecting cases). These approaches have included, either standing alone or in combination with each other, "(1) looking to the purposes of the Declaratory Judgment Act; (2) [assessing] burden of proof considerations, especially where both parties to the action bear burdens of proof on various issues in the case; and (3) [considering whether] changing the order of proof at trial would not make the presentation of the evidence clearer for the jury." *Ibid.* (internal citations omitted). Though it is not obligated to do so, the court will address each of these approaches/factors in turn.

A.  **The Purposes of the Declaratory Judgment Act**

The Declaratory Judgment Act was in part intended to address the following common situation in patent disputes:

> [A] patent owner engages in a danse macabre, brandishing a Damoclean threat with a sheathed sword. . . . Guerilla-like, the patent owner attempts extra-judicial patent enforcement with scare-the-customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity. . . . Before the Act, competitors victimized by that tactic were rendered helpless and immobile so long as the patent owner refused to grasp the nettle and sue. After the Act, those competitors were no longer restricted to an *in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests.

*EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814–815 (Fed. Cir. 1996) (quoting *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 734–35 (Fed. Cir.1988)). Put differently, "[t]he purpose of the Act is to enable a person who is reasonably at legal risk because of an unresolved

dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side. It accommodates the practical situation wherein the interests of one side to the dispute may be served by delay in taking legal action." *BP Chemicals Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993).

When addressing requests for realignment in Declaratory Judgment Act actions, courts have frequently looked to whether the circumstances giving rise to the action at bar fit the overall purpose of the Act. That is, does this Damoclean-threat scenario exist, or has the patentee "grasp[ed] the nettle" and sued to enforce its rights? If the patentee has previously filed, but for whatever reason has been deprived of her choice of forum (e.g., via a motion to dismiss), realignment is favored, since it may be "equitable to allow [the patentee] to retain its status as a plaintiff." *Plumtree Software, Inc. v. Datamize LLC*, No. C-02-5693, slip. op. at 11 (N.D. Cal. Oct. 6, 2003) (Defs.' Mot. to Realign, Ex. A at 11). Here, one of the defendants, Merial Limited, did file to enforce its rights, but the district court dismissed the action because, in its view, Merial Limited lacked standing. Merial SAS and the other defendants to this action, however, did not join the prior suit.

Given this history, Intervet argues that it faced a *de facto* Damoclean-threat scenario, where one party, which lacked enforcement rights, sued Intervet, but other parties-in-interest, whose participation was necessary to the determination of the enforceability issues, held back. By Intervet's account, defendants thereby put Intervet in the unenviable position of facing an infringement action, while at the same time being unable to obtain declaratory rights against parties it deemed to be necessary.

The court finds that the litigation history of the prior suit slightly favors Intervet. While it is true that Merial Limited could be deemed a "natural plaintiff" in this action by virtue of its earlier-filed suit, the same can not be said of the other defendants. Despite their apparently aligned interests here, the defendants are not monolithic, and the court is not inclined to grant all defendants a favorable litigation posture when only one of them previously acted to take that posture by filing suit.

## II.    Burdens of Proof

Whether the burdens of proof favor one party's claim to status as plaintiff is another useful consideration. In this regard, one court has observed that "[a] court normally will not realign the parties from their original designations unless the plaintiff no longer retains the burden to prove at least one of its claims or if subsequent events in the case significantly shift the ultimate burden of proof from the plaintiff to the defendant." *Ericsson Inc. v. Harris Corp.*, No. 98-2903, 1999 WL 604827, at *2 (N.D. Tex. Aug. 11, 1999); *see also Anheuser-Busch*, 89 F.3d at 1344 (affirming denial of a motion to realign on grounds that both parties bore burdens of proof). Here, it is beyond dispute that all parties retain burdens of proof as to their claims. This fact cautions against realignment.

## III.    Clarity for the Jury

As noted above, some courts have considered the impact of party alignment on the efficiency of the litigation and on the clarity of issues for the jury. *See Fresenius*, 2006 WL 1646110, at *3. While the plaintiff and defendants each present colorable arguments in their favor, the court need not assess them, for, as plaintiff rightly notes, the court can arrange the presentation of evidence in whichever order best suits the interests of justice, regardless of party

alignment. Pl.'s Opp'n at 9; *Sunny Fresh Foods, Inc. v. Michale Foods, Inc.*, No. 00-2117, 2002 U.S. Dist. LEXIS 27762, at *3–*5 (D. Minn. Apr. 17, 2002); *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 758–59 (8th Cir. 2006) ("To ensure that trial does not proceed higgledy-piggledy, the district court has wide discretion to determine the order in which parties adduce proof.").

### III.   CONCLUSION

For the foregoing reasons, the court determines that the factors courts have traditionally considered when assessing motions for realignment in patent-related declaratory judgment actions favor maintaining the status quo, and exercises its discretion accordingly. Therefore, it is this 9th day of December, 2006, hereby

**ORDERED** that defendants' motion to realign the parties [#28] is **DENIED**.

Henry H. Kennedy, Jr.
United States District Judge