UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN, <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK-JMF) |

**DEFENDANTS THE UNIVERSITY OF SASKATCHEWAN'S AND THE QUEEN'S UNIVERSITY OF BELFAST'S REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR A PROTECTIVE ORDER**

## INTRODUCTION

The discovery dispute regarding the Universities—the University of Saskatchewan ("USASK") and the Queen's University of Belfast ("QUB")—arises from a single issue: whether this Court has subject matter jurisdiction over the Universities. While Intervet may obtain discovery from the Universities without regard to their status as parties or non-parties, the scope of that discovery differs markedly depending on their status. For example, as non-parties the Universities would not be required to respond to interrogatories, nor would they be required to respond to document discovery as broad and as extensive as if they were parties (at least not without some level of compensation as required by Fed. R. Civ. P. 45). Moreover, as foreign non-parties, international laws would govern the scope and method of obtaining permissible discovery.

LEGAL02/30185891v5

Nevertheless, since some core document discovery is appropriate, the Universities are voluntarily cooperating with Merial Limited and Merial SAS (individually and collectively "Merial") to obtain relevant documents in their possession for production to Intervet. Intervet, however, has effectively ignored the efforts made by the Universities and seeks their compelled participation in improper discovery. More specifically, Intervet wants the Universities to provide discovery as parties before the Court decides the underlying jurisdictional issue. Intervet's conduct seems designed to harass the Universities by circumventing international law and shifting discovery burdens unfairly onto them. The Universities respectfully request that the Court (i) deny Intervet's Motion to Compel and (ii) stay discovery of the Universities until the Court decides their Motion to Dismiss.

## ARGUMENT AND AUTHORITIES

I.  **Intervet's Perceived Need for Discovery of the Universities Is Not a Basis for Subject Matter Jurisdiction.**

In its Opposition Brief, Intervet re-argues its position concerning the Universities' Motion to Dismiss. Intervet's assertion that its perceived need for discovery from the Universities warrants subject matter jurisdiction over them, (D.I. 63, at 3-4, 9), is demonstrably not the law. *See Pharmachemie B.V. v. Pharmacia S.p.A,* 934 F. Supp. 484, 489 (D. Mass. 1996) (finding that "any perceived or anticipated difficulty with discovery does not provide support for this Court's subject matter jurisdiction where none otherwise exists.") Intervet has obfuscated the subject matter jurisdiction issue since its briefing on the Motion to Dismiss and continues to do so now.

Intervet also argues that the Universities are proper parties to this action because the "totality of the circumstances" somehow created a reasonable apprehension of suit by the

LEGAL02/30185891v5

2

Universities. (D.I. 63, at 3). Significantly, Intervet cites no authority for its assertion that Merial's suit against Intervet creates subject matter jurisdiction over the Universities, especially where the Universities have never threatened Intervet with suit.[1]

Additionally, Intervet well knows that at the time of Merial's previous suit and at the time Intervet filed this action, Merial and the Universities believed Merial had the sole right to enforce the '601 patent under the Tripartite Agreement. To the extent that this was not clear under the original Tripartite Agreement, the amendment to the Tripartite Agreement undoubtedly resolved this issue. In particular, Merial and the Universities amended the Tripartite Agreement to explicitly assign all "rights and title in interest" of all United States patents and patent applications, including the '601 patent and the right to enforce the same, to Merial. (Exhibit A, Exclusive License and Assignment Agreement, ¶ 1.3). As explained in the Universities' Motion to Dismiss, even assuming subject matter jurisdiction over the Universities existed when Intervet filed this suit—though for several reasons previously stated by the Universities it did not[2]—the amendment of the Tripartite Agreement that explicitly divested the Universities of any right to enforce the '601 patent also divested this Court of subject matter jurisdiction over the Universities. *See Pharmachemie,* 934 F. Supp. at 489 (stating that "this Court cannot disregard

---

[1] Intervet also incorrectly asserts that the Georgia district court determined that the Universities are "proper" parties to a declaratory-judgment suit by Intervet. (D.I. 63, at 3). But this issue was never before the Georgia district court, and it never made such a determination. The Georgia court ruled that Merial Limited and Merial SAS could not alone bring suit against Intervet at that time. *Merial Ltd. v. Intervet, Inc.*, 430 F. Supp. 2d 1357, 1361-64 (N.D. Ga. 2006). It did not hold that the Universities threatened suit or caused Intervet to suffer a reasonable apprehension of suit, standards governing a declaratory-judgment action. *Id.*

[2] In particular, no justiciable controversy exists between the Universities and Intervet since, as Intervet has admitted, "[t]he Universities never themselves directly threatened suit against Intervet…." (D.I. 26, at 7.) Absent such a threat, no subject matter jurisdiction exists under the Declaratory Judgment Statute. *See Sherman Treaters, Ltd. v. Ahlbrandt*, 607 F. Supp. 939, 943 (D.D.C.), *aff'd*, 785 F.2d 332 (Fed. Cir. 1985); *see also Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1058 (Fed. Cir. 1995). *Accord BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993).

the fact that the assignment of title to the patents divests this Court of declaratory judgment jurisdiction regardless of the motive behind the assignment"); (for additional authorities, *see* D.I. 22, at 13).

Further, none of the cases that Intervet cites in its Opposition Brief on pages six and seven address the present situation in which foreign entities seek dismissal from a suit for lack of subject matter jurisdiction. Intervet ignores the fact that the Universities are foreign entities afforded protection of international law—specifically, the laws of the sovereign nations of Canada and the United Kingdom (respectively as to USASK and QUB). By attempting to compel discovery of the Universities as parties prior to resolution of the Universities' Motion to Dismiss, Intervet simply seeks to circumvent international laws, policies, and regulations that protect foreign entities so that Intervet may shift the burden and expense of discovery to the Universities and obtain more discovery than permitted.

**II.    A Decision on the Universities' Motion to Dismiss Should Precede a Decision on the Nature and Scope of Discovery from the Universities.**

Although Intervet refers to some portions of this Court's Scheduling Order (the "Order") in its Opposition Brief, it fails to address other portions that clearly contemplate that the Universities need not participate in discovery before a ruling on their Motion to Dismiss. Although the Order does provide that discovery may be served on the Universities starting on September 8, 2006, this was only a date by which the parties anticipated that the Motion to Dismiss might be resolved. The Order does not require the Universities to respond to discovery before a decision on their Motion to Dismiss. In fact, the Order reads to the contrary when it states that discovery of the Universities "shall be consistent with the court's decision on the

LEGAL02/30185891v5

4

Universities' motion to dismiss." (D.I. 35, ¶ 1). This inherently requires that a decision on the Motion to Dismiss precede a decision on the scope and nature of discovery of the Universities.

The Order also states that the Universities need not provide initial disclosures—which initiate the formal discovery process under the federal rules—until "two weeks after the court's decision on the Universities' Motion to Dismiss." (D.I. 35, ¶ 2). This language indicates that it was understood that discovery of the Universities would be stayed until the Court decided the Motion to Dismiss. Accordingly, the Universities properly objected to Intervet's discovery requests based on their pending Motion to Dismiss.

**III.   The Universities Are Providing Documents for Production to Intervet.**

In the spirit of cooperation, the Universities are voluntarily providing documents to Merial for production to Intervet, and those materials satisfy many of the categories in Intervet's document requests.[3] However, Intervet's contention that the Tripartite Agreement *requires* the Universities to submit to formal discovery *as parties* lacks merit. (D.I. 63, at 5). Nothing in the Tripartite Agreement requires the Universities to respond to Intervet's discovery requests, and Intervet provides no support for this contention. (D.I. 63, at 5-6).

Intervet wrongly asserts that the information and materials it seeks from the Universities are in *de facto* "custody or control of Merial" because of contractual obligations under the Tripartite Agreement. (D.I. 63, at 5). But the Tripartite Agreement contains no provision that supports Intervet's assertion. Although the Tripartite Agreement does provide that the

---

[3] Intervet's assertion that the Universities possess much of the most relevant information related to the development of the patent in suit is unfounded. (D.I. 63, at 9-10) As previously stated, the majority of the named inventors are not employed by the Universities or Merial, and thus are not under any of these entities' control. Nonetheless, in the spirit of cooperation, at Intervet's request, Merial has also been contacting these non-party inventors to obtain their cooperation in discovery.

LEGAL02/30185891v5

5

Universities shall "closely cooperate in any procedure and/or defense," (D.I. 63 at 1), this language does not make Merial a custodian, constructive or otherwise, of the Universities' documents.

Intervet relies on *Minebea Co. v. Papst* to support its assertion that Merial controls the Universities and their documents. 370 F. Supp. 2d 302 (D.D.C. 2005). There, Minebea sought deposition testimony from foreign inventors. *Id.* at 307-309. The trial court allowed this inventor testimony, but in doing so, specifically relied on express language in the inventors' assignment that stated the inventors would "testify in any legal proceeding." *Id.* at 308-309. The generalized language of the Tripartite Agreement at issue here does not contain the express language found in the *Minebea* decision which the *Minebea* court specifically relied on in compelling inventor deposition testimony.

Because Intervet is already receiving documents from the Universities, it will not be prejudiced by a temporary stay of discovery of the Universities pending the resolution of their Motion to Dismiss. If Intervet is unhappy with the voluntary discovery that the Universities are providing prior to the Court's decision on the Universities' Motion to Dismiss, Intervet is free, as it recognizes, to pursue discovery of the Universities as non-parties under international law.[4]

Intervet wrongly argues, however, that "discovery of the requested materials is inevitable under either the Hague Convention or Canadian law." (D.I. 63, at 6). Although it is true that the Universities as nonparties will likely be required, under applicable international law, to provide some relevant discovery to Intervet, it is not necessarily the case that they would be subject to the broad, burdensome discovery that Intervet seeks to impose on them as parties. For instance, both

---

[4] "[T]he president and United States Senate have determined that the [Hague] Convention creates an appropriate mechanism to obtain discovery from foreign non-parties." *Pharmachemie,* 934 F. Supp. at 489.

LEGAL02/30185891v5

6

the United Kingdom and Canada appear to place restrictions on pre-trial foreign discovery. (Ex. B & Ex. A to 12/7/2006 Tan Decl. at 5, respectively). Under the Hague Convention, the United Kingdom—including Northern Ireland—made several declarations. One such declaration states, "In accordance with Article 23 Her Majesty's Government declare that the United Kingdom will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents." (Ex. B, at IC-36). Even if the courts in the United Kingdom should allow some pretrial discovery under the Hague Convention, the exact nature and scope of that allowance remains with the United Kingdom's courts to decide.

Canadian law appears to contain a similar restriction. In particular, the U.S. State Department's *Judicial Assistance in Canada* article explains that letters of request issued by American courts must satisfy the Canadian courts that "The U.S. court will use the evidence at trial and not for the purpose of pre-trial discovery…." (*See, e.g.*, Ex. A to 12/7/06 Tan Decl. at 5). And again, even if the Canadian courts in certain provinces should allow some pretrial discovery, the exact nature and scope of that allowance remains with the Canadian courts to decide.

**CONCLUSION**

For the reasons set forth, the Court should (i) deny Intervet's Motion to Compel; (ii) grant the Universities' Motion for Protective Order; and (iii) order, pursuant to Rule 26(c), that discovery of the Universities may be had only if they receive an unfavorable ruling on their Motion to Dismiss. Alternatively, the Court should defer ruling on both Intervet's Motion to Compel and the Universities' Motion for a Protective Order until after a decision is reached on the Universities' previously filed Motion to Dismiss. If the Court finds that it lacks subject

matter jurisdiction over Intervet's declaratory-judgment suit against the Universities and grants the Motion to Dismiss, then Intervet's Motion to Compel will be moot.

Should the Court find that it does have subject matter jurisdiction over Intervet's declaratory-judgment suit against the Universities, they will respond within 21 days to Intervet's discovery requests in full, subject to their other previously asserted objections. Finally, should the Court decide to grant Intervet's Motion to Compel, it should not grant the broad proposed order submitted by Intervet, which does not take into account the Universities' other specific objections to Intervet's discovery requests, such as objections based on privilege or overbreadth, which are not addressed in Intervet's Motion to Compel, and, therefore, were not briefed here by the Universities.

Dated:  December 18, 2006

Respectfully submitted,

*/s/ Timothy A. Ngau*
ALSTON & BIRD, LLP
Timothy A. Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC  20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151

Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for The Queen's University of Belfast and The University of Saskatchewan*