# EXHIBIT A

EXCLUSIVE LICENSE & ASSIGNMENT AGREEMENT

This Exclusive License & Assignment Agreement (hereinafter called "Agreement"), is by and among The Queen's University of Belfast, University Road, Belfast BT7 1NN, Northern Ireland ("QUB"), The University of Saskatchewan ("USASK"), and Merial SAS ("SAS"), 29 avenue Tony Garnier 69007, Lyon, France.

WITNESSETH:

WHEREAS, USASK, QUB, and SAS entered into a February 6, 1998 Research And License Agreement ("the Tripartite Agreement");

WHEREAS it has always been the intention of USASK, QUB and SAS that under the Tripartite Agreement SAS had the unrestricted, exclusive right to grant sublicenses under patents arising from the performance of the Tripartite Agreement, including the patents and patent applications listed in Exhibit A, and any continuation applications thereof, divisional applications thereof, continuation-in-part applications thereof, corresponding foreign patent applications thereto, any continuations, divisionals, continuations-in-part or patents of addition of any of the foreign patent applications, any patents issued therefrom, any extensions or supplementary protection certificates granted on any of the patents, and any reissues or re-examinations of any of the patents ("Intellectual Property"),

WHEREAS it has always been the intention of USASK, QUB and SAS that under the Tripartite Agreement SAS had the unrestricted, exclusive right to file, prosecute and enforce the Intellectual Property; and

WHEREAS the parties wish to clarify the Tripartite Agreement,

NOW, THEREFORE, for and in consideration of the foregoing premises, the undertakings set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto expressly agree as follows:

TRIPARTITE AGREEMENT, EXCLUSIVE LICENSE & GRANT OF LICENSE

1.1.   The parties agree that the Tripartite Agreement remains in force and effect but is clarified, and amended to any extent necessary, as herein provided.

1.2.   USASK and QUB affirmatively confirm the grant to SAS under the Tripartite Agreement and hereby grant to SAS the irrevocable, unrestricted, exclusive right to grant sublicenses under the Intellectual Property, without any requirement for SAS to obtain any approval of such sublicenses from USASK or QUB.

1.3.   USASK and QUB hereby assign to SAS all rights and title and interest in, to, and under the United States patents and patent applications of the Intellectual Property, including the right to sue in its own name solely for past, present and future infringement of the United States patents and patent applications of the Intellectual Property.

00332235

1.4. Merial confirms that royalties from all products manufactured by making use of the results and/or within scope of the patents [the Products as defined in the Research and License Agreement - "the Tripartite Agreement"] shall be calculated on the net sales of Merial SAS, its affiliates, and all of their sublicensees.

2. PATENTS AND INFRINGEMENT

In consideration for this Agreement, SAS has undertaken to and will continue to undertake to pay for costs incident to the prosecution, maintenance, defense and enforcement of the Intellectual Property including United States and foreign applications, patents and like protection.

3. ASSIGNABILITY

This Agreement shall be binding upon and shall inure to the benefit of each of QUB, USASK, and SAS, and each of their assigns and successors in interest, and shall be freely assignable or transferrable by SAS, but shall not otherwise be assignable or assigned or transferred by any of USASK and QUB, whether by contract or by operation of law or otherwise without prior written approval by SAS, which approval may be withheld in SAS's sole discretion, and any such assignment or transfer by any of QUB and USASK in contravention of this restriction shall be null and void *ab initio*.

4. GOVERNING LAW

This Agreement shall be deemed to be subject to, and have been made under, and shall be construed and interpreted in accordance with the laws of the State of Georgia, U.S.A. without reference to any choice of law provisions that might refer such construction and interpretation to the laws of another state, republic, or country. This Agreement is performable in part in Gwinnett County, Georgia, and the federal Northern District of Georgia and the Parties mutually agree that personal jurisdiction and venue shall be proper in the state and federal courts situated in Gwinnett County, Georgia or otherwise in the federal Northern District of Georgia, and agree that any litigated dispute will be conducted solely in such courts.

4.1. Reformation. All Parties hereby agree that neither Party intends to violate any public policy, statutory or common law, rule, regulation, treaty or decision of any government agency or executive body thereof of any country or community or association of countries; that if any word, sentence, paragraph or clause or combination thereof of this Agreement is found, by a court or executive body with judicial powers having jurisdiction over this Agreement or any of its Parties hereto, in a final unappealed order to be in violation of any such provision in any country or community or association of countries, such words, sentences, paragraphs or clauses or combination shall be inoperative in such country or community or association of countries, and the remainder of this Agreement shall remain binding upon the Parties hereto.

4.2. Entire Agreement. The terms and conditions herein constitute the entire agreement between the Parties and shall supersede all previous agreements, either oral or

written, between the Parties hereto with respect to the subject matter hereof. No agreement of understanding bearing on this Agreement shall be binding upon either Party hereto unless it shall be in writing and signed by the duly authorized officer or representative of each of the Parties and shall expressly refer to this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed and delivered this Agreement in multiple originals by their duly authorized officers and representatives on the respective dates shown below, but effective as of the Dates of the Tripartite Agreement and the Agreement Date of the Exclusive License.

MERIAL SAS

Name: _____
Jean-Louis Crosia

Title: _____   Date: _____

UNIVERSITY OF SASKATCHEWAN

Name: _Douglas A. Gill_
_For the Chair Board of Governors_

Title: _General Manager_   Date: _May 24, 2006_
_Industry Liaison Office_

Name: _[signature]_   Date: _May 24, 2006_

Title: _For Secretary Board of Governors_

QUEEN'S UNIVERSITY OF BELFAST
Name: _____

Title: _____   Date: _____

**EXHIBIT A**

FR 97.12382 filed on October 3, 1997
FR 98.00873 filed on January 22, 1998
FR 98.03707 filed on March 20, 1998
PCT/FR98/02107
EP 98.946.547.1
AU 93.555.98
BR PI9.812.845-0
CA 2.305.623
CN 98.810.652.3
HU P0003756
JP 515.010
KR 7003628
MX 3263
PL P339.631
RU 2000/111.496
UA 2000/042.372
PH 02579
TH 046.408
US 09/082.558 filed on May 21, 1998
US 09/161.092 filed as a CIP on September 25, 1998
US provisional 60/069,233 filed on December 11, 1997
US provisional 60/069,750 filed on December 16, 1997
PCT/CA98/01130, filed December 11, 1998 (published as WO 99/29717 on June 17, 1999).

All other patents and patent applications claiming the priority of at least one of these US provisional and PCT applications, and all National Phase, continuation, divisional, continuation-in-part, and any other applications coming from the PCT application.

EXCLUSIVE LICENSE & ASSIGNMENT AGREEMENT

This Exclusive License & Assignment Agreement (hereinafter called "Agreement"), is by and among The Queen's University of Belfast, University Road, Belfast BT7 1NN, Northern Ireland ("QUB"), The University of Saskatchewan ("USASK"), and Merial SAS ("SAS"), 29 avenue Tony Garnier 69007, Lyon, France.

WITNESSETH:

WHEREAS, USASK, QUB, and SAS entered into a February 6, 1998 Research And License Agreement ("the Tripartite Agreement");

WHEREAS it has always been the intention of USASK, QUB and SAS that under the Tripartite Agreement SAS had the unrestricted, exclusive right to grant sublicenses under patents arising from the performance of the Tripartite Agreement, including the patents and patent applications listed in Exhibit A, and any continuation applications thereof, divisional applications thereof, continuation-in-part applications thereof, corresponding foreign patent applications thereto, any continuations, divisionals, continuations-in-part or patents of addition of any of the foreign patent applications, any patents issued therefrom, any extensions or supplementary protection certificates granted on any of the patents, and any reissues or re-examinations of any of the patents ("Intellectual Property"),

WHEREAS it has always been the intention of USASK, QUB and SAS that under the Tripartite Agreement SAS had the unrestricted, exclusive right to file, prosecute and enforce the Intellectual Property; and

WHEREAS the parties wish to clarify the Tripartite Agreement,

NOW, THEREFORE, for and in consideration of the foregoing premises, the undertakings set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto expressly agree as follows:

1. TRIPARTITE AGREEMENT, EXCLUSIVE LICENSE & GRANT OF LICENSE

   1.1. The parties agree that the Tripartite Agreement remains in force and effect but is clarified, and amended to any extent necessary, as herein provided.

   1.2. USASK and QUB affirmatively confirm the grant to SAS under the Tripartite Agreement and hereby grant to SAS the irrevocable, unrestricted, exclusive right to grant sublicenses under the Intellectual Property, without any requirement for SAS to obtain any approval of such sublicenses from USASK or QUB.

   1.3. USASK and QUB hereby assign to SAS all rights and title and interest in, to, and under the United States patents and patent applications of the Intellectual Property, including the right to sue in its own name solely for past, present and future infringement of the United States patents and patent applications of the Intellectual Property.

1.4. Merial confirms that royalties from all products manufactured by making use of the results and/or within scope of the patents [the Products as defined in the Research and License Agreement - "the Tripartite Agreement"] shall be calculated on the net sales of Merial SAS, its affiliates, and all of their sublicensees.

2. PATENTS AND INFRINGEMENT

In consideration for this Agreement, SAS has undertaken to and will continue to undertake to pay for costs incident to the prosecution, maintenance, defense and enforcement of the Intellectual Property including United States and foreign applications, patents and like protection.

3. ASSIGNABILITY

This Agreement shall be binding upon and shall inure to the benefit of each of QUB, USASK, and SAS, and each of their assigns and successors in interest, and shall be freely assignable or transferrable by SAS, but shall not otherwise be assignable or assigned or transferred by any of USASK and QUB, whether by contract or by operation of law or otherwise without prior written approval by SAS, which approval may be withheld in SAS's sole discretion, and any such assignment or transfer by any of QUB and USASK in contravention of this restriction shall be null and void *ab initio*.

4. GOVERNING LAW

This Agreement shall be deemed to be subject to, and have been made under, and shall be construed and interpreted in accordance with the laws of the State of Georgia, U.S.A. without reference to any choice of law provisions that might refer such construction and interpretation to the laws of another state, republic, or country. This Agreement is performable in part in Gwinnett County, Georgia, and the federal Northern District of Georgia and the Parties mutually agree that personal jurisdiction and venue shall be proper in the state and federal courts situated in Gwinnett County, Georgia or otherwise in the federal Northern District of Georgia, and agree that any litigated dispute will be conducted solely in such courts.

4.1. Reformation. All Parties hereby agree that neither Party intends to violate any public policy, statutory or common law, rule, regulation, treaty or decision of any government agency or executive body thereof of any country or community or association of countries; that if any word, sentence, paragraph or clause or combination thereof of this Agreement is found, by a court or executive body with judicial powers having jurisdiction over this Agreement or any of its Parties hereto, in a final unappealed order to be in violation of any such provision in any country or community or association of countries, such words, sentences, paragraphs or clauses or combination shall be inoperative in such country or community or association of countries, and the remainder of this Agreement shall remain binding upon the Parties hereto.

4.2. Entire Agreement. The terms and conditions herein constitute the entire agreement between the Parties and shall supersede all previous agreements, either oral or

written, between the Parties hereto with respect to the subject matter hereof. No agreement of understanding bearing on this Agreement shall be binding upon either Party hereto unless it shall be in writing and signed by the duly authorized officer or representative of each of the Parties and shall expressly refer to this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed and delivered this Agreement in multiple originals by their duly authorized officers and representatives on the respective dates shown below, but effective as of the Dates of the Tripartite Agreement and the Agreement Date of the Exclusive License.

**MERIAL SAS**

Name: _Jean-Louis Crosia_

Title: President            Date: 01 June 2006

**UNIVERSITY OF SASKATCHEWAN**

Name: _____

Title: _____    Date: _____

Name: _____    Date: _____

Title: _____

**QUEEN'S UNIVERSITY OF BELFAST**

Name: _[signature]_        DR. P-GRAHAM

Title: IP MANAGER          Date: 30.5.06.

**EXHIBIT A**

FR 97.12382 filed on October 3, 1997
FR 98.00873 filed on January 22, 1998
FR 98.03707 filed on March 20, 1998
PCT/FR98/02107
EP 98.946.547.1
AU 93.555.98
BR PI9.812.845-0
CA 2.305.623
CN 98.810.652.3
HU P0003756
JP 515.010
KR 7003628
MX 3263
PL P339.631
RU 2000/111.496
UA 2000/042.372
PH 02579
TH 046.408
US 09/082.558 filed on May 21, 1998
US 09/161.092 filed as a CIP on September 25, 1998
US provisional 60/069,233 filed on December 11, 1997
US provisional 60/069,750 filed on December 16, 1997
PCT/CA98/01130, filed December 11, 1998 (published as WO 99/29717 on June 17, 1999).

All other patents and patent applications claiming the priority of at least one of these US provisional and PCT applications, and all National Phase, continuation, divisional, continuation-in-part, and any other applications coming from the PCT application.