UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN, <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK-JMF) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO INTERVET'S MOTION TO AMEND THE CASE SCHEDULING ORDER'S CLAIM CONSTRUCTION DEADLINES**

**INTRODUCTION**

Intervet's motion to amend the case schedule is unnecessary, premature, and, if granted, would significantly prejudice Merial.[1] It is unnecessary because Intervet does not need inventor discovery for claim construction. Abundant Federal Circuit authority holds that such extrinsic evidence is unnecessary for claim construction, and Intervet does not identify any particularized need for inventor testimony. Instead, Intervet speculates that such testimony "*may* be relevant to claim construction given the highly complex nature of the technology involved in the case." (D.I. 67, p. 2 (emphasis added)). But by its own acts, Intervet has demonstrated that it does not need inventor testimony. Intervet has already provided its proposed claim constructions, both to the

---

[1] In this brief, the term "Merial" refers collectively to Merial Limited and Merial SAS. The term "Universities" refers collectively to the University of Saskatchewan and The Queen's University of Belfast. The term "Defendants" refers collectively to Merial and the Universities. The Universities participate in this motion subject to and without prejudice to their previously filed Motion to Dismiss for Lack of Jurisdiction (D.I. 21).

court and Merial in the previous Georgia action and to Merial in the present case, without relying on such extrinsic evidence.

Intervet's motion is premature because claim construction briefing does not begin until April. Thus, Intervet has time to depose the inventors if it wishes to do so. Intervet's purported excuse for not doing so yet—its contention that it needs all of the documents from all of the inventors—fails. At Intervet's request, Merial voluntarily sought materials from the non-party inventors, none of whom are located in the U.S. Merial has kept Intervet apprised of its efforts, and Intervet has received nearly all of the inventors' documents that Merial has been able to collect.[2] Intervet, however, has taken no steps to obtain discovery from any of the non-party inventors through formal mechanisms, such as the Hague Evidence Convention.

Intervet's motion, if granted, will significantly prejudice Merial. Intervet erroneously asserts that its proposed amendment will not affect the remainder of the case schedule in any way. Intervet's proposed amendment, however, would provide no time for discovery following the Court's claim-construction ruling.[3] Therefore, either the discovery deadline would have to be extended, thereby altering the other case deadlines, or Merial would be denied the opportunity to conduct fact discovery based on the Court's claim-construction ruling. In either event, Intervet's assertion that its proposed amendment will not affect the remainder of the case is disingenuous.

Intervet knows that, given claim construction's central role in patent litigation, delaying this process will significantly prejudice Merial. Intervet is the infringer in this patent litigation,

---

[2] Merial is currently reviewing some additional documents and expects to produce these documents before the month's end.

[3] Under Intervet's proposed schedule, the claim construction hearing would not be held until mid-July, thereby leaving the Court only 30 days to issue a claim-construction ruling before the close of fact discovery on August 24. (*See* D.I. 67, p. 8).

and it is only to Intervet's advantage—not Merial's—to protract this litigation and forestall an adjudication of Intervet's infringement for as long as possible. Several factors demonstrate that Intervet's only goal is delay. Namely, Intervet (i) failed to respond to Merial's counsels' correspondence for weeks on end, (ii) is unwilling to proceed with reasonable and prompt discovery, relying instead on lamentations that it needs every document (which, of course, it requires be exchanged only on Intervet's terms) before it can proceed with any deposition, and (iii) has blatantly disregarded this Court's orders that required it to participate in the claim-construction process on a schedule that was more expedited than Intervet preferred. Intervet's tactics—including blaming its opponents for delays of Intervet's own making—are the transparent acts of an infringer that wants to do all it can, for as long as it can, to keep its infringing product on the market. This Court should not reward Intervet's stall tactics, its disregard for the August 4, 2006 Scheduling Order, and its attempt to *de facto* impose on this Court and the Defendants the scheduling order that this Court refused to grant to Intervet in August 2006.

**FACTUAL BACKGROUND**

**I.     History of the Prior, Related, Georgia Action:  Intervet's Ability to Construe the '601 Patent Claims in that Action.**

On December 15, 2005, Merial filed suit against Intervet in Georgia alleging infringement of U.S. Patent No. 6,368,601 ("the '601 patent"), the patent at issue here. On March 31, 2006, Merial filed a motion for a preliminary injunction against Intervet. (*See* 3/31/2006 Merial P.I. Br., submitted as Ex. A). In its motion, Merial explained how Intervet's PCV-II vaccine infringed at least claims 9, 16, 32, 33, and 35 of the '601 patent and provided a claim chart comparing these claims against Intervet's infringing PCV-II vaccine. (*See* Ex. A at 9, 12-13; *see also* 4/22/2006 Merial P.I. Reply Br. at 4-9, submitted as Ex. B).

In response, Intervet submitted an opposition brief, in which it proffered constructions of several key claim terms, including PCV-2 and ORFs 1 to 13 of porcine circovirus type II. (*See* 4/20/2006 Intervet Br. at 13-15, submitted as Ex. C). Additionally, Intervet submitted a declaration from its proposed expert, Dr. Fernando A. Osorio, addressing its proposed constructions of claim terms. (*See* 4/20/2006 Osario Decl. at 10-15, submitted as Ex. D). Intervet, through Dr. Osorio, offered constructions for claim terms, including porcine circovirus type II, PCV-2, PCV-1, and ORF. (*See id.*). Thus, in the Georgia action, Intervet was able to interpret and litigate the '601 patent, including advancing constructions of disputed claim terms, without inventor depositions or the production of all inventor documents.[4]

## II.     History of This Action: Intervet's Ability to Construe the '601 Patent Claims.

### A.     The Parties Have Exchanged Proposed Claim Constructions.

On April 11, 2006, Intervet filed its Complaint for Declaratory Judgment in this Court, alleging, *inter alia*, that it does not infringe Merial's '601 patent. (D.I. 1). Prior to July 20, 2006, the parties conferred but failed to reach an agreement concerning a proposed scheduling order. On July 20, the parties submitted their respective proposed scheduling orders to the Court for resolution. The orders mainly differed in the timing of the *Markman* claim-construction process and associated deadlines. (*See* D.I. 24). The Defendants argued, consistent with prevailing wisdom, including that of independent patent bar organizations, that the claim-construction process should take place before fact discovery concludes. In contrast, Intervet argued that claim construction should occur after the close of both fact and expert discovery. The parties subsequently briefed this issue. (D.I. 27, 32).

---

[4] On April 27, 2006, in response to a motion to dismiss for lack of jurisdiction, which was filed on the same day as Intervet filed this action, the district court in Georgia dismissed that action without prejudice.

On July 31, the Court heard oral arguments. On August 4, the Court entered a Scheduling Order, agreeing with the Defendants that the *Markman* claim-construction process should occur well before fact discovery ends.

In the Scheduling Order, the Court set November 13, 2006, as the deadline for the parties to exchange their initial proposed constructions of claim terms they believed were in dispute. (D.I. 35, ¶¶ 4-8). The Defendants complied with this date and provided Intervet their list of disputed claim terms and proposed constructions. Intervet did not comply. Instead, Intervet sought to reargue the *Markman* process timing issue by filing a motion to amend the case schedule. When informed that the Defendants considered Intervet to be in contempt of the Court's Scheduling Order, Intervet withdrew its motion on November 16, and served its list of proposed claim term constructions, albeit three days *after* the Court-imposed deadline. (Ex. H). Although tardy, Intervet was able to interpret the '601 patent and advance constructions of disputed claim terms without the extrinsic evidence of inventor documents and inventor depositions that it claimed it needed.

### B.  Merial's Efforts to Advance the Case and Intervet's Delay Tactics.

Contrary to Intervet's assertions, Merial has tried to move discovery forward, but has faced obstruction from Intervet at every turn. For example, in order to facilitate the exchange of the parties' confidential documents, Merial was first to propose a protective order. Rather than agree to this proposed protective order and facilitate the early exchange of documents, Intervet opposed it. Intervet asserted that only a select few of Merial's counsel of record should have access to Intervet's confidential documents. Merial has endeavored to work through the protective order issue, including in its proposed orders numerous safeguards to ensure the

confidentiality of any production.[5] Yet, Intervet maintains that certain of Merial's counsel of record should be excluded from having complete access to Intervet's document production. (*See* D.I. 34, 39, 42, 44, & 45). [6]

In addition to trying to move document production along, on October 6, Merial assumed the lead in proposing a procedure for handling electronic discovery. (*See* Comp. Ex. E, 10/6/2006 e-mail). Intervet, however, took considerable time before responding to Merial's proposal, not replying for several weeks and then insisting on additional conditions, which delayed the parties from reaching an agreement on a proposal for electronic discovery until November 16—more than a month after Merial's initial proposal. (*See* Comp. Ex. E, 10/31/2006 e-mail; 11/16/2006 email).

Moreover, Merial, not Intervet, attempted to expedite the depositions of the inventors. (*See* Comp. Ex. E, correspondence dated 8/14/2006, 8/17/2006, 9/12/2006, 9/15/2006, 9/19/2006, & 9/26/2006). None of the inventors reside in the United States and thus, none can be compelled to be deposed here. At Intervet's request, however, Merial contacted the inventors to obtain their voluntary cooperation and allow Intervet to depose them in the United States.

In a September 26 letter, Merial informed Intervet that several of the inventors had agreed to October depositions in the United States. Merial further explained that, if Intervet wished to proceed with the October depositions, Merial would obtain these inventors' documents

---

[5] For example, Merial's proposed protective order provides that ATTORNEYS' EYES ONLY materials may not be stored at any office or premises of any party. *See* D.I. 42, Ex. A, ¶ 9). It also provides that persons having access to ATTORNEYS' EYES ONLY material "shall not be personally involved in the preparation or prosecution of any patent application related to PCV-2 viruses or vaccines during the litigation and for one year after its resolution, including any appeal." (*See* D.I. 42, Ex. A, ¶ 7(a)). Merial's proposed protective order also provides that materials designated as Confidential or ATTORNEYS' EYES ONLY "shall be used only for preparation and prosecution of this action and any appeals thereof." (*See* D.I. 42, Ex. A, ¶ 12).

[6] On February 23, the Court will address the parties' competing protective orders. Yet, in spite of the parties inability to agree on a protective order, Merial has produced thousands of documents, subject to Intervet's

and provide them to Intervet in advance of the depositions. (*See id.*) Despite subsequent correspondence on this issue from Merial's counsel, Intervet waited a month to reply to Merial's offer. (*See* Comp. Ex. E, 10/26/2006 Ltr.). When Intervet finally replied on October 26, it balked at taking the inventors' depositions, and insisted that it must receive *all* of the documents from *all* of the inventors and *all* of the parties before taking *any* inventor's deposition.[7] (*See id.*)

Intervet also asserted in its October 26 letter, that unless the inventors' depositions occurred before November 13, the parties could not exchange their proposed claim constructions by that date. (*See id*.) Intervet knew, however, that its tactics—including its delays in failing to respond to Merial's correspondence for weeks on end—made scheduling any of the inventors' depositions before November 13 virtually impossible. Intervet adopted this position despite Merial's repeated explanations that the inventors' depositions were unnecessary to comply with the mandated November 13 date.[8] (*See* Comp. Ex. E, correspondence dated 9/19/2006 and 11/6/2006).

On November 6, a week before the November 13 deadline, the Defendants gave Intervet a list of the terms they believed were in dispute and asked Intervet to identify additional terms, if any, that it believed were in dispute. In this way, the parties would know the disputed terms and could accordingly give proposed constructions by November 13. (*See* Comp. Ex. E, 11/6/2006 Ltr.). In response, Intervet's counsel informed Merial's counsel by telephone that Intervet intended to file a motion to amend the case schedule to postpone the November 13 date for

---

agreement to treat them as "Attorney's Eyes Only" until a protective order is entered. (*See* correspondence from Merial's counsel dated 9/26/2006, 10/31/2006 & 11/6/2006, submitted as part of Composite Ex. E).

[7] Intervet also refused to share in the costs of bringing certain of the inventors to the U.S. for their depositions. (*See* Comp. Ex. E, 9/15/2006 Ltr.)

[8] The accuracy of Merial's position that Intervet did not need inventor depositions is reflected by (i) Federal Circuit case law and (ii) Intervet's ability to comply eventually with the Court Order concerning claim construction without taking the inventors' depositions.

exchanging proposed claim constructions until January 23, 2007, i.e., that Intervet intended to push the initial stages of the *Markman* claim-construction process back by two months.

Given the belatedness of Intervet's proposal to delay the claim-construction process and the impending deadline for the exchange of proposed claim constructions, Merial suggested the parties jointly call the Court to request a hearing on the issue before the scheduled deadline. Intervet refused and proceeded to file a motion to amend on November 7, 2006. On November 10, Merial informed Intervet that, notwithstanding Intervet's tactics, Defendants intended to comply with the Court's Order and urged Intervet to reconsider its position and that it too comply with the Court's Scheduling Order. (*See* Comp. Ex. E, 11/10/2006 Ltr.).

On November 13, Defendants provided Intervet with their proposed constructions for those terms that the Defendants believed were in dispute. (*See* Ex. F). Rather than risk a contempt citation, Intervet provided its claim constructions on November 16, three days after the Court mandated deadline for the parties to exchange their constructions. (*See* Ex. H). Intervet also withdrew its prior motion to amend the case schedule. Contrary to its prior assertions, Intervet again showed that it was able to interpret the '601 patent claims and provide claim constructions of disputed claim terms, without resort to any extrinsic evidence of inventor depositions or inventor documents.

On January 30, 2007, using Intervet's tardy November 16 proposed claim constructions and Merial's timely November 13 claim constructions, Merial provided Intervet a draft Joint Claim Construction statement, so that the parties could timely prepare for the Court's February 23 deadline. (*See* Ex. G) However, instead of working with the Defendants on the Joint Claim Construction statement, Intervet again sought to delay this case by filing the present motion to

amend the case scheduling order, thereby seeking to impose upon the Defendants and this Court the Scheduling Order that Intervet was denied in August 2006.

Intervet's pattern of conduct is consistent and revealing: Intervet (i) refused to reach agreement with the Defendants on the Scheduling Order, (ii) refused to reach agreement with the Defendants on a protective order, (iii) delayed discovery by failing to respond to Merial's correspondence for approximately a month, and (iv) twice refused to engage in the *Markman* claim construction process and moved to amend the Scheduling Order. Intervet's clear goal is to stall the progress of this action.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   A Postponement of Claim Construction Is Unnecessary.

Contrary to Intervet's assertions, there is no legitimate reason why Intervet cannot proceed with the Court's current schedule for claim construction. Indeed, under well-settled case law, in order to comply with their Rule 11 obligations, Intervet and its counsel must have construed the claims at issue *before* they filed this action seeking a declaratory judgment of noninfringement, invalidity, and unenforceability. *Cf., e.g.*, *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 984 (Fed. Cir. 2000) (affirming award of Rule 11 sanctions where counsel failed to perform an independent claim construction analysis before filing counterclaims for patent infringement). Tellingly, Intervet was able to, and did, provide its claim construction of disputed terms both in the prior Georgia action and in November 2006 in this action, despite its prior assertions—the same ones on which it attempts to justify the present motion—that it first needs to take the inventors' depositions. (*See* Comp. Ex. E, 10/26/2006 Ltr., *see also* Exs. C & H).

Moreover, Intervet's renewed assertion that it needs inventor testimony to construe the claims is also contrary to well-settled case law. The Federal Circuit has repeatedly explained that inventors' deposition testimony should be given little, if any, consideration in claim construction. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) (en banc) (holding that inventor testimony as to "[t]he subjective intent of the inventor when he used a particular term is of little or no probative weight in determining the scope of a claim"), *aff'd,* 517 U.S. 370 (1996); *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("The testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration."); *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 n.5 (Fed. Cir. 2003) (explaining that "this court has often repeated that inventor testimony is of little probative value for purposes of claim construction"). Intervet has provided no basis to believe that inventor testimony is necessary for claim construction in this case. Intervet merely speculates that such testimony "*may* be relevant to claim construction given the highly complex nature of the technology involved in this case." (D.I. 67, p. 2 (emphasis added)).

The Federal Circuit has emphasized that the primary consideration in construing patent claims is the intrinsic evidence, which includes the language of the claims, the specification, and the patent's prosecution file history. *See, e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) ("Usually, [the specification] is dispositive [to the claim construction analysis]; it is the single best guide to the meaning of a disputed term."). All of this intrinsic evidence is publicly available, and has been in Intervet's possession since at least the earlier filed Georgia action. (*See, e.g.*, Ex. D, ¶¶ 1, 25 (Intervet's proffered expert's declaration, discussing his review of the '601 patent and its prosecution history)).

Indeed, Intervet demonstrated in the Georgia action that it is fully capable of construing the claim terms without the need for any discovery. (*See* Ex. C at 13-15 (proffering Intervet's proposed construction of various claim terms, including PCV-2). For example, Intervet proffered its proposed meaning of the claim term "PCV-2" stating, "a person of skill in the art reviewing the '601 patent specification would understand the invention of the patent to be the five isolated strains and would understand the term 'PCV-2' to be limited to the sequences of those strains…." (*Id.* at 14). Intervet additionally proffered its proposed constructions of the claim term "ORFs 1 to 13 of PCV-II." (*Id.* at 14-15). In fact, Intervet submitted a declaration of its proposed expert, who offered proposed meanings of various claim terms, including porcine circovirus type II, PCV-2, PCV-1, and ORF. (Ex. D at 10-15). Thus, in the Georgia action, Intervet demonstrated the ability to both identify claim terms and propose constructions, without discovery from the inventors, contrary to what Intervet now asserts is necessary.

Accordingly, Intervet's assertion that it needs inventor testimony before it can participate in claim construction is eloquently refuted by Intervet's own conduct.

## II.     Intervet Should Not Benefit From Its Own Dilatory Tactics.

As described above in Section II.B. of the Factual Background, Intervet has repeatedly engaged in delay tactics in this case such as (i) waiting weeks to respond to Merial's letters, (ii) refusing to stipulate to a reasonable Scheduling Order, (iii) refusing to stipulate to a reasonable protective order, (iv) insisting on receiving all of the documents from all of the inventors and all of the parties before taking any depositions, and (v) twice refusing to engage in the *Markman* claim construction process and twice moving to amend the scheduling order.

Further, in its current motion to amend, Intervet misstates several facts, including some that had been brought to Intervet's attention before Intervet filed the motion. For example,

LEGAL02/30248767v3

Intervet falsely asserts that the Universities have refused to participate in discovery. (D.I. 67, p. 1). Putting aside the fact that this Court ordered a stay of discovery as to the Universities pending resolution of their Motion to Dismiss (*See* Minute Order dated 1/19/2007), this is simply untrue. As Merial previously explained to Intervet, Merial contacted the Universities and asked for their cooperation in providing documents. Indeed, in its December 11 production, Merial produced The University of Saskatchewan's ("USASK's") documents. Furthermore, when Intervet previously falsely asserted in a letter to Merial that Merial had not produced any documents from the Universities, Merial specifically explained that its December 11 production included USASK's documents.[9] (*See* Comp. Ex. E, 1/25/2007 Ltr.). That Intervet subsequently made this misstatement to the Court, despite having knowledge to the contrary, is beyond explanation.

Intervet's attempt to blame Merial for the fact that Intervet has taken no depositions is equally disingenuous. Notably, Intervet has made no efforts to obtain discovery from the inventors under the Hague Evidence Convention or other relevant international law. Rather, Intervet has chosen to rely on Merial's efforts to voluntarily secure discovery from the inventors. As explained below, however, rather than cooperate in Merial's efforts, Intervet has thwarted Merial at every turn. For example, although not obligated to do so, at Intervet's request, Merial agreed to contact the inventors to request that they voluntarily appear in the U.S. for their depositions. (*See* Comp. Ex. E, correspondence dated 8/14/2006, 8/17/2006, 9/12/2006, 9/15/2006, 9/19/2006, 9/26/2006). As explained above, when Merial informed Intervet that

---

[9] Merial also explained in the January 25 letter that, although Merial has not received any relevant documents from The Queen's University of Belfast ("QUB"), QUB is actively looking for relevant documents. However, because the inventors at issue actually work for Agri-Food Biosciences Initiative ("AFBI"), and not QUB, it is likely that QUB does not have many, if any, relevant documents. (*See* Comp. Ex. E, 1/25/2007 Ltr.). Merial has informed Intervet that it had recently received documents from the inventors at AFBI, and that such documents were being reviewed for production. (*See id.*)

certain of the inventors agreed to make themselves available for their depositions in the United States and that Merial would expedite the collection of documents from those inventors in order to make those documents available to Intervet in advance of the inventors' depositions, Intervet waited a month to reply to Merial's offer, and even then it balked at taking the inventors' depositions.  (*See* Comp. Ex. E, correspondence dated 8/17/2006, 9/12/2006, 10/26/2006). Instead, Intervet claimed that it must receive *all* of the documents from *all of the inventors* and *all of the parties* before taking any inventor depositions.  (*See* Comp. Ex. E. 10/26/2006 letter). In addition, Intervet refused to split the costs of bringing the inventors to the U.S., even though (i) Intervet requested that the depositions occur in the U.S. and (ii) there is no requirement that the inventors voluntarily appear in the U.S. for deposition.[10]  (*See* Comp. Ex. E, 9/15/2006 Ltr.). Given its unreasonable positions, Intervet knew that depositions would be delayed indefinitely, providing Intervet with what it mistakenly perceives as justification to seek a time extension concerning claim construction.

Intervet also falsely asserts that it had no inventor documents at the time it filed its motion. (See D.I. 67, p. 1).  Merial explained in its January 25 letter that its November 20, 2006 production included documents that it had previously collected from the inventors relating to the '601 patent.[11]  (*See* Comp. Ex. E, 1/25/2007 Ltr.).  Merial also explained that it has gathered additional inventor documents and is reviewing them for production.  A large portion of these documents were produced to Intervet on February 1, 2007.  (Comp. Ex. E, 2/1/2007 Ltr.).

---

[10] All of the investors reside abroad.

[11] Contrary to Intervet's initial assertion on page 1 of its brief that Merial has "failed to produce documents from the inventors of the patent in suit," Intervet admits later in its brief that "about 1000 pages of [Merial's] total production appear to be documents that may have arguably originated from the inventors at some point in time." (*See* D.I. 67, pp. 3-4)

Intervet's unexplained delays do not depict a party interested in moving matters forward, or a party that is concerned with complying with the Court's Scheduling Order. Instead, they reveal a party intent on using deliberate tactics to delay this action. This Court should not reward Intervet's purposeful attempts to *de facto* impose on the Defendants and this Court the scheduling order that this Court refused to grant Intervet in August 2006.

### III. Intervet's Request for Delay is Premature.

As discussed in the previous section and conceded by Intervet, Intervet has inventor documents. Merial first produced inventor documents on November 20, 2006, (*See* Comp. Ex. E, 11/20/2006 Ltr.; *see also* 1/25/2007 Ltr.), and then again produced later collected inventor documents on February 1.[12] Despite this, Intervet (i) declined to take the depositions that Merial attempted to schedule beginning in October 2006; (ii) refused Merial's offer to split the costs of bringing certain inventors to the U.S.; and (iii) has made no efforts on its own to arrange for depositions outside the U.S. under the Hague Evidence Convention or other international law. If depositions were so crucial to Intervet's claim construction, Intervet should have made a legitimate effort to take at least one deposition by now. Even though such testimony is unnecessary, Intervet still has time to schedule inventor depositions before claim construction briefing begins in April. But, as evidenced by this motion, Intervet is more intent on attempting to delay the resolution of this case, than it is on taking discovery.

### IV. Moving the Claim Constructions Deadlines Would Prejudice Merial.

Intervet falsely asserts that Merial will suffer no prejudice from its proposed claim construction delay. Not only do Intervet's tactics delay judgment day for patent infringement,

---

[12] If Intervet had truly attempted to meet and confer before filing this motion, or had inquired about these documents, it would have learned that the disc with these documents was being finalized on the day that Intervet filed its motion, and would be sent to Intervet the next day. (*See* Comp. Ex. E, 2/1/2007 Ltr.).

but Intervet's refusal to comply with the Scheduling Order forces Merial to proceed with discovery of Intervet's noninfringement, invalidity, and unenforceability allegations without knowing the Court's claim constructions.

And though Intervet claims that its proposed delay would not affect any additional dates in the Scheduling Order, (D.I. 67, p. 8), Intervet's newly proposed schedule leaves only a month after its anticipated mid-July *Markman* hearing before the August 24 close of fact discovery. Thus, under Intervet's schedule, the Court would be hard-pressed to issue a claim-construction ruling before the close of fact discovery. Accordingly, Intervet's assertion that "claim construction will be concluded *well before* the close of fact discovery" is disingenuous at best. (*See* D.I. 67, p. 9 (emphasis added)).

And even if the Court construed the claims soon after the mid-July *Markman* hearing, Merial would be afforded little, if any, time before fact discovery's August 24 end. That is, there would be essentially no discovery after the Court's claim construction ruling. Thus, either Intervet seeks, through its latest proposed schedule, to deny Merial the opportunity to conduct discovery following the Court's claim-construction ruling, and is in essence again seeking to impose the scheduling order it was denied in August 2006, or Intervet expects that its schedule will necessarily require additional delays in the case schedule, thereby delaying the resolution of the case.

Merial has a strong interest in protecting its intellectual property via prompt resolution of this litigation. In contrast, Intervet's interests remain in delaying this case so it may continue to infringe Merial's patent. Merial will suffer significant prejudice if Intervet is allowed to delay this case.

## CONCLUSION

For the reasons set forth herein and on the authorities cited, and for the reasons that this Court previously denied Intervet's attempts to impose a scheduling order in which claim construction occurs after the close of both fact and expert discovery, Intervet's present motion should be denied.

Dated:  February 15, 2007

          Respectfully submitted,

*/s/ Timothy A. Ngau*
ALSTON & BIRD, LLP
Timothy Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC  20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

– 17 –

        Tel.: (404) 881-7000
        Fax: (404) 881-7777

*Counsel for Merial Limited, Merial SAS, The Queen's University of Belfast, and The University of Saskatchewan*