# EXHIBIT A

Alston & Bird

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

MERIAL LIMITED,

     Plaintiff,

v.

INTERVET, INC.,

     Defendant.

Civil Case No. 1:05-cv-3168-CAP

## MEMORANDUM IN SUPPORT OF PLAINTIFF

## <u>MERIAL LIMITED'S MOTION FOR A PRELIMINARY INJUNCTION</u>

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................5

STATEMENT OF FACTS ...........................................................................6

LEGAL ARGUMENT .................................................................................8

I.    MERIAL SATISFIES THE REQUIREMENTS FOR A PRELIMINARY

    INJUNCTION..........................................................................................8

    A.    The Preliminary Injunction Standard .......................................8

    B.    Merial Is Likely To Succeed On The Merits..............................9

    C.    Intervet Is Actively Infringing The '601 Patent ....................10

    D.    The '601 Patent Is Valid.......................................................14

    E.    Merial Will Be Irreparably Harmed Absent Preliminary Relief............16

    F.    The Balance Of Hardships Weighs In Merial's Favor ..........................20

    G.    The Public Interest Favors Preliminary Relief.....................................22

CONCLUSION ........................................................................................24

# TABLE OF AUTHORITIES

Cases

*Amazon.com, Inc. v. Barnesandnobel.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) ...........................................................................9

*Atlas Powder Co. v. Ireco Chemicals*,
  773 F.2d 1230 (Fed. Cir. 1985) .........................................................................16

*California Med. Prods., Inc. v. Emergency Med. Prods., Inc.*,
  796 F. Supp. 640 (D.R.I. 1992) .........................................................................20

*Canon Computer Sys., Inc. v. NU-Kote Int'l, Inc.*,
  134 F.3d 1085 (Fed. Cir. 1998) ................................................................... 14, 16

*Coca-Cola Co. v. Alma-Leo USA, Inc.*,
  719 F. Supp. 725 (N.D. Ill. 1989) ......................................................................16

*Comarck Communications, Inc. v. Harris Corp.*,
  156 F.3d 1182 (Fed. Cir. 1998) .........................................................................10

*Gilette Co. v. Energizer Holdings Inc.*,
  405 F.3d 1367 (Fed. Cir. 2005) ...........................................................................8

*Graham v. John Deere Co.*,
  383 U.S. 1 (1966) ............................................................................................ 14, 15

*H.H. Robertson Co. v. United Steel Deck*,
  820 F.2d 384 (Fed. Cir. 1987) .............................................................. 8, 9, 14, 20

*Hybritech Inc. v. Abbott Labs.*,
  849 F.2d 1446 (Fed. Cir. 1988) ............................................... 8, 9, 16, 22, 23

*Interconnect Planning Corp. v. Feil*,
  774 F.2d 1132 (Fed. Cir. 1985) .........................................................................15

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) ......................................................................... 9, 11

*National Presto Indus. Inc. v. Dazey Corp.*,
  18 USPQ2d 1113 (N.D. Ill. 1990) .....................................................................23

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ...................................................................... 9, 10

*Pitney Bowes, Inc., v. Hewlett-Packard Co.*,
  182 F.3d 1298 (Fed. Cir. 1999) .........................................................................10

*Polymer Tech., Inc. v. Bridwell, H.A.*,
  103 F.3d 970 (Fed. Cir. 1996) .............................................................................8

*Smith Int'l, Inc. v. Hughes Tool Co.*,
  718 F.2d 1573 (Fed. Cir. 1983) ...............................................7, 16, 21, 22, 23

*Transmatic, Inc. v. Gulton Indus., Inc.*,
   53 F.3d 1270 (Fed. Cir. 1995) ........................................................................ 10
*Vitronics Corp. v. Conceptronic, Inc*,
   90 F.3d 1576 (Fed. Cir. 1996) .......................................................................... 9
*WMS Gaming, Inc. v. Int'l Game Tech.*,
   184 F.3d 1339 (Fed. Cir. 1999) ...................................................................... 15

<u>Statutes</u>

35 U.S.C. § 283 ...................................................................................................... 7
35 U.S.C. §103 ...................................................................................................... 15

## INTRODUCTION

This is a patent infringement action by Plaintiff, Merial Limited ("Merial"). Defendant, Intervet, Inc. ("Intervet"), makes, uses, offers to sell, and offers to export a porcine circovirus type 2 ("PCV") vaccine that infringes Merial's U.S. Patent No. 6,368,601 ("the '601 patent").  Intervet is threatening to sell and export from the United States its infringing PCV vaccine.  Merial, through its wholly owned subsidiary, makes and sell a competing PCV vaccine CIRCOVAC®, in Europe and Canada.  Merial is currently seeking authorization from the United States Department of Agriculture ("USDA") to market CIRCOVAC® in the United States.  Merial has been, and is being, injured by Intervet's infringing activities and will be irreparably harmed if Intervet beats Merial to market through the selling and exporting of its infringing PCV vaccine.  An immediate injunction is necessary to prevent irreparable harm to Merial.

Merial has satisfied the prerequisites for injunctive relief.  Merial will likely prevail on patent infringement.  Merial has and will suffer irreparable harm that does not lend itself to monetary or other damages.  Any minor hardship to Intervet if an injunction is granted is outweighed by the large hardship that will be suffered by Merial if an injunction is denied.  The public interest requires the injunction be granted.  Therefore, Merial respectfully requests that this Court grant Merial's

motion for a preliminary injunction and enjoin Intervet from making, using, selling, offering to sell, exporting or offering to export their PCV vaccine and colorable imitations thereof.

### STATEMENT OF FACTS

1.    Merial is a leader in the manufacture, research and development of veterinary products. (Parker Dec. ¶¶ 4-5)[1] U.S. Patent No. 6,368,601, entitled Porcine Circovirus Vaccine and Diagnostic Reagents ("the '601 patent") was duly and legally issued by the U.S. Patent and Trademark Office on April 9, 2002. Merial is exclusively licensed under the '601 patent. (Complaint, Ex. A) The '601 patent is directed towards DNA, vectors, including viruses, useful as a vaccine and useful in the manufacture of a vaccine against PCV. (Complaint, Ex. A)

2.    Merial has been and continues to be involved in PCV research. (Parker Dec. ¶ 5) To date, Merial has spent approximately $20 million in research and development as to PCV, and in bringing its PCV vaccine, CIRCOVAC®, to market. (Parker Dec. ¶ 5) Through its wholly owned subsidiary Merial SAS, Merial makes CIRCOVAC®, which is safe and effective, approved for use in sows in Europe and Canada, with over 350,000 doses sold to date. Authorization to market CIRCOVAC® in the US is currently being sought. (Parker Dec. ¶ 4)

3.	The USDA granted Intervet a conditional veterinary biological product license to sell a "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" made at Intervet, Establishment No. 286, Millsboro, Delaware. (Parker Dec. ¶ 28)  The conditional license references APHIS Code 19K5.R0, as does the accompanying product label. (Harding Dec. ¶ 4 and Exhibit 1; see also Parker Dec., Exhibit B)  To obtain the conditional license, Intervet had to have made the vaccine of the conditional license ("the Intervet PCV vaccine") (Parker Dec. ¶ 29). The Intervet PCV vaccine and it manufacture infringe claims of the '601 patent. (Fischer Dec. ¶¶ 13-26)

4.	The USDA, Animal and Plant Health Inspection Service, Veterinary Services, Center for Veterinary Biologics issued Veterinary Biologics Notice No. 73, issued a report entitled "Veterinary Biological Products in Licensed Establishments Produced and Destroyed 01/01/05 Through 12/31/05". (Parker Dec. ¶ 22)  At page 13, under the heading "Vaccines and Viruses" is listed a "PORCINE CIRCOVIRUS VACCINE, TYPE 2, KILLED BACULOVIRUS VECTOR" having the product code "19K5.R0", showing that Intervet has made the Intervet PCV vaccine. (Parker Dec. ¶ 23; Exhibit A to Parker Dec.)

5.	Intervet is taking orders for the Intervet PCV vaccine (Harding Dec. ¶

---

[1] Submitted in support of Merial's motion for a preliminary injunction as Exhibit A is the Declarations of William

3) The Intervet PCV vaccine is to be made in the U.S. and sold from the U.S. (Parker Dec. ¶¶ 29, 32, 33)  The Intervet PCV vaccine currently being offered for sale is or will be produced in the United States, in direct infringement of the '601 patent. (Fischer Dec. ¶¶ 13-25; Parker Dec. ¶¶ 31-33)

6.     On December 19, 2005, Merial contacted Intervet, requesting that Intervet cease and desist of all activities that infringe the '601 patent.  (Parker Dec. ¶ 26)  Intervet has refused to cease and desist in engaging in infringing activities. (Parker Dec. ¶ 27)  Intervet has no defense for its infringing activities. (Parker Dec. ¶ 27)  Intervet has thus necessitated this Motion.

## LEGAL ARGUMENT

### I.     MERIAL SATISFIES THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

#### A.     THE PRELIMINARY INJUNCTION STANDARD

A patent gives its holder the right to exclude others from making, using, selling and offering for sale products and processes that fall within at least one claim of the patent.  Title 35 of the United States Code authorizes federal courts to enjoin activities that may violate any of the rights secured by a patent.  35 U.S.C. § 283; *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1577 (Fed. Cir. 1983),

---

Stephen Parker ("Parker Dec."), as Exhibit B is the Declaration of Dr. John Harding ("Harding Dec."), and as Exhibit C is the Declaration of Dr. Laurent Fischer ("Fischer Dec.").

*cert. denied*, 464 U.S. 996 (1983).  Federal courts have consistently recognized the

importance of issuing preliminary injunctions in patent infringement cases.  *See,*

*e.g., Polymer Tech., Inc. v. Bridwell, H.A.*, 103 F.3d 970 (Fed. Cir. 1996).

The standards for preliminary injunction are the same in patent cases, such

as this one, as they are in any other case.  *H.H. Robertson Co. v. United Steel Deck*,

820 F.2d 384, 387 (Fed. Cir. 1987).  Merial is entitled to a preliminary injunction if

it shows:

> (1) a reasonable likelihood of success on the merit of its claims;
> (2) irreparable harm if an injunction is not granted; (3) a balance of
> hardships tipping in its favor; and (4) the injunction's favorable
> impact on the public interest.

*Gilette Co. v. Energizer Holdings Inc.*, 405 F.3d 1367, 1370 (Fed. Cir. 2005).[2]  No

single factor is dispositive, and the Court must weigh and measure each factor

against the others and against the form and magnitude of the relief requested.

*Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

Merial meets all of the requirements for entry of a preliminary injunction,

and this Motion should be granted to enjoin Intervet from manufacturing, using,

selling or offering to sell its infringing products and colorable imitations thereof.

### B.  MERIAL IS LIKELY TO SUCCEED ON THE MERITS

In order to demonstrate a likelihood of success on the merits, Merial must

show that, in light of the presumptions and burdens that will inhere at trial on the merits, (1) Intervet likely infringes the '601 patent, and (2) the claims of the '601 patent will likely withstand Intervet's challenges to validity. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

### C. INTERVET IS ACTIVELY INFRINGING THE '601 PATENT

Merial need not prove infringement without question, it must merely establish a reasonable likelihood that it will prove at trial, by a preponderance of the evidence, that Intervet infringes at least one claim of the '601 patent. *H.H. Robertson*, 820 F.2d at 390.

The determination of infringement is a two step process. First, the terms in the claims must be interpreted. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). When interpreting claim terms, the court should look to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc); *Vitronics Corp. v. Conceptronic, Inc*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). When the intrinsic evidence is unambiguous, it is improper for the court to rely on extrinsic evidence (*i.e.*, expert or inventor testimony) to contradict the meaning of the claims. *See Pitney Bowes,*

---

[2] Preliminary injunctions in patent cases are governed by the law of the Federal Circuit. *Hybritech Inc. v. Abbbott*

*Inc., v. Hewlett-Packard Co.*, 182 F.3d 1298, 1308-09 (Fed. Cir. 1999).

All claim interpretation begins with the language of the asserted claims.  *See Comarck Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998); *Phillips* at 1321.  A claim term should be given its ordinary meaning unless the specification or prosecution history provides a special meaning or definition. *Phillips* at 1320, *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1427 (Fed. Cir. 1997).  Where the ordinary meaning of claim language is readily apparent, claim construction involves little more than the application of the widely accepted meaning of commonly understood words.  *Phillips* at 1320 (citations omitted).

The claims, however, do not stand alone.  *Id.* at 1315.  The claims "'must be read in view of the specification, of which they are a part.'".  *Id.* at 1315.  But, preferred embodiments and examples in the specification may not be read into the claim.  *See Comark*, 156 F.3d at 1186-87.  Similarly, the Court may not import extraneous functional limitations from the specification into the claims. *Transmatic, Inc. v. Gulton Indus., Inc.,* 53 F.3d 1270, 1278 (Fed. Cir. 1995).

In this case, Intervet's PCV vaccine, infringes at least one of claims 9, 16, 32, 33 and 35 of the '601 patent.  The claim language and the specification of the '601 patent are sufficiently clear, and the terms in claims 9, 16, 32, 33 and 35 are

---

*Laboratories*, 849 F.2d 1446, 1451 n.12 (Fed. Cir. 1998).

to be afforded their plain and ordinary meaning.

The second step of the infringement analysis involves comparing the

construed claims to the allegedly infringing product. *Markman*, 52 F.3d at 976.

Here, Intervet's PCV vaccine is a porcine circovirus vaccine, type 2, killed

baculovirus vector. (Fischer Dec. ¶ 10)   Table 1 compares Intervet's PCV vaccine

to claims 9, 16, 32, 33 and 35 of the '601 patent.

**Table 1: Comparison of Intervet's PCV Vaccine with '601 Patent Claims**

| Claim | Intervet's PCV vaccine |
|---|---|
| 9.  A vector comprising an isolated DNA molecule comprising a sequence selected from the group consisting of ORFs 1 to 13 of porcine circovirus type II. | "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" can be a vector that has been modified to contain PCV DNA and express at least one PCV protein. ORFs 1-13 are PCV DNA sequences that can be expressed as PCV protein(s). The "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" can be a vector containing at least one sequence selected from the group consisting of ORFs 1-13 of porcine circovirus type 2. the "Porcine Circovirus Type 2, Killed Baculovirus" - modified or recombinant baculovirus present in the vaccine or used in making the vaccine - can be within claim 9 (Fischer Dec. ¶¶ 4-14) |
| 16.  The vector of any one claims 1-6 and 9-13 wherein the vector is a virus. | Claim 16 merely further specifies that the claim 9 vector be a virus. Baculovirus is an insect virus. The baculovirus of the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" - the modified or recombinant baculovirus present in the vaccine or used in making the vaccine - can be within claim 16 of the '601 patent. (Fischer Dec. ¶¶ 4-12, 15, 16) |
| 32.  An isolated DNA molecule comprising a nucleotide sequence encoding an epitope which is specific to | The "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" was made by a baculovirus that was modified to contain PCV DNA and can contain killed or inactivated modified or recombinant baculovirus. A protein functions as an active ingredient in a vaccine by presenting to the immune system a portion of the protein called an |

| Claim | Intervet's PCV vaccine |
|---|---|
| PCV-2 and not specific to PCV-1. | epitope. To function, the PCV vaccine must present to the immune system at least one epitope that elicits protection against PCV-2. An epitope that elicits protection against PCV-2 should be a PCV-2 epitope 20. Therefore, the killed baculovirus of the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus", should be within claim 32 of the '601 patent. The modified or recombinant baculovirus used in the production of the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" likewise should be within claim 32 of the '601 patent. (Fischer Dec. ¶¶ 4-12, 18-20) |
| 33. A vector comprising an isolated DNA molecule as claimed in claim 32. | A vector is merely a form of DNA used to transfer foreign DNA into a cell, such as a virus. For the same reasons that claim 32 covers Intervet's PCV vaccine, claim 33 thus covers Intervet's PCV vaccine and the baculovirus used in the production of Intervet's PCV vaccine. (Fischer Dec. ¶¶ 4-12, 21-22) |
| 35. The vector according to claim 33, wherein the isolated DNA molecule is expressed *in vitro*. | The "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" and the baculovirus used in its production should be within claims 32 and 33. In the production of the Intervet PCV vaccine, the baculovirus is modified to contain PCV DNA. The modified baculovirus is grown in cells - or "*in vitro*". The PCV DNA must be expressed when grown in the cells - or "*in vitro*" - so that the protein encoded by the PCV DNA can be presented to the immune system and the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector"can act as a vaccine. Therefore, the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" and |
| | the materials employed in the production of the "Porcine Circovirus Vaccine, Type 2, Killed Baculovirus Vector" should be within claim 35 of the '601 patent. (Fischer Dec. ¶¶ 4-12, 24-25) |

As shown in Table 1 and the Fischer Declaration, Intervet's PCV vaccine

reads on at least one of claims 9, 16, 32, 33 and 35 of the '601 patent.

13

Intervet has knowingly made, used and has offered to sell a PCV vaccine that infringes the '601 patent. (Parker Dec. ¶¶ 29, 32, 33; Harding Dec. ¶¶ 3, 4) Upon Merial's demand that Intervet cease and desist making, using, selling and offering to a sell the infringing Intervet PCV vaccine, Intervet gave no indication that it would cease and desist. (Parker Dec. ¶¶ 27, 30, 33-34; see also Harding Dec. ¶ 3) Accordingly, it can be inferred that Intervet will continue infringing absent an injunction. And indeed, Intervet has been taking orders for its infringing vaccine, showing that it is continuing its infringing activities and threatens to sell and export the Intervet PCV vaccine (Harding Dec. ¶ 3; Parker Dec. ¶¶ 31-33)

Furthermore, Intervet has provided no non-infringement or invalidity position in response to Merial's demand it cease and desist infringing the '601 patent. (Parker Dec. ¶¶ 27, 30, 34) As Intervet failed to appropriately respond to Merial's demand, Intervet necessitated this suit and this Motion, which was promptly filed following Merial obtaining proof of Intervet's offer to sell and export. (Harding Dec. ¶¶ 2-3)

### D.   THE '601 PATENT IS VALID

If Intervet alleges that the patent is invalid, it must establish proof of the alleged invalidity by clear and convincing evidence. *H.H. Robertson*, 820 F.2d at 387. At this preliminary injunction stage, Merial need merely establish that

Intervet's arguments regarding the invalidity of the '601 patent have a reasonable likelihood of failing. *Id.* at 387-88 (court must be mindful that the burden of proving invalidity remains with the party attacking it). Merial has more than a reasonable likelihood of success at trial with respect to validity.

The '601 patent is presumed valid. A patent is presumed valid, and this presumption exists at every stage of the litigation. *Canon Computer Sys., Inc. v. NU-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998).

To anticipate a patent claim, a reference, device, or system must contain structures or acts that correspond to each limitation of the claim. Obviousness is a question of law based on underlying facts. *Graham v. John Deere Co.*, 383 U.S. 1, 17, 18 (1966). Evaluating obviousness requires evaluating (1) the scope and content of the prior art, (2) the level of ordinary skill in the field of the invention, (3) the differences between the claimed invention and the prior art and (4) any objective evidence of non-obviousness such as long felt need, commercial success, the failure of others, copying, and licensing. *Graham*, 383 U.S. at 17; *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999). Obviousness must be determined with respect to the invention as a whole. 35 U.S.C. §103; *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1143 (Fed. Cir. 1985).

There is absolutely no evidence of either anticipation or obviousness here. Although the Examiner reviewed numerous art references, the application from which the '601 patent issued was found to contain allowable subject matter as early as the first Office Action on the merits.

Moreover, Intervet has not provided any basis regarding the validity, or lack thereof, of any claim of the '601 patent.  (Parker Dec. ¶ 27)  And, Intervet has not provided Merial with any prior art that it alleges renders obvious or anticipates any claim of the '601 patent.  (Parker Dec. ¶ 27)  Thus, the '601 patent is valid and Merial has more than a reasonable likelihood of success at trial as to validity.

In any event, Intervet will fail to raise a substantial question regarding alleged invalidity of any asserted claim, especially given Defendant's burden to show this defense by clear and convincing evidence.

**E.     MERIAL WILL BE IRREPARABLY HARMED ABSENT PRELIMINARY RELIEF**

Because Merial has established a strong likelihood of success of proving infringement and overcoming any potential invalidity challenge, Merial "is entitled to a presumption of irreparable harm."  *Canon Computer*, 134 F.3d at 1090; *accord Smith Int'l*, 718 F.2d at 1583 ("immediate irreparable harm is presumed") (emphasis added).  Irreparable harm should be presumed because "future

16

infringement may have market effects never fully compensable in money." *Hybritech*, 849 F.2d at 1457.

"[T]he nature of the patent grant [the right to exclude] weights against holding that monetary damages will always suffice to make the patentee whole." *Id.* at 1456-57. Here, Merial has established that it will likely prevail at trial on the issues of infringement and validity. Thus, it is "entitled" to the presumption of "immediate" irreparable harm that flows from Intervet's continued infringement.

There is irreparable harm independent of the presumption. Merial will suffer great harm if Intervet is allowed to manufacture and sell their PCV vaccine. In this case, numerous market effects that cannot be compensated in dollars, that are unquantifiable, or both -- in other words, "irreparable" -- are of particular concern. *Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) ("The patent statute further provides injunctive relief . . . . *against future infringement* which may have market effects never fully compensable in money"); *Coca-Cola Co. v. Alma-Leo USA, Inc.*, 719 F. Supp. 725, 729 (N.D. Ill. 1989) (unquantifiable harms, or harms that cannot be effectively measured, are irreparable).

Pigs are considered "production animals"; they are raised and sold by swine producers as food sources, and the profit margin on porcine veterinary products is

therefore lower than the profit margin on other veterinary products. (Parker Dec. ¶ 6) The feasibility of maintaining a presence in the porcine veterinary product market depends upon a large volume of sales. (Parker Dec. ¶ 6)  In turn, there is a high degree of loyalty among swine producers, such that they tend to not switch between brands of porcine veterinary products. (Parker Dec. ¶ 7)

Moreover, because the removal of the product from the market results in a tainted perception of the product as a whole, producers tend to shy away from any use of a product type after it has been pulled, regardless of the actual reason the product has been pulled.  Accordingly, if Intervet were permitted to launch its product and was later required to pull its product from the market as a result of a permanent injunction in this matter, it would also taint the perception of Merial's product making it very difficult for Merial to obtain the market share to which it is entitled. (Parker Dec. ¶ 7)

Due to the interrelatedness of the Canadian and US pig markets, the sale of Intervet's PCV vaccine anywhere in North America will result in an immediate, irreversible, and substantial decrease in Merial's exclusive market share. (Parker Dec. ¶¶ 8, 10) As pigs are frequently moved across the US-Canada border, the sale of Intervet's PCV vaccine will have a substantial impact on Merial in both the US and Canada as some portion of the swine market in both countries will be lost to

Intervet. (Parker Dec. ¶ 10)  As Intervet is currently taking orders for their PCV vaccine in Canada, real harm is imminent to Merial's market share in both the US and Canada. (Harding Dec. ¶ 3; Parker Dec. ¶ 11)

Furthermore, Intervet's PCV vaccine is administered to pigs over 3 weeks of age. (Parker Dec. ¶ 12; Harding Dec. Ex. 1)  The Intervet PCV vaccine will cannibalize the market for CIRCOVAC® by causing a reduction in sows to be vaccinated. (Parker Dec. ¶ 12)

The patent portfolio owned and/or licensed by Merial entitles Merial to exclude others from making, using, selling and offering for sale infringing PCV vaccines, and grants market exclusivity to Merial (limited, of course, to the scope of the patents).  If Intervet is already selling the Intervet PCV vaccine in the North American market when Merial launches CIRCOVAC® in the U.S. market, Merial will be forced to compete with Intervet for the market exclusivity to which Merial is entitled. (Parker Dec. ¶ 13)

Once Intervet enters the North American market with their PCV vaccine, Merial will never be able to recover the monies it will lose due to customers lost to Intervet. (Parker Dec. ¶ 15)  As discussed above, even a subsequent finding of infringement against Intervet, and the resulting withdrawal of Intervet's PCV vaccine from the market would not restore Merial to its entitled market position.

(Parker Dec. ¶ 14)  Merial has actively worked to create good will in the swine

market, including an investment on the order of $20 Million as to PCV, all of

which is at risk if Intervet launches its PCV vaccine in the North American Market.

(Parker Dec. ¶¶ 5, 15)  The monetary investment is not the only loss faced by

Merial if Intervet launches its PCV vaccine—Merial's expansion of its

CIRCOVAC® product will effectively be halted and Merial's research and

development activities would be undercut, resulting in damage to Merial's ability

to enter into relationships with third parties and to hire and retain talented

employees. (Parker Dec. ¶¶ 17-20)  A monetary award would in no way adequately

compensate Merial for its lost business opportunities and relationships.

The irreparable harm that would result from Intervet's launch of their PCV

vaccine is significant, and no award of monetary damages can adequately

compensate Merial for the resulting harms, including loss of market share.  Given

the specific facts of this case, in this specific market, Merial is has suffered harm

and will suffer substantial irreparable harm if Intervet further infringes by selling

the Intervet PCV vaccine.

### F.    THE BALANCE OF HARDSHIPS WEIGHS IN MERIAL'S FAVOR

Merial will suffer the extensive irreparable harm described above absent an

injunction. Furthermore, Merial's reputation will be harmed if Intervet is allowed to continue to manufacture and sell its PCV vaccine. *See California Med. Prods., Inc. v. Emergency Med. Prods., Inc.,* 796 F. Supp. 640, 647 (D.R.I. 1992) (denial of preliminary relief can damage patentee's reputation).

It is difficult to earn respect in the marketplace amongst competitors if patent rights are not enforced by the Courts. Businesses routinely expect patent suits will settle for money. Without the fear of an injunction, businesses will treat patent infringement as a "cost" of doing business, but only if they are "caught." By allowing businesses to treat patents as a mere cost of doing business, the principal value of a patent - the right to exclude others - is vitiated.

*H.H. Robertson* requires that in determining whether to issue an injunction, a court should balance the hardships suffered by each party should the injunction be granted or denied. Here, the denial of an injunction will cause irreparable harm to Merial, as described above and in the accompanying Parker Declaration. In contrast, the grant of an injunction will cause only minor hardships to Intervet.

For example, Intervet sells other swine products (*e.g.*, PRRomiSe®, Argus® and the ProSystem® family of vaccines combined with P.G. 600®, Safe-Guard® and Flavomycin® as well as End-FLUence® 2) and will not be put out of business by an injunction. (Defs.' Website <http://www.intervet.com>). Intervet's market

reputation does not stand or fall based on whether it is delayed in launching their PCV vaccine.  In contrast, Merial's reputation and good will stands to be significantly negatively impacted if Intervet is allowed to launch their PCV vaccine, especially if Intervet's product is later removed from the market as a result of a final judgment in this suit. (Parker Dec. ¶¶ 7, 14-16)

In any event, any financial harm to Intervet from a preliminary injunction relating to the Intervet PCV vaccine is self-inflicted.  Intervet took a calculated risk when it intentionally developed and offered to sell products that it knew were the subject of the '601 patent.  That risk included that Intervet would be found liable for patent infringement and enjoined from further sales.  Courts have refused to weigh any "harm" to the infringer when it "assumed the risk."  *See Smith Int'l*, 718 F.2d at 1581 (reversing denial of preliminary injunction where infringer was aware of patents and "took a calculated risk that it might infringe those patents.").  The balance of hardships therefore strongly tips in Merial's favor.

### G.     THE PUBLIC INTEREST FAVORS PRELIMINARY RELIEF

The public interest favors a preliminary injunction for two reasons:  (1) the public interest favors securing the rights of valid patents like the patent in suit, and (2) an injunction against Intervet's PCV vaccine will not harm the public.

First, "public policy favors protection of the rights secured by valid patents," including the right to prevent infringement through preliminary relief.  *Smith Int'l*, 718 F.2d at 1581.  "This is embodied in the Constitution and our patent laws." *Hybritech Inc. v. Abbott Laboratories*, 4 USPQ2d 1001, 1015 (C.D. Cal. 1987).  In reversing a lower court's denial of a preliminary injunction, the Federal Circuit stated:  "[w]ithout the right to obtain an injunction, the right to exclude granted to the patentee [by the Constitution and Congress] would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research."  *Smith Int'l*, 718 F.2d at 1578.  An injunction in this case would further the public's confidence in the patent and judiciary systems and provide a positive incentive for those in the veterinary product industry to continue developing and protecting new ideas without fear that their patents would be useless to halt infringement.

Second, enjoining Intervet's infringing activities will not harm the public. Merial's CIRCOVAC® is on the market in Europe and Canada, and is soon to be approved in the US.  The public will still be able to purchase other swine vaccines and swine products from other manufacturers, including Intervet, despite an injunction against Intervet's manufacture and sale of the Intervet PCV vaccine. *See Hybritech*, 4 USPQ2d at 1015 (granting preliminary injunction on products for

23

which alternatives were available on the market); *National Presto Indus. Inc. v. Dazey Corp.*, 18 USPQ2d 1113, 1121 (N.D. Ill. 1990) (granting TRO; "If an injunction makes the Dazey cooker unavailable, the public has plenty of substitutes, including Presto's Exhibits 5-9 and saucepans on the stove.").

Furthermore, removing Intervet's PCV vaccine from the marketplace will not cause a shortage of swine vaccines. Merial will supply the marketplace with CIRCOVAC®. An injunction will only keep Intervet from making, using, selling, offering to sell, exporting and offering to export the infringing Intervet PCV vaccine; it will not deprive the public from obtaining the benefits of Merial's patented PCV vaccines.

## CONCLUSION

"Where a case for a temporary injunction is clearly made out, it is not open to the trial court to deny the remedy." *Smith Int'l*, 718 F.2d at 1579. Here, the case is made out. Merial has a high likelihood of success in proving infringement and in rebutting any case of invalidity. Intervet infringes the claims of the '601 patent. While Merial and the public will be greatly harmed if preliminary relief is denied, Intervet will suffer little harm of a preliminary injunction is granted. All of these reasons favor the grant of preliminary relief.

Because Intervet's infringement is ongoing and causing irreparable harm in the marketplace - a harm that is to exponentially expand once Intervet launches its infringing vaccine - Merial requests that this Court act quickly to restrain Intervet from making, using, selling, offering to sell, exporting and offering to export the Intervet PCV vaccine and colorable imitations thereof.  This will prevent Intervet's infringement from causing further irreparable damage in the marketplace and avoid further erosion of Merial's substantial investment in the '601 patent.

Respectfully submitted this 31st day of March, 2006.

/s/ J. Patrick Elsevier
J. Patrick Elsevier, PhD, Esq. **(**Local Counsel)
(pelsevier@alston.com)
Georgia Bar No. 246694
**Alston & Bird LLP**
One Atlantic Center, 1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
Tel.: 404-881-7683  Fax: 404-253-8285

Judy Jarecki-Black, PhD, Esq.
(judy.jarecki@merial.com)
Georgia Bar No. 801698
**Merial Limited**
3239 Satellite Blvd.
Duluth, Georgia  30096-4640
Tel.: 678-638-3805
Fax: 678-638-3350

Edgar H. Haug, Esq. (*Pro Hac Vice*)
(Ehaug@FLHLaw.com)
Thomas J. Kowalski, Esq. (*Pro Hac Vice*)
(Lead Counsel)  (Tkowalski@flhlaw.com)
Sandra Kuzmich, PhD, Esq. (*Pro Hac Vice*)
(Skuzmich@FLHLaw.com)
Deborah L. Lu, PhD, Esq. (*Pro Hac Vice*)
(DLu@FLHLaw.com)
**Frommer Lawrence & Haug LLP**
745 Fifth Avenue, New York, NY 10151
Tel.: 212-588-0800; Fax: 212-588-0500

ATTORNEYS FOR PLAINTIFF MERIAL LIMITED

Pursuant to LR 7.1D, by the above signature, Counsel certifies that the foregoing has been prepared in compliance with LR 5.1B using Times New Roman (14 point).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MERIAL LIMITED,

      Plaintiff,

v.

INTERVET, INC.,

      Defendant.

Civil Case No. 1:05-cv-3168-CAP

The undersigned hereby certifies that on this 31st day of March 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

    T. Hunter Jefferson
    Smith, Gambrell & Russell, LLP
    Promenade II, Suite 3100
    1230 Peachtree Street, N.E.
    Atlanta, Georgia 30309-3592

                        s/ J. Patrick Elsevier
                        J. Patrick Elsevier, Ph.D.
                        (pelsevier@alston.com)
                        Georgia Bar No. 246694
                        Alston & Bird LLP
                        One Atlantic Center
                        1201 West Peachtree Street

Atlanta, Georgia 30309-3424
Email:  pelsevier@alston.com
Tel.: (404) 881-7683
Fax: (404) 253-8285