# EXHIBIT B

Alston & Bird

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MERIAL LIMITED and
MERIAL SAS,

    Plaintiffs,

       v.

INTERVET INC.,

    Defendant.

Civil Action No. 1:05CV3168-CAP

## MERIAL'S REPLY TO INTERVET'S OPPOSITION TO MERIAL'S MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ..................................................................................................... 1

LEGAL ARGUMENT ............................................................................................... 4

    I.    INTERVET MISCONSTRUES AND IGNORES CLAIMS ............... 4

        A.    Properly Construed '601 Patent Claims Cover The Intervet Vaccine ................................................................. 5

    II.    THERE IS NO INVALIDITY / UNENFORCEABILITY ................. 9

        A.    There Is No Inequitable Conduct ................................................ 9

        B.    The Examiner Correctly Accorded Merial October 3, 1997 ........................................................................................ 10

        C.    FR 97 12382 Supports the Claims ........................................... 10

    III.    MERIAL WILL BE IRREPARABLY HARMED ........................... 11

CONCLUSION ........................................................................................................ 12

Case 06:05-cv-00658-HH-KAPMF Document 468-3 Filed 04/22/25/2007 Page 3 of 20

i

# **TABLE OF AUTHORITIES**

**Cases**

*Danisco A/S et al. v. Novozymes et al.*
    2006 WL 1004475 ................................................................................................9

*Glaxo Group Ltd. v. Apotex, Inc.*
    376 F.3d 1339 (Fed. Cir. 2004)............................................................................9

*In re Wallach,*
    378 F.3d 1330 (Fed. Cir. 2004)............................................................................6

*Phillips v. AWH Corp.*
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................5, 6

*Polymer Technologies, Inc. v. Bridwell*
    103 F.3d 970 (Fed. Cir. 1996).......................................................................11, 12

*Raytheon Co. v. Roper Corp.,*
    724 F.2d 951 (Fed. Cir. 1983)..............................................................................6

*SRI International v. Matsushita Elec. Corp.,*
    775 F.2d 1107 (Fed. Cir. 1985)............................................................................6

**Statutes**

35 U.S.C. § 282 .................................................................................................................9

INTRODUCTION

Plaintiff Merial (Merial Limited, with standing to bring suit (Gill Dec., Allan Dec., Lu Dec. ¶11, Ex. G),[1] individually and collectively with its wholly-owned subsidiary Merial SAS) need Defendant Intervet, Inc. ("Intervet") enjoined from continuing its infringement of US Patent No. 6,368,601 ("the '601 patent"), to prevent further irreparable harm to Merial. This case is about porcine circovirus type II (PCV2) DNA, and vectors that contain such DNA. The '601 patent claims such DNA and vectors. Intervet admits that their recombinant baculovirus is a vector and that it contains PCV2 DNA. The '601 patent specification supports a broad interpretation of the '601 patent claims, and specification limitations cannot be read into claims. Intervet thus has no non-infringement position. The Honorable Gerald J. Mossinghoff has well characterized Intervet's invalidity and unenforceability positions as simply "baseless." Therefore, there are no substantial questions concerning validity, enforceability or infringement; each of Intervet's

---

[1] Submitted with this Reply are: Exhibit 1, correspondence between Merial and Intervet prior to the service of the complaint; Exhibit 2, quotations from the '601 patent; Exhibit 3, Declaration of Gill of the University of Saskatchewan; Exhibit 4, Declaration of Allan of the Queen's University of Belfast; Exhibit 5, Declaration of Deborah Lu; and Exhibit 6, Declaration of The Honorable Gerald J. Mossinghoff. The Gill and Allan Declarations confirm Merial's previous positions, and the Lu Declaration introduces Exhibit G - the recorded assignment of Francis McNeilly. Thus, while Intervet has filed two replies to Merial's Opposition to Intervet's Motion to Dismiss, Merial herein simply asserts the continued standing of Merial Limited, as well as the standing of Merial SAS, and introduces the Gill / USASK and Allan / QUB and Lu Declarations in yet further support of Merial's positions.

positions lack substantial merit. The '601 patent is clearly valid and enforceable and Intervet clearly infringes the '601 patent.

In addition, Merial and its inventors have been the pioneers in the field of Post Weaning Multisystemic Wasting Syndrome ("PMWS") and PCV2. Merial has invested over $20 Million in research, development and education as to PMWS and PCV2. (Parker Dec. ¶ 5) Merial has a significant patent portfolio in the PMWS and PCV2 area. Merial should not be subject to the threat of price erosion by Intervet, and the well recognized irreversibility of this type of loss. Merial has shown that swine vaccine market is a very particular market: producers tend not to switch products; and the removal of a product from the market will taint the reputation of the product. (Parker Dec. ¶ 6-7, 8, 10) Merial has also shown that the Intervet vaccine will cannibalize the market for Merial's vaccine. (Parker Dec. ¶ 12) Intervet's assertion that Merial has few swine products only highlights the need for injunctive relief. Merial's PCV2 vaccine would permit Merial to access a market in which it does not currently have a strong market position. Permitting Intervet to get a foothold into the PCV2 vaccine market through infringement of the '601 patent will effectively block Merial's entry into the swine market and devastate Merial's ability to sell ANY swine products.

2

Therefore, monetary damages will NEVER be sufficient to compensate Merial for the losses it will suffer through Intervet's infringement of the '601 patent.

Merial has been nothing but polite to Intervet; yet, Intervet mischaracterizes Merial's politeness. With attention to the true copy of communications between Merial and Intervet of Exhibit 1 hereto, Merial, with standing, filed suit on December 15, 2005. Merial then, as a courtesy, contacted Intervet, to learn of Intervet's positions. On another matter, Merial and Intervet were in discussions until about March 8, 2006.[2] Throughout those discussions, Merial sought to understand Intervet's PCV2 position; and, Merial received half-truths.[3] Only when it became clear to Merial that Intervet intended to infringe the '601 patent and there could be no resolution, the complaint was then served on March 10, 2006.

---

[2] US Patent No. 5,587,166, as to which Intervet asserts that it is the exclusive licensee and had filed a complaint in the District of Delaware, naming only Intervet as the sole party plaintiff; *see* Exhibit 1 hereto.

[3] Note how as to the '601 patent Intervet first asserted that it "is not making, using, offer for sale or selling a PCV2 vaccine in the United States" and thereafter refused to provide any non-infringement or invalidity or unenforceability position; *see* Exhibit 1 hereto. Clearly Intervet's arguments are newly cobbled together because Merial's '601 patent is valid and enforceable and its claims cover the Intervet Vaccine. Intervet's positions should be dismissed and Intervet should be estopped since Intervet failed to provide its positions prior to service of the Complaint and Merial's motions. Moreover, given Intervet's at best evasive representations, Merial has done all it could prior to serving the Complaint and bringing its Motions. *See Hoffman-LaRoche Inc. v Invamed, Inc.* 213 F.3d 1359, 1363-64 (Fed. Cir. 2000) ("difficult to imagine what else Roche and Syntex could have done to obtain facts" after Torpharm refused to disclose manufacturing processes in pre-suit communications). Note also how Intervet deals with Merial Limited as to the '601 patent in the communications of Exhibit 1, showing Intervet acknowledged Merial Limited's standing.

The Motion for a Preliminary Injunction was filed within a week after the Intervet offer to sell a vaccine made in the US (which infringed the '601 patent) to a Merial named inventor in Canada; and, the Motion for a Temporary Restraining Order was filed on the day Merial learned that Intervet was selling its infringing PCV2 vaccine in the US.

There has been no delay by Merial. Furthermore, a Merial PCV2 product is expected to be on the US market in short order, within 1-2 months. Accordingly, it is not as if there will be no PCV2 product on the US market. An injunction is in order and should be granted.

## LEGAL ARGUMENT

**I.    INTERVET MISCONSTRUES AND IGNORES CLAIMS.**

Intervet admits that its recombinant baculovirus is a vector and that it contains PCV2 DNA (*See* Intervet Oppn at 17). Intervet would like the Court to believe that PCV2 has different meanings. When "PCV2" or "Porcine Circovirus … Type 2" is on the Intervet Label (Harding Dec. Ex. 1) or the USDA Notice (Fischer Dec. Ex. B) or is discussed by Intervet as the virus found in lesions of Post Weaning Multisystemic Wasting Syndrome ("PMWS") affected pigs (Intervet Oppn at 5-6; Hesse Dec. ¶9), PCV2 is a generic term encompassing the various strains of porcine circovirus, serotype 2, that are pathogenic to pigs and are a

4

causative agent of PMWS; but, when Intervet construes a '601 patent claim, Intervet would have the Court believe that the term PCV2 is limited to only the specific DNA sequences for the particular strains disclosed in the '601 patent, even though the claims are not explicitly limited.[4] As set forth below, PCV2 has only one meaning: the broad generic term encompassing all porcine circoviruses of serotype 2 that are pathogenic to pigs and are a causative agent PMWS. PCV2 in the '601 patent claims covers the Intervet Vaccine.

### A. Properly Construed '601 Patent Claims Cover The Intervet Vaccine

In *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), the Federal Circuit affirmed that the bedrock principle of patent law is that the claims of a patent define the invention to which the patentee is entitled the right to exclude. Under *Phillips*, claims are interpreted by the court as they would be understood and interpreted by a person in that field of technology, reviewing the patent specification and the prosecution history. *Id*. at 1312-13. However, the *Phillips* Court explicitly cautioned against a cardinal sin of patent law - reading a limitation from the written description into the patent claim - "although the specification often describes very specific embodiments … we have repeatedly warned against

---

[4] Intervet NEVER directly compares its product to a '601 patent claim. Intervet fails to disclose its PCV2 strain, the

5

confining claims to those embodiments." *Id.* at 1323. It is well established Federal Circuit law that specification limitations cannot be read into patent claims. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983) ("That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims"); *SRI International v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) ("If everything in the specification were required to be read into the claims . . . there would be no need for claims") (en banc) (plurality opinion); *see also In re Wallach,* 378 F.3d 1330, 1333 (Fed. Cir. 2004) (disclosure of an amino acid sequence would provide sufficient information such that one would accept that an applicant was in possession of the full genus of nucleic acids encoding a given amino acid sequence). Clearly, therefore, it is improper to read the '601 patent claims as limited to particular strains or sequences disclosed in the '601 patent specification, as Intervet attempts.

    The applications on which the '601 patent is based—US application Serial No. 09/082,558, filed May 21, 1998, and its ultimate priority French application 97/12382, filed Oct. 3, 1997—represent pioneer disclosures, *i.e.*, disclosures of the first isolation of PCV2 and of DNA of PCV2.

---

sequence of its PCV2 DNA, or its homology to the strains of the '601 patent.

6

The language of the claims of the '601 patent does not limit the claimed invention to particular strains or sequences disclosed in the '601 patent. There is no explicit recitation of particular deposited strains or sequences in any of claims 9, 16, 32, 33 or 35; and it would be improper to import such limitations into these claims from the '601 patent specification.

Indeed, the text of the '601 patent specification is clear that the claims are not limited to the particular disclosed strains or sequences, but rather are to be broadly construed as encompassing any virus and sequence or ORF thereof within "the group II porcine circovirus" (col. 1, ll. 54-61, col. 1, l. 66-col. 2, l. 2, col. 2, ll. 20-26 and col. 2, ll. 41-48 of the '601 patent; Exhibit 2).

The broad construction Merial advocates is also wholly consistent with the prosecution history of the '601 patent and its descendents. Nowhere in the prosecution file history of '601 patent was there made any limitation of the claims to any particular sequences or strains.[5]

That the invention disclosed and claimed in the '601 patent is not limited to any particular sequences or strains is further supported by US Patent No. 6,660,772

---

[5] The phrase "of porcine circovirus type 2" was added to patent claim 9 by the April 23, 2001 Amendment so that the claim covered a vector containing any DNA of ORFs 1 to 13 of any PCV2, *i.e.*, only to distinguish from other organisms because in the January 26, 2001 Office Action the Examiner assumed the ORFs to be derived from any PCV2 (Lu 17 April 2006 Dec, Ex A).

7

("the '772 patent"), which is a descendent to the '601 patent. (Lu Dec. Ex. A).[6] The main claim of the '772 patent is directed to isolated PCV2, with dependent claims thereof directed to particular PCV2 strains (*Id.* ¶4), showing that on the basis of strains in priority French application 97/12382, filed Oct. 3, 1997, and the strains in the '601 patent, the USPTO did not interpret "porcine circovirus type II" or "PCV-2" as limited to only the particular disclosed strains. Thus, just as the USPTO did not limit the '772 patent claims to only the disclosed strains, claims 9, 16, 32, 33 and 35 of the '601 patent cannot be read as limited to only the disclosed strains or ORFs in the '601 patent.[7]

Intervet has accordingly misconstrued claims 9, 16, 32, 33 and 35 of the '601 patent. Moreover, it seems that Intervet simply ignores claims 32, 33, and 35. The '601 patent claims PCV2 DNA and vectors containing that DNA. Intervet uses the claimed PCV2 DNA in the production of its vaccine and its baculovirus is

---

[6] The '772 patent is related to the '601 patent. (Lu Dec. ¶3)

[7] Intervet would have this Court believe that porcine circovirus and ORF were not terms known to the skilled person at the filing date of the '601 patent. However, Meehan et al., "Sequence of porcine circovirus DNA: affinities with plant circoviruses," Journal of General Virology, 78:221-227 (1997) ("Meehan 1997") (Lu Dec. Ex B) was published in January 1997 and provides the skilled person with sequences of porcine circovirus DNA and ORFs thereof and the algorithm and software for determining ORFs, such that it is misleading for Intervet to assert that such terms have no ordinary meaning.

8

a vector that contains the claimed PCV2 DNA. Intervet infringes claims 9, 16, 32, 33, and 35 the '601 patent and has no substantial non-infringement position.[8]

## II.  THERE IS NO INVALIDITY / UNENFORCEABILITY

A patent is presumed valid. 35 U.S.C. § 282. It retains this statutory presumption of validity throughout an invalidity challenge. *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348 (Fed. Cir. 2004).

Benefit was properly accorded French application 97/12382 and there was no inequitable conduct in claiming priority from it.

### A.  There Is No Inequitable Conduct

"Almost twenty years ago, the Federal Circuit noted that claims of inequitable conduct and fraud on the Patent Office have become 'an absolute plague" … Such charges are easily made, … easy to cobble together". *Danisco A/S et al. v. Novozymes et al.*, 2006 WL 1004475 (citing *Burlington Indus., Inc. v Dayco Corp.,* 849 1418, 1422 (Fed. Cir. 1988). The Honorable Gerald J. Mossinghoff has reviewed the prosecution of the '601 patent and Intervet's allegations of unenforceability. (Mossinghoff Dec.) Mr. Mossinghoff concludes that Merial "followed to the letter the required procedures to claim the benefit of

---

[8] Intervet's alleged "expert" - Dr. Osorio - is NOT an expert in patent law. Accordingly, Dr. Osorio's alleged expert opinions with respect to noninfringement and invalidity should be given no weight.

9

the FR 97 12382 application" and that Intervet's assertions are "baseless". (Mossinghoff Dec. ¶22, 23, 24)

### B. The Examiner Correctly Accorded Merial October 3, 1997

Mr. Mossinghoff also states that the Examiner was required to make her own independent determination on whether the FR 97 12382 satisfied the requirements of 35 USC § 112 as Examiners must make such a determination with respect to every US application that they examine. (Mossinghoff Dec. ¶22(4)) Mr. Mossinghoff notes that the June 2, 2000 Office Action accorded Merial the October 3, 1997 filing date of FR 97 12382, and that after the date of Hamel 1997 was clarified, the Examiner did not again assert Hamel, showing that the Examiner indeed accorded Merial October 3, 1997 filing date of FR 97 12382. (Mossinghoff Dec. ¶15-20)[9] Thus, Intervet's baseless assertions to the contrary, the benefit of the October 3, 1997 date of FR 97 12382 was proper.

### C. FR 97 12382 Supports the Claims

It is not disputed that FR 97 12382 contains a disclosure of the deposit of many strains of PCV2 and sequence data. The sequence data is aligned against

---

[9] Mr. Mossinghoff especially cites MPEP § 201.15 (Seventh Edition, February 2000 Revision): "The only times during ex parte prosecution that the examiner considers the merits of an applicant's claim of priority is when a reference is found with an effective date between the date of the foreign filing and the date of filing in the United States ... .**The most important aspect of the examiner's action pertaining to a right of priority is the determination of the identity of invention between the U.S. and the foreign applications**." (emphasis added) (Mossinghoff Dec. ¶19).

10

PCV1. ORFs of PCV1 were known. *See* Lu Dec. Ex B.[10] It is also not disputed that FR 97 12382 teaches epitopes of PCV2 peptides, DNA coding therefore, and the use thereof. There is no question of support in FR 97 12382 for claims 32, 33 and 35 of the '601 patent. There is also no question that the disclosure of the PCV2 genomic sequence and its alignment to the PCV1 sequence also taught the ORFs as ORFs of PCV1 and PCV2 can be positionally related. There is no question of support in FR 97 12382 for claims 9 and 16 of the '601 patent. *See* Lu Dec. Ex B;[11] Ex C;[12] Ex D;[13] Ex F.[14] Therefore, the Examiner was well justified in according Merial the benefit of French application 97/12382. Hamel is not prior art to the instant invention. Intervet has no invalidity or unenforceability position.

### III. MERIAL WILL BE IRREPARABLY HARMED

There is a presumption of harm to which Merial is entitled. *Polymer Technologies, Inc. v. Bridwell,* 103 F.3d 970, 973 (Fed. Cir. 1996). Merial and its

---

[10] , Meehan et al., "Sequence of porcine circovirus DNA: affinities with plant circoviruses," Journal of General Virology, 78:221-227 (1997) published January 1997 providing PCV sequence and ORF data, and, at page 222, software used in the art to analyze a genome that is same as in Example 10 of the '601 patent.

[11] , Meehan et al., "Sequence of porcine circovirus DNA: affinities with plant circoviruses," Journal of General Virology, 78:221-227 (1997) published January 1997 providing PCV sequence and ORF data, and, at page 222, software used in the art to analyze a genome that is same as in Example 10 of the '601 patent.

[12] Figure 5 from priority French patent application No. 98 00873 marked to show the ORF 4 ("COL 4")and ORF 13 ("COL 13") from PCV-1 and PCV-2. Note the positional overlap of ORFs of PCV1 and PCV2

[13] Showing that any "N" designations in the PCV-2 nucleotide sequence disclosed in priority to French application 97/12382, filed Oct. 3, 1997, does not interfere with the determination of the ORFs.

[14] Showing that any "N" designations in the PCV-2 nucleotide sequence disclosed in priority to French application 97/12382, filed Oct. 3, 1997, does not interfere with the determination of the ORFs. It is also noted that the genomic DNA of PCV is circular; this is why part of the amino acid sequence of ORF 13 is located in Sequence 5 Frame -2

11

inventors have been the pioneers in the field of PMWS and PCV2. Merial has invested heavily in research, development and education as to PMWS and PCV2. Merial should not be subject to the threat of price erosion by Intervet, and the well recognized irreversibility of this type of loss. *Polymer Technologies* 103 F.3d at 975-976. Merial has shown that swine vaccine market is a very particular market: producers tend not to switch products; and the removal of a product from the market will taint the reputation of the product. Merial has also shown that the Intervet vaccine indeed will cannibalize the market for Merial's vaccine. Allowing Intervet to get a foothold into the PCV2 vaccine market through infringement of the '601 patent will devastate Merial's ability to sell ANY swine products. Monetary damages will NEVER be sufficient to compensate Merial for the losses it will suffer through Intervet's infringement of the '601 patent. Intervet should be enjoined from continuing its admitted infringement of the '601 patent.

## CONCLUSION

Merial has a high likelihood of success in proving infringement and in rebutting any allegations of non-infringement, invalidity or unenforceability. Intervet admits using PCV2 DNA. A world renowned patent law expert opined that Intervet's positions on invalidity and unenforceability are baseless. The

---

and the other part in Sequence 4 Frame -1.

Examiner was well justified in granting the '601 patent claims. Intervet has no non-infringement, invalidity or unenforceability positions. Merial and the public will indeed be greatly harmed if an injunction is not issued. It is respectfully requested that the injunction Merial seeks be granted and that during the pendency of this lawsuit that Intervet be enjoined from making, using, selling, offering for sale, and exporting its PCV2 vaccine product, or otherwise infringing the '601 patent.

Respectfully submitted, this 22nd day of April, 2006.

s/ J. Patrick Elsevier
J. Patrick Elsevier, Ph.D., Esq.
(pelsevier@alston.com)
Georgia Bar No. 246694
**Alston & Bird LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7683
Fax: (404) 253-8285

Judy Jarecki-Black, Ph.D., Esq.
(judy.jarecki@merial.com)
Georgia Bar No. 801698
**Merial Limited**
3239 Satellite Blvd.
Duluth, GA 30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
(tkowalski@flhlaw.com)

13

> Edgar H. Haug, Esq.
> (ehaug@flhlaw.com)
> Sandra Kuzmich, Esq.
> (skuzmich@flhlaw.com)
> Deborah L. LU, Ph.D., Esq.
> (dlu@flhlaw.com)
> **Frommer Lawrence & Haug LLP**
> 745 Fifth Avenue
> New York, New York 10151
> Tel.: (212) 588-0800
> Fax: (212) 588-0500
>
> Counsel for Plaintiffs

Pursuant to LR 7.1D, by the above signature, Counsel certifies that the foregoing has been prepared in compliance with LR 5.1B using Times New Roman (14 point).

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

MERIAL LIMITED and
MERIAL SAS,

   Plaintiffs,

v.

INTERVET INC.,

   Defendant.

Civil Action No. 1:05CV3168-CAP

The undersigned hereby certifies that on this 22nd day of April 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

T. Hunter Jefferson
Smith, Gambrell & Russell, LLP
Promenade II, Suite 3100
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309-3592

                                        /s/ J. Patrick Elsevier
                                        J. Patrick Elsevier, Ph.D.
                                        (pelsevier@alston.com)
                                        Georgia Bar No. 246694
                                        Alston & Bird LLP

ATL01/12204890v1

One Atlantic Center
1201 W. Peachtree St.
Atlanta, Georgia 30309-3424
Tel.: 404-881-7683
Fax: 404-253-8285