UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN, <br><br> *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK/JMF) |

**PLAINTIFF INTERVET'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO AMEND THE CASE SCHEDULING ORDER'S CLAIM <u>CONSTRUCTION DEADLINES</u>**

Defendants' opposition rests on the argument that Intervet does not need discovery of the inventors of the patent-in-suit prior to claim construction, and that the schedule therefore need not be altered in order to allow sufficient time for Intervet to take such discovery prior to submission of its *Markman* brief. Defendants miss the point entirely. In setting the present schedule, the Court has already determined that claim construction discovery is appropriate and that it should be allowed and completed "prior to each side's opening *Markman* brief." However, until Intervet filed this motion, Defendants had not produced documents collected from the inventors and fully cooperated in discovery. All of the nonsensical finger-pointing in Defendants' brief does not change the simple fact that Merial, *not* Intervet, had control of the inventors and delayed discovery. Because of Merial's delay, Intervet requires an extension of the schedule in order to complete discovery of the inventors before submitting its *Markman* brief. Accordingly, Intervet requests that its motion to amend the schedule be granted.

## TABLE OF CONTENTS

**Section** **Page**

I.    INTRODUCTION ............................................................................................................ 1

II.   ARGUMENT .................................................................................................................... 3

      A.   Claim Construction Discovery From the Inventors Is Proper ............................... 3

           1.   The Court Has Already Found that Claim Construction Discovery
              May Be Relevant, and Should be Pursued .................................................. 3

           2.   Intervet's Past Constructions Were Necessarily Preliminary, and
              Discovery Is Necessary to Develop Full Constructions and
              Determine Whether Intervet's or Defendants' Constructions Are
              Proper ......................................................................................................... 4

      B.   Intervet Is Not to Blame for the Delays in Inventor Discovery ............................. 5

      C.   Intervet's Request Is Not Premature ....................................................................... 7

      D.   Defendants Will Not Be Prejudiced by the Requested Extension .......................... 7

III.  CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Case**                                                                                                           **Page**

*Bell & Howard Document Mgmt. Prods. Co. v. Altek Sys.*,
   132 F.3d 701 (Fed. Cir. 1997) .................................................................................... 4

*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2003) ............................. 4

I.  INTRODUCTION

Defendants Merial Limited, Merial SAS, the University of Saskatchewan, and The Queen's University of Belfast (collectively "Defendants") characterize Intervet's motion as "unnecessary, premature, and…prejudic[ial]." [D.I. 68 at 1.]  Each of these three characterizations is wrong.  First, Defendants have fought tooth and nail since December of 2005, the date Merial Limited improperly launched the preceding litigation in Georgia (hereinafter "Georgia Action"), to devise a way to pursue this litigation while obstructing access to the foreign universities and inventors of the patent-in-suit.  Clearly, if discovery from the foreign universities and the inventors were truly "unnecessary," Merial Limited and Merial SAS (collectively "Merial") would not have resorted to such extreme measures over such an extended period of time to prevent it from occurring.  Second, with respect to Defendants' contention that Intervet's motion is "premature," it is naive to think that, after over a year of maneuvering and obstruction, Defendants now intend finally to cooperate in the upcoming final month of claim construction discovery and allow for full and fair discovery of the foreign universities and the inventors.  Third, Defendants' only claimed prejudice is that it will not have enough time to take fact discovery *after* the *Markman* hearing under Intervet's proposed schedule.  This makes no sense, since even under the previous schedule, there was no guarantee that the Court would issue a *Markman* ruling before the close of fact discovery.  Regardless, if Defendants feel the need to extend the fact discovery period overall (a proposition that they have not raised directly with Intervet), Intervet likely would not oppose such an extension.

The bottom line is that Defendants never wanted Intervet to be able to take discovery of the inventors prior to having the Court rule on claim construction issues.  In the context of setting the original schedule, Defendants argued (as they do again now) that a claim construction discovery period was largely unnecessary; this argument was rejected by the District Court, as

1

evidenced by the Court's scheduling order, which allowed for eight months of discovery before the parties submitted their *Markman* briefs. Having failed to obtain a ruling from the Court that would deny Intervet the discovery it sought, Merial then decided to achieve the same, improper result simply by stonewalling and refusing to produce documents from the inventors and foreign universities in a time frame that would allow Intervet to take the discovery contemplated in the Court's scheduling order. Indeed, Defendants began producing documents collected from the inventors only *after* Intervet filed the present motion—in fact, Defendants' first production of documents actually collected from the inventors for the purposes of this litigation occurred *the next day* after Intervet filed this motion. Accordingly, Defendants are in no position to complain about the requested extension, since their lack of cooperation is what caused the need for the extension in the first place.

## II.   ARGUMENT

### A.   Claim Construction Discovery From the Inventors Is Proper.

Defendants attempt to argue that claim construction discovery is unnecessary because (i) extrinsic evidence is not necessary in general, and (ii) Intervet has proposed claim constructions in the past. The Court already rejected both of these arguments in setting the original schedule.

#### 1.   The Court Has Already Found that Claim Construction Discovery May Be Relevant, and Should be Pursued.

Defendants argue in large part that Intervet's motion should be denied because evidence from the inventors is not relevant to claim construction. [D.I. 68 at 10-11.] In making this argument, Defendants simply repeat the argument that they offered in their earlier efforts to block inventor discovery from the claim construction process. [D.I. 27 at 3-5.] The Court has already considered this argument in setting the original schedule, and rejected it outright—ruling that claim construction discovery was to be completed prior to opening *Markman* briefs. [D.I. 35 at ¶¶ 4-6.] In their opposition, Defendants never address, or even mention, this provision in the scheduling order.

Further, this argument by Defendants misses the point. While it may turn out that the inventors possess little (or even no) relevant information pertinent to claim construction, that is impossible to know without having the opportunity to take the discovery in the first instance. Intervet has been blocked in its attempts to complete this discovery, *e.g.*, by Merial's refusal to provide relevant documents until after Intervet filed the present motion. Intervet needs additional time to take this discovery not because it *necessarily* will yield relevant information that informs the claim construction analysis of the court, but rather simply because it might.

As already recognized by the District Court, it simply is not the case that inventor testimony is always irrelevant to claim construction issues. Defendants cite two cases in which

3

there was no ambiguity in claim construction after a review of the intrinsic record, thereby rendering unnecessary any need to consider extrinsic evidence (such as inventor testimony). *See Bell & Howard Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997) ("These patents do not suffer from the malady of ambiguous intrinsic evidence."); *E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003) ("Thus, the ordinary meaning of the word…is the proper construction."). However, in this case, as Intervet made clear in its motion and Defendants did not challenge in their opposition, several of the terms at issue do not appear to have an ordinary meaning. *See* D.I. 67 at 6; *see also* D.I. 68 at Ex. D, p. 10-12 (Intervet's expert declaration from the Georgia Action stating that "the term PCV-2 did not have an ordinary meaning at the time the original applications were filed in 1997 and 1998."). Furthermore, Intervet's attempts to define these terms based on the patent specification disclosure have been rejected by Defendants, who have responded with nebulous, overly broad, and unsupported constructions. *See* 1/30/07 Letter from Smith to Tan, attached to D.I. 68 at Ex. G (refusing to limit "PCV-2" to the five strains disclosed in the specification and defining "ORFs 1 to 13" as "only representative examples."). This is precisely the type of situation where discovery from the inventors and experts could be relevant to interpretation of the patent claim terms. Intervet should have the opportunity to find out.

> **2. Intervet's Past Constructions Were Necessarily Preliminary, and Discovery Is Necessary to Develop Full Constructions and Determine Whether Intervet's or Defendants' Constructions Are Proper.**

Merial also argues that claim construction discovery is not necessary because Intervet offered preliminary claim constructions in the past.[1] The fact that Intervet has previously

---

[1] The fact that previous claim construction proposals were merely preliminary, and subject to change, has been borne out by Defendants having markedly changed their claim constructions in the past month.

proposed *preliminary* claim constructions (in whatever context), does not change the fact that it should be able to take discovery from the inventors in order to present any relevant evidence generated therefrom to the Court before the Court is asked to make a final claim construction determination. As noted above, we are already past the point of considering *whether* the parties should conduct claim construction discovery prior to briefing these issues to the Court. The District Court already ruled that the parties *should* take (and allow) such discovery. The issue now is how to deal with the fact that such discovery cannot be completed under the current schedule, because Merial has, until very recently, kept relevant inventor documents from Intervet.

**B.     Intervet Is Not to Blame for the Delays in Inventor Discovery.**

Defendants spend much of their brief finger-pointing and attempting to lay the blame for the lack of inventor discovery to this point on Intervet. According to Defendants, Intervet has rejected Defendants' efforts to "move discovery forward." [D.I. 68 at 5.] This is nonsense. Intervet rightly rejected Defendants' completely self-serving and unfair discovery arrangements that they now characterize as "reasonable." [D.I. 68 at 11.] Intervet saw through these "reasonable" proposals and rejected them.

First, Defendants argue that Intervet delayed the case by refusing to stipulate to Defendants' "reasonable" scheduling order. [D.I. 68 at 11.] That scheduling order, which called for claim construction early in fact discovery and before any expert discovery could occur, was rightly refused by Intervet and was likewise rejected by the District Court. The Court specifically stated that claim construction discovery, including expert discovery, was to be completed prior to the commencement of claim construction proceedings. [D.I. 35.]

Next, Defendants accuse Intervet of delaying this case by refusing to stipulate to their "reasonable" protective order. [D.I. 68 at 11.] This argument is likewise wrong. Intervet has always agreed to treat any discovery from Merial as outside attorneys' eyes only—the highest level of confidential treatment available—pending entry of a protective order. Thus, there simply has never been any reasonable basis for Merial to refuse to provide inventor discovery on the basis that a protective order has not been agreed to by the parties.[2]

Finally, Defendants paint Intervet as the party delaying inventor discovery by arguing that Intervet improperly rejected their earlier efforts to schedule a few inventor depositions. [D.I. 68 at 12-13.] Defendants' earlier efforts, however, were rightly refused. Defendants offered three of the inventors for depositions, and offered to produce only the documents of those inventors prior to the depositions—leaving Intervet without the documents of the remaining seven inventors before these depositions. *See* D.I. 67 at Ex. D. Intervet made it clear to Defendants that this arrangement was unacceptable.[3] Instead of agreeing to produce all inventor documents prior to inventor depositions (as it should have), Merial responded by producing almost no inventor documents until after Intervet filed the present motion. Defendants have no one to blame but themselves for their failure to produce inventor documents. Further, Defendants are simply off-base in attacking Intervet for wanting to review the inventors' documents before deposing them.

---

[2]    The real dispute relating to the protective order is Merial's arbitrary demand that its in-house counsel have access to *every* document *Intervet* produces in this case. This dispute has nothing to do with discovery of the inventors of the patent-in-suit.

[3]    Defendants now attempt to argue that Intervet asked for all documents—in other words Intervet wanted all document production completed—prior to any inventor deposition. [D.I. 68 at 12.] Intervet has made it clear to Defendants, however, that this is not Intervet's position. *See* 11/8/06 E-mail from Tan to Ngau (attached as Exhibit A to the Declaration of Patrice Jean ("Jean Declaration") submitted in support of this memorandum) ("[Intervet's] position from the very beginning has clearly been that we expect the production of inventor documents

### C.     Intervet's Request Is Not Premature.

There is just over a month left before claim construction discovery is supposed to conclude. There are ten inventors, all of whom live outside the United States, and none of whom have yet been deposed in this case. Indeed, Intervet was just recently provided a collection of some of their documents, after Merial waited for months to provide them. Indeed, Defendants have produced approximately 50% of their total document production within the last three weeks. With these facts in mind, Defendants' argument that Intervet's motion is premature is specious.

### D.     Defendants Will Not Be Prejudiced by the Requested Extension.

In the briefing and arguments that preceded the Court's original scheduling order, Defendants argued that claim construction would likely be determinative of this case, and that it would thereby conserve judicial resources to hold a very early *Markman* hearing. [D.I. 27 at 5-6.] Now, for the first time, Defendants claim that it is critical to have a lengthy discovery period ***after*** claim construction. [D.I. 68 at 14-15.] This argument rings hollow, since under the pre-existing schedule, it was highly unlikely (and there was certainly no guarantee) that the parties would actually receive a claim construction *ruling* before the close of fact discovery. In any event, if Defendants believe they need to have fact discovery close after the Court has actually issued a *Markman* ruling, Intervet would consider such an extension. The solution to Merial's concern (assuming it is earnest) is not to shortchange claim construction discovery or to reward

---

before scheduling any inventor depositions.") Intervet made clear that it wanted to review at least all inventor documents prior to inventor depositions.

7

Merial's intransigence in discovery to date, but simply to further extend the discovery schedule so that fact discovery closes a certain set period of time after a *Markman* ruling is actually issued.

Defendants further argue that, to their prejudice, Intervet is trying to "impose the scheduling order it was denied[.]" [D.I. 68 at 15-16.] This accusation is untrue. In the Court's scheduling order, Intervet already got essentially what it wanted, namely an opportunity from the Court to conduct full and fair discovery related to claim construction prior to the *Markman* proceedings. Merial has simply refused to cooperate in discovery, thereby depriving Intervet of this opportunity.

For instance, Defendants state that Intervet has received "nearly all of the inventors' documents that Merial has been able to collect." [D.I. 68 at 2.] To begin with, the majority of the Defendants documents have been produced in the last 20 days, after months of inactivity on the part of the Defendants. Further, if the inventor document production is, in fact, now nearly complete, then it shows that Defendants' "voluntary" efforts to obtain inventor documents were half-hearted and insufficient. Thus far, Defendants have produced less than 1 box (about 2200 total pages) of inventor documents, which they allege constitutes the entire production that Intervet will be receiving from 6 of the 10 inventors. *See* 2/19/06 Letter from Smith to Tan (attached as Exhibit B to the Jean Declaration). Defendants concede that they have produced only 250 total pages from inventor Clark, and will not be producing any more. *See id.* Yet, preliminary discovery to this point indicates that Dr. Clark was one of the leaders of, and most important contributors to, the research that resulted in the '601 patent, and it is hard to believe that he and the University of Saskatchewan (where he worked) are in possession of only 250

8

total pages related to this project. Additionally, the lab notebooks that Defendants have produced are illegible and their custodian is impossible to determine.[4]

Defendants finally insinuate that Intervet should not have relied on their representation to this Court and Intervet that they would work with the inventors to produce them voluntarily for depositions, and instead should have resorted to the Hague Convention to secure their depositions and documents. [D.I. 68 at 12.] However, even assuming that Intervet should not have taken Merial at its word when Merial promised to cooperate voluntarily in discovery, it would have been premature for Intervet to utilize the Hague Convention at this point, since the foreign universities are presently parties to this action, and the parties are still awaiting a ruling from the Court on the issue of whether the inventors are under the control of Merial. Since the inventors are under Merial's control, then Merial must produce them for deposition, independent of the Hague convention.

Due to Defendants' unwillingness to address the issue of inventor discovery in a straightforward manner, it is Intervet, not Defendants, who faces substantial prejudice. This prejudice, however, hopefully can be largely remedied by extending the claim construction schedule as Intervet requests.

---

[4] Intervet is willing to submit a representative sample of Defendants production, which was temporarily designated highly confidential, to the Court for an *in camera* inspection. Intervet submits to the Court that Defendants have produced extensive ranges of lab notebooks in an illegible fashion, with missing pages, and with the author of the notebook impossible to determine.

### III.     CONCLUSION

For the aforementioned reasons, the Court should grant Intervet's motion and amend the case scheduling order as Intervet respectfully requests.

Dated: February 21, 2007                                                      Respectfully Submitted,


                                                                                                                 /s/  John Hutchins
                                                          John R. Hutchins (D.C. Bar # 456749)
KENYON & KENYON LLP
1500 K Street N.W., Suite 700
Washington, DC. 20005
(202) 220-4200 (telephone)
(202) 220-4201 (facsimile)
Attorneys for Plaintiff
Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>MERIAL LIMITED, MERIAL SAS, THE QUEEN'S UNIVERSITY OF BELFAST, and UNIVERSITY OF SASKATCHEWAN,<br><br>*Defendants.* | Civil Action No. 1:06-cv-00658 (HHK/JMF) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February, 2007, I electronically filed *Plaintiff Intervet's Reply Memorandum In Support Of Its Motion To Amend The Case Scheduling Order's Claim Construction Deadlines* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

> Judy Jarecki-Black, Ph.D.
> MERIAL LIMITED
> 3239 Satellite Blvd.
> Duluth, GA 30096-4640
> Tel: (678) 638-3805
> Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

2