## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INTERVET, INC.,**<br><br>                **Plaintiff,**<br><br>        **v.**<br><br>**MERIAL LIMITED; MERIAL SAS; THE QUEEN'S UNIVERSITY OF BELFAST; and UNIVERSITY OF SASKATCHEWAN,**<br><br>                **Defendants.** | **Civil Action No. 06-658 (HHK/JMF)** |

### MEMORANDUM OPINION AND ORDER

This case was referred to me for resolution of <u>Declaratory Judgment Defendants' Motion for Entry of a Protective Order</u> (#34).  I will grant the motion in part in requiring a protective order that does not preclude in-house counsel for Merial Limited and Merial SAS (collectively, "Merial") from accessing all materials in discovery.  I will also require an additional penalty provision to be included in the protective order, and I will order Defendants to submit a revised protective order to the Court that is consistent with this Memorandum Opinion.

### Findings of Fact

1.      Judy Jarecki-Black secured her doctor of philosophy from the Medical University of South Carolina in molecular, cellular, and patho-biology and her juris doctor from Georgia State University.

2.    She is the head of intellectual property for Merial.  She does not draft patent applications but she does manage the intellectual property division of Merial.  She provides management with legal advice as to patents, drafts and files patent prosecution applications, and does "due diligence" investigations for Merial's business development group.

3.    She is counsel of record in this case, as she has been in other cases involving Merial, her employer, and Intervet.  She has participated in other cases and settlement discussions where confidential material was made available to her.  It has never been suggested in any of those cases that she has misused or revealed confidential information made available to her.  This access to all information, including the confidential information, was crucial to her obligation to advise Merial's management whether to settle those cases and she could not have adequately advised management without it.

4.    She is an active member of the trial team in this case, where she is involved in strategy decisions and drafting the briefs to be submitted to the Court.  She advises management on the status of the case and therefore it is crucial that she has access to all material so that her advice to management can be based on the best possible information. This will be especially true if management prepares or reacts to an offer to settle this case.

5.    She brings to the case an expertise other counsel do not share—namely, her education and experience in molecular biology.

6.    In her view, the published information on patents, available on the Internet, would permit Intervet to see if she misused any confidential information in seeking and securing a patent.

7.    She is not involved in pricing decisions, product design, selection of vendors, purchasing decisions, marketing, or overall corporate strategic decision-making.

8.    She does not personally prosecute patents; that is done by associates, outside counsel, and patent agents.

9.    She is aware that as this litigation progresses, Intervet's personnel and lawyers will see Merial's confidential information.  She is not concerned about this; she considers them persons of integrity.

10.    She has the power to "pull" a product from development if she concludes that it should be licensed by the patent holder before it is manufactured.

11.    She acknowledges that in two patent lawsuits involving Merial, protective orders were issued so that documents falling within the highest level of confidentiality were not shown to Merial's in-house counsel.  She pointed out, however, that she was not employed by Merial when they were issued and, to her knowledge, Merial did not employ, at that time, a person who had both her legal and technical knowledge.

12.    She believes, however, that it is necessary for her to see every document provided through discovery, even if outside counsel will see it also, so that she can fulfill her responsibility to Merial.

13.    She concedes that she has been able to advise Merial as to whether to settle another case with Intervet without seeing all of the documents that might have been requested in Merial's document request.

14.     She is listed as the corresponding attorney on patents that are pending and relate to the PCV-2 vaccine that is the subject of this infringement action.

15.     She understands that the prohibition in the protective order that Merial has proposed would be related to the PCV-2 vaccine but would not prohibit her from prosecuting patents for other vaccines.

16.     Her role in patent prosecution for Merial is as corresponding attorney; her only responsibility is to decide who will draft the claim that must be filed.

### Ultimate Conclusion of Law

I do not find that Judy Jarecki-Black is a competitive decision-maker and I see no need to preclude her from access to any information that other counsel and expert witnesses for Merial will see.

### Memorandum Opinion

A patent is by its very nature anti-competitive in the sense that it precludes any other person from competing with its owner.  Since patent litigation pits competitors against each other, the exchange of information during the liberal discovery permitted by the Federal Rules of Civil Procedure may grant access by one owner to a competitor's trade secrets and other information that could strip one competitor of an advantage that it won fairly in the market place.  On the other hand, it is not for one party in litigation (or the court for that matter) to determine how the other party will try its case to the point of determining who will and will not see what discovery yields.  The courts have struggled with these interests and have resolved them by fashioning protective orders that match the various levels of confidential information with the persons who may view it.

After some initial skirmishing, Merial has proposed a Protective Order[1] that creates two tiers or levels of information and restricts who may see information in each category. Merial also proposes that persons given access to the most restrictive category, "Attorney Eyes Only," be precluded from "prosecuting patents relating to PCV-2 viruses or vaccines during this litigation and for one year after its final resolution, including any appeal." Proposed Order ¶ 7(a) at 6.

Intervet argues that Merial's Proposed Order still does not go far enough. Intervet wants an absolute prohibition on two particular individuals who would have access to the information classified as "Attorney Eyes Only": Dr. Judy Jarecki-Black, Merial's in-house counsel, and Thomas Kowalski, Esq., an attorney who has often been retained by Merial in patent litigation matters where Merial is a party. Intervet argues that there is no reason to run the risk that Dr. Judy Jarecki-Black and Thomas Kowalski will see the confidential information and have it affect some decision they make in the future, even if it does so only subconsciously. Merial will not be harmed by such a prohibition since it already has thoroughly competent lawyers who, aided by, for example, the expert witnesses, can handle every aspect of this case, including informing Merial's management as to the ultimate question of whether the case should be tried or settled.

But, Intervet's question—why permit access when Merial will not be harmed by the prohibition?—is met by its converse: why deny access when the risk that the information will be misused is at this point theoretical? Trading questions based on the potential of future harm that may or may not occur does not advance the parties or the court to a pragmatic solution that balances on one side Merial's right to try this case as it

---

[1] <u>Defendants' Reply Brief in Support of Their Motion for Entry of a Protective Order</u>, Exhibit A (hereafter "Proposed Order").

sees fit, determining who will do what based on all participants having equal access to the information, against the potential misuse of the confidential information to secure an unfair competitive advantage.

As noted above, to this point, the courts have precluded access to confidential information from those who can be described as competitive decision-makers. The "leading authority"[2] is U.S. Steel Corp. v. United States, 730 F.2d 1465 (Fed. Cir. 1984). In that case, the Federal Circuit said:

> The parties have referred to involvement in "competitive decisionmaking" as a basis for denial of access. The phrase would appear serviceable as shorthand for a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor.

Id. at 1468 n.3.

Thus, U.S. Steel would preclude access to information to anyone who was positioned to advise the client as to business decisions that the client would make regarding, for example, pricing, marketing, or design issues when that party granted access has seen how a competitor has made those decisions. E.g., Brown Bag Software, 960 F.2d at 1471 (counsel could not be expected to advise client without disclosing what he knew when he saw competitors' trade secrets as to those very topics); Matsushita Elec. Indus. Co v. United States, 929 F.2d 1577, 1579-80 (Fed. Cir. 1991) (determination by agency forbidding access was arbitrary when lawyer precluded from access testified that he was not involved in pricing, technical design, selection of vendors, purchasing and marketing strategies); Volvo Penta of the Americas, Inc. v. Brunswick Corp., 187 F.R.D.

---

[2] Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) (describing U.S. Steel as "leading authority").

240, 242 (E.D. Va. 1999) (competitive decision-making involves decisions "that affect contracts, marketing, employment, pricing, product design" and other decisions made in light of similar or corresponding information about a competitor); Glaxo Inc. v. Genpharm Pharm., Inc., 796 F. Supp. 872, 876 (E.D.N.C. 1992) (improper to preclude in-house counsel from access to confidential information because he gave no advice to his client about competitive decisions such as pricing, scientific research, sales, or marketing).

By these standards, there is simply no evidence before me that Dr. Judy Jarecki-Black is a competitive decision-maker. Her testimony was that she is not involved in pricing decisions, product design, selection of vendors, purchasing decisions, marketing, or overall corporate strategic decision-making. Instead, her responsibilities as head of intellectual property are exclusively either legal, administrative, or organizational. They are legal because she provides legal advice to management and serves as a part of the trial team. They are administrative or organizational in the sense that she assigns responsibilities for the actual prosecution of patents to others and keeps management advised of the progress (or lack of it) in litigation in which Merial is involved.

I appreciate that, in Intel Corp. v. VIA Tech., Inc., 198 F.R.D. 525, 530 (N.D. Cal. 2000), Magistrate Judge Larson found that counsel's particular involvement in licensing, often achieved through litigation, constituted competitive decision-making. The lawyer in that case was "actively involved in negotiating the terms of licensing agreements as part of settling lawsuits" and that to fulfill her responsibilities she had to evaluate "the strength of the patent, Intel's products implicated by the patent, and competitors' products implicated by the patent." Id. She further testified that "licensing agreements

reached as part of settlements directly affected Intel's competitiveness in the market by affecting Intel's ability to sell products." Id.

There has been no such testimony before me.  Dr. Jarecki-Black testified that her company has licensing teams, consisting of members from tax, legal, and other divisions besides her own, but not an official sign-off sheet for all who participate in a licensing decision.  In contrast, Dr. Jarecki-Black functions as an administrative coordinator of information for the business development section.  That testimony does not permit the same conclusion Judge Larson reached from the testimony before him.  Nor, for that matter, was there any evidence before me to suggest that Dr. Jarecki-Black's administrative duties as to patent licensing threaten, in itself, misuse of confidential information.

Moreover, although I have found that Dr. Jarecki-Black is not involved in competitive decision-making, I will create an additional disincentive to misuse of confidential information and add a penalty provision, as I did in United States v. Sunguard Data Sys., Inc., 173 F. Supp. 2d 20 (D.D.C. 2001).  By doing this, I create a powerful incentive to comply with my Order.  This penalty provision will cause anyone subject to the Order to err on the side of caution and recuse himself or herself from any situation where use of the information in, for example, the prosecution of other patents or licensing decisions, might be a violation of the Order.

 I will therefore order that Merial amend its proposed order so it contains the following provision:

> Any violation of this Order will be deemed a contempt and punished by a fine of $250,000.  This fine will be paid individually by  the person who violates this Order.  Any violator may not seek to be reimbursed or indemnified for

the payment the violator has made.  If the violator is an attorney, the Court will deem the violation of this Order to warrant the violator being sanctioned by the appropriate professional disciplinary authority and Judge Facciola will urge that authority to suspend or disbar the violator.

Additionally, everyone who is permitted access to any confidential information subject to the protective order shall sign the following agreement:

### AGREEMENT CONCERNING CONFIDENTIALITY

I, _____, am employed as a _____ by _____ .  I hereby certify that:

1.  I have read the Protective Order entered in the above-captioned action and the Memorandum Opinion issued by U.S. Magistrate Judge John M. Facciola.  I understand its terms and the obligations imposed upon me by the Order and by Judge Facciola's opinion.

2.  I agree to be bound by the terms of the Protective Order entered in the above-captioned action.  I agree to use the information provided to me only for the purpose of this litigation.

3.  I understand that my failure to abide by the terms of the Protective Order entered in the above-captioned action will subject me, without limitation, to civil and criminal penalties for contempt of Court.  I specifically agree that any violation of this Order will be deemed a contempt, punished by a fine of $250,000; that this fine will be paid individually by the violator; and that the violator will not be reimbursed or indemnified for the payment he or she has made.  I further agree that, if I am an attorney, Judge Facciola will deem my violation of this Order a basis for my being sanctioned by the appropriate professional disciplinary authority, and that Judge Facciola may urge that authority to suspend or even disbar me.

4.  I submit to the jurisdiction of the United States District Court for the District of
Columbia solely for the purpose of enforcing the terms of the Protective Order entered in
the above-captioned action and freely and knowingly waive any right I may otherwise
have to object to the jurisdiction of said Court.

5. I make this certificate this _____ day of _____, 20___ .

_____

(SIGNATURE)

Two final points.  I find the more specific definition of the information protected
by the Protective Order proposed by Merial to be more useful and I will adopt it.  Second,
in its pleadings, Intervet sought to bar access to Thomas Kowalski, but there was no
testimony or evidence presented at the hearing Mr. Kowalski.  I do not know if Intervet is
continuing to press its contention about him.  Assuming it is, then as I have found that Dr.
Jarecki-Black is not a competitive decision-maker, then a fortiorari, Mr. Kowalski, a
practicing lawyer who represents Merial in patent litigation, is not one either.

**Conclusion**

Declaratory Judgment Defendants' Motion for Entry of a Protective Order is
granted in part and these defendants shall submit an amended protective order, on or by
April 4, 2007, consistent with this opinion, for my signature.

**SO ORDERED.**

_____/s/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: March 21, 2007

10