# EXHIBIT A

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MERIAL LIMITED and MERIAL SAS,

        Movants,

v.

DR. RAYMOND R.R. ROWLAND,

        Objector.

CASE NO.  07-MC-219-CM

**(Related Case No. 1:06-CV-00658, U.S. District Court for the District of Columbia)**

## MERIAL LIMITED AND MERIAL SAS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DR. RAYMOND R.R. ROWLAND AND REQUEST FOR EXPEDITED TREATMENT OF SAME

Pursuant to Federal Rule of Civil Procedure 45, Defendants Merial Limited and

Merial SAS (collectively "Merial" or "Defendants") hereby move this Court for an Order

(i) compelling a non-party, Dr. Raymond R.R. Rowland ("Dr. Rowland"), who serves as

an expert witness for Plaintiff Intervet, Inc. ("Intervet") in this matter, to provide

materials in full and complete compliance with a subpoena served on him on May 4,

2007; and (ii) compelling Dr. Rowland to appear to continue his deposition pursuant to

the subpoena after he has provided all of the materials in compliance with the subpoena.

The grounds for this Motion are set forth in Defendant's Memorandum in Support,

submitted herewith.[1]

Merial requests expedited treatment of its motion to compel Dr. Rowland's

compliance with the subpoena.  Merial and Intervet are adverse parties in a patent-

---

[1] Because Intervet's counsel designated certain pages of Dr. Rowland's deposition transcript as "Confidential" under the Protective Order that has been entered in the underlying litigation pending in the United States District Court for the District of Columbia and because certain of these pages are referenced in the Merial's Memorandum in Support, the Memorandum in Support is being filed under seal pursuant to the requirements of the Protective Order.

infringement litigation pending in the United States District Court for the District of Columbia. The documents and testimony that Merial seeks from Dr. Rowland, Intervet's expert on claim construction, relate directly to the construction of the disputed terms in the patent-in-suit, and the hearing at which this evidence will be considered is currently scheduled for August 6-7, 2007.[2]

Pursuant to Local Rule 37.2, the undersigned hereby certifies that counsel for Merial have conferred in good faith with counsel for Dr. Rowland and Intervet regarding the discovery requested in Merial's Motion to Compel. Specifically, upon learning at the deposition of Dr. Rowland taken on May 16, 2007 that Dr. Rowland had withheld the materials at issue from production, counsel for Merial requested at that time that Dr. Rowland and his counsel agree to produce the materials. Dr. Rowland and his counsel, however, refused to agree to produce the materials. The next day, May 17, 2007, counsel for Merial wrote to Dr. Rowland's counsel again requesting that they agree to produce the materials at issue. Despite repeated requests, counsel for Dr. Rowland did not respond to Merial's counsel's May 17, 2007 letter until June 1, 2007, at which time they again refused to agree to produce the requested materials. Further counsel for Merial held a teleconference with Dr. Rowland's counsel by phone on June 8, 2007 to further discuss Merial's request for each of the materials at issue, but they continued refused to produce any of them.

Respectfully submitted, this 11th day of June, 2007.

/s/ D. A. N. Chase
D. A. N. Chase
Kansas Bar # 5784
Chase Law Firm, L.C.

---

[2] The claim construction hearing was originally set for June 21, 2007, but was postponed to August 6-7, 2007, in part due to the need for Merial to complete discovery of Dr. Rowland.

- 2 -

4400 College Boulevard, Suite 130
Overland Park, Kansas 66211
913-339-9666 tel.
913-339-6061 fax

Of Counsel:

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
Vicki Franks
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Merial Limited and Merial SAS*

LEGAL02/30402899v1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MERIAL LIMITED and MERIAL SAS,

        Movants,

v.

DR. RAYMOND R.R. ROWLAND,

        Objector.

CASE NO. 07-MC-219CM

(Related Case No. 1:06-CV-00658, U.S. District
Court for the District of Columbia)

**MERIAL LIMITED AND MERIAL SAS' MEMORANDUM IN
SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF
DOCUMENTS FROM DR. RAYMOND R.R. ROWLAND AND
REQUEST FOR EXPEDITED TREATMENT OF SAME**

FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

CONTAINS DR. RAYMOND R.R. ROWLAND'S
CONFIDENTIAL INFORMATION



## INTRODUCTION

The information Defendants Merial Limited and Merial SAS (collectively "Merial" or "Defendants") have subpoenaed from Plaintiff Intervet's claim construction expert witness, Dr. Raymond R.R. Rowland ("Dr. Rowland"), relates to the issues in *Intervet Inc. v. Merial Limited and Merial SAS*, No. 1:06-CV-00658 (D.D.C.) (HHK-JMF) (the "DC action") and falls squarely within the proper bounds of discovery. Merial respectfully submits this motion under Federal Rule of Civil Procedure 45 to compel Dr. Rowland to produce certain materials in response to Merial's subpoena and to compel Dr. Rowland's appearance to continue his deposition after the relevant materials have been produced.

Because the DC Court has set the claim construction hearing for August 6-7, 2007[1] and because the materials Merial seeks are important to a full and complete understanding of Intervet's claim constructions and the bases therefore, Merial requests that its Motion to Compel be given expedited consideration.

## FACTUAL BACKGROUND

Merial is one of the world's leading animal healthcare companies. (*See* Answer and Counterclaims of Merial Limited and Merial SAS in Response to Plaintiff's Complaint for Declaratory Judgment, which is Exhibit 17 to the Declaration of D. A. N. Chase[2] ("Chase Decl."), submitted herewith,[3] at p. 5, ¶ 2.) Merial develops, produces and sells veterinary pharmaceuticals and vaccines for livestock, pets and wildlife. (*Id.*) Of particular relevance here,

---

[1] The claim construction hearing was originally set for June 21, 2007, but was postponed to August 6, 2007, in part due to the need for Merial to complete discovery of Dr. Rowland.

[2] Pursuant to Local Rule 7.6, all of the exhibits relied upon in support of Merial's memorandum in support of its Motion to Compel are attached as exhibits to the Chase Decl. and an index of exhibits is set forth in the body of the Chase Decl.

[3] Because Intervet's counsel designated certain materials that are attached as Exhibits to the Chase Decl. as "Confidential" under the Protective Order that has been entered in the underlying litigation pending in the United States District Court for the District of Columbia, the Chase Decl. is being filed under seal pursuant to the requirements of the Protective Order.

Merial has contributed to and continues its efforts in the swine health field. (*Id.*) Merial has products for treating diseases in pigs and other products for controlling and preventing diseases in pigs and for alleviating pain and inflammation in pigs. (*Id.*)

Merial owns U.S. Patent No. 6,368,601 ("the '601 patent"), which is entitled "Porcine Circovirus Vaccine and Diagnostics Reagents." (*Id.*, pp. 5-6, ¶¶ 1 & 11.) A copy of the '601 patent is attached as Exhibit 18 to the Chase Decl. The '601 patent generally relates to vaccines for a disease in pigs known as Post-Weaning Multisystemic Wasting Syndrome (PMWS). (Chase Decl., Ex. 17, p. 7, ¶ 12.) PMWS is an infection of young pigs (usually 8-16 weeks old). (*Id.*) PMWS tends to be a slow and progressive disease with a high fatality rate in affected pigs. PMWS can have devastating economic consequences. (*Id.*) The inventors of the '601 patent sought to address PMWS. (*See* Chase Decl., Ex. 18, col. 1, lns. 4-10.) Through their efforts, the inventors isolated, sequenced, and characterized a new type of porcine circovirus from the tissues of pigs that had PMWS. (*See, e.g., id.*, col. 1, lns. 48-65.) The inventors decided to call this new type of porcine circovirus, which is a causative agent of PMWS, "porcine circovirus type II" or "PCV-2" in order to distinguish it from a previously known non-pathogenic porcine circovirus, which the inventors decided to call "porcine circovirus type I" or "PCV-1." (*See, e.g., id.*)

Merial makes a PCV-2 vaccine called CIRCOVAC®. CIRCOVAC® is approved for use in Europe and Canada. (Chase Decl., Ex. 17, p. 7, ¶ 13.) To date, hundreds of thousands of pigs have been successfully vaccinated with CIRCOVAC®. Currently, Merial seeks authorization to market CIRCOVAC® in the United States. (*Id.*)

Intervet has infringed, contributed to the infringement, and/or actively induced infringement of the claims of the '601 patent by making, using, selling, and/or offering for sale

products, including, but not limited to, a Porcine Circovirus Type 2 vaccine, in the United States. (*Id.*, p. 2, ¶ 11 & pp. 7-8, ¶ 14.) On April 11, 2006 Intervet brought a declaratory-judgment action against Merial in the United States District Court of the District of Columbia seeking a declaration that Intervet's PCV-2 vaccine does not infringe the '601 patent and that the '601 patent is invalid and unenforceable. A copy of Intervet's declaratory-judgment Complaint is attached as Exhibit 19 to the Chase Decl.

Because patent claims define the patented invention and set the boundaries of the patentee's right to exclude, district courts in patent-infringement suits construe patent claims as a matter of law to determine their meaning and scope. *See Markman v. Westview Instruments., Inc.*, 52 F.3d 967, 976, & 980 (Fed. Cir. 1995). Accordingly, on August 4, 2006, the DC Court entered a Scheduling Order setting forth certain deadlines for discovery, briefing, and a hearing on the issue of the '601 patent's claim construction. The parties filed their opening claim construction briefs with the DC Court on May 2, 2007 and their answering claim construction briefs on May 25, 2007. On August 6-7, 2007, the DC Court will hold a claim construction hearing, i.e., *Markman* hearing.

In its opening claim construction brief, Intervet relied on a declaration of Dr. Rowland, and Intervet has named him as an expert on the claim construction of the '601 patent. Dr. Rowland has been held out by Intervet to be an expert on PCV-2, the subject of the '601 patent. A copy of Dr. Rowland's expert declaration is attached as Exhibit 1 to the Chase Decl.

On May 4, 2007, Merial served a subpoena on Dr. Rowland requesting his appearance for a deposition[4] and requesting him to produce certain documents. A copy of Merial's subpoena and notice of deposition to Dr. Rowland is attached as Exhibit 3 to the Chase Decl. On May 9,

---

[4] Pursuant to the request of Dr. Rowland's attorneys, the deposition was noticed to take place in their Washington, DC office.

2007, Intervet's lawyers, acting on Dr. Rowland's behalf, served Merial with written objections to the subpoena. A copy of these objections is attached as Exhibit 4 to the Chase Decl. Although Dr. Rowland provided Merial with some documents on May 10, 2007 that were responsive to the subpoena, as explained more fully below, Dr. Rowland did not conduct a good-faith search for the documents requested by Merial, failed to produce relevant documents, and engaged in a deliberate scheme to avoid producing drafts of his declaration. In compliance with Rule 45 of the Federal Rules of Civil Procedure and Local Rule 37.1(b), Merial files this motion to compel Dr. Rowland to fully comply with the subpoena.

## QUESTIONS PRESENTED

The following questions are presented to the Court for consideration:

(i)     Whether Dr. Rowland and Intervet's lawyers should be ordered to produce certain materials in response to Merial's subpoena;

(ii)    Whether Dr. Rowland should be ordered to appear to continue his deposition after the relevant materials have been produced;

(iii)   Whether Dr. Rowland and Intervet's lawyers should be sanctioned, pursuant to Federal Rules of Civil Procedure 37 and 45 and this Court's inherent authority, for their scheme to avoid producing, and their likely destruction of, drafts of Dr. Rowland's declaration; and

(iv)    Whether Merial's Motion to Compel should be given expedited consideration in light of the relevancy of the materials and testimony sought to the upcoming claim construction hearing in the DC action.

4

## ARGUMENT AND AUTHORITIES

**I.      Merial Properly Served a Subpoena Duces Tecum on Dr. Rowland and the Burden is on Him to Justify Non-Compliance.**

Although he has been engaged as an expert witness by Intervet, Dr. Rowland is not a party. Accordingly, the subpoena served on him is not only a proper vehicle for obtaining the documents and factual testimony, it is the only way for Merial to ensure complete production of documents and testimony from Dr. Rowland. The subpoena was properly issued and served on Dr. Rowland pursuant to the procedures set forth in Federal Rule of Civil Procedure 45.

A motion to compel production is proper under Federal Rule of Civil Procedure 45(c)(2)(B) where a non-party has failed to comply with a subpoena duces tecum. *See U.S. Surgical Corp. v. Orris, Inc.*, No.Civ.A. 96-2300-GTV, 1997 WL 756606, at *5 (D. Kan Nov. 17, 1997) (granting in part defendant's motion to compel documents described in a subpoena duces tecum pursuant to Rule 45(c)(2)(B)). The proper forum for a motion to compel production of documents from a non-party is the court for the district where the non-party may be found. *See Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001) (citing Rule 45(c)(2)(B) and noting that a non-party subpoena must issue from the court for the district in which the non-party may be found and that court must resolve any disputes over production arising between the party seeking the documents and the non-party being subpoenaed.)

The federal discovery rules are to be construed liberally and broadly. *Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1364984, at *6 (D. Kan. May 9, 2007). A party that serves a subpoena is entitled to information as a matter of right. Indeed, this Court has held that while the burden is on the moving party to seek court action, the burden of persuasion that the requested discovery is improper remains at all times with the objecting party. *Id.*

5

II.     **Dr. Rowland Failed to Diligently Search for and Produce Documents In Response to Merial's Subpoena Duces Tecum.**

Merial's subpoena duces tecum to Dr. Rowland contained ten document requests seeking, in part, information related to the preparation of his declaration, relevant articles he authored and documents concerning the subject matter of his declaration.  In response, Dr. Rowland objected to each document request, but he did agree—in all but one instance—to produce documents to the extent that they existed and could be located through a reasonable search.  During his deposition,[5] however, Dr. Rowland admitted that he spent only two hours looking for documents in response to the subpoena.[6]  (Chase Decl., Ex. 12, at 26:12-14.)  Dr. Rowland's search efforts were limited to collecting a box of documents that Intervet's lawyers sent to him, copying his invoices to Intervet's lawyers, printing a group of pdf files of case materials, and conducting a limited word search on his e-mails for communications with Intervet's lawyers.  (*Id.*, at 26:12--29:14.)

Moreover, as explained below, Dr. Rowland admitted that he failed to search for and produce certain categories of documents covered by the subpoena.  He also admitted to making arbitrary decisions regarding whether documents were relevant.  In doing so, he excluded information that on its face is plainly relevant to the case and to Dr. Rowland's role in it.

A.     **Dr. Rowland Did Not Search for and Failed to Produce a Copy of the Papers He Authored on PCV-2.**

Dr. Rowland testified that he did not search for all documents in his possession responsive to Request No. 5, which sought:

> All articles, letters, papers, or abstracts, presentations, publications, authored, co-authored, published, *submitted for publication*, or given by you relating to the subject matter of your Declaration, including, but not limited to, any such articles,

---

[5] Dr. Rowland's deposition was taken on May 16, 2007.

[6] Relevant excerpts from the transcript of Dr. Rowland's deposition are attached as Exhibit 12 to the Chase Decl., submitted herewith.

letters, or papers relating to PCV, PCV-1, PCV-2, vectors, Open Reading Frames (ORFs), or epitopes.

(*Id.*, at 37:17-38:13 (emphasis added); Chase Decl., Ex. 3, p.7, ¶ 5.) Dr. Rowland initially claimed that he did not search for documents in response to this request because it was too burdensome. But Dr. Rowland subsequently admitted that he had only authored or co-authored two papers relating to porcine circoviruses ("PCV"), including PCV-1 or PCV-2. (Chase Decl., Ex. 12, at 37:17-40:8; 42:2-18; 46:20-47:17.) Dr. Rowland failed to search for or produce a copy of either of these two papers. (*Id.*) One of these papers, on which Dr. Rowland is a co-author, has been published, and Merial was able to locate a copy of the paper independently of Dr. Rowland.

The second paper that Dr. Rowland failed to produce, however, is pending publication in the Journal of Swine Health and Production. Accordingly, it was not, and is not, publicly available to Merial. This second paper, which is entitled, "A Cluster of Farms Experiencing Severe Porcine Circovirus Associated Disease (PCVAD): Clinical features and association with the PCV2-321 genotype," is the only paper on PCV-2 on which Dr. Rowland is the primary author. (*Id.*) Dr. Rowland admitted that he likely has copies of this second paper in both hard copy in his office and electronic drafts on his computer, but he nonetheless failed to search for or produce any copies. (*Id.*, at 135:22-136:9.)

Dr. Rowland testified that he failed to produce these papers in response to the subpoena because he believed that they were not relevant. (*Id.*, at 40:6-12.) Dr. Rowland made this assertion, even though in his Response and Objections to Request No. 5, he specifically stated that "[r]esponsive documents listed in Exhibit A [to his declaration], to the extent they can be located through a reasonable search, will be produced." (*See* Chase Decl., Ex.4, p.10.) The papers on PCV-2 that Dr. Rowland failed to produce are the first and fourth papers listed under

7

the "Publications" section of his Curriculum Vitae, which is Exhibit A to his declaration. (Chase Decl., Ex. 12, at 40:2-8; Chase Decl., Ex. 2, p. 5.) Moreover, Dr. Rowland testified that he did not even look at the papers to determine whether they are relevant and should be produced in response to any of the requests in the subpoena. (Chase Decl., Ex. 12, at 49:17-20.) Dr. Rowland admitted that the subject of both papers is PCV-2 and that the second paper, which is pending publication and which Merial has been unable to obtain, provides the DNA sequences for certain isolates of PCV-2 that his lab had recently isolated and sequenced. (*Id.*, at 47:4-48:8; 133:2-134:12.) Accordingly, these papers are directly relevant to the subject matter of Dr. Rowland's expert testimony in this case.

**B.  Dr. Rowland Did Not Search for and Failed to Produce a Copy of an Abstract He Authored on PCV-2.**

Dr. Rowland similarly testified that he also failed to search for and produce a copy of an abstract from a scientific meeting on which he was a co-author because he independently decided that it was not relevant, even though he admitted that the abstract also related to PCV-2. (*Id.*, at 46:3-19.)

**C.  Dr. Rowland Did Not Search for and Failed to Produce a Copy of His Patent Application Relating to PCV-2.**

Dr. Rowland also failed to search for and produce a pending patent application on which he is a named inventor that pertains to PCV-2. The patent application is entitled ████████████ ████████████████████████ (*Id.*, at 125:1-3, 127:15-128:5, 162:16-164:1.) Dr. Rowland testified that he did not know whether the work described in his patent application would infringe the claims of the '601 patent. (*Id.*, at 128:11-129:7.) Dr. Rowland's pending patent application on PCV-2 is clearly relevant to his expert testimony in this case because it relates to (i) whether Dr. Rowland qualifies as an expert on the issues set forth in his declaration; (ii) his understanding of the meanings of the terms that he purports to construe in his declaration;



and (iii) his bias and apparent motivation for wanting to narrowly construe the terms of the '601

patent, i.e., to obtain patent protection for his own PCV-2 ███████████████████

Apart from concerns over confidentiality, Dr. Rowland gave no rational explanation for

his decision not to produce his PCV-2 patent application. As explained below, any concern that

Dr. Rowland may have regarding confidentiality of his pending patent application is moot in

light of the Protective Order that has been entered in this case. A copy of the Protective Order is

attached as Exhibit 5 to the Chase Decl.

> **D.  Dr. Rowland Did Not Search for and Failed to Produce Documents Relating to His Prior Expert Consultancy.**

Dr. Rowland also testified that he did not look for documents in response to Request No.

9, which sought:

> All documents that reflect, refer or relate to any cases for which you have been
> retained as an expert witness, including but not limited to all reports, deposition
> transcripts, trial transcripts, and engagement agreements.

(Chase Decl., Ex. 12, at 49:21-50:7; Chase Decl., Ex. 3, p. 7, ¶ 9.) Dr. Rowland testified that he

had previously been retained as an expert witness in a patent-infringement litigation relating to a

PRRS vaccine. (*Id.*, at 50:22-51:21.) PRRS, like PCV-2, is a porcine virus. (Chase Decl., Ex.

12, at 172:22-173:3.) Dr. Rowland testified that he was retained in that case by Schering-

Plough, which Dr. Rowland testified was, to his knowledge, in the process of acquiring Intervet.

(*Id.*, at 51:2-7; 54:4-6.) Dr. Rowland testified that he retained documents relating to his expert

consultancy in that case and that such documents were located in his basement, but that he did

not look for these responsive documents. (*Id.*, at 53:1-17.) The opinions that Dr. Rowland

offered as an expert witness in an earlier patent-infringement case, which also relates to a porcine

virus vaccine, are clearly calculated to shed light on Dr. Rowland's opinions in this porcine virus

vaccine patent-infringement case.  Accordingly, Dr. Rowland is obligated under Rule 45 to

produce these documents to Merial.

> ### E.    Dr. Rowland Did Not Search for and Failed to Produce Documents Relating to the Trials He has Conducted on Intervet's PCV-2 Vaccine.

Request No. 4 of Merial's subpoena to Dr. Rowland sought, in part:

> All documents reflecting, referring, or relating to any communications with others regarding or relating to … the Intervet PCV-2 vaccine.

Dr. Rowland testified that has directed field trials for Intervet's PCV-2 vaccine. (*Id.*, at 123:7-22;

Chase Decl., Ex. 3, p. 6, ¶4.)  He conducted the field trials for Intervet's PCV-2 vaccine with one

of his colleagues, Dr. Dick Hesse.  (Chase Decl., Ex. 12, at 139:8-139:9, 1341:1-6; *see also*

Chase Decl., Ex. 6 (describing Dr. Rowland's and Dr. Hesse's field trials of Intervet's vaccine);

*see also* Chase Decl., Ex. 7 (same).)  Significantly, Dr. Hesse developed Intervet's PCV-2

vaccine, in particular, the product that infringes Merial's '601 patent.  (Chase Decl., Ex. 12, at

129:8-131:3, 137:11-19.)  Dr. Rowland, however, did not produce any documents relating to his

and Dr. Hesse's field trials of Intervet's PCV-2 vaccine, or any other documents relating to

Intervet's PCV-2 vaccine.  Such documents are relevant to this case, including, but not limited

to, the infringement issues and Dr. Rowland's bias as an expert for Intervet.

> ### F.    Dr. Rowland Failed to Search for and Produce All Relevant E-mails and Attachments.

Dr. Rowland testified that, apart from searching for e-mails he exchanged with Intervet's

lawyers, he did not search for any other e-mails in response to the subpoena.  (*Id.*, at 29: 12-14.)

Dr. Rowland limited his e-mail search to the terms "Kenyon," (which is short for Intervet's

lawyers, Kenyon & Kenyon LLP) and the names of certain Intervet's lawyers, "Cedric Tan," and

"Patrice Jean."  (*Id.*, at 29:8-29:14.)  He did not search for any other e-mails.  (*Id.*)

Dr. Rowland's cursory review of his e-mails and files in response to Merial's subpoena is patently insufficient. For example, Dr. Rowland should have—and easily could have—searched for and produced e-mails relating to (i) his work on Intervet's PCV-2 vaccine, (ii) articles, letters, papers concerning the subject matter of his declaration, such as PCV, PCV-1, PCV-2, vectors, Open Reading Frames (ORFs), and epitopes. As noted above, Dr. Rowland testified that he likely had electronic drafts of different versions of his PCV-2 article that is pending publication, yet, he failed to search his e-mails for such drafts. In addition, Dr. Rowland produced an e-mail addressed to Patrice Jean, one of Intervet's lawyers, that was sent on December 12, 2006, without producing the attachment to the e-mail, i.e., an article. (*Id.*, at 207:1-22.) Under the rules governing discovery, Dr. Rowland is required to produce a complete copy of this e-mail with attachments to Merial.

Dr. Rowland's testimony makes clear that he failed to search diligently for documents in response to Merial's subpoena. Because Dr. Rowland did not conduct a full and complete search for all documents responsive to Merial's subpoena, Merial respectfully requests that this Court compel Dr. Rowland to search for and produce all documents, including but not limited to e-mails, responsive to each of the requests in the subpoena.

## III.   Dr. Rowland's Objection to Production of Relevant Materials Based on Claims of Confidentiality are without Merit.

Although in his laundry list of boilerplate General Objections to Merial's subpoena, Dr. Rowland objected to producing information or documents containing "confidential information," Dr. Rowland did not in his specific responses to any of the individual requests for production object to producing documents on the basis of confidentiality concerns. (*See* Chase Dec., Ex. 4.); *see also Alloc, Inc., v. Unilin Beheer B.V.*, No. 03-cv-1266, 2006 WL 757871 at *2 (E.D. Wis. Mar. 24, 2006) (granting motion to compel where party objecting to document requests

11

failed to raise specific objections to moving party's document requests.) For example, with respect to Request No. 5, Dr. Rowland did not object to producing any documents on the basis of confidentiality, and as noted above, specifically stated that "[r]esponsive documents listed in Exhibit A [to his declaration], to the extent they can be located through a reasonable search, will be produced." (*See* Chase Decl., Ex. 4, p. 10.)

Nonetheless, at his deposition, Dr. Rowland refused to produce, due to alleged confidentiality obligations, (i) his paper relating to PCV-2, which is the first paper listed in Exhibit A to his declaration, and (ii) a copy of his pending patent application on PCV-2. (Chase Decl., Ex. 12, at 40:.2-8, 153:1-3.) Dr. Rowland claimed that the confidentiality of unpublished papers is "assumed" in the academic community, but he admitted that no written or oral contractual obligations required him to keep his pending publication confidential. (*Id.*, at 153:9-154:7.) Dr. Rowland also admitted he did not ask any of his co-authors whether they would permit him to produce a copy of the paper. (*Id.*, at 153:9-18, 156:12-15, 157:22-158:4.)

Dr. Rowland's confidentiality objections lack merit. Dr. Rowland's article on PCV-2, according to his CV, will be published later this year. (Chase Decl., Ex. 2, p. 5; Chase Decl., Ex. 12, at 133:10-15.) Likewise, under the current patent law, unless certain special circumstances exist, patent applications are published eighteen months after they are filed. *See* 37 C.F.R. 1.211. Thus, Dr. Rowland has no legitimate confidentiality concerns.

Even if Dr. Rowland felt some personal obligation to keep his pending publication and application confidential, the DC Court has entered a protective order that moots any confidentiality concerns Dr. Rowland may have. Dr. Rowland testified that he was aware of the existence of the protective order. (Chase Decl., Ex. 12, at 147:14-18.) Also, in his General Objections to Merial's subpoena, he said that he "(to the extent ordered by the Court to produce

such Confidential Information) will only produce such information or documents subject to the Protective Order governing this matter." (Chase Decl., Ex. 4, p. 3, ¶ 7.)

Because any legitimate confidentiality concerns are moot in light of the Protective Order in this litigation, Merial asks the Court to compel Dr. Rowland to produce (i) any and all drafts, including annotated drafts, of the pending publication titled, "A Cluster of Farms Experiencing Severe Porcine Circovirus Associated Disease (PCVAD): Clinical features and association with the PCV2-321 genotype" that has been accepted for publication in the 2007 issue of the Journal of Swine Health and Production; (ii) a copy of his pending patent application entitled "███████████████████████████"; and (iii) all other responsive documents that Dr. Rowland withheld on the basis of confidentiality. **REDACTED**

## IV.    Dr. Rowland is Obligated to Produce the Laptop Computers and "Pen Drive" on which Drafts of his Declaration were Prepared.

Dr. Rowland and Intervet's lawyers engaged in a deliberate scheme to prevent Merial from obtaining drafts of Dr. Rowland's declaration, thereby preventing Merial from ascertaining what parts of Dr. Rowland's declaration constituted his own opinions and work product versus that of Intervet's lawyers. Specifically, Dr. Rowland testified that when he arrived at the offices of Intervet's lawyers, ostensibly for the purpose of preparing his expert declaration, the attorneys provided him with a "pen drive" which already contained an initial electronic draft of what was to be his declaration. (Chase Decl., Ex. 12, at 236:9 – 239:5.) Although Dr. Rowland testified that he did not know who prepared the first draft of his declaration, he testified that he assumed it was prepared by Intervet's lawyers. (*Id.*, at 236:9 – 239:5.) Further, Dr. Rowland testified that it was possible this draft declaration already contained the claim constructions that Intervet was proposing; thus reflecting the constructions that Intervet, obviously wanted Dr. Rowland to espouse as his own. (*Id.*, at 237:11-238:3.)

13

Dr. Rowland further testified that from this initial draft, he worked with Intervet's lawyers on "several drafts" from April 30th to May 2nd. (*Id.*, at 232:15-22.) Dr. Rowland testified that each of these drafts were saved to the pen drive at the end of the day, thereby erasing the previous draft. (*Id.*, at 233:1-4.) Specifically, Dr. Rowland testified that each day, (i) he was given the pen drive by Intervet's lawyers, (ii) he plugged it into either his laptop or a laptop supplied by Intervet's lawyers, (iii) he and the lawyers would revise the draft declaration, and (iv) he would then save the new draft to the pen drive, over-writing the previous draft. (*Id.*, at 232:15-236:5.) Dr. Rowland testified that Intervet's lawyers told him that the reason they were engaging in this elaborate procedure of over-writing the drafts to the same pen drive was "to make sure there were no drafts, no written drafts available" to Merial. (*Id.*, at 238:10-239:5.)

Dr. Rowland and Intervet's lawyers engaged in this scheme despite Merial's earlier notice that Merial expected all drafts of expert reports to be retained and produced. Specifically, in a March 28, 2007, letter, Merial's counsel responded to Intervet's lawyers' request that the parties agree not to retain and produce drafts of expert reports, stating, "Merial has considered Intervet's suggestion that the parties will not be required to retain or produce drafts of expert(s)' reports and cannot agree to it." A copy of Merial's counsel's March 28, 2007 letter is attached as Exhibit 8 to the Chase Decl. Moreover, Merial had previously served a Request for Production on Intervet requesting "All documents prepared in connection with this civil action by each person whom Intervet may call as an expert witness at the trial of this civil action." (Chase Decl., Ex. 9, p. 9, Req. for Prod. No. 52.) In addition, Request No. 1 of Merial's subpoena to Dr. Rowland sought:

> All non-identical drafts of your Declaration, including, but not limited to, all handwritten or typed drafts of your Declaration, and including any outlines of your Declaration and any notes related to your Declaration prepared or taken in advance of or during the preparation of your Declaration.

14

(Chase Decl., Ex. 3, p. 6, ¶ 1.)

Although it is likely that Dr. Rowland's and Intervet's lawyers' efforts successfully destroyed many relevant drafts of the declaration, it may be the pen drive itself and the cache memory of the computers that Dr. Rowland used may still have some or all of the drafts. If such drafts have not been written over, forensic specialists may be able to recover them. Dr. Rowland and Intervet acted in bad faith by not saving drafts of Dr. Rowland's declarations and not producing these drafts in response to the subpoena served on Dr. Rowland. The only way Merial may be made whole is if drafts of Dr. Rowland's declaration still exist on the "pen drive" or on the hard drives used for the drafting effort.

Merial requested at the deposition that Dr. Rowland and Intervet's lawyers recover any such draft(s) of the declaration and produce them to Merial and/or make available to Merial for forensic analysis the "pen drive" and the hard drives of any computers used to prepare the declaration, but they refused to do so. (Chase Decl., Ex. 12, at 251:14-252:20.) Also, on May 17, 2007, counsel for Merial sent a letter to counsel for Intervet requesting all drafts of the Rowland declaration that could be recovered from the pen drive and hard drive and also requested that counsel for Intervet provide the actual "pen drive" and hard drives of the computers used in drafting the declarations in order to perform forensic analysis to determine if any temporary memory contained any drafts. (Chase Decl., Ex.10, p. 2.) In response, counsel for Intervet declined to provide Merial with drafts or the pen and hard drives in order to perform forensic analysis. (Chase Decl., Ex. 11.)

Pursuant to Federal Rules of Civil Procedure 37 and 45 and this Court's inherent authority, Dr. Rowland and Intervet's lawyers should be sanctioned for their scheme to avoid producing drafts of Dr. Rowland's declaration. They had a duty to preserve drafts of Dr.

15

Rowland's declarations as the parties had not reached an agreement that such drafts did not have to be produced, and should be sanctioned for their spoliation of evidence. *See Trigon Ins. Co. v. U.S*, 204 F.R.D 277, 288-291 (E.D. Va. 2001) (finding that destruction of drafts of expert reports was intentional where discovery requests called for materials considered by experts, but finding that this prejudice was ameliorated as a result of the requesting party being able to locate these documents within the computer files of the expert); *see also School-Link Techs., Inc. v. Applied Resources, Inc.*, No. Civ. A. 05-2088-JWL, 2007 WL 677647, at *5-6 (D. Kan. Feb 28, 2007) (requiring a party that failed to search diligently for all documents related to a witness to produce to the requesting party an identical copy of the "memory stick" which contained all documents the witness had turned over to counsel in response to the discovery requests).

Merial respectfully requests that this Court compel Dr. Rowland and Intervet's lawyers to produce the "pen drive" on which Dr. Rowland's declarations were saved as well as the hard drives of the laptop computers that were used to prepare the declaration. Merial also requests that, as a sanction for their inappropriate conduct, that the Court require Dr. Rowland and Intervet's lawyers to compensate Merial for the costs involved in having the "pen drive" and computer hard-drives forensically analyzed to determine if any drafts of the declaration can be recovered, and any other relief the Court deems just and fair.

## V.    Dr. Rowland Should be Compelled to Appear for the Continuation of His Deposition.

During his deposition, Dr. Rowland refused, on the basis of confidentiality, to respond to questions regarding the details of the research that his lab is conducting on PCV-2. (Chase Decl., Ex. 12, at 146:7-8.) As explained above, however, Dr. Rowland's confidentiality concerns are mooted by the Protective Order in this case. Moreover, Dr. Rowland has been held out by Intervet to be an expert on PCV-2. Therefore, Dr. Rowland's research and involvement in

16

the study of PCV-2 is directly relevant to Dr. Rowland's expertise in the area in which he is

proffered as an expert.  Because Dr. Rowland voluntarily agreed to act as a paid expert for

Intervet in this matter relating to PCV-2, it is fair that he should be required to testify as to his

experience in this area.  Despite the fact that Dr. Rowland knew he was going to be deposed on

PCV-2— ██████████████████████████████████████                    REDACTED

██████ —he claimed in his deposition that he would need the permission of the administration

at KSU to testify regarding his research.  (*Id.*, Ex. 12, at 145:6-147:13.)  Putting aside the

irrelevancy of KSU's views on what is—or is not—appropriate testimony from an expert in

patent litigation, Dr. Rowland further testified that he had not even sought permission from KSU

to testify on his research prior to the deposition.  (*Id.*)  Accordingly, Merial requests that the

Court compel Dr. Rowland to appear for the continuation of his deposition and that he fully and

completely respond to Merial's counsel's questions regarding his work on PCV-2.

　　　In addition, because Merial was not provided with all documents responsive to the

subpoena on Dr. Rowland, Merial was unfairly prejudiced by not being able to question him on

these documents at his deposition.  In light of the numerous relevant documents Dr. Rowland

and Intervet withheld from Merial, counsel for Merial kept the deposition open and reserved the

right to continue the deposition after Dr. Rowland provided all of the materials in full and

complete compliance with the subpoena.  (*Id.*, at 345:12-14.)  Merial, therefore, requests this

Court order Dr. Rowland to appear to continue his deposition after he provides all of the

materials in compliance with the subpoena, so that Merial will have the opportunity to examine

Dr. Rowland in light of these new documents.

## CONCLUSION

For the reasons set forth herein and on the authorities cited, Merial requests (i) that its

Motion to Compel be given expedited consideration in light of the upcoming claim construction

hearing in the DC action and (ii) that its Motion to Compel be granted in full.

Respectfully submitted, this 11th day of June, 2007.

/s/ D. A. N. Chase
D. A. N. Chase
Kansas Bar # 5784
Chase Law Firm, L.C.
4400 College Boulevard, Suite 130
Overland Park, Kansas 66211
913-339-9666 tel.
913-339-6061 fax

Of Counsel:

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
Vicki Franks
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
J. Patrick Elsevier, Ph.D.
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

Counsel for Merial Limited and Merial SAS

18