UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>MERIAL LIMITED and MERIAL SAS;<br><br>    Defendants. | Civil Action No. 1:06-cv-00658 (HHK) |

**MERIAL LIMITED AND MERIAL SAS' SUPPLEMENTAL
BRIEF ON CLAIM CONSTRUCTION ISSUES**

**Introduction**

Merial Limited and Merial SAS ("Merial") submit this supplemental brief on claim construction issues to address two topics: (i) a recently discovered international Intervet patent application in which Intervet uses the term, "PCV-2" and "ORF" consistently with the constructions of those terms that Merial has proposed, and inconsistently with the constructions advanced by Intervet and (ii) rebuttal to Intervet's belated "Supplemental Rebuttal Brief on Claim Construction Issues" filed July 27, 2007.

First, this week, Merial discovered an Intervet patent application filed with the World Intellectual Property Organization pursuant to the Patent Cooperation Treaty in which Intervet seeks a patent on a PCV-2 vaccine.[1]  In that application, denominated WO 2007/028823 ("the

---

[1] The World Intellectual Property Organization (WIPO) is a specialized agency of the United Nations dedicated to developing a balanced and accessible international intellectual property (IP) system.  WIPO was established by the WIPO Convention in 1967.  (*See* http://www.wipo.int/about-wipo/en/what_is_wipo.html**.)**  The Patent Cooperation Treaty, or "PCT", was concluded in 1970, amended in 1979, and modified in 1984 and 2001.  The PCT makes it possible to seek patent protection for an invention simultaneously in each of a large number of countries by filing an "international" or "PCT" patent application. WIPO administers services which enable filing, examination and prosecution of these international or PCT patent applications.  (*See* http://www.wipo.int/pct/en/treaty/about.htm; http://www.wipo.int/about-wipo/en/core_tasks.html.)

Intervet '823 PCT"),[2] Intervet asserts that it is entitled to a patent on a PCV-2 vaccine even though Intervet merely states that it isolated PCV-2 from the tissue of a pig that suffered from PMWS but without (i) referencing any particular strain of PCV-2, (ii) providing any sequencing of the DNA for the PCV-2, (iii) and specifying any particular DNA sequence as corresponding to the single ORF disclosed in the patent application (designated by Intervet as ORF2). Intervet's treatment of the terms PCV-2 and ORF2 directly supports Merial's constructions of the terms PCV-2 and ORFs 1-13 advanced in this case, and repudiates Intervet's proposed constructions that those terms be limited to the five representative strains of PCV-2 specifically identified in the '601 patent and the precise representative sequences of ORFs 1-13 disclosed in Example 13 of the '601 patent.

Second, in "Merial's Answering Brief Concerning Claim Construction" filed May 25, 2007, Merial relied in part on the declaration of Dr. Christopher Chase to rebut certain testimony set forth in the Declaration of Dr. Raymond Rowland on which Intervet relied in its opening claim construction brief. Thereafter, Merial agreed that Intervet could take Dr. Chase's deposition, and submit a supplemental brief in which it addressed claim construction issues based on Dr. Chase's deposition testimony by July 20, 2007. Rather than abiding by the agreement among counsel, Intervet elected to submit a twenty-five page brief with numerous attachments that for the most part addressed claim construction issues unrelated to Dr. Chase's rebuttal testimony. Further, Intervet submitted its supplemental brief a week late on July 27, 2007.[3]

---

[2] A copy of the Intervet '823 PCT is attached as Exhibit 1.

[3] Ostensibly because one of its many attorneys was ill during the week of July 16.

**Argument and Authorities**

I. **Intervet's Recent International Patent Application Confirms the Correctness of Merial's Proposed Construction of PCV-2 and ORF 1-13.**

   A. **Intervet's patent application and its failure to produce it in discovery.**

This week, Merial discovered on its own the Intervet '823 PCT. The Intervet '823 PCT was published from a patent application – PCT/EP2006/066161 – filed September 8, 2006, which in turn claims priority from a still earlier Intervet patent application filed September 9, 2005 – European Patent application 05100008299.8. In discovery in this action, Merial requested from Intervet documents, including patent applications, that relate to Intervet's development of PCV-2 vaccines. *See* Intervet Document Request 31 served August 11, 2006, which sought: "All documents concerning any application for a patent relating to any Intervet PCV-2 vaccine and any prosecution thereof." Despite Merial's document requests from August of last year, Intervet did not produce to Merial the Intervet '823 PCT, or its underlying unpublished patent applications – PCT/EP2006/066161 and European Patent application 05108299.8 – even though these documents (i) existed before and during the pendency of Merial's document requests, (ii) are clearly responsive to Merial's document requests, and (iii) contain information highly relevant to the parties' competing claim construction positions.

   B. **The Intervet '823 PCT shows that Intervet is saying one thing to this Court and yet another thing to the patent offices of the world with respect to claim terms at issue here.**

Throughout the Intervet '823 PCT, Intervet uses the terms PCV-2 and ORF2[4] without any reference to any strain, isolate or sequence. Indeed, in the Intervet '823 PCT, Intervet provided absolutely no DNA sequence for PCV-2 or ORF2, and absolutely no identification of

---

[4] In contrast to the '601 patent which disclosed examples of 13 distinct ORFs, the Intervet '823 PCT refers only to one of those ORFs, ORF2.

the strain from which Intervet allegedly isolated PCV-2 or ORF2. (*See, e.g.*, Exh. 1 at pp. 1, 8) In fact, in Example 2 of the Intervet '823 PCT, Intervet not only failed to identify the strain or isolate of PCV-2 from which it allegedly isolated ORF2, but it made no effort to apply Koch's postulates, something for which it has roundly – though unjustifiably – criticized Merial. (*See* Plaintiff Intervet's Opening Brief On Claim Construction Issues, p 18. More specifically, in Example 2 of the Intervet '823 PCT, Intervet merely states that it isolated PCV-2 from the lung tissue of a pig that suffered from PMWS. Intervet does not report that it tested PCV-2 through Koch's postulates to ensure that it indeed causes PMWS.[5]

The Intervet '823 PCT thus reveals that Intervet is telling two different stories – one to this Court and another to patent offices throughout the world. With regard to the claim terms PCV-2 and ORFs 1-13, it is clear that Intervet does not believe that these terms need to be linked to particular isolates or strains, or to particular sequences. If Intervet truly believed that such were necessary, Intervet itself would have included strain or isolate information and sequence information in the Intervet '823 PCT. Thus, the positions taken by Intervet in the '823 PCT demonstrate that even Intervet understands that the claim term "PCV-2" is not limited to any particular isolates or strains, but rather refers generically to the entire group of type 2 porcine

---

[5] In the Intervet '823 PCT, Intervet calls its alleged invention a "vaccine" (*See, e.g.*, Exh. 1 at p 14, claim 1.) Yet, in the '823 PCT, Intervet reports no challenge studies. That is, what Intervet calls a "vaccine", Intervet itself did not test to see if it indeed prevents PCV-2 infection and the disease Intervet admits PCV-2 causes, namely PMWS. Further, the '823 PCT shows that Intervet does believe that PCV-2 is the causative agent of PMWS, and that isolating PCV-2 from a pig that has PMWS – as reported in the '601 patent with regard to numerous PCV-2 strains – is sufficient, i.e., that Koch's postulates need not be proven for a sufficient patent application. The '823 PCT shows that in its representations to patent offices, Intervet concurs with Merial that the '601 patent sufficiently discloses that PCV-2 is responsible for PMWS, and that Intervet agrees with Merial's construction of "PCV-2" as "pathogenic to pigs and a causative agent" of PMWS.

circoviruses, and that the claim term "ORFs 1-13," which includes ORF2, need not be limited to a particular isolate or strain or to a particular sequence.

## II. Dr. Chase's Rebuttal Testimony Was Appropriate.

The scheduling order entered in this case on August 4, 2006, addressed expert testimony with respect to claim construction proceedings. The order did not, however, address, much less preclude, rebuttal expert testimony. Accordingly, there was nothing improper about Merial offering the declaration of Dr. Chase in response to Intervet's reliance on Dr. Rowland's declaration in support of Intervet's claim construction positions. Moreover, the fact that Dr. Chase was offered to rebut Dr. Rowland, *i.e.*, to explain why Intervet's claim construction positions as espoused by Dr. Rowland are incorrect, and not to affirmatively argue the correctness of Merial's claim construction positions (which were developed prior to and independently of Dr. Chase) explains away much of Intervet's criticism of Dr. Chase's deposition testimony. Simply put, in contrast to Dr. Rowland (who was offered by Intervet to advance its claim construction positions, even though they were developed prior to and independent of Dr. Rowland's declaration), Merial did not rely on Dr. Chase as a proponent of its constructions. Rather, Dr. Chase's role was to point out the deficiencies in the opinions offered by Dr. Rowland. Thus, Intervet's criticism of Dr. Chase's alleged inability to quote verbatim Merial's claim construction positions without referring to the documents that set forth those constructions is of little, if any, moment.

### A. Dr. Chase is Well Qualified to Rebut Dr. Rowland.

Dr. Chase's credentials include a Doctor of Veterinary Medicine (Iowa State University, 1980), a Master of Science in Veterinary Science with a concentration in virology (University of Wisconsin, 1987), a doctorate in Veterinary Science with a specialization in virology/immunology (University of Wisconsin, 1990) and doctorate and post-doctorate work in

molecular biology and molecular virology. The fields of virology, immunology and molecular biology are precisely what the '601 patent is all about. Dr. Chase is thus imminently qualified to address the opinions in these fields offered by Dr. Rowland. Moreover, Dr. Chase has extensive experience with large-animal viruses, including viruses of pigs. Furthermore, Dr. Chase has real world, actual experience with PCV-2 as a practicing veterinarian. In contrast, Dr. Rowland had nothing to do with porcine circoviruses until late 2005, and then largely at the direction of Intervet.

### B. Dr. Chase Rebuts the Overly Narrow Constructions Offered By Dr. Rowland.

Dr. Rowland repeatedly parrots Intervet's overly narrow construction of key terms in the asserted claims of the '601 patent. His motivation to do so is obvious: He, his employer Kansas State University ("KSU"), and his colleagues there are and have long been on Intervet's payroll.[6] They are responsible for developing Intervet's infringing vaccine, and they have their own patent application pending on a PCV-2 vaccine. Only by offering overly narrow constructions of terms such as "PCV-2," "PCV-1," and "ORFs 1-13" can Dr. Rowland help save Intervet from a finding of infringement as well as himself and his colleagues at KSU. While Dr. Rowland's instincts for self-preservation are perhaps understandable, they have no place in claim construction proceedings, and his repeated importations of limitations into the asserted claims of the '601 patent flies in the face of established claim construction jurisprudence.

#### 1. Dr. Chase's rebuttal with respect to claim term PCV-2.

Dr. Rowland's declaration and deposition testimony clearly reveal a dichotomy between his understanding of the meaning of the term "PCV-2" when he began his work in the area in late 2005 and his purported understanding of the meaning of that term at the time of the application

---

[6] For example, Dr. Richard ("Dick") Hesse of KSU was, until recently, an Intervet employee, credited for the development of Intervet's infringing PCV-2 vaccine.

that matured into the '601 patent in 1997-98. Dr. Rowland's own work in the demonstrates that both he and the scientific community at large consistently use the term PCV-2 to describe a group (genus) of circoviruses that are a necessary (though a not sufficient) cause of PMWS in young pigs, as opposed to specific strains (species) of that virus that have minor genetic differences. Dr. Rowland's opinion that the meaning of this term metamorphasized among the scientific community between 1997-98 and 2005 from "species" to "genus" is unsupported by anything in the record including, but not limited to, the claims of the '601 patent, the patent's specification, and the scientific literature. Further, Dr. Rowland's speculation as to what one of ordinary skill would have understood the term PCV-2 to mean in 1997-98 is precisely that: speculation. Indeed, it could hardly be anything else since he had no involvement in this area of animal science until seven years later. Dr. Chase's criticism of Dr. Rowland's opinion with respect to the meaning of this term is thus clearly correct and in accordance with accepted science, history and established principles of claim construction.[7]

### 2. **Dr. Chase did not disavow Merial's construction of the claim term PCV-1.**

Internet's cynicism notwithstanding, the simple fact of the matter is that Intervet's obtuse questioning of Dr. Chase with regard to the meaning of the word "derived" in connection with the meaning of PCV-1 did result in confusion at his deposition. His testimony -- taken as a whole, including his declaration, his cross by Intervet and his redirect by Merial -- reveals that

---

[7] Indeed, when they announced the new nomenclature of "PCV-1" and "PCV-2" just prior to the US filing date of the '601 patent, the '601 patent inventors announced "PCV-2" as a genus – a new type of virus. (*See* Allen, et al., Novel Porcine Circoviruses from Pigs With Wasting Disease Syndromes, The Veterinary Record, April 25, 1998, pp. 467-468, Exh B to Declaration of Christopher Civilian Louise Chase, D.V.M., Ph.D., and Declaration of Christopher Civilian Louise Chase, D.V.M., Ph.D., ¶ 23.)

Dr. Chase most assuredly did not assert that Merial's construction of the term "PCV-1" was either incorrect or "made no sense." *See* Declaration of Christopher Chase, D.V.M., Ph.D., ¶ 22. (submitted as an exhibit to Merial's Answering Brief concerning Claim Construction on May 25, 2007), and pages 250-251 and 267-269 of Dr. Chase's Deposition Transcript attached as Exhibit A to Intervet's Supplemental Brief.

### 3. Intervet does not address Dr. Chase's rebuttal with respect to claim term ORF's 1 to 13.

Intervet spends three pages on the construction of the term ORF's 1-13, not by addressing Dr. Chase's rebuttal to Dr. Rowland (other than citing his testimony for the proposition that Merial's proposed construction does not repeat the phrase "1-13") with respect to that term, but by re-hashing arguments it has already made. Merial's response remains the same: The patent itself makes it abundantly clear that "ORFs 1-13" are representative of what is claimed in the '601 patent. The patent itself says so, as even Intervet acknowledges at page 20 of its supplemental brief, ("IMP. 1010, is 'considered to be *representative* of the other strains associated with the multi-systemic wasting syndrome'"). Moreover, ORF's 1-13 are discussed in the patent under the heading "Example 13"; examples are, by definition, illustrative, not inclusive. Finally, Intervet's '823 PCT (discussed above) demonstrates that Intervet knows that ORF's are not limited to the precise sequences disclosed.

Intervet's convoluted explanation of how it thinks the Examiner did -- or did not -- view or understand the phrase "ORFs 1-13" is refuted by what she did, which was to allow claims specific recitation of any DNA sequence or of any particular PCV-2 strain. Since the surrendering of claimed subject matter in the prosecution of a patent requires clear and unmistakable evidence of such surrender, Intervet's efforts at explaining what the Examiner must have thought or understood falls woefully short of the mark. *Middleton, Inc. v. Minn Mining &*

*Mfg. Co.*, 311 F.3d 1384, 1388 (Fed Cir. 2002). In short, since the Examiner did not require Merial to include in claims 9 and 16 any particular DNA sequence recitation or any recitation of a particular PCV-2 strain, Merial made no surrender of subject matter in the issuance of '601 patent claims 9 and 16.

### 4. Dr. Chase's rebuttal with respect to claim term 32.

Dr. Chase's rejoinder to Dr. Rowland on the meaning of "specific to PCV-2" but "not specific to PCV-1" is clear. He asserted that the claimed invention had a nucleotide sequence that encodes an epitope unique to PCV-2 that was not present in PCV-1. Such a construction is faithful to the claim language, and it does not exclude the possibility -- indeed, the likelihood given the approximately 76% homology between PCV-2 and PCV-1 -- that the nucleotide sequence will also encode other epitopes that are found in both PCV-1 and PCV-2.

Unlike Dr. Rowland, Dr. Chase's construction took into account the proper understanding of the word "comprising" in patent claims, and there is nothing to indicate that the Examiner – who allowed claims which included that word – understood the word "comprising" to have any meaning other than that normally ascribed to it in patent law. Indeed, Merial's clarification in the prosecution history of the '601 patent was that there would be at least one epitope found in (or specific to) PCV-2 and not found in (or specific to) PCV-1, which does not require that all of the epitopes of the nucleic acid molecule of claim 32 be specific to PCV-2 to the exclusion of some of the epitopes also being found in PCV-1.

### Conclusion

For the reasons set forth herein and in the prior briefs submitted by Merial, Merial respectfully requests that its proposed claim constructions be adopted.

Dated:  August 3, 2007

Respectfully submitted,

/s/ *Timothy A. Ngau*
ALSTON & BIRD LLP
Timothy A. Ngau
DC Bar No. 339333
950 F Street, NW
Washington, DC  20004
Phone: 202-756-3300
Fax: 202-756-3333

Judy Jarecki-Black, Ph.D.
Merial Limited
3239 Satellite Blvd.
Duluth, GA  30096-4640
Tel.: (678) 638-3805
Fax: (678) 638-3350

Thomas J. Kowalski
Steven M. Amundson
DC Bar No. 412196
Vicki Franks
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, New York 10151
Tel.: (212) 588-0800
Fax: (212) 588-0500

Frank G. Smith, III
Robert L. Lee
J. Patrick Elsevier
Elizabeth K. Haynes
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

Counsel for Merial Limited and Merial SAS