UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>     *Plaintiff*,<br><br>v.<br><br>MERIAL LIMITED and MERIAL SAS,<br><br>     *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK/JMF) |

**PLAINTIFF INTERVET'S MOTION TO STRIKE
MERIAL LIMITED AND MERIAL SAS'
SUPPLEMENTAL BRIEF ON CLAIM CONSTRUCTION ISSUES**

Pursuant to Fed. R. Civ. P. 37 and the Court's Scheduling Order, plaintiff Intervet Inc. ("Intervet") respectfully files this motion to strike defendants Merial Limited and Merial SAS' ("Merial") *Supplemental Brief on Claim Construction Issues*, which was filed with this Court on August 3, 2007—the last business day prior to this Court's claim construction hearing of August 6, 2007. (D.I. 105.) Intervet has requested that Merial withdraw its filing. Having received no response to this request, Intervet files the present motion.

**BACKGROUND**

On May 2, 2007, Intervet and Merial submitted their opening briefs on claim construction issues. In support of its claim construction, Intervet submitted and relied on the Declaration of Raymond R.R. Rowland, Ph.D. (D.I. 89, hereinafter, "the Rowland declaration"). Merial, in contrast, had repeatedly taken the position that extrinsic evidence, such as expert testimony, was unnecessary to construe the claims of the patent-in-suit, U.S. Patent No. 6,368,601 ("the '601

patent"). Accordingly, Merial did not submit an expert declaration in support of its opening claim construction brief.

On May 25, 2007, Merial unexpectedly, without any notice, and in clear violation of this Court's scheduling order (D.I. 35) submitted with its answering claim construction brief the declaration of Dr. Christopher Civilian Louis Chase (D.I. 96, hereinafter, "the Chase declaration"). In the Chase declaration, Dr. Chase—having the advantage of first viewing the Rowland declaration—agreed with *all* of the constructions that Merial's attorneys had already formulated and submitted to this Court, and disagreed with *all* of Dr. Rowland's constructions of the claim terms. By improperly presenting their expert report in their rebuttal brief, Merial deprived Intervet of the opportunity to depose and rebut Merial's claim construction expert in Intervet's rebuttal brief. Accordingly, Intervet filed a motion to strike the Chase declaration. (D.I. 99.)

In response to Intervet's motion, on May 31, 2007, Merial agreed that Intervet could depose Dr. Chase, and that Merial would not oppose Intervet's submission of an additional brief to address his positions. Despite being significantly prejudiced and inconvenienced by Merial's belated submission of Dr. Chase's declaration, Intervet withdrew its motion, deposed Dr. Chase, and incurred the additional time and expense to file a supplemental rebuttal brief with this Court on July 27, 2007. (D.I. 101.) The parties did not agree that Merial could file another brief in rebuttal, nor was provision made for such a rebuttal.

On Friday, August 3, 2007, the last business day prior to the claim construction hearing scheduled for this Monday, August 6, 2007, Merial submitted its eleventh-hour supplemental brief on claim construction issues. (D.I. 105.)

**ARGUMENT**

I.   **This Court Should Strike Merial's *Supplemental Brief on Claim Construction Issues* For Violating This Court's Scheduling Order**

This Court's Rule 16(b) Scheduling Order only provides for the filing of Opening and Answering/Rebuttal Briefs by the respective parties.  (*See* D.I. 35; Minute Order of March 23, 2007 ("Set/Reset Deadlines: Opening Brief due by 5/2/2007; Answering Brief due 05/23/07"); Minute Order of May 10, 2007 (extending the date for "parties to file respective answering claim construction briefs" to May 25, 2007).)  Merial's unwarranted submission of its *Supplemental Brief on Claim Construction Issues*, after having already submitted both an opening and an answering brief on claim construction issues, violates the letter and the spirit of this Court's Order.  Furthermore, Merial did not seek approval from Intervet or this Court prior to filing its supplemental brief, or even give the courtesy of notice.  Instead, Merial proceeded to file its additional brief on the Friday afternoon immediately preceding the claim construction hearing.  Merial simply does not have good cause for their last minute filing, and the filing is prejudicial with respect to new arguments presented.  Intervet thus respectfully requests that Merial's *Supplemental Brief on Claim Construction Issues* be stricken.

II.   **Merial's Supplemental Brief Rehashes Merial's Previous Arguments and Raises New Issues Wholly Irrelevant to Claim Construction**

Merial's supplemental brief for the first time raises Intervet's publicly available patent application that published on March 15, 2007—PCT/EP2006/066161— ("the PCT application"). This is an eleventh-hour red herring.  Intervet's PCT application is legally irrelevant to the construction of the claims of the '601 patent for several reasons, not the least of which is that it was filed September 9, 2006, more than *eight years* after the filing date of the '601 patent.  This Court is required to give each disputed claim term the meaning the term would have had to "one

-3-

of ordinary skill in the art *at the time of the invention.* "[1]  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996).  Thus, Intervet's 2006 PCT application is not only legally irrelevant extrinsic evidence, but legally irrelevant to the issue of how one of ordinary skill in the art would have construed the claims of the '601 patent in 1997-98.

Indeed, at the time of the invention of the '601 patent, the disputed term "PCV-2" had no ordinary meaning to persons skilled in the art.  The term had not been used in the fields of porcine medicine or virology prior to the filing of the international patent application to which the '601 patent application claims priority.  Because the term had no meaning in the art at the time of the patent filing, the construction of "PCV-2" depends on the understanding that one of ordinary skill in the art would have of the term based on a review of the specification and prosecution history of the '601 patent.  The patent provides an express definition of "PCV-2." Intervet's construction adopts this definition.  As defined in the '601 patent, "PCV-2" should be construed to mean "**the five viral strains identified in the '601 patent**."  (*Plaintiff Intervet's Opening Brief on Claim Construction Issues*, at 9.).

Similarly, the term "ORFs 1 to 13" should be construed to mean "**the specific DNA sequences defined in ORFs 1-13 in Example 13,**" the explicit definition that the inventors gave the term in the '601 patent specification.  (*Id.* at 20.)  It is legally irrelevant how Intervet's PCT application—filed over eight years later—uses the term "ORF."  The only relevant evidence is

---

[1]   Merial criticizes Dr. Rowland's opinions regarding the meaning of the claim terms to a person of ordinary skill in the art at the time of the invention as "speculation."  This misses the mark.  Dr. Rowland offers his opinion as to how the claim terms would have been understood by a person of skill in the art in 1997 based on a reading of the patent specification.  His opinion was informed by his long history as a porcine virologist, and could hardly be labeled speculation. Moreover, he is the only expert offering an opinion as to the meaning of the claim language at the legally relevant time. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (*en banc*).

how the patentees defined and used the terms in their application and how one of ordinary skill in the art *at the time of the invention* would have understood such terms.  Moreover, the term at issue is "ORFs 1 to 13," not "ORF."  Example 13 of the '601 patent sets forth a precise chemical definition of "ORFs 1 to 13" in terms of the identity and number of nucleotides and individual number of amino acids.[2]  "ORFs 1 to 13" are clearly and unambiguously defined in the '601 patent and the term should be construed accordingly.  It would be legal error to construe this claim term or any other term by consulting Intervet's PCT application.

With respect to the term "PCV-1," the '601 patent discloses two strains of "PCV-1."  Merial does not dispute that.  The term "PCV-1" had no ordinary meaning at the time that Merial's inventors first used the phrase in this patent application.  Accordingly, Intervet proposed that "PCV-1" should be construed to mean "**the nonpathogenic circovirus strains disclosed in the '601 patent**."  Merial responded with a construction that is not found in the '601 patent and would embrace undisclosed and unknown strains of circovirus.  While Merial may wish it were otherwise, its own expert testified that Merial's construction "makes no sense."

As for claim 32, the only dispute between Dr. Chase and Intervet on the interpretation of this claim is the scope of the term "comprising."  Merial admits that Dr. Chase understands claim 32 to relate to "a nucleotide sequence that encodes an epitope unique to PCV-2 that was not present in PCV-1."  This admission vitiates Merial's overly-complicated construction of the claim.  Moreover, Dr. Chase's stated understanding is nearly identical to the construction proposed by Intervet.  (*See* D.I. 96, Chase declaration, at 16 ("***While I understand claim 32 as requiring an isolated DNA molecule having at least one nucleotide sequence encoding an***

---

[2]   Merial argues that Intervet did not address Dr. Chase's rebuttal to Dr. Rowland on "ORFs 1 to 13."  That is simply not true.  Intervet's brief was a direct rebuttal to Chase's declaration and his deposition.  By way of example, Intervet pointed out Dr. Chase's admission that Merial's proposed construction of "ORFs 1 to 13" contains no reference to "1 to 13."

*epitope unique to PCV-2 (and hence not present in PCV-1)*, I do not understand claim 32 to prevent the isolated DNA molecule from also including other nucleotide sequences, encoding epitopes found on PCV-1."))  Merial argues that Dr. Chase's "construction is faithful to the claim language," but that it does not exclude the possibility that the nucleotide sequence can "also encode other epitopes that are found in both PCV-1 and PCV-2."  Merial bases this argument on a legally improper interpretation of the "comprising" claim term.  Merial unequivocally relinquished coverage of nucleotide sequences encoding epitopes found in both PCV-1 and PCV-2.  It is black letter patent law that a patentee cannot use the term "comprising" to embrace subject matter it relinquished during patent prosecution.  *Spectrum Int'l Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1380 (Fed. Cir. 1998).

## CONCLUSION

For the reasons set forth herein, Intervet respectfully requests that *Merial Limited and Merial SAS' Supplemental Brief on Claim Construction Issues* be stricken.

Dated: August 4, 2007                                        Respectfully Submitted,

                                                                                       /s/  John R. Hutchins
                                           John R. Hutchins (D.C. Bar # 456749)
                                           Cedric C. Y. Tan (D.C. Bar # 464848)
                                           KENYON & KENYON LLP
                                           1500 K Street N.W., Suite 700
                                           Washington, DC 20005
                                           (202) 220-4200 (telephone)
                                           (202) 220-4201 (facsimile)

                                           Attorneys for Plaintiff
                                           Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

INTERVET INC.,

*Plaintiff,*

v.

MERIAL LIMITED and MERIAL SAS,

*Defendants.*

Civil Action No. 1:06-cv-00658 (HHK/JMF)

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2007, I electronically filed *Plaintiff Intervet's Motion to Strike Merial Limited and Merial SAS' Supplemental Brief on Claim Construction Issues* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

>Judy Jarecki-Black, Ph.D.
>MERIAL LIMITED
>3239 Satellite Blvd.
>Duluth, GA 30096-4640
>Tel: (678) 638-3805
>Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
Vicki Franks, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777

_____
Thomas J. Terebesi
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200