**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:06-cv-00658 (HHK/JMF) |
| MERIAL LIMITED and MERIAL SAS | |
| *Defendants.* | **ORAL HEARING REQUESTED** |

**MOTION TO DEFER DISCOVERY OF ATTORNEY-CLIENT PRIVILEGED
INFORMATION UNTIL AFTER DISPOSITIVE MOTIONS**

Plaintiff, Intervet Inc., respectfully requests that discovery of matters protected by the attorney-client privilege be deferred until the Court has at least resolved any motions for summary judgment the parties may file in view of the *Memorandum Opinion and Order* of November 28, 2007, and the Federal Circuit's recent *en banc* decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (2007). Deferring discovery of attorney-client privileged information until after resolution of potentially case dispositive (or at least issue limiting) motions would protect the attorney-client privilege and promote party and judicial economy, while not adversely impacting these proceedings.

The grounds for this request are set forth in the accompanying memorandum.

Dated: February 4, 2008                             Respectfully Submitted,


       /s/  Yariv Waks
John R. Hutchins (DC Bar No. 456749)
Yariv Waks (DC Bar No. 491729)
William G. James, II (DC Bar No.503162)
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, DC  20005
Tel: (202) 220 – 4200
Fax: (202) 220 – 4201

Michael D. Loughnane
KENYON & KENYON LLP
One Broadway
New York, NY  10004
Tel.: (212) 425 – 7200
Fax: (212) 425 – 5288

*Counsel for Intervet, Inc.*

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:06-cv-00658 (HHK/JMF) |
| MERIAL LIMITED and MERIAL SAS | |
| *Defendants.* | **ORAL HEARING REQUESTED** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF INTERVET'S MOTION TO DEFER DISCOVERY OF ATTORNEY-CLIENT PRIVILEGED INFORMATION UNTIL AFTER DISPOSITIVE MOTIONS**

In support of its *Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions*, Plaintiff Intervet Inc. respectfully submits this memorandum of points and authorities. In view of the *Memorandum Opinion and Order* of November 28, 2007, and the Federal Circuit's recent *en banc* decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (2007), the parties may file several dispositive motions in this case. Deferring discovery of attorney-client privileged information until after resolution of such potentially case dispositive (or at least issue limiting) motions would protect the attorney-client privilege and promote party and judicial economy, while not adversely impacting these proceedings.

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. FACTUAL AND LEGAL BACKGROUND ............................................................ 2

III. ARGUMENT .................................................................................................................. 8

      A. The Court Has the Power to Defer Discovery Until After It Has Resolved Any Potentially Dispositive Motions ………............................................9

      B. Deferring Discovery is Appropriate in This Case....................................... 9

      C. The Proceedings Will Not Be Delayed as a Result of Discovery into This Limited Issue Being Deferred ................................. 11

IV. CONCLUSION................................................................................................ 12

i

# TABLE OF AUTHORITIES

**Cases**

*Am. Nat. Red Cross v. Travelers Indem. Co. of Rhode Island*, 924 F. Supp. 304, 306 (D.D.C. 1996) ................................................................................................. 9

*Anderson v. United States Attorneys Office,* 1992 WL 159186, at *1 (D.D.C. 1992) ........ 8

*Aptargroup, Inc. v. Owens-Illinois, Inc.*, 2003 WL 21557632, *1 (N.D. Ill. 2003) ......... 10

*Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers,* 494 F.2d 1092, 1100 (D.C. Cir.1974) ........................................................ 8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ............................................................ 4

*Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 200 F.R.D. 1, 2 (D.D.C. 2001) ................................................................................. 8

*Coastal States Gas Corp. v. Dep't of Energy,* 84 F.R.D. 278, 282 (D. Del. 1979) ............. 8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736, 741 (2002) .. 4

*Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1572 (Fed. Cir. 1988) ..... 7

*In re Seagate Tech., LLC*, 497 F.3d 1360 (2007) ................................ 1, 2, 3, 5, 6, 9, 10, 11

*Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987) ........................................................... 8

*Quantum Corp. v. Tandom Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) ........................ 7

*Research Plastics, Inc. v. Fed. Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005) .. 4

*Safeco Ins. Co. of Am. v. Burr,* --- U.S. ----, 127 S.Ct. 2201, 2215 (2007) ........................ 3

*Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389-90 (Fed. Cir. 1983) .................................................................................................................... 3

*Webb v. Hyman,* 861 F.Supp. 1094, 1119 (D.D.C.1994) .................................................... 8

**Statutes**

35 U.S.C. §284 .................................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 1 .................................................................................................................. 4

Fed. R. Civ. P. 42(b) ........................................................................................................... 9

Robert Weiss, "Markman Practice, Procedure and Tactics," *Patent Litigation 2000* at 149 (PLI Oct. 2000) ................................................................................................................... 4

iii

## I. INTRODUCTION

With the issuance of this Court's *Memorandum Opinion and Order* of November 28, 2007, in which disputed claim terms in U.S. Patent No. 6,368,601 were construed, and the Federal Circuit's *en banc* decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (2007), which significantly raised the threshold for a claim of "willful infringement," the issues presented by this case have been simplified greatly. Specifically, and as will be discussed in Intervet's forthcoming motion for summary judgment, the construed claims of the asserted patent cannot be regarded as reading on Intervet's Circumvent™ PCV vaccine, and Defendants' claim of "willfulness" must fail as there is no evidence that Intervet's actions were "objectively reckless" (even assuming infringement).

Between now and the filing of dispositive motions, however, the parties face the not-insignificant task of completing fact discovery, which was recently extended to April 11, 2008, and coordinating and completing expert discovery. Defendants, Merial Limited and Merial SAS, wish to complicate that process by insisting that discovery into privileged communications between Intervet and its counsel proceed on a similar track, even though such information (by definition) cannot be relevant to a determination of whether the accused vaccine infringes any valid claims of the asserted patent, or whether Defendants can carry their threshold burden of alleging willful infringement.

How this Court rules on the forthcoming summary judgment motions may moot the need for any such discovery, and at a minimum likely will provide valuable guidance that could limit the extent of any discovery inquiries (or obviate the need for discovery all together). Moreover, the parties would not be prejudiced by a phased approach on this limited issue. As such, in the interests of preserving the attorney-client privilege, as well

as promoting party and judicial economy, Intervet requests that the Court defer discovery into attorney-client privileged matters until at least after dispositive motions practice.

## II. FACTUAL AND LEGAL BACKGROUND

Intervet initiated this action on April 11, 2006, seeking a declaratory judgment that the sale of its Circumvent™ PCV vaccine does not infringe any valid or enforceable claim of U.S. Patent No. 6,368,601 ("the '601 patent"). D.I. 1. Defendants, Merial SAS and Merial Limited, responded on May 22, 2007, claiming infringement of the '601 patent and further contending that the alleged infringement had been "deliberate and willful." D.I. 7, 8 (¶15). Defendants also requested that this case be tried to a jury. *Id.*

Following jurisdictional motions practice, the parties engaged in extensive fact discovery, a process that is continuing and which is presently scheduled to close on April 11, 2008. D.I. 126. Along the way, however, there were two significant developments that likely will have a substantial impact on the issues in this case, and which the Court will be asked to address during dispositive motions practice.

The first relates to Defendants' unwarranted allegation of "willful infringement." A claim of "willfulness" is a charged allegation in a patent litigation that is a prerequisite for (albeit it does not mandate) the recovery of enhanced damages. *See Seagate*, 497 F.3d at 138; 35 U.S.C. §284. Defendants' *pro forma* charge of "willfulness," therefore, was to be expected in the Counterclaims—it is something almost every patentee alleges in an effort to gain leverage—especially as the standard under which the allegation was assessed at that time was quite relaxed, being "more akin to negligence." *See id.* at 1371.

In August 2007, however, the Court of Appeals for the Federal Circuit overruled past "willfulness" case law in the face of new Supreme Court precedent and, in so doing, significantly increased the burden on a patentee in proving willful infringement. Notably, the Federal Circuit disavowed its prior holdings that "a potential infringer [with] actual notice of another's patent rights … has an affirmative duty to exercise due care to determine whether or not he is infringing," *cf. Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389-90 (Fed. Cir. 1983), and held instead that a patentee must show that an accused infringer's actions were "objectively reckless" when it made, used, or sold an accused product. *See Seagate*, 497 F.3d at 1371. The Federal Circuit also explained that such a showing will be subject to a high burden of proof:

> [T]o establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The state of mind of the accused infringer is not relevant to this objective inquiry. If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer.

*Id.* (citing *Safeco Ins. Co. of Am. v. Burr,* --- U.S. ----, 127 S.Ct. 2201, 2215 (2007) ("[i]t is [a] high risk of harm, objectively assessed, that is the essence of recklessness")).

The second significant development was this Court's *Memorandum and Order* on claim construction, which was issued just a few months after the Federal Circuit decided *Seagate*. D.I. 121. In that ruling, the Court interpreted the claim terms "PCV-2" and "ORFs 1-13" in a manner consistent with Intervet's reading of the patent at issue. *Id.* at 4, 13-14. Importantly, at least one of those terms appears in each asserted claim, *see* '601 patent, cls. 9, 32, and there can be no dispute that during prosecution of the '601 patent, the patentee/applicant made a series of narrowing amendments to the claims, which had

3

the effect of further restricting the scope of the patent. *See, e.g., Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005) (if the patentee makes any "narrowing amendments" during prosecution to satisfy a requirement of the Patent Act, a presumption arises that "the patentee surrendered the territory between the original claims and the amended claims"); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736, 741 (2002) (discussing the "prosecution history estoppel" doctrine).

Thus, when this Court's claim construction ruling is coupled with a review of the prosecution history of the patent in this case, and considering further how an objective infringement analysis now impacts a willfulness allegation under *Seagate,* the stage will be set for dispositive motions practice on both infringement and willfulness. Summary judgment, of course, is a favored procedure whenever the undisputed evidence permits efficient resolution of disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); Fed. R. Civ. P. 1. Indeed, in patent cases, a significant percentage of cases are disposed of on summary judgment in favor of the accused infringer, precisely because so-called "*Markman*" rulings have helped clarify the legal issues. *See* Robert Weiss, "Markman Practice, Procedure and Tactics," *Patent Litigation 2000* at 149 (PLI Oct. 2000) ("summary judgment was granted in nearly 24%" of post-*Markman* cases).[1]

As such, Intervet intends to move at the appropriate time for summary judgment that the accused vaccine does not literally infringe any of the asserted claims of the '601 patent (as the Intervet product does not contain anything that the patentee referred to as "PCV-2" or "ORFs 1-13"), and that Defendants are barred by prosecution history

---

[1] The percentage of cases that courts dispose of on summary judgment is likely even higher today given the strict "prosecution history estoppel" rules set out in *Festo*.

4

estoppel and the dedication to the public doctrine from asserting that the accused vaccine contains any elements that are the "equivalents" of those claim terms. Moreover, even if the Court were to find that genuine issues of material fact preclude the grant of judgment as a matter of law (although Intervet would submit that no such issues exist), the motion at a minimum will demonstrate that Defendants could never establish that there was "an objectively high likelihood" that infringement existed, thus defeating any claim of willfulness as a matter of law under the heightened *Seagate* standard.

The present motion, however, is not about the legal or factual basis for Intervet's motion for summary judgment of noninfringement, nor is it about Defendants' inability to sustain their allegation of willfulness in view of those arguments. Rather, this motion focuses on whether, despite knowing that potentially dispositive motions will soon be filed, the parties nonetheless should rush headlong into a new round of discovery about privileged communications between Intervet and its counsel—communications that can only be relevant to an issue that likely soon will be moot. Intervet submits that there is no need to undertake additional discovery at this time, and every reason to defer.

Specifically, the attorney-client privileged materials about which Defendants seek discovery comprise a series of written "opinions of counsel" regarding or relating to Intervet's circovirus vaccine. In a typical opinion, patent counsel will explain to the client what the patent means and will set forth the legal and factual basis for why counsel believes that "the patent is invalid, unenforceable, and/or not infringed." *See Seagate*, 497 F.3d at 1369. An opinion of counsel, however, can only serve as a *defense* against a claim for enhanced damages—the patentee cannot rely on the contents of an opinion to *prove* infringement, nor can it use the opinion to establish that at the relevant time there

5

was "an objectively high likelihood" that the accused infringer's actions "constituted infringement." *See id.* at 1368, 1371 (explaining that because "patent infringement is a strict liability offense, the nature of the offense is only relevant in determining whether enhanced damages are warranted," and later noting that "[t]he state of mind of the accused infringer is not relevant" to a determination of "objective recklessness").

The decision to disclose a prior opinion of counsel, however, is not one that an accused infringer ever takes lightly. Even though the conclusions in the opinion may be favorable, an accused infringer involved in a patent litigation typically does not want the patentee to be privy to the legal and factual *analysis* contained within the opinion because review of that material could potentially provide the patentee with insight into the accused infringer's potential trial strategy or preparation. This could include how the accused infringer might question witnesses during depositions or trial, or otherwise provide the patentee with insight into the accused infringer's defenses. Indeed, this is usually why patentees *want* to force early disclosure.

The Federal Circuit has expressly recognized this "dilemma," and has suggested that an effective way for a court to resolve it is to bifurcate proceedings between liability (as to which the contents of an opinion of counsel are irrelevant; *see id.* at 1368) and willfulness/damages (where an opinion of counsel may be used as a defense):

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial

6

>courts thus should give serious consideration to a separate trial on
>willfulness whenever the particular attorney-client communications, once
>inspected by the court *in camera,* reveal that the defendant is indeed
>confronted with this dilemma.

*Quantum Corp. v. Tandom Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991); *see also*

*Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1572 (Fed. Cir. 1988)

("That approach may be useful in meeting the attorney-client privilege problem.").

In the present case, Intervet has not yet determined whether it intends to waive the attorney-client privilege in order to assert an "opinion of counsel" defense to Defendants' charge of willfulness[2], or, if Intervet does waive privilege, whether it will ask the Court to bifurcate the issues of liability and willfulness at trial. With summary judgment looming on the horizon, however, Intervet submits that discussing ways to address the so-called "*Quantum* dilemma" is premature. As the dilemma may never manifest, the prudent course of action would be to defer discovery into privileged communication until at least after the resolution of dispositive motions, by which time the issue may have become moot. Such action will not prejudice the parties or the Court in any way, and it would not only protect the attorney-client privilege from unnecessary impairment, it would avoid wasteful discovery efforts that could not possibly be relevant to any other issue.

---

[2] Under pre-*Seagate* law, accused infringers often felt obligated (and for a time were almost compelled) to disclose any prior legal opinions they had received in order to show the trier of fact that they had acted with "due care" when going forward with the sale of a product. *See* 497 F.3d at 1369. However, after *Seagate* and the rejection of the "due care" standard, the need for disclosure has been substantially reduced as *the patentee* now bears the burden of first establishing that at the relevant time there was "an objectively high likelihood" that the sale of the product "constituted infringement"—an inquiry as to which "[t]he state of mind of the accused infringer is not relevant." *Id.* at 1371.

### III.    ARGUMENT

A.    **The Court Has the Power to Defer Discovery Until After It Has Resolved Any Potentially Dispositive Motions**

Trial courts have broad discretion in how they choose to manage the conduct of discovery, *see, e.g., Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers,* 494 F.2d 1092, 1100 (D.C. Cir. 1974), and it is settled that the "entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion." *Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance Auth.*, 200 F.R.D. 1, 2 (D.D.C. 2001); *see also Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.") (citations omitted) (quoted in *Chavous*).

As this Court has explained, "a stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources.'" *Chavous*, 200 F.R.D. at 2 (quoting *Coastal States Gas Corp. v. Dept. of Energy,* 84 F.R.D. 278, 282 (D. Del. 1979)). Indeed, this Court (Oberdorfer, J.) has gone so far as to say that "discovery is generally considered *inappropriate* while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Anderson v. U.S. Attorneys Office,* 1992 WL 159186, at *1 (D.D.C. 1992) (emphasis added).

A court also has the power under Federal Rule 42(b) to bifurcate claims or issues for separate trial "to advance judicial economy, to avoid the possibilities of confusion, to further convenience, to avoid delay and prejudice, and to serve the ends of justice." *Webb v. Hyman,* 861 F. Supp. 1094, 1119 (D.D.C. 1994) (cite omitted); *see also* Fed. R.

8

Civ. P. 42(b). Here again, the court's discretion is broad, and a court may order a case bifurcated even if only one criterion from Rule 42(b) is satisfied." *American Nat. Red Cross v. Travelers Indem. Co. of Rhode Island*, 924 F. Supp. 304, 306 (D.D.C. 1996).

**B.    Deferring Discovery is Appropriate in This Case**

As noted already, *see* pp. 5-6, *supra*, discovery into the contents of any privileged "opinions of counsel" that Intervet may have received concerning the accused vaccine or the '601 patent cannot be relevant to either noninfringement or *prima facie* willfulness— two issues that will be raised during dispositive motions practice. Moreover, if Intervet were to prevail on *either* of those issues, the "opinions of counsel" into which discovery is presently being sought would immediately become irrelevant. *See Seagate*, 497 F.3d at 1368, 1371. As such, the present case is an appropriate candidate for a narrow discovery deferral, limited solely to attorney-client privileged information. *Cf. Cahvous*, 200 F.R.D. at 3 (noting that if a motion would not be case dispositive, or if discovery was needed to defend against the motion, discovery ordinarily should not be stayed).[3]

Moreover, deferring discovery on that limited issue would address the "*Quantum* dilemma" that Intervet otherwise would face if it had to choose now between disclosing privileged material (and possibly providing Defendants with a roadmap as to Intervet's thinking on liability issues) and preserving evidence for use as a defense in the event this case made it to trial with the tenuous willful infringement allegations intact. As the Federal Circuit reaffirmed in *Seagate*, the only sure way to resolve that dilemma and still

---

[3] Although the court in *Chavous* looked at whether a motion would be dispositive as to the entire case, *see* 200 F.R.D. at 3, there a stay had been sought on *all* discovery. Here, Intervet seeks only to defer discovery into privileged material that could only be relevant as a defense to a claim of willful infringement. As such, even if Intervet were to prevail

9

preserve the attorney-client privilege— "the oldest of the privileges for confidential communications known to the common law"[4]—is to bifurcate issues of liability from those of willfulness for trial (and necessarily stay discovery on the latter). *See id.*, 497 F.3d at 1369; *see also Aptargroup, Inc. v. Owens-Illinois, Inc.*, 2003 WL 21557632, *1 (N.D. Ill. 2003) (noting that bifurcation is especially appropriate where the patentee's "liability case has taken a real hit from [the] court's *Markman* construction"). In the present case, though, it is not yet necessary for the Court to consider bifurcation—the same benefits offered by bifurcation could be achieved now merely by deferring "opinion of counsel" discovery until at least after dispositive motions, by which time the issue of "willfulness" may be moot (and even if willfulness survives to trial, it may be that the case has been so limited that Intervet might then forgo an "opinion of counsel" defense).

Deferring discovery on matters relating to opinions of counsel also serves a practical benefit by reducing the number of issues that the parties and the court would need to address and avoiding other wasteful efforts. The key players who likely would be deposed during any "opinion of counsel" discovery (primarily, the opining attorneys) are not otherwise witnesses in this case, and taking their depositions as to willfulness would waste party resources, delay the close of "regular" fact discovery, and put off the filing of potentially dispositive motions. Moreover, although the Federal Circuit has provided some guidance as to the appropriate scope of the attorney-client and work product waiver when an opinion of counsel is disclosed, *see, e.g., Seagate*, 497 F.3d at 1370, 1372-73, the sensitive nature of the waiver issue is always hotly contested, and the parties

---

on summary judgment only as to noninfringement (thus leaving claims for invalidity standing), the decision would still be "thoroughly dispositive" of willfulness.

[4] *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

10

undoubtedly would have disagreements that would require court intervention. With the deferral of discovery, however, all of these problems could be avoided as well.

**C.    The Proceedings Will Not Be Delayed as a Result of Discovery into This Limited Issue Being Deferred**

When courts consider any modification to (or a "phasing" of) a discovery schedule, the question of whether the change would cause any prejudice to the parties is often a key concern. In the present case, however, no prejudice can be identified.

Defendants have no legitimate need for "opinion of counsel" discovery to help them prepare their affirmative case, either on infringement or willfulness. The decision to waive privilege always remains with Intervet, *see Seagate*, 497 F.3d at 1372, and if Intervet were to choose not to assert an "opinion of counsel" defense, Defendants would still need to be prepared to put forth their case on infringement and willfulness.

Further, deferring discovery into attorney-client privileged matters will not delay these proceedings. The universe of "discoverable information" relating to Intervet's privileged opinions is relatively small (*e.g.*, the documents themselves, key persons involved), which means that discovery could be completed quickly. On the other hand, taking the time to conduct such discovery now could have the effect of delaying dispositive motions briefing, and potentially delay ultimate case resolution.

## IV. CONCLUSION

For the above reasons, Intervet respectfully requests that discovery of matters protected by the attorney-client privilege be deferred in this case until the Court has at least resolved any motions for summary judgment the parties may file.

Dated: February 4, 2008                                        Respectfully Submitted,

                                                         /s/ Yariv Waks
John R. Hutchins (DC Bar No. 456749)
Yariv Waks (DC Bar No. 491729)
William G. James, II (DC Bar No.503162)
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, DC  20005
Tel: (202) 220 – 4200
Fax: (202) 220 – 4201

Michael D. Loughnane
KENYON & KENYON LLP
One Broadway
New York, NY  10004
Tel.: (212) 425 – 7200
Fax: (212) 425 – 5288

*Counsel for Intervet, Inc.*

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> *Plaintiff,* <br><br> v. <br><br> MERIAL LIMITED and MERIAL SAS, <br><br> *Defendants.* | Civil Action No. 1:06-cv-00658(HHK/JMF) |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of February, 2008, I electronically served a *Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions* with the Clerk of the Court using the CM/ECF system which will automatically e-mail notice of this filing to the following attorneys of record:

> Judy Jarecki-Black, Ph.D.
> MERIAL LIMITED
> 3239 Satellite Blvd.
> Duluth, GA 30096-4640
> Tel: (678) 638-3805
> Fax: (678) 638-3350

Thomas J. Kowalski, Esq.
Steven M. Admundson, Esq.
Vicki Franks, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500


Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Elizabeth K. Haynes, Esq.
Robert L. Lee, Esq.
Frank G. Smith III, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777



/s/ Edith F. Meyers
Edith F. Meyers
Case Manager, Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200

2