## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC.,<br><br>        *Plaintiff*,<br><br>      v.<br><br>MERIAL LIMITED and MERIAL SAS<br><br>        *Defendants.* | Civil Action No. 1:06-cv-00658 (HHK/JMF)<br><br>**ORAL HEARING REQUESTED** |

### REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF INTERVET'S MOTION TO DEFER DISCOVERY OF ATTORNEY-CLIENT PRIVILEGED INFORMATION UNTIL AFTER DISPOSITIVE MOTIONS

Plaintiff Intervet Inc. ("Intervet") respectfully submits this reply memorandum in further support of its *Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions* ("Motion," D.I. 129), and in response to Defendants Merial Limited's and Merial SAS's ("Merial") opposition thereto ("Opposition," D.I. 131). Merial's Opposition dramatically understates the impact on this case of both the Federal Circuit's *en banc* decision in *Seagate* and the Court's *Markman* Order (D.I. 121), decisions that make it highly unlikely that Merial can sustain a claim for willful infringement. As such, there is no need to delve into wasteful and potentially prejudicial discovery of Intervet's attorney-client privileged information at this time and ample reason to defer such discovery until after decisions have been rendered on dispositive motions.

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 4

      A.  The *Seagate* Decision and the Court's *Markman* Order Show
          That Merial's Charge of Willful Infringement Cannot Stand
          Summary Judgment ................................................................................... 6

      B.  The Interest of Judicial Economy Favors Deferral, and Merial's
          Assertions of Prejudice Are Far Outweighed by the Prejudice that
          Intervet Will Have to Undergo Should it Be Forced to Waive
          Privilege at This Time ............................................................................. 11

      C.  Merial Is Not "Entitled" to Use Discovery of Intervet's
          Privileged Materials in Its Affirmative, Pre-Dispositive Motion Case .... 14

IV.  CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Abbot Labs. v. Sandoz, Inc.*, No. 05-C-5373,
2007 U.S. Dist. LEXIS 89399 (N.D. Ill. Dec. 4, 2007) ............................................. 7, 8

*Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, No. 02 Civ. 2748,
2007 WL 2815812 (E.D.N.Y Sept. 25, 2007) ............................................................. 10

*Franklin Elec. Co., Inc., v. Dover Corp.*, No. 05-C-598-S,
2007 U.S. Dist. LEXIS 85488 (W.D. Wis. Nov. 15, 2007) ...................................... 7, 8

*Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568 (Fed. Cir. 1988) ............. 14

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007)(en banc) ....................... passim

*Informatica Corp., v. Bus. Objects Data Integration, Inc.*, No. C 02-03378 EDL,
2007 U.S. Dist. LEXIS 83157 (N.D. Cal. Oct. 29, 2007)............................................. 8

*People with AIDS Health Group v. Burroughs Wellcome Co.*, No. 91-0574,
1991 WL 221179 (D.D.C. Oct. 11, 1991) ...................................................................... 5

*TGIP, Inc. v. AT&T Corp.*, No. 2:06-CV-105,
2007 U.S. Dist. LEXIS 79919 (E.D. Tex. Oct. 29, 2007) ............................................. 8

*Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).................................................... 13

## I.    INTRODUCTION

Through the present motion, Intervet seeks to defer discovery into a limited subset of information—specifically, testimony and documents protected by the attorney-client privilege—until the Court has at least resolved any motions for summary judgment that the parties may file in view of this Court's *Memorandum Opinion and Order* of November 28, 2007, and the Federal Circuit's recent *en banc* decision in *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir. 2007). As explained in Intervet's opening papers, deferring discovery into attorney-client privileged information until after resolution of potentially case dispositive motions would protect the attorney-client privilege and promote party and judicial economy while not adversely impacting these proceedings. (*See generally* D.I. 129 at 1-2.) In fact, considering that discovery into all non-privileged matters (including willfulness) is almost fully complete, it would make little sense to launch headlong into "privileged" discovery without assessing first the sufficiency of the allegations that have led to the so-called "*Quantum* Dilemma"— a situation where a patent defendant must choose between preserving the attorney-client privilege (as is its right) and waiving privilege so that it can more effectively fend off a spurious claim of willful infringement. Nonetheless, this wasteful and potentially needless discovery is exactly what Merial proposes to do.

Specifically, Merial argues in its Opposition that the parties (and the Court) should press ahead with extensive discovery into all aspects of Intervet's attorney-client privileged information because Merial supposedly "*needs*" this discovery into privileged materials in order to make out its infringement case, not just its willfulness case. Bootstrapping a willfulness claim based on the forced disclosure of privileged material, however, is precisely the sort of activity a party can no longer do in view of the Federal

1

Circuit's *Seagate* decision.  Rather, a party must now be able to make out a *prima facie* case of willfulness *before* the accused infringer must put on a willfulness defense, and in the present case, it is precisely those allegations that soon will be tested on summary judgment.

Merial seeks to sidestep *Seagate's* effect by arguing, in essence, that the case has had little impact on the law.  Particularly, Merial claims that notwithstanding *Seagate*, it is still entitled to learn of the "facts and circumstances under which an accused party infringes a patent" because those facts are supposedly "inextricably bound to the determination of whether the infringer acted in an 'objectively reckless' manner[.]"  This argument, however, which forms the crux of Merial's Opposition, is fatally flawed.

To begin with, by making this argument, Merial is dramatically understating the impact of the *Seagate* decision.  More importantly, though, Merial is simply missing the point.  Intervet has not denied Merial any discovery relating to the subject of willfulness or infringement in general, nor has it prevented Merial in any way from learning the "facts and circumstances" relating to the accused acts of infringement.  The only discovery that Intervet seeks to defer is that relating to *attorney-client privileged* materials, and Intervet only seeks to defer the disclosure of this material until Merial— based on the objective "facts and circumstances"—can actually set forth a *prima facie* claim for willfulness under the new *Seagate* test.  It has become apparent, however, that Merial knows that it cannot make out a *prima facie* case of willfulness based on the evidence of record, which is why it wants to go fishing into attorney-client privileged materials in the hopes of finding *something* that may help it (although no such smoking gun exists).  This is precisely the type of conduct that *Seagate* was meant to deter.

Indeed, the case law decided since *Seagate* confirms that Merial is trying to understate *Seagate's* impact because it knows that its claim of willfulness likely will not withstand summary judgment. Charges of willfulness are now routinely dismissed by courts as a matter of law, even in instances where infringement was found under pre-*Seagate* case law. Furthermore, the courts have held that "objective recklessness," and therefore willfulness, cannot be shown when the accused infringer has substantial and supported noninfringement positions. Stated another way, when infringement is, at the very least, a close question, the case law makes it clear that the accused infringer could not have been "objectively reckless" and therefore willful in infringing.[1]

Merial also argues that it would somehow waste judicial resources to defer discovery of Intervet's attorney-client privileged materials, suggesting that there is a large "universe of discoverable information related to Intervet's privileged opinions" that it would want to explore. (D.I. 131 at 7-8). However, even if this Court were to construe the scope of any potential waiver as broadly as Merial posits (which it should not), the fact that Merial is contemplating extensive document and deposition attorney-client discovery actually *supports* deferral of willfulness discovery; as Intervet has discussed, the "privileged" discovery at issue would likely become moot once Merial's willfulness

---

[1]    While Intervet submits (and will establish in its upcoming dispositive motions) that there is clearly no infringement in this case, should Merial ultimately prevail before a jury on the issue of infringement, all must agree that at the very least, Intervet has strong and well-reasoned non-infringement positions. This fact is indisputable in light of the Court's *Markman* Order, which, by limiting the terms "PCV-2" and "ORFs 1 to 13" to only the DNA sequences disclosed in the '601 patent, ensures as Merial basically concedes that Intervet's accused vaccine does not literally infringe any of the asserted claims of the patent-in-suit. Thus, any finding of infringement would have to be under the doctrine of equivalents, which is an equitable doctrine. Further, Merial must still overcome the significant obstacle of prosecution history estoppel to be able to invoke the doctrine of equivalents in the first place because Merial made narrowing amendments to the asserted claims during patent prosecution to obtain the patent. In cases such as this, the courts since *Seagate* have made it clear that an accused infringer's actions cannot be called "objectively reckless." (*See* pp. 8-10, *infra*.)

claims are critically examined in light of *Seagate's* heightened *prima facie* standard and the requirement of "objective recklessness." (*See* D.I. 129 at 10-11; *see also* pp. 6-10, *infra*.) Therefore, deferring this discovery can only save party and judicial resources, and Merial can point to no potential savings that would result from allowing full discovery of attorney-client privileged materials now.

Finally, Merial argues that it will suffer prejudice if attorney-client discovery is deferred. The prejudice that Merial alleges, however, does not exist, and even if it did, it is clearly outweighed by the prejudice that Intervet will suffer if it is compelled to waive privilege to defend itself against an allegation that will in all likelihood ultimately be proven moot. As discussed above, under *Seagate*, Merial's charge of willful infringement is unlikely to withstand summary judgment because Merial cannot make a threshold showing of willfulness. Thus, deferral of attorney-client privileged discovery is proper and Intervet's motion should be granted.

## II.    ARGUMENT

Merial has been provided essentially all non-privileged discovery in this case that could relate to the subject of infringement or willfulness. In fact, as of the last count, Merial has sought and been provided with approximately 150,000 pages of documents, written responses to twenty-four interrogatories, thirty-five requests for admission, testimony or written responses to fifty-six Rule 30(b)(6) topics, as well as taken or scheduled depositions for nine fact witnesses. Despite that avalanche of material, however, Merial claims that it also needs *attorney-client privileged* discovery in order to

make out its infringement and willfulness cases. However, if Merial truly *needs*
privileged information to make out its case, it does not actually *have* a case.[2]

Rather, what Merial actually seeks is the information Intervet may rely on as a
*defense* to a claim of willfulness. (Obviously, the contents of an opinion of counsel
cannot form the basis for a party's defense against a claim of infringement, as
infringement is judged under a strict liability standard). As *Seagate* and other cases have
made clear, however, a party need only put on a defense to a charge of willfulness <u>after</u>
the patentee has made out a *prima facie* case. And the question of whether Merial has
made out a *prima facie* case (under the new "objective recklessness" standard set forth in
*Seagate*) is precisely the issue that this Court will be asked to address in the near future.
Indeed, that is why Intervet is seeking to defer discovery into privileged information in
the first place—there is simply no valid reason for invading the attorney-client privilege
and incurring the expense associated with discovery (both for the parties and the Court)
based on the mere *threat* of a willfulness claim: the patentee must first make out a *prima*
*facie* case.[3]

Merial responds by suggesting (i) that *Seagate* does not actually mean what it
says; (ii) that judicial and party economy somehow favor conducting discovery that likely
will prove to be moot; and, (iii) that it supposedly is "entitled" to (and/or "needs") access

---

[2]     As this Court's decision in *People with AIDS Health Group v. Burroughs Wellcome Co.*, No. 91-
0574, 1991 WL 221179, at *1 (D.D.C. Oct. 11, 1991), was not related to the attorney-client privilege in any
way, Merial's attempts to rely on it to argue against deferring such discovery are clearly distinguishable
from this case. (D.I. 131 at 10.)

[3]     Merial insinuates that this Court does not have the authority to stay discovery. (D.I. 131 at 8.)
Specifically, Merial argues that the cases that Intervet cites in support are distinguishable because they
dealt with stays in the face of *pending* dispositive motions. (*Id.*). Merial's strained attempts to rely on this
distinction are incorrect. It is indisputable that the Court has inherent authority and broad discretion to
structure and manage discovery. (D.I. 129 at 8.)

to Intervet's attorney-client privileged information in order to make out its infringement case. Intervet will therefore address and dispose of each of these points in turn.

**A.     The *Seagate* Decision and the Court's *Markman* Order Show That Merial's Charge of Willful Infringement Cannot Stand Summary Judgment**

The *Seagate* decision has been described as a "landmark ruling." (Ex. A, Amanda Ernst, *High Court Denies Cert in Seagate Case*, IP Law 360, Feb. 25, 2008, http://ip.law360.com.)[4] Indeed, even Merial acknowledges that Seagate "changed the standard for willfulness," (D.I. 131 at 11), and recently the Supreme Court denied certiorari, further cementing *Seagate's* "landmark ruling" as established law. (*See* Ex. A.)

Under *Seagate*, a patentee claiming "willful infringement" must show that an accused infringer's actions were "objectively reckless" when it made, used, or sold an accused product. *See Seagate*, 497 F.3d at 1371. Moreover, this showing of "objective recklessness" is intended to be a *threshold requirement* that must be established *without regard to the accused infringer's state of mind*. *See Seagate*, 497 F.3d at 1371 ("[t]he state of mind of the accused infringer is not relevant to this objective inquiry").) *After* (and <u>if</u>) this threshold standard is satisfied by "clear and convincing evidence" then the patentee must show that this objective risk was "either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. Thus, *subjective* evidence—such as might be divined from the text of an opinion of counsel or testimony related to the thoughts of Intervet personnel—cannot possibly be relevant to the question of whether the patentee has made the requisite *prima facie* objective showing.

---

[4]     "Ex. __" refers to the exhibits to the Declaration of Yariv Waks submitted herewith.

Despite this clear mandate, however, Merial argues that it is entitled to, *inter alia*, Intervet's opinions of counsel—which, by definition, can only be relevant to the second step of the *Seagate* analysis—to help it establish "objective recklessness" and, oddly enough, for use in making out its infringement case in general.  Merial's disregard for *Seagate* should be rejected.[5]

Notably, Merial relies on a single post-*Seagate* decision to support its categorical claim that "infringement and willfulness remain inextricably linked despite the change in the willfulness standard."  (D.I. 131 at 15).  This broad-brush effort to summarize the post-*Seagate* legal landscape by generalizing from a single case (which Merial misapprehends) is wrong.  What post-*Seagate* cases in fact show is that the heightened *Seagate* standard makes bald assertions of willful infringement—such as that proffered by Merial—unlikely to succeed, thus making it logical to defer discovery that may prove unnecessary.

First, in post-*Seagate* decisions, willful infringement claims are often dismissed by the Court through dispositive motions, including even after a specific jury finding of infringement.  *See, e.g.*, *Franklin Elec. Co., Inc., v. Dover Corp.*, No. 05-C-598-S, 2007 U.S. Dist. LEXIS 85488, *22-23 (W.D. Wis. Nov. 15, 2007) (citing *Seagate* and granting an accused infringer's motion for summary judgment dismissing a willfulness charge); *Abbot Labs. v. Sandoz, Inc.*, No. 05-C-5373, 2007 U.S. Dist. LEXIS 89399 (N.D. Ill. Dec. 4, 2007) (granting an accused infringer's Rule 12(b)(6) motion to dismiss plaintiff's

---

[5]     Merial also half-heartedly proffers that Intervet's Motion is a non-issue because Intervet has already waived the attorney-client privilege.  (D.I. 131 at 2).  As Intervet made clear in its opposition to Merial's omnibus motion to compel, Intervet has not waived the attorney-client privilege in this matter, either intentionally or otherwise.  (D.I. 132 at 19-31).  Merial's attempts to concoct a "discrepancy" between Intervet's Motion and Proposed Order on the basis of this alleged waiver (which never happened) should thus be rejected.

claims of willful infringement or in the alternative, Rule 12(c) motion for judgment on the pleadings); *TGIP, Inc. v. AT&T Corp.*, No. 2:06-CV-105, 2007 U.S. Dist. LEXIS 79919, at *35-37 (E.D. Tex. Oct. 29, 2007) (granting judgment as a matter of law and reversing a jury finding of willful infringement in light of *Seagate*); *Informatica Corp., v. Bus. Objects Data Integration, Inc.*, No. C 02-03378 EDL, 2007 U.S. Dist. LEXIS 83157, at *14-16 (N.D. Cal. Oct. 29, 2007) (refusing to enhance damages despite a jury finding of willful infringement because the jury's finding was based on "now-obsolete case law" and stating that *Seagate* "significantly raised the bar for a finding of willfulness").

Second, in post-*Seagate* case law, where an alleged infringer had substantial and supported noninfringement positions, courts find a lack of "objective recklessness" required to prove willful infringement. *See Franklin*, 2007 U.S. Dist. LEXIS 54588 at *23 ("Given the significant support in the language of the patent, the specification and prosecution history for defendant's non-infringement position, plaintiff cannot meet its burden to prove objective recklessness by clear and convincing evidence."); *TGIP*, 2007 U.S. Dist. LEXIS 79919 at *37 ("Likewise, it cannot be said there is clear and convincing evidence that it was known or obvious that there was an objectively high likelihood that AT&T's non-infringement position was incorrect. Even if the jury's finding of infringement is ultimately upheld, it was, at best a very close question.") Like *Franklin* and *TGIP*, the question of infringement—should it ultimately be decided in Merial's favor—would at the very least be a very close question.

To be clear, Intervet's noninfringement position is compelling and is based, at least in part, on the fact that the virus that Intervet uses to make the accused vaccine is

not a "PCV-2" virus or derived from a "PCV-2" virus, as that term was construed by the Court. (The Court agreed with Intervet that the term "PCV-2" as used in the patent-in-suit means the "five viral strains identified in the '601 Patent." (D.I. 121 at 4)). As the "PCV-2" term appears in every asserted claim of the '601 patent (D.I. 129 at 3), Intervet cannot literally infringe the '601 patent.

While Merial grudgingly acknowledges that the Court's claim constructions "may affect whether Intervet infringes the '601 patent literally," Merial says this is of no consequence because "[w]illful infringement may be found whether infringement is literal or under the doctrine of equivalents." (D.I. 131 at 17.) This argument misses the point and, notably, Merial only cites pre-*Seagate* cases in support of its position. (*Id*.) What the post-*Seagate* cases establish is that close questions of infringement do not rise to the level of "objective recklessness." The fact that Merial must resort to the doctrine of equivalents is strong evidence that Intervet's noninfringement positions are substantial and supported by the disclosure of the patent-in-suit. Furthermore, Merial will have to overcome significant obstacles in relying on the doctrine of equivalents to prove infringement. As Intervet made clear in its Motion, and Merial did not deny in its Opposition, Merial narrowed the scope of the asserted claims during prosecution to obtain a patent. (*See* Ex. B, Excerpts from the '601 Patent Prosecution History.) As a result of these narrowing amendments, and the doctrine of prosecution history estoppel, a presumption arises that Merial is *not* entitled to invoke infringement under the doctrine of equivalents.[6] These issues will likely be resolved on summary judgment, significantly

---

[6]    Furthermore, Merial also faces a challenge to its ability to invoke the doctrine of equivalents because of the disclosure-dedication rule. *See generally, Johnson & Johnston Assoc., Inc. v. R.E. Service Co. Inc*., 285 F.3d 1046 (Fed. Cir. 2002) (en banc).

simplifying this case. In any event, the underlying facts in this case make clear that Merial will never be able to show that Intervet's actions were "objectively reckless" or that there was an "objectively high likelihood" that infringement existed at the time Intervet sold the accused vaccine. Thus, there is no need to subject Intervet to the significant burden and prejudice associated with waiving privilege when the issue of willfulness will most likely not survive summary judgment.

Rather than accurately address the facts that exist in this case, Merial simply categorically asserts that "infringement and willfulness remain inextricably linked" after *Seagate*. (D.I. 131 at 15.) The single case that Merial cites in support of this sweeping conclusion, however was limited to the facts of that case, and therefore much narrower than Merial attempts to argue.[7] In the present case, there is no evidence overlapping the issues of infringement and willfulness. Indeed, the evidence in this case clearly shows that Intervet has substantial non-infringement arguments that are supported by the text of the patent and this Court's *Markman* Order. Post-*Seagate* decisions make it clear that Intervet was not "objectively reckless" under these circumstances.

---

[7]    In support of this overly broad conclusion, Merial cites, and misleadingly quotes, a single case from the Eastern District of New York. (D.I. 131 at 15, citing *Computer Assocs. Int'l, Inc. v. Simple.com, Inc.*, No. 02 Civ. 2748 (DRH)(MLO), 2007 WL 2815812 (E.D.N.Y Sept. 25, 2007).) Merial quotes the *Computer Associates* case as follows: "the overlap of evidence on the issues of liability and willfulness…heavily disfavors [the accused infringer's] proposed bifurcation." (D.I. 131 at 15). What the *Computer Associates* court actually said—a notable portion of which Merial drops out in order to create a seemingly broader application—was: "the overlap of evidence on the issues of liability and willfulness *in this case* heavily disfavors [the accused infringer's] proposed bifurcation." *Computer Assocs.*, 2007 WL 2815812 at *3.

**B.     The Interest of Judicial Economy Favors Deferral, and Merial's Assertions of Prejudice Are Far Outweighed by the Prejudice that Intervet Will Have to Undergo Should it Be Forced to Waive Privilege at This Time**

Merial also argues that judicial economy and the prejudice to Merial compel a finding in Merial's favor.  Merial is wrong on both points.  First, no potential benefit to judicial economy could possibly arise from denying Intervet's Motion.  In fact, granting Intervet's Motion could only conserve resources.  In addition to claiming that there is a "universe" of discoverable information related to attorney-client privileged materials (which there is not), Merial asserts that there is a "high likelihood" that discovery into attorney-client privileged materials will "precipitate the need for both additional expert discovery and dispositive motions[.]"  (D.I. 131 at 1).  If the Court agrees with Merial that discovery into attorney-client materials will constitute such a substantial undertaking, then this factor further supports Intervet's requests to defer.  Intervet's requested deferral of discovery on this issue offers the opportunity to avoid this discovery altogether, saving substantial resources if, and likely when, this issue is mooted at the summary judgment stage.  Merial insists that this discovery commence now, creating the distinct possibility—and even probability—that all of this discovery ultimately proves to be a waste of time.

Merial further argues that Intervet's requested deferral would prejudice Merial because it "threatens to render meaningless the initial rounds of expert discovery and dispositive motions."  (*Id*. at 8).  Additionally, Merial also claims that it is unable to determine how to use its allotted 15 depositions unless Intervet makes its waiver decision now.  (*Id*. at 5).  Neither of these "prejudices" makes sense.

Specifically, Merial's assertion that the deferral of limited discovery related to willfulness will necessitate additional expert discovery and/or render all fact discovery to date somehow meaningless is incomprehensible. Merial provides no support for this scenario, nor does it articulate what discovery it would supposedly need to repeat. More importantly, though, Merial's argument is factually wrong.

To begin with, virtually all non-privileged discovery has already been completed, whereas "privileged" discovery has yet to take place. Thus, deferring privileged discovery until after dispositive motions cannot possible impact the discovery that has already taken place any more than not deferring it. Moreover, the universe of discovery Intervet seeks to defer—specifically, *privileged* communications—is far narrower than Merial alleges. As discussed above, this extra round of attorney-client privileged discovery is unlikely to ever take place in light of the very high burden facing Merial in making its *prima facie* case of objective recklessness—a burden that Merial simply cannot meet under the facts and circumstances of this case.

Merial's alleged inability to properly allocate its allotment of facts depositions is a red herring. Merial has only taken or scheduled nine depositions to date and therefore has more than enough depositions remaining to allocate to both the remaining issues of infringement and to willfulness (one would hope). However, *even if* this conceivably could be a problem, the total number of depositions can be increased by agreement or by the Court if shown to be necessary.

As opposed to the speculative prejudice that Merial alleges, Intervet faces the imminent and much more substantive prejudice of potentially waiving the attorney-client privilege—"the oldest of the privileges for confidential communications known to the

12

common law"[8]—in order to potentially defend itself on an issue that is likely to prove moot. Merial seeks at length to downplay the prejudice that Intervet will suffer if it is forced to waive privilege, but these attempts fall well short.

First, Merial attempts to downplay the effect of the "*Quantum* dilemma" that accused infringers face in patent cases. (D.I. 131 at 11-12). Merial asserts that the "*Quantum* dilemma" only applies to bifurcations of trial, not discovery, as well as insinuating that the "*Quantum* dilemma" is merely dicta. (*Id*.). These arguments are simply incorrect. The "*Quantum* dilemma" is a very real, commonly recognized prejudice that accused infringers face. While *Seagate* mitigated the "*Quantum* dilemma" somewhat by eliminating the *de facto* requirement that accused infringers waive privilege and produce any opinions of counsel—which was essentially a necessity under the pre-*Seagate* "affirmative due care" standard for willfulness—the "*Quantum* dilemma" still exists.[9] In fact, the only real way that an accused infringer can avoid facing the dilemma of having to disclose privileged communications in the face of spurious "willfulness" allegations is if those allegations are first subjected to the scrutiny under *Seagate's prima facie* standard before it becomes necessary for the accused infringer to waive privilege, which is precisely what Intervet seeks to do in this case.[10]

---

[8]    *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

[9]    For example, although *Seagate* limited the effects of waiver as it applies to trial counsel, it did not address how the production of opinions affects the privilege as it relates to in-house counsel. *Seagate*, 497 F.3d at 1366 n.2 ("We do not address the trial court's discovery orders pertaining to Seagate's in-house counsel. The questions presented for en banc review do not encompass this issue."). Also, the disclosure of privileged opinions can still provide an opposing party with a road map to the defendant's likely trial strategy and reveal what avenues of attack an accused infringer deems to be the most important. Thus, the decision to waive privilege, even post-*Seagate*, still carries potentially significant ramifications and invasions on the attorney-client privilege. Intervet should not be required to undergo this sort of prejudice in order to defend itself against a charge of willfulness that, under *Seagate*, likely will become moot.

[10]    Additionally, Merial's attempts to distinguish the Federal Circuit's *Fromson* decision miss the point as well. (D.I. 131 at 16, citing *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568 (Fed. (continued)

C.     **Merial Is Not "Entitled" to Use Discovery of Intervet's Privileged Materials in Its Affirmative, Pre-Dispositive Motion Case**

Finally, Merial argues that it would be improper for this Court to defer discovery into attorney-client privileged matters because such discovery somehow is supposedly relevant to the dispositive motions the parties will file.  (D.I. 131 at 9).  Specifically, Merial claims that "[t]o the extent that Intervet ever intends to rely on its advice of counsel <u>as a defense to willful infringement</u>, Merial needs discovery within the scope of that waiver prior to dispositive motions on infringement and willfulness because it is entitled to use such evidence in its affirmative case."  (D.I. 131 at 9) (emphasis added).

This statement of "need" is baseless and unsupported.  The Federal Circuit has made it clear that infringement is a strict liability offense, and the *nature* of the offense is only relevant in determining whether enhanced damages are appropriate.  *Seagate*, 497 F.3d at 1368, 1371.  Therefore, the contents of Intervet's opinions of counsel, as well as the attorney-client communications related thereto, are entirely irrelevant to the issue of infringement.  In fact, even Intervet could not rely on such opinions as a defense to infringement at the dispositive motion stage if it wanted to do so.

Similarly, Intervet's opinions of counsel cannot be relevant to any dispositive motion on the subject of willfulness.  Post-*Seagate* cases confirm that an opinion of counsel is only relevant *to defeat* a charge of willful infringement.  *See, e.g.*, *Franklin*, 2007 U.S. Dist. LEXIS 84588 at *21 ("While a pre-infringement opinion of counsel is relevant *to defeat* a claim of willfulness, an accused infringer has no affirmative obligation to obtain one.") (emphasis added).  Thus, Merial's unsupported assertion that

---

Cir. 1988).)  Intervet cited the *Fromson* decision as but one example of a bifurcation of willfulness.  (D.I. 129 at 7.)

it is "entitled" to use these materials to support a dispositive motion on willfulness (or to defeat a motion brought by Intervet based on Merial's failure to make a *prima facie* showing) is legally wrong and must be rejected. Indeed, as Intervet has no obligation to waive privilege at all, it is legally incorrect for Merial to say that it is "entitled to" this discovery now. Merial has taken vast discovery with respect to both the issues of willfulness and infringement, and does not "need" and, indeed, is not entitled to Intervet's attorney-client privileged materials to defend itself with respect to the dispositive motions that will be filed in this case.

## IV.   CONCLUSION

For the above reasons, Intervet respectfully requests that the Court grant its Motion and defer discovery of materials protected by the attorney-client privilege until the Court has at least resolved any motions for summary judgment the parties may file.

Dated: March 5, 2008                      Respectfully Submitted,


                                          _____/s/ Yariv Waks_____
                                          John R. Hutchins (D.C. Bar # 456749)
                                          William G. James, II (D.C. Bar # 503162)
                                          Yariv Waks (D.C. Bar # 491729)
                                          KENYON & KENYON LLP
                                          1500 K Street N.W., Suite 700
                                          Washington, DC 20005
                                          (202) 220-4200 (telephone)
                                          (202) 220-4201 (facsimile)

                                          Richard L. DeLucia
                                          Michael D. Loughnane
                                          Patrice P. Jean, Ph.D. (D.C. Bar # 482968)
                                          KENYON & KENYON LLP
                                          One Broadway
                                          New York, NY 10004
                                          (212) 425-7200 (telephone)
                                          (212) 425-5288 (facsimile)

                                          Attorneys for Plaintiff Intervet Inc.

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

INTERVET INC.,

       *Plaintiff,*

    v.

MERIAL LIMITED and MERIAL SAS,

       *Defendants.*

Civil Action No. 1:06-cv-00658(HHK-JMF)

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of March, 2008, I caused copies of the following documents to be served via the Court's ECF service on all attorneys of record in this matter:

1.    Reply Memorandum in Support of Plaintiff Intervet's Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions

2.    Declaration of Yariv Waks in Support of Plaintiff Intervet's Reply Memorandum in Support of Plaintiff Intervet's Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions

3.    Exhibits associated with the Declaration of Yariv Waks in Support of Plaintiff Intervet's Reply Memorandum in Support of Plaintiff Intervet's Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions

Additionally, the above documents were also served via electronic mail on the following attorneys of record:

Judy Jarecki-Black, Ph.D.
MERIAL LIMITED
3239 Satellite Blvd.
Duluth, GA 30096-4640
Tel: (678) 638-3805
Fax: (678) 638-3350


Thomas J. Kowalski, Esq.
Vicki Franks, Esq.
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue, NY NY 10151
Tel: (212) 588-0800
Fax: (212) 588-0500


Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333


Frank G. Smith III, Esq.
Patrick J. Elsevier, Ph.D.
Kristen Melton, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777


Edith Meyers
Case Manager
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200