# Exhibit F

**From:** Elsevier, Patrick [mailto:Patrick.Elsevier@alston.com]
**Sent:** Tuesday, April 08, 2008 5:47 PM
**To:** Waks, Yariv
**Cc:** Loughnane, Michael; James, William; Jarecki-Black, Judy; Kowalski, Thomas; Smith, Frank
**Subject:** RE: Intervet v. Merial

Reeve,

As previously noted, we do not believe that your email accurately summarizes what was discussed on last week's call. We believe that the following more accurately summarizes the parties' positions:

**Intervet's responses to Merial's discovery issues**

1) <u>Merial's Rule 30(b)(6) Notice of Deposition served February 11, 2008</u> - Despite the fact that Merial served this 30(b)(6) Notice on Intervet on February 11, 2008, almost two months ago, and despite numerous requests, Intervet has yet to offer a witness on the two noticed topics. Indeed, in our call last week, Intervet refused to even state whether it would agree to make any witnesses available on the noticed topics. On our call, Intervet suggested that there may no longer be anyone at Intervet, Inc. who has knowledge of the noticed topics. As we discussed on the call, even if true, the absence of a current employee with knowledge does not relieve Intervet from preparing a Rule 30(b)(6) designee to the extent the matters are reasonably available, whether from documents, past employees, or other sources. As we also discussed, it is clear that Randy Atchison, Christa Drexler, and Dick Hesse, among others, have knowledge of the noticed topics and that these persons are reasonably available to Intervet. As we discussed, Intervet's failure to produce a 30(b)(6) witness on these topics is exacerbated by Intervet's refusal to make Dr. Drexler available for deposition, its refusal to permit Merial's attorneys to question Mr. Atchison regarding all of Intervet's sequence analysis documents (despite his admission that he had access to such materials, and created such alignments, while he was employed with Intervet), and Intervet's refusal to permit additional deposition time of Dr. Hesse. Accordingly, please let us know by Thursday of this week whether Intervet will agree to make a properly prepared 30(b)(6) witness available on the noticed topics.

2) <u>Intervet's Failure to Produce the Documents Identified Ms. Jacob's 3/25 letter</u> - On our call, Intervet stated that it was currently looking into the documents identified in Ms. Jacob's letter and to the extent such documents are in Intervet's possession, they will be produced. Merial made clear that it needs the documents identified in Ms. Jacob's letter sufficiently in advance of the depositions of Mr. Layfield and Ms. Smarte.

3) <u>Depositions of Mr. Layfield and Ms. Smarte</u> - Although you did not commit to it on our call, Merial understands from your email below that Intervet is working to provide dates for the depositions of Mr. Layfield and Ms. Smarte. We look forward to receiving dates soon as well as an estimate of when Intervet plans to produce the requested documents.

4) <u>Continuation of Dr. Hesse's Deposition</u> - Merial has requested additional deposition time of Dr. Hesse given that Dr. Hesse is identified by Intervet in its Initial Disclosures and Interrogatory Responses as the only U.S.-based person knowledgeable about the majority of topics related to the accused Intervet products. Intervet has refused Merial's request to make Dr. Hesse available.

5) <u>Deposition of Christa Drexler</u> - Merial has requested Intervet make Dr. Drexler available for deposition. Although Intervet Inc. asserts that it does not have control over Dr. Drexler since she is employed by Intervet International, not Intervet, Inc., Intervet's assertion of lack of control is belied by, among other things, the fact that Dr. Drexler was one of the email custodians from whom Intervet Inc. obtained documents for production in the litigation.

**Merial's Responses to Intervet's Discovery Issues**

1) <u>Intervet's March 5 30(b)(6) notice</u> - Merial did not, as you represent, state that it had unilaterally chosen to respond to interrogatories that it has characterized as encompassing the 30(b)(6) topics. Rather, Merial stated that it has provided formal objections to Intervet's 30(b)(6) notice that detail the reasons why it does not intend to make witnesses available for topics 43-48, including, but not limited to the fact that the topics are improper subject matter for a 30(b)(6) deposition to the extent that they seek a fact witness to testify regarding legal contentions. As part of our discussion of this topics, Merial did also note that Intervet had recently served interrogatories that are duplicative of the information sought by these topics. With respect to 30(b)(6) topics nos. 49 and 50, Merial noted that Merial does not likely have much, if any, information on these topics that is not publicly available information, and that the information sought by these topics would be better obtained from Fort Dodge or B.I., but that if Intervet wished to pursue these topics, it should let Merial know, and that Merial would see if it could make witnesses available on these topics, subject to the constraints imposed by the Court's Orders and the Federal and Local Rules.

2) <u>Intervet's Request for Additional Deposition Time with Mr. Kowalski</u> - With regard to Intervet's request for additional deposition time with Mr. Kowalski, Intervet has deposed Mr. Kowalski in both his individual and 30(b)(6) capacity and had more than enough time to depose Mr. Kowalski in both capacities. Intervet is not entitled to any more time with Mr. Kowalski under the Federal and Local Rules. However, Merial stated that, as a compromise and providing that Intervet does not move for further time, Merial would agree to make Mr. Kowalski available for 3.5 more hours of deposition time to testify solely on 30(b)(6) topics 2, 7 and 38.

3) <u>Ft. Dodge and Boehringer Ingelheim</u> - Your email below, as well as your April 3rd email, misrepresents the parties discussions regarding Ft. Dodge and Boehringer Ingelheim. As Frank Smith explained in his April 6 letter to you, Merial did not represent that it was "likely" Merial would call representatives of either Ft. Dodge or Boehringer Ingelheim to testify at the trial of this matter. While Merial certainly did not rule out the possibility that Merial would call representatives of either Boehringer Ingelheim or Ft. Dodge at trial, Merial said that at this point in time it was impossible for Merial (or anyone) to predict with any degree of certainty who would be called at trial. That said, Intervet has known for many months (more likely years) of the licensing relationship between Merial and Ft. Dodge and Boehringer Ingelheim. Thus, a specific disclosure in a Supplemental Rule 26 filing of the fact that representatives of Ft. Dodge or Boehringer Ingelheim might have knowledge relevant to '601 patent could hardly come as a surprise to Intervet and could not possibly be prejudicial to Intervet. Indeed, Intervet served a subpoena for documents on Boehringer Ingelheim quite some time ago. If Intervet wishes to pursue discovery from either Boehringer Ingelheim (beyond the document subpoena it has already served on Boehringer Ingelheim) or Ft. Dodge, Intervet is free to do so, within the constraints imposed by the Court's Orders and the Federal and Local Rules.

Likewise, your email below falsely alleges that Merial stated that it will not assist in obtaining the voluntary appearance of these these third party "individuals" to testify for deposition in this matter. Rather, Merial stated that at this time, it did not have any particular individuals in mind, and that Merial did not have the ability to compel any representatives of these third parties to appear for deposition. Merial said, however, that if Intervet wished to pursue any depositions of these third parties subject to the constraints imposed by the by the Court's Orders and the Federal and Local Rules that Merial could see if any of the third parties would voluntarily make representatives available for deposition.

4) <u>Woodyard, Parrish and Janney</u> - In Merial's March 28, 2008, supplemental Rule 26 disclosures, Merial specifically listed the three Merial employees who were identified in Frank Milward's deposition as the persons who performed the specific tests of Intervet's products. Although Merial stated that it could not assure Intervet these individuals would not be called to testify at trial, Merial stated that at present, it did not believe that it was likely that it would call any of these persons at trial. Merial also noted that Intervet deposed Frank Milward, in his capacity as a 30(b)(6) witness on the tests performed by these persons, and that any depositions of these persons would likely be duplicative of Dr. Milward's. Merial stated that if Intervet wished to proceed with the depositions of any of these persons that Intervet should let Merial know, and that Merial will consider Intervet's request in light of the the deposition limits imposed by the Court's Orders and the Federal and Local Rules and any other depositions that Intervet insists on pursuing.

5) <u>Intervet's Request for Additional Deposition Time with Dr. Milward</u> - Merial stated that it is not inclined to produce Dr. Milward again for deposition. Intervet was provided with more than seven hours of questioning time with Dr. Milward, which Merial believes was more than sufficient to cover the topics for which Dr. Milward was designated. As the deposition transcript makes clear, Intervet wasted, perhaps deliberately, much of its deposition time with Dr. Milward on irrelevant questions. Accordingly, for these reasons and in light of Intervet's continued refusal to make Dr. Richard Hesse available for additional questioning—even though Dr. Hesse is identified by Intervet in its Initial Disclosures and Interrogatory Responses as the only U.S.-based person knowledgeable about the majority of topics related to the accused Intervet products— and Intervet's continued refusal to make Dr. Christa Drexler, one of Intervet's project leaders for the accused product, available for deposition at all, Merial is not inclined to make Dr. Milward available again for deposition. On our call, Mr. James of your firm indicated that he would go back to Intervet to see if they would be willing to make Dr. Hesse and Dr. Drexler available for deposition in exchange for additional time with Dr. Milward, but he indicated on the phone that

he believed the issues was a "non-starter."

6) <u>15 Deposition Limit</u> - Although Intervet has yet to reach the 15 deposition limit, Merial indicated that it would likely oppose any request by Intervet to exceed the 15 deposition limit.

We believe that the above accurately summarizes the parties' positions. If you disagree, please let us know.

Regards,

**J. Patrick Elsevier, Ph.D., Esq.**
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Phone: (404) 881-7683
Fax: (404) 253-8285
patrick.elsevier@alston.com
http://www.alston.com

---

**From:** Waks, Yariv [mailto:YWaks@kenyon.com]
**Sent:** Monday, April 07, 2008 6:26 PM
**To:** Smith, Frank; Elsevier, Patrick
**Cc:** Loughnane, Michael; James, William
**Subject:** Intervet v. Merial

Frank and Patrick,

We write to summarize last week's meet and confer regarding discovery issues. Here are the positions of the parties:

**Fact discovery extension**

Both parties agreed that an extension to the fact discovery deadline was in order, and a joint motion was filed earlier today.

**Merial's responses to Intervet's discovery issues**

1) In Merial's March 28, 2008, supplemental Rule 26 disclosures, Merial identified representatives from Wyeth, Ft. Dodge and Boehringer Ingelheim as potential witnesses for Merial at trial. Merial stated that they will not, however, assist in obtaining the voluntary appearance of these third party individuals who will testify for deposition in this matter.
2) In Merial's March 28, 2008, supplemental Rule 26 disclosures, Merial identified three additional Merial employees -- Woodyard, Parrish and Janney -- as potential witnesses. Merial would not assure Intervet these individuals would not be called to testify at trial or that their test work would not otherwise be relied upon.
3) Merial will oppose any request by Intervet to depose more than the 15 allotted depositions in order to depose the individuals that Merial added to its March 28 supplemental Rule 26 disclosures.
4) Merial will not be providing Dr. Milward for any additional time on the 30(b)(6) topics for which he had been designated, unless Intervet provides Ms. Drexler for a deposition and Dr. Hesse for additional deposition time.
5) Merial will provide Mr. Kowalski for an additional 3.5 hours of deposition time to testify on Intervet 30(b)(6) topics 2, 7 and 38.
6) Merial will not be designating a witness with respect to Intervet's March 5 30(b)(6) notice. Instead, Merial has chosen to respond to interrogatories that it has characterized as encompassing the 30(b)(6) topics. Intervet disagrees with Merial's unilateral action.

**Intervet's responses to Merial's discovery issues**

1) Intervet expressed its belief that Merial's February 11 supplemental 30(b)(6) notice is unduly burdensome, and noted that Merial is demanding a witness on these topics while at the same time refusing to designate a witness with respect to Intervet's March 5 supplemental 30(b)(6) notice. Nevertheless, we are working with our client to see whether the company has any knowledge relevant to the documents identified in Merial's 30(b)(6) topic.

2) Intervet will be responding shortly to Ms. Jacob's 3/25 letter.
3) Intervet is working to provide dates for the depositions of Mr. Layfield and Ms. Smarte. Intervet understands that Merial wants any documents Intervet produces in response to Ms. Jacob's 3/25 letter prior to these depositions.

Best regards,

Reeve

**Yariv Waks**
**Kenyon & Kenyon LLP**
1500 K Street, NW | Washington, DC 20005-1257
202.220.4322 Phone | 202.220.4201 Fax
ywaks@kenyon.com | www.kenyon.com

This message, including any attachments, may contain confidential, attorney-client privileged, attorney work product, or business confidential information, and is only for the use of the intended recipient(s). Any review, use or distribution by others is prohibited. If you are not the intended recipient, please contact the sender and delete all copies.


***********************************************************
IRS Circular 230 disclosure:  To ensure compliance with requirements imposed by the
IRS and other taxing authorities, we inform you that any tax advice contained in
this communication (including any attachments) is not intended or written to be
used, and cannot be used, for the purpose of (i) avoiding penalties that may be
imposed on any taxpayer or (ii) promoting, marketing or recommending to another
party any transaction or matter addressed herein.


NOTICE:  This e-mail message and all attachments transmitted with it
may contain legally privileged and confidential information intended
solely for the use of the addressee.  If the reader of this message is not
the intended recipient, you are hereby notified that any reading,
dissemination, distribution, copying, or other use of this message or its
attachments is strictly prohibited.  If you have received this message in
error, please notify the sender immediately by telephone
(404-881-7000) or by electronic mail (postmaster@alston.com), and
delete this message and all copies and backups thereof.  Thank you.