UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET, INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED and <br> MERIAL SAS. <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK-JMF) |

## DECLARATION OF JAMIE L. GREENE, ESQ.

Pursuant to 28 U.S.C. §1746, I, Jamie L. Greene, Esq., hereby declare as follows:

1. My name is Jamie L. Greene, and I have been practicing law for more than 22 years with an emphasis on patent law in the areas of biotechnology, diagnostics, isolation and purification methodology, pharmacology, and immunology.

2. I received my Juris Doctor degree from Emory University School of Law in 1985.

3. I received a Bachelor of Science degree in Molecular Biology from Wellesley College in 1979 and a Master of Science degree from Emory University in Immunology and Molecular Pathogenesis in 1995.

4. I was admitted to practice law in the state of Georgia in 1985 and admitted to practice before the United States Patent & Trademark Office in 1986.

5. I have been asked to review U.S. Patent No. 6,368,601 and address whether Dr. Barbara Daft is an inventor of the claimed subject matter.

6. For the reasons discussed in detail below, Dr. Daft is not an inventor of any of the claims of U.S. Patent No. 6,368,601.

7. This declaration is limited specifically to the issue of whether Dr. Daft is an inventor of the claimed subject matter in U.S. Patent No. 6,368,601. I have not analyzed the accuracy of the inventorship as listed on the face of the patent, and this declaration does not reach a conclusion on that issue.

8. My declaration is based upon the state of the law with respect to patent inventorship, which also was the law at the time of filing of the application which issued as U.S. Patent No. 6,368,601. My declaration also is based upon my review of U.S. Patent No. 6,368,601 and the documents listed in the Exhibit to this declaration.

9. The relevant facts that I am aware of are as follows:

9.1 Porcine circovirus (PCV) originally was detected in a pig kidney cell line PK/15 as a non-pathogenic contaminant (Tischer, 1982, *Nature* 295:64-66). PCV is a small non-enveloped virus which contains a circular single-stranded genome of 1.76 to 2.31 kb. The sequence of the originally isolated non-pathogenic PCV was sequenced in 1997 and has been designated PCV type I or PCV-1 (Meehan *et al.*, *J. Gen. Vir.* 78:221-27). A second type of porcine circovirus, designated PCV type II or PCV-2, was found to be associated with postweaning multisystemic wasting syndrome and is the subject of U.S. Patent No. 6,368,601.

9.2. Postweaning multisystemic wasting syndrome (PMWS) is a disease of young pigs that was first seen in the early to mid 1990s, with typical clinical signs including progressive loss of weight, dyspnea, tachypnea; occasionally icterus; and, in rare cases, jaundice. Postmortem examinations revealed a wide range of lesions, the most common include interstitial pneumonia, lymphadenopathy, and occasionally nephritis and hepatitis. *See, e.g.*, MER0028518.

9.3 In an email dated June 29, 2005, Dr. Ted Clark (a scientist at the University of Saskatchewan) stated that he was aware of the existence of circoviruses in tissues of pigs with PMWS, and he questioned whether they might be causing the lesions. *See* MER0007884.

9.4    Dr. Barbara Daft (a scientist at the University of California - Davis) attempted to correspond with Dr. Clark on December 1, 1995, noting that she also had seen several pigs with similar symptoms and that she observed "lymphadenopathy with syncytial cells with numerous intracytoplasmic inclusions that contained crystalline arrays suggestive of circovirus." MER0000688; *see also* MER0000228. The message from Dr. Daft was returned to her as being undeliverable, and therefore, she printed and mailed the message to Dr. Clark. *See* MER0000688.

9.5    Although Dr. Clark testified in his deposition that Dr. Daft was the first person to connect porcine circovirus with PMWS (*See* Transcript at pages 85, 94-96), it appears that, in fact, Dr. Clark previously had observed the presence of circovirus in diseased pigs, as indicated by his June 29, 2005 email discussed above.

9.6    On November 8, 1996, Dr. Daft forwarded to Dr. Clark tissue blocks from a "circovirus pig." MER0000459. Dr. Clark received the tissue sample blocks from Dr. Daft and forwarded them to Dr. McNeilly for further analysis. *See* MER0000319; MER0000459.

9.7    Dr. Daft made no further contribution to this project, *i.e.*, to the isolation of the new PCV-2 virus or to the determination of its structure, name, or chemical or physical properties.

10.   The state of the law with respect to patent inventorship is as follows:

10.1    Patent claims define the scope of the invention, and therefore, an inventorship analysis must start with a construction of each claim. *See Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002). Then the alleged contributions of each asserted inventor must be compared to each of the construed claims to determine proper inventorship. *Id.; Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).

10.2    "Conception is the touchstone to determining inventorship." *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).

10.3     Joint inventorship may be found even where the inventors (1) "did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." 35 U.S.C. § 116.

10.4     In the case of persons working jointly to solve a common problem, "different people may contribute in different ways and at different times toward a common conception." *Rhone-Poulenc Agro, S.A. v. Monsanto Co.*, 445 F. Supp. 2d 531, 546 (M.D.N.C. 2006). However, each inventor must contribute in some significant manner to the conception of the invention. *Fina*, 123 F.3d at 1473; *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996).

10.5     A co-inventor need not make a contribution to every claim of a patent. *Ethicon, Inc. v. United States Surgical Corp*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). Nor must each co-inventor conceive of the entire invention defined in a claim. *See Fina*, 123 F.3d at 1473-1474. Instead, each joint inventor need only make a contribution to a portion of the claim which is not insignificant when measured against the whole. *Id.*; *Ethicon*, 135 F.3d at 1460 (stating that each inventor "needs to perform only a part of the task which produces the invention").

10.6     Conception is "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Burroughs Wellcome Co. v. Barr Labs.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994), *citing Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986).

10.7     "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Pro-Mold and Tool Co. v. Great Lakes Plastic, Inc.*, 75 F.3d 1568, 1575 (Fed. Cir. 1996).

10.8     Each inventor must contribute in some significant manner to the conception of the invention. *Fina*, 123 F.3d at 1473;

*Pro-Mold & Tool Co.*, 75 F.3d at 1575. A person that makes a contribution that helps an inventor, but does not involve an inventive act itself is not sufficient to make the person an inventor. *See Sewall v. Walters*, 21 F.3d 411, 416 (Fed. Cir. 1994).

10.9     The Federal Circuit has not yet rendered an opinion as to whether an isolated virus or the sequence of its viral genome would be governed by the doctrine of simultaneous conception and reduction to practice. However, the District Court for the Northern District of California and the District Court for the Southern District of California both have addressed this issue with respect to the feline immunodeficiency virus. *Brown v. Regents of the Univ. of California*, 866 F. Supp. 439 (N.D. Cal. 1994); *Regents of the Univ. of California v. Synbiotics Corp.*, 849 F. Supp. 740 (S.D. Cal. 1994).

10.10    Both California courts held that the doctrine of simultaneous conception and reduction to practice applied and that conception did not occur until the virus was isolated. *Brown*, 849 F. Supp. at 444; *Regents*, 866 F. Supp. at 742.

10.11    In those cases, the plaintiff, Marlo Brown, had observed that her cats were having AIDS-like symptoms and found that the cats had tested negative for other feline diseases. *Regents*, 866 F. Supp. at 742. Ms. Brown brought her cats to UC Davis and told them that she thought her cats may be infected with a virus similar to the human AIDS virus. *Id.*

10.12    Brown made no contribution to the isolation of the virus or to the determination of its structure, name, or chemical or physical properties. *Id.*; *Brown*, 849 F. Supp. at 445. Therefore, the courts granted summary judgment on the issue that Ms. Brown was not an inventor. *Id.*

10.13    In addition, the Federal Circuit recently held that an inventor is not required to disclose what inspired his invention, "only material that a reasonable Examiner would have considered important" and only if the material is not cumulative to other disclosed material. *Taltech Ltd. v. Esquel Apparel, Inc.*, 2007-1506, slip. op. at *5 (May 23, 2008).

11. The patent at issue in this case, U.S. Patent No. 6,368,601, was filed May 21, 1998, issued April 9, 2002, and claims priority to three French applications: FR 9712382 filed October 3, 1997, FR 9800873 filed January 22, 1998, and FR 9803707 filed March 20, 1998. U.S. Patent No. 6,368,601 is assigned on its face to Merial, The Queen's University of Belfast, and the University of Saskatchewan. The inventors of U.S. Patent No. 6,368,601 are listed as Gordon Allan, Brian Meehan, Edward Clark, John Ellis, Deborah Haines, Lori Hassard, John Harding, Catherine Elisabeth Charreyre, and Gilles Emile Chappuis. (I understand that subsequent to the issuance of U.S. Patent No. 6,368,601, it was assigned to Merial Limited and Merial SAS, such that U.S. Patent No. 6,368,601 is now owned by Merial Limited and Merial SAS.)

12. U.S. Patent No. 6,368,601 contains four independent claims and thirty-five total claims.

13. The claims of U.S. Patent No. 6,368,601 are generally directed to isolated DNA molecules comprising: the genomes of four different PCV-2 isolates, open reading frames of PCV-2, or a nucleotide sequence encoding an epitope which is specific to PCV-2 and not specific to PCV-1; vectors comprising the isolated DNA molecules; and immunogenic compositions comprising the isolated DNA molecules or vectors comprising the same.

14. It is my opinion that Dr. Daft made no contribution to the isolation of the new PCV-2 virus or to the determination of its structure, name, or chemical or physical properties.

15. Directly on point are cases from the District Court for the Northern District of California and the District Court for the Southern District of California, namely *Brown v. Regents of the Univ. of California*, 866 F. Supp. 439 (N.D. Cal. 1994) and *Regents of the Univ. of California v. Synbiotics Corp.*, 849 F. Supp. 740 (S.D. Cal. 1994), both of which have addressed the issue of inventorship with respect to an isolated virus.

16. Both California courts held that the doctrine of simultaneous conception and reduction to practice applied and that conception did not occur until the virus was isolated. In those cases, as mentioned above, Marlo Brown had observed that her cats were having AIDS-like symptoms and brought them to UC Davis suggesting that the cats might have been infected with a virus similar to the human AIDS virus. Because Brown made no contribution to the

-6-

isolation of the virus or to the determination of its structure, name, or chemical or physical properties, the courts granted summary judgment on the issue that Ms. Brown was not an inventor. *Id.*

17. Here, Dr. Daft has contributed no more than Ms. Brown did in the *Brown* and *Regents* cases cited above. At best, Dr. Daft made the suggestion that a circovirus was involved in PMWS and provided tissue samples that harbored the circovirus. She did not suggest, however, that the circovirus was a new type of circovirus.

18. In addition, Dr. Daft made no contribution to the isolation of the virus or to the determination of its structure, name, or chemical or physical properties.

19. Accordingly, while Dr. Daft may be entitled to authorship on literature publications of the work (as is discussed between Dr. Daft and the inventors in the produced documents reviewed), it is my opinion that she is not an inventor of any of the inventions claimed in U.S. Patent No. 6,368,601.

20. It is my understanding that assertions have been made that Dr. Daft's suggestion was the motivation for Dr. Clark's interest in looking at the potential of PCV in correlation with PMWS. Based on Dr. Clark's June 29, 1995 email (MER0007884), however, it appears that Dr. Clark may have been the first to associate the presence of PCV with PMWS.

21. Even if Dr. Daft did provide the motivation for the inventors to pursue the possibility of PCV being the pathogenic agent, that is not enough to render her an inventor of the inventions claimed in U.S. Patent No. 6,368,601.

22. Moreover, the Federal Circuit has held that an inventor is not required to disclose what inspired his invention, but rather only material that a reasonable examiner would have considered important, and only if the material is not cumulative to other disclosed material. *Taltech Ltd. v. Esquel Apparel, Inc.*, 2007-1506, slip. op. at *5 (May 23, 2008). Here, the inventors disclosed Dr. Daft's abstract, which was presented at the 39th Annual meeting of the AAVLD (Exhibit PX-11) during the prosecution of U.S. Patent No. 6,368,601. That abstract discloses that Dr. Daft observed the presence of porcine circovirus in the tissue samples of her diseased pigs.

23. Based on the reasons I have set forth above, Dr. Barbara Daft is not an inventor of any of the claims of U.S. Patent No. 6,368,601.

24. This declaration is based solely on a review of the documents that were provided to me that are listed in the Appendix to this letter. Accordingly, further analysis would become necessary should additional facts be presented.

25. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 9TH day of June 2008.

_____
Jamie L. Greene, Esq.

# APPENDIX

<u>Materials Reviewed and Relied Upon in Current Inventorship Analysis:</u>

U.S. Patent No. 6,368,601

Intervet's REDACTED Fourth Supplemental Responses and Objections to Merial's First Set of Interrogatories (Nos. 9, 10, and 11)

Documents produced with the following Bates ranges:

    MER0000091
    MER0000226-30
    MER0000281-83
    MER0000319
    MER0000322-27
    MER0000456
    MER0000459
    MER0000461-62
    MER0000530
    MER0000538-43
    MER0000566
    MER0000569-70
    MER0000583
    MER0000688-90
    MER0000775-76
    MER0000777
    MER0000884
    MER0001556
    MER0004648-55
    MER0006352
    MER0006362
    MER0006815-30
    MER0007067-68
    MER0007268
    MER0007271
    MER0007272

    MER0007268
    MER0007504-53
    MER0007883-85
    MER0008041
    MER0012306-07
    MER0020553-58
    MER0021110-18
    MER0028517-33
    MER0079127
    MER0079128

Deposition Transcript of Clark on November 7, 2007, pages 80-101

Daft Abstract from 39th Annual meeting of the AAVLD, marked as Exhibit PX-11

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERVET INC., <br><br> Plaintiff, <br><br> v. <br><br> MERIAL LIMITED and MERIAL SAS, <br><br> Defendants. | Civil Action No. 1:06-cv-00658 (HHK- JMF) |

<b><u>NOTICE REGARDING CERTIFICATE OF SERVICE</u></b>

I hereby certify that on this 9th day of June 2008, I caused copies of the following documents to be served:

- Merial Limited and Merial SAS' Opposition to Intervet's Motion to Vitiate Privilege;

- Declaration of Kristen L. Melton in Support of Merial Limited and Merial SAS' Opposition to Intervet's Motion to Vitiate Privilege and supporting documents;

- Declaration of Lori Hassard and supporting documents;

- Declaration of Jaime L. Greene, Esq.; and

- Notice of Filing Under Seal in Support of Merial Limited and Merial SAS' Opposition to Intervet's Motion to Vitiate Privilege.

The foregoing documents were served via Email and Overnight Courier on the following attorneys of record:

>John R. Hutchins, Esq.
>William G. James, Esq.
>Yariv Waks, Esq.
>Kenyon & Kenyon
>1500 K Street, N.W., Suite 700
>Washington, DC 20005-1257
>Telephone: 202-220-4200
>Fax: 202-220-4201
>
>Richard L. DeLucia, Esq.
>Michael Loughnane, Esq.
>Jerry Canada, Esq.
>Kenyon & Kenyon
>One Broadway
>New York, NY 10004
>Tel: 212-425-7200
>Fax: 212-425-5288

Counsel of Plaintiff Intervet Inc.

*[signature: Crystal Kelly]*
ALSTON & BIRD, LLP
Crystal B. Kelly
Paralegal
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Fax: 404-881-7777