## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

INTERVET INC.,

    Plaintiff,

    v.

MERIAL LIMITED and MERIAL SAS,

    Defendants.

Civil Action No. 1:06-cv-00658 (HHK-JMF)

## <u>MERIAL LIMITED AND MERIAL SAS' BRIEF IN OPPOSITION TO INTERVET'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. i

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION ........................................................................................ 1

SUMMARY OF ARGUMENT ..................................................................... 2

STATEMENT OF FACTS ............................................................................ 4

    I.   Dr. Daft. ............................................................................................ 6

    II.  VIDO............................................................................................... 6

    III. Dr. Krakowka.................................................................................. 7

ARGUMENT ............................................................................................... 8

    I.   Intervet Unduly Delayed In Seeking to Amend Its Complaint............................. 9

        A.  Intervet was Aware, or Should Have Been Aware, of All of the Facts
            on which it Bases its Claim of Unenforceability Due to Applicants'
            Alleged Failure to Disclose to the Patent Office the International
            Search Report Before Intervet Filed its Original Complaint. ........................ 10

        B.  Intervet was Aware of All of the Facts on which it Bases its Claims of
            Unenforceability and Invalidity Due to the Applicants' Alleged
            Fraudulent Failure to Name Certain Inventors Long Ago. ............................ 10

    II.  Merial Will Be Unduly Prejudiced If Intervet Is Allowed To Amend. ................ 13

    III. Intervet's Bad Faith/Dilatory Motive................................................................. 16

    IV. Intervet's Proposed Amendments Are Futile...................................................... 17

        A.  Intervet's Proposed New Unenforceability Claims Are Futile. ..................... 17

            1.   Intervet's Allegations Regarding Disclosure Of A Search
                Report are Futile. ...................................................................... 18

2.  Intervet's Incorrect Inventorship Claims Are Futile.......................... 20

B.  Intervet's Proposed New Invalidity Claims are Futile.................................. 21

CONCLUSION............................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Andretti v. Borla Performance Industries, Inc.*,
  426 F.3d 824 (6th Cir. 2005) ............................................................................ 8, 9

*Brown v. Regents of Univ. of Cal.*,
  866 F. Supp. 439 (N.D. Cal. 1994) .......................................................................... 21

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
  134 F.3d 1085 (Fed.Cir.1998) ................................................................................. 22

*Cent. Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 648 (2007) ...................... 18

*Eaton Corp. v. Rockwell Int'l Corp.*,
  323 F.3d 1332 (Fed.Cir. 2003) .......................................................................... 3, 22

*Eisai Co. v. Teva Pharms. USA, Inc.*,
  247 F.R.D. 445 (D. N.J. 2007)............................................................................. 1, 19

*El-Hajj v. Fortis Benefits Co.*,
  156 F.Supp.2d 27 (D. Me. 2001) ........................................................................ 8, 9

*Energy Absorption Sys. Inc. v. Roadway Safety Serv. Inc.*,
  28 U.S.P.Q.2d 1717 (N.D. Ill 1993) ......................................................................... 19

*Ethicon, Inc. v. U.S. Surgical Corp.*,
  135 F.3d 1456 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 923 (1998)...................... 20

*Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*,
  350 F.3d 1327 (Fed. Cir. 2003) ............................................................................ 17

*FMC Corp. v. Manitowoc Co.*,
  835 F.2d 1411 (Fed. Cir. 1987) .............................................................. 15, 17, 18

*Foman v. Davis*,
  371 U.S. 178 (1962)........................................................................................... 8

*Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs.*,
  292 F.3d 1363 (Fed. Cir. 2002) ............................................................................ 20

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed.Cir. 1986) ............................................................................ 22

*Inline Connection Corp v. AOL Time Warner Inc.*,
   237 F.R.D. 361 (D. Del. 2006) ........................................................................ passim

*Intex Recreation Corp. v. Team Worldwide Corp.*,
   390 F. Supp.2d 21 (D.D.C. 2005) ............................................................................ 17

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*,
   383 F.3d 1337 (Fed. Cir. 2004) ............................................................................... 12

*Kowal v. MCI* Commc'n *Corp.*,
   16 F.3d 1271 n. 3 (D.C. Cir. 1994) .......................................................................... 18

*McQueen v. Woodstream Corp.*,
   248 F.R.D. 73 (D.D.C. 2008) ................................................................................... 18

*Mercexchange L.L.C. v. Ebay, Inc.*,
   271 F. Supp. 2d 784 (E.D.Va. 2002) ....................................................................... 21

*Optivus Tech. Inc. v. Ion Beam Applications S.A.*,
   No. CV 03-2052, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004), *aff'd*, 469 F. 3d 978 (Fed. Cir.
   2006) .......................................................................................................................... 9

*Optivus Tech. Inc. v. Ion Beam Applications, S.A.*,
   469 F.3d 978 (Fed. Cir. 2006) ................................................................................... 8

*Pannu v. Iolab Corp.*,
   155 F.3d 1344 (Fed. Cir. 1998) ............................................................................... 22

*Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*,
   225 F.3d 1315 (Fed. Cir. 2000) ............................................................................... 20

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006) .................................................................................... 21

*Regents of Univ. of Cal. v. Synbiotics Corp.*,
   849 F. Supp. 740 (S.D. Cal. 1994) .......................................................................... 21

*Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*,
   93 F.R.D. 858 (D. Del. 1982) .................................................................... passim

*TALtech Ltd v. Esquel Apparel, Inc.*,
   No. 2007-1506, 2008 WL 2165996 (Fed. Cir. May 22, 2008) ................................ 21

*Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316 (Fed.Cir.2001) .................................. 22

**Other Authorities**

35 U.S.C. § 102(f)..........................................................................................................passim

**Rules**

FRCP 9(b) .............................................................................................................................. 17

## INTRODUCTION

Intervet waited until the last day of discovery to move to amend its declaratory judgment complaint to add four entirely new factual theories as to why the patent-in-suit, U.S. Patent No. 6,368,601 ("the '601 patent"), is allegedly unenforceable, three of which Intervet also alleges constitute additional bases to invalidate the '601 patent.  Specifically, Intervet seeks to add claims of unenforceability based on the following factual theories (i) the Applicants' alleged fraudulent omission of Dr. Barbara Daft as an inventor of the '601 patent; (ii) the Applicants' alleged fraudulent omission of Dr. Stephen Krakowka as an inventor of the '601 patent; (iii) the Applicants' alleged fraudulent omission of certain unnamed individuals at the Vaccine and Infectious Disease Organization at the University of Saskatchewan ("VIDO") as inventors of the '601 patent; and (iv) the Applicants' alleged fraudulent failure to disclose to the Patent Office an International Search Report.  In addition, Intervet seeks to add claims of invalidity based on the first three of these new factual theories.

Although, Intervet attempts to lump all of these new factual theories into its previously pled counts for unenforceability and invalidity, in reality, each of these factual theories constitute separate claims.  *See, e.g., Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D. 445, 451 (D. N.J. 2007) (explaining that despite defendant's "artful attempt to blend all four [factual scenarios] into one allegation of alleged inequitable conduct," because each [factual scenario] represents a new and separate instance of inequitable conduct, the court "will treat the amendments as four separate instances of inequitable conduct and evaluate each in turn under the heightened pleading standard of Rule 9(b)"); *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 370 (D. Del. 2006)  (denying leave to amend where defendants falsely stated that they were

"supplementing" previously pled claims of inequitable conduct when they were actually seeking to "add three new distinct factual inequitable conduct theories").

## SUMMARY OF ARGUMENT

Intervet's Motion for Leave to File an Amended Complaint ("Motion to Amend") should be taken for what it is: the last ditch effort of a desperate infringer to add unsupported claims in an attempt to further complicate and delay the resolution of this case.  Intervet vaguely asserts in its brief that its delay in seeking leave to amend its pleadings is justified because allegedly certain unspecified "facts and circumstances surrounding issues of inventorship became apparent during the course of fact discovery, in particular, during the depositions of the inventors and, most recently, during the March 2008 deposition of … Mr. Kowalski" (Intervet Brief at 6).  Intervet points to no particular portion of any inventor's deposition or to the March 2008 deposition of Mr. Kowalski that was not previously known to Intervet.  Further, Intervet fails to explain why it then still took months after the depositions (and in some cases over a year) for Intervet to file its Motion to Amend.

In truth, as explained below, Intervet cannot point to any revelation in any inventors' deposition or in Mr. Kowalski's deposition or explain why it still took Intervet months after Mr. Kowalski's deposition for Intervet to file its motion because Intervet knew all of the facts on which it bases its amended claims early in discovery.  Yet Intervet strategically waited until the close of discovery to seek leave to amend its claims so as to deny Merial the opportunity to take discovery (i) of Intervet necessary to flesh out Intervet's claims and (ii) of third parties, in particular the purported "fraudulently omitted" inventors, to defend against Intervet's claims.

In addition to being untimely, Intervet's claims are factually defective and futile. Tellingly, NONE of the persons that Intervet claims were fraudulently omitted as inventors on

the patent-in-suit have themselves asserted that they should have been named as inventors. Indeed, because these persons likely do not believe themselves to be inventors and, thus, any testimony from them would only demonstrate the insufficiency of Intervet's proposed claims, Intervet did not even seek to obtain testimony from any of the purported inventors during the discovery period.

Furthermore, inventorship is specific as to both individuals and patent claims. With regard to all of Intervet's inventorship assertions, Intervet points to no specific claim in the '601 patent as to which Dr. Daft or Dr. Krakowka should have been named as an inventor. Even worse, as to the purported inventors at VIDO, Intervet notably fails to identify any claim as to which they made an invention and further, it also fails to identify any particular individual. Intervet's inventorship claims are thus fatally defective.

With respect to Intervet's supposedly new claim that the Applicants allegedly fraudulently failed to disclose to the Patent Office an International Search Report, all of the information on which Intervet bases its allegations was publicly available, and therefore, known, or should have been known, to Intervet, *years* before Intervet even filed its original complaint. Intervet also fails to allege with particularity, as is required, (i) which document identified in the International Search Report is prior art that should have been disclosed to the Patent Office or (ii) why that document might have been considered material by the Patent Office. Finally, all of the claims that Intervet seeks to add are based solely "[o]n information and belief," which is not permissible to plead claims of fraud, such as inequitable conduct.[1] And because the discovery period is over, it would be futile to permit Intervet to add these new claims at this time, because

---

[1] Similarly, Intervet's proposed claim of invalidity pursuant to 35 U.S.C. § 102(f) is defective because it fails to allege (i) prior conception of the invention by another, and (ii) communication of that conception to the patentee. *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1344 (Fed. Cir. 2003).

Intervet already has the entire universe of factual discovery to which it is entitled and it failed to provide the necessary factual support for its claims. Intervet's attempt to add these claims at this time can only be an effort to further delay the resolution of this case. Because Intervet's proposed amendments are untimely, and if permitted, would be highly prejudicial to Merial, Intervet's Motion to Amend should be denied.

## STATEMENT OF FACTS

Intervet commenced this action on April 11, 2006, seeking declaratory judgments of noninfringement, invalidity, and unenforceability of the '601 patent". (*See* D.I. 1). Although Intervet's original Complaint included a count for a declaratory judgment of unenforceability, the only factual theory of unenforceability in that count related to Merial's claim of priority to an earlier French patent application. (*See* D.I. 1, ¶¶ 22-29.) Intervet's original Complaint did not include any claim of unenforceability based on the Applicants' failure to disclose prior art to the Patent Office. Nor did Intervet's original Complaint include any claim of unenforceability based on allegedly fraudulent omission of any inventor. (*See id.*) Although Intervet's original Complaint included a count for a Declaratory Judgment of Invalidity, it did not include any specific allegations with respect to invalidity for derivation of inventorship under 35 U.S.C. § 102(f). (*See id.*) .

The agreed upon – and Court ordered – deadline for amending pleadings in this case was September 27, 2006. (D.I. 35, ¶ 3). Intervet did not seek leave to amend its complaint before the deadline (or at any time remotely close to it). Discovery in this case has been ongoing for about two years. Intervet waited until the last day of discovery to file its Motion to Amend. In its proposed Amended Complaint, Intervet seeks to add four new claims of unenforceability based on the following factual theories:

1.    A claim of unenforceability based on the Applicants' alleged failure to disclose to the Patent Office an International Search Report issued in connection with PCT International Publication Number WO 99/018214.  (*See* D.I. 154-2, Ex. A, ¶ 32.)

2.    A claim of unenforceability based on the Applicants' alleged omission of Dr. Barbara Daft as an inventor of the '601 patent with the intent to deceive the Patent Office. (*See* D.I. 154-2, Ex. A, ¶¶ 33-34.)

3.    A claim of unenforceability based on the Applicants' alleged omission of Dr. Stephen Krakowka as an inventor of the '601 patent with the intent to deceive the Patent Office. (*See* D.I. 154-2, Ex. A, ¶¶ 33, 35.)

4.    A claim of unenforceability based on the Applicants' alleged omission of individuals from the Vaccine and Infectious Disease Organization ("VIDO") as inventors of the '601 patent with the intent to deceive the Patent Office. (*See* D.I. 154-2, Ex. A, ¶¶ 33, 35.)

In addition, Intervet seeks to add claims of invalidity based on the last three of these new factual theories.

Intervet deposed the named inventors of the '601 patent on the following dates:  (1) Gordon Allan (April 13, 2007); (2) Francis McNeilly (April 13, 2007); (3) Lori Hassard (April 18, 2007); (4) John Ellis (April 17, 2007); (5) Catherine Charreyre (October 18, 2007); (6) Brian Meehan (October 19, 2007); (7) Edward Clark (November 7, 2007); (8) John Harding (November 8, 2007); (9) Deborah Haines (November 9, 2007).  In addition, Intervet deposed one of the attorneys involved in the prosecution of the '601 patent, Thomas J. Kowalski, Esq., on March 26, 2008.[2]  Significantly, it was Intervet that chose to wait until March 26, 2008 to first depose Mr. Kowalski.  Merial initially offered to make Mr. Kowalski available for deposition on October 9, 2007, but Intervet declined to take his deposition on that date. (Ngau Decl. Exh. 5).  Later, Merial offered additional dates for Mr. Kowalski's deposition in November 2007 and in

---

[2] Mr. Kowalski was then deposed again on May 21, 2008, but that is irrelevant to the untimeliness of Intervet's motion because Mr. Kowalski's May 21, 2008 deposition was exclusively as a Rule 30(b)(6) on topics that were unrelated to prosecution of the '601 patent.

January and February 2008, but Intervet declined those dates as well.  (Ngau Decl. Exhs. 6-8).

Thus, to the extent Intervet failed to assert its specious new claims earlier, the delay is solely

attributable to Intervet.

## I.     Dr. Daft.

The specific facts relating to the inventors' invention of the '601 patent, and the lack of

any inventive contribution by Dr. Daft, are set forth in detail in the Factual Background section

of Merial Limited and Merial SAS' Brief in Opposition to Intervet's Motion to Vitiate Privilege,

which is being filed concurrently herewith.  Accordingly, Merial will not restate those facts here,

but rather incorporates them by reference.

## II.     VIDO.

Intervet alleges that the inventors of the '601 patent obtained a pig tissue sample from

VIDO and then purposely withheld disclosure of a virus allegedly isolated from that sample.

(*See* Proposed Amended Complaint, Nodes Decl. Exh. A at ¶36).  These assertions are incorrect

and baseless.  Although VIDO did forward a tissue sample to certain members of the inventive

group, that tissue was provided to VIDO in the first instance by other members of the inventive

group.  VIDO obtained the tissue sample that it sent to the inventors in Belfast from Dr. Ted

Clark, a named inventor of the '601 patent.  (Ngau Decl. Exh. 3 at 28:7-15; 35:4-36:14; 39:1-25).

Thus, VIDO's sole involvement amounted to nothing more than passing along tissue that

originated with one of the inventors of the '601 patent to other inventors of the '601 patent. (*id*.).

Acting as a conduit for pig tissue does not make VIDO personnel co-inventors.

To the extent that any virus was isolated from such tissue, that work was done by the

inventors, not VIDO.  (Ngau Decl. Exh. 3 at 34:6-19; 187:12-188:20).  VIDO did not make an

inventive contribution to the invention claimed in the '601 patent, and Intervet certainly fails to identify one. (*See, e.g., id.* at 187:18-188:20).

Intervet also tries to paint VIDO as an opposition group to the inventors of the '601 patent.  What Intervet fails to inform the Court is that VIDO was, and still is, a part of the University of Saskatchewan ("USASK"), and that all legal rights to any VIDO intellectual property rested with USASK and hence with the assignee of the inventive group.  (*See, e.g.*, Ngau Decl. Exh. 1 at 143:16-17, 249:11-20; Exh. 2 at 72:2-6; Exh. 3 at 24:24-25:7; Exh. 19).

### III.  <u>Dr. Krakowka.</u>

Intervet also asserts that Merial inequitably concealed from the Patent Office contributions that Dr. Steve Krakowka, a researcher at Ohio State University, allegedly made to the inventions claimed in the '601 patent.  (Intervet Brief at 3).  The only alleged contribution of Dr. Krakowka specified in Intervet's proposed Amended Complaint, however, is that "[h]e worked with the inventors of the '601 patent to test Dr. Daft's theory connecting porcine circovirus and PMWS."  (Proposed Amended Complaint, Nodes Decl. Exh. A at ¶ 21).  Intervet does not identify any invention, as set forth in the claims of the '601 patent, to which Dr. Krakowka allegedly contributed, and as explained in Merial's Opposition to Intervet's Motion to Vitiate, any theory regarding the association between porcine circovirus and PMWS originated with Lori Hassard, one of the named inventors of the '601 patent.

Although, the inventors did testify that they worked with Dr. Krakowka on PCV-2 related projects, these projects were not the subject matter of the '601 patent.  (Ngau Decl. Exh. 3 at 12:17-13:11).  Rather, Dr. Krakowka's work came later and was described and claimed in subsequent Merial patents, such as U.S. Patent Nos. 6,217,883, 6,517,843, 6,953,581, 7,211,379, all of which properly include Dr. Krakowka as a named inventor.  (Ngau Decl. Exh. 20).  Dr.

Krakowka, like Dr. Daft and persons at VIDO, however, was not included as an inventor on the '601 patent because he did not make a contribution to the inventions claimed in that patent.

## ARGUMENT

Justice requires that Intervet's Motion to Amend be denied.  Although Federal Rule of Civil Procedure 15(a)(2) allows courts to grant parties leave to amend pleadings "freely" when "justice so requires," this liberal standard does not apply when the deadline for amending pleadings set by a scheduling order in the case has passed.  *See, e.g. Optivus Tech. Inc. v. Ion Beam Applications, S.A.*, 469 F.3d 978 (Fed. Cir. 2006); *Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 835 (6th Cir. 2005); *El-Hajj v. Fortis Benefits Co.*, 156 F.Supp.2d 27, 34 (D. Me. 2001).  When the deadline for amending has passed, the movant must comply with Fed. R. Civ. P. 16 and show "good cause" as to why it did not move to amend earlier.  *Andretti,* 426 F.3d at 835.; *see also Optivus Tech.*, 469 F.3d at 993  (stating "after a scheduling order has been entered, a party 'must show good cause for not having amended [its complaint] before the time specified in the scheduling order expired.").  In addition, the Supreme Court has instructed that leave to amend need not be given in the presence of "any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of the amendment, etc."  *See Foman v. Davis,* 371 U.S. 178, 182 (1962).  An amendment should be denied when the amendment is grounded on "bad faith or dilatory motives, or truly undue or unexplained delay."  *Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp.*, 93 F.R.D. 858, 865 (D.Del. 1982);  *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361, 369 (D. Del. 2006) .  Intervet has failed to show good cause for waiting to amend its pleadings.

I.    **Intervet Unduly Delayed In Seeking to Amend Its Complaint.**

A party should not be permitted leave to amend its pleadings to add new claims where there is an unexplained, undue delay in seeking leave to do so.  *See Rose Hall, Ltd.*, 93 F.R.D. 858.  Here, Intervet waited until the last day of the "fact" discovery period to seek to add its new claims, almost two years after the Court's deadline for filing amended pleadings (D.I. 35, ¶ 3).[3] Because the Court's deadline for amending pleadings has passed, the liberal policy regarding amendment of pleadings does not apply.  *See Optivus Tech. Inc. v. Ion Beam Applications S.A.*, No. CV 03-2052, 2004 WL 5543277 (C.D. Cal. Dec. 29, 2004) (stating that "[w]here a case management scheduling order sets a deadline for amending pleadings and the deadline has passed, the liberal policy regarding amendment of pleadings no longer applies.") *aff'd*, 469 F. 3d 978 (Fed. Cir. 2006); *see also Andretti,* 426 F.3d at 835; *El-Hajj*, 156 F. Supp. 2d at 34.   Intervet has failed to show good cause for its undue delay in this seeking to amend.

Intervet's delay is particularly undue given that it was long ago aware of all of the "facts" on which it purportedly bases its new proposed claims.  *See Inline Connection Corp*, 237 F.R.D. at 367 (denying motion to amend upon finding that defendants did not need recently produced discovery to plead new inequitable conduct theories).  Intervet provides no legitimate excuse for its long delay in filing its motion to amend, and this alone is justification for denying its motion. *See Rose Hall, Ltd.*, 93 F.R.D. at 865 (finding that amendment of pleadings should be denied without a showing of prejudice to the non-movant when "amendment is grounded on 'bad faith

---

[3] Although Counsel for Intervet initially approached counsel for Merial regarding the issue of potentially amending the complaint on or around May 12, 2008, they delayed providing details regarding the proposed amendment and did not provide Merial with the proposed amended complaint until May 20, 2008, three days before they filed their Motion to Amend. (*See* Ngau Decl. Exhs. 16 and 17).

or dilatory motives, truly undue or unexplained delay…'"). Undue delay which is not satisfactorily explained is the equivalent to bad faith. (*Id.*)

A. **Intervet was Aware, or Should Have Been Aware, of All of the Facts on which it Bases its Claim of Unenforceability Due to Applicants' Alleged Failure to Disclose to the Patent Office the International Search Report Before Intervet Filed its Original Complaint.**

Intervet does not even attempt to explain why it waited until the close of fact discovery to attempt to add its claim of unenforceability based on the Applicants' alleged failure to disclose to the Patent Office an International Search Report issued in connection with PCT International Publication Number WO 99/018214. All of the facts on which Intervet bases this claim were publicly available at least as early as April 15, 1999, the date the PCT International Publication Number WO 99/018214 was published, or approximately seven years before Intervet filed its original complaint in this action. Intervet did not learn any facts in discovery, nor does it claim to, that relate to this new claim of unenforceability. Therefore, Intervet had no legitimate reason to wait until the close of discovery to seek leave to add this new claim.

B. **Intervet was Aware of All of the Facts on which it Bases its Claims of Unenforceability and Invalidity Due to the Applicants' Alleged Fraudulent Failure to Name Certain Inventors Long Ago.**

Intervet provides no legitimate excuse for waiting until the last day of the discovery period to seek leave to add its claims of unenforceability and invalidity due to the Applicants' alleged fraudulent failure to name certain individuals as inventors. In an attempt to justify its delay, Intervet vaguely asserts that certain unspecified "facts and circumstances surrounding issues of inventorship became apparent during the course of fact discovery, in particular, during the depositions of the inventors and, most recently, during the March 2008 deposition of … Mr. Kowalski." (Intervet Brief at 6). Intervet does not, however, specify to *which* facts and

circumstances it is referring nor does it identify *when* it allegedly learned such facts. Moreover, Intervet does not assert that any of these "facts and circumstances" that allegedly "became apparent" (recently or otherwise) were necessary to Intervet's proposed amendments to its complaint. In fact, nowhere in its brief does Intervet actually cite to any specific piece of information that it learned recently in discovery which it claims was a necessary pre-requisite for its proposed amendments.

Although Intervet's recent supplemental interrogatory responses, which it attaches as exhibits to its brief, do cite documents that Intervet contends support its claims, all of the documents were provided to Intervet early in discovery. Indeed, the vast majority of the cited documents were produced in 2006, and all but four of the cited documents were produced by the spring of 2007, over a year before the close of discovery.[4] (Exhibit D at 49-51 to Declaration of Nodes; Ngau Decl. Exhs. 9-14).

Intervet's recent supplemental interrogatory responses generally refer to deposition testimony of the named inventors, but do not specify the particular testimony on which it purports to rely. Further, Intervet has failed to inform the Court that all of the purported facts on which Intervet bases its claims were disclosed to Intervet at least as early as the depositions of certain inventors that Intervet took in April of 2007. For example, on April 13, 2007, Intervet deposed Dr. Gordon Allan, one of the named inventors, regarding Dr. Daft's and VIDO's purported contributions to the '601 patent. (Ngau Decl. Exh. 1 at 109, 142-144, 204-206, 216-221, 229-231, 233-234, 239-242, 256-257). Similarly, on April 17, 2007, Intervet deposed Dr. John Ellis, another of the named inventors, regarding Dr. Krakowka's and VIDO's alleged

---

[4] One of the cited documents was produced on August 1, 2007, and the remaining three were produced on November 15, 2007. Thus, Intervet was in possession of *all* of the documents on which it relies over six months before it filed its Motion to Amend.

contributions to the '601 patent. (Ngau Decl. Exh. 2 at 68-74, 83-86, 243-246). Intervet

questioned Drs. Allan and Ellis using many of the same documents to which it cites in its recent

supplemental interrogatory responses regarding Dr. Daft's, Dr. Krakowka's and VIDO's

supposed contributions to the '601 patent.[5] Accordingly, Intervet was aware of the alleged facts

on which it bases its claims of improper inventorship well over a year ago. Accordingly, to the

extent Intervet learned anything in these depositions to support its proposed Amended

Complaint, Intervet delayed over thirteen months in seeking leave to amend.

The only other deposition cited in Intervet's brief is the deposition of one of the attorneys

involved in the prosecution of the '601 patent, Thomas J. Kowalski, Esq. His deposition took

place on March 26, 2008.[6] However, Intervet cites to no information that it allegedly learned in

Mr. Kowalski's deposition to justify its new claims. Indeed, Intervet did not learn anything in

the deposition of Mr. Kowalski that would support its claims. As would be expected, Mr.

Kowalski was not allowed to answer many of Intervet's questions because the questions called

for information protected by the attorney-client privilege. (*See* D.I. 153 at 17). That Mr.

Kowalski, not surprisingly, was directed not to answer such questions on the basis of privilege

does not provide any basis for Intervet's new claims. *See Knorr-Bremse Systeme Fuer*

*Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344-45 (Fed. Cir. 2004) (affirming that no

adverse inference can be drawn from a claim of the attorney-client privilege and overruling

precedent that created an exception to this rule for certain circumstances in patent cases).

---

[5] *See, e.g.,* Ngau Decl. Exh. 1 at 137, 206, 217, 219, 222, 238, 240, 244, 246, 247, and 250; *see also* Exh. 2 at 279, 285, 287, 296, 301, and 307).

[6] As stated above, Merial offered to make Mr. Kowalski available for deposition on several dates beginning October 9, 2007, but Intervet declined to take Mr. Kowalski's deposition on those dates, and instead waited until March 2008 to take his deposition.

Accordingly, because Intervet was aware long ago of all of the facts on which it bases its claims of unenforceability due to the Applicants' alleged fraudulent failure to name certain purported inventors, and unduly delayed, without legitimate justification, until the close of discovery to seek leave to add these claims, its Motion to Amend should be denied.

## II.    __Merial Will Be Unduly Prejudiced If Intervet Is Allowed To Amend.__

Although it is not necessary for Merial to demonstrate that it will be prejudiced in order for this Court to deny Intervet's Motion, the prejudice to Merial should Intervet be allowed to amend its complaint at this time is both readily apparent and real.  *See Rose Hall, Ltd.*, 93 F.R.D. at 865 (stating that "an amendment should be denied, without requiring [non-movant] to demonstrate prejudice, when the amendment is grounded on 'bad faith or dilatory motives, truly undue or unexplained delay…'").  "A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the preparation to defend against new facts or theories."  *Inline*, 237 F.R.D. at 370.  All of these factors, and more, are present in this case.  Thus, Merial would be unduly prejudiced, and the resolution of this case would be further delayed, if Intervet's Motion to Amend were granted.

By waiting until the close of discovery to seek leave to amend, Intervet has denied Merial the opportunity to obtain discovery to defend against Intervet's new claims.  Intervet's claim that it is merely supplementing the factual bases for its original claims of invalidity and inequitable conduct that were pled at the beginning of this case is blatantly false (*see* Intervet Brief at 4).  The only claim of unenforceability in Intervet's original Complaint related to an alleged false claim of priority to an earlier filed French patent application.  Each of the new proposed amendments regarding unenforceability in Intervet's proposed Amended Complaint are distinct claims based on separate factual theories.  Likewise, although Intervet's original Complaint cited

to a string of statutes on which it based its claim of invalidity, there was no specific reference or factual allegations to invalidity based on derivation of inventorship under section 102(f), which Intervet seeks to add through its proposed Amended Complaint.  The discovery that Merial would need to take to defend against these new claims is entirely different from the discovery that was necessary to defend against the claims in Intervet's original Complaint.  Fact discovery, however, is now closed. [7]  Even if Merial were able to take additional fact discovery on these new claims, the added delay and cost to do so would be unduly prejudicial to Merial, which is entitled to a speedy resolution of its counterclaims directed at Intervet's infringement of the '601 patent.

Intervet's assertion that Merial should not be surprised by amendments to the complaint because similar claims exist in its Responses to Merial's interrogatories is also without merit. As an initial matter, Intervet did not disclose its allegations with respect to its claim of unenforceability based on the Applicants' alleged failure to disclose to the Patent Office an International Search Report issued in connection with PCT International Publication Number WO 99/018214 until Intervet served its Fourth Supplemental Interrogatory Responses on May 7, 2008, less than three weeks before the close of discovery.  By waiting until the close of discovery to make these allegations, Intervet effectively prevented Merial from obtaining discovery of Intervet on the supposed basis for this claim, such as, *inter alia*, identifying (i) which documents in the Search Report Intervet alleges are prior art that Merial failed to disclose to the Patent Office, (ii) what are Intervet's bases for asserting that any such documents would be

---

[7] Intervet's assertion in its brief that because "discovery of numerous issues is ongoing and no trial date has been set, Merial has ample time to prepare any defense to these claims" is misleading and false.  (Intervet Brief at 7).  At the close of fact discovery, the parties discussed and enumerated all discovery issues that remained open.  This list did not include further discovery relevant to Intervet's new proposed inequitable conduct and invalidity claims.  (*See* Ngau Decl. Exh. 15).

considered material and noncumulative of the other prior art that was disclosed to and considered by the Patent Office, (iii) what are Intervet's bases for asserting that Applicants had knowledge of the prior art and of its materiality, and (iv) what evidence Intervet contends establishes an intent on the part of the Applicants to mislead the Patent Office.[8]

Intervet also waited until late in the fact discovery period to supplement its interrogatory responses to include its assertions of unenforceability and invalidity due to the Applicants' alleged fraudulent failure to name certain inventors, even though Intervet was aware of all of the facts related to these claims early on in discovery. Notably, even when Intervet supplemented its interrogatory responses, it did not move to amend its Complaint to add any claims based on these allegations at that time. By waiting until late in the discovery period to first disclose its contentions in its interrogatory responses, and by waiting until the close of discovery to seek leave to amend its Complaint to add these claims, Intervet has prejudiced Merial because Merial cannot now obtain additional discovery that could be used to defend against Intervet's claims.

Moreover, Intervet's assertion that all of the evidence necessary to defend these claims is in Merial's control is simply false. (Intervet Brief at 2). First, Merial would need to take discovery of Intervet to discover the complete factual bases for each of its claims, especially given that, as explained below, Intervet's proposed amended pleadings and interrogatory responses are defective in that they do not set forth all of the required elements of these claims.

---

[8] "[O]ne who alleges a 'failure to disclose' form of inequitable conduct must offer clear and convincing proof of: (1) prior art or information that is material; (2) knowledge chargeable to applicant of that prior art or information and of its materiality; and (3) failure of the application to disclose the art or information resulting from an intent to mislead the PTO. That proof may be rebutted by a showing that: (a) the prior art or information was not material (*e.g.*, because it is less than pertinent than or merely cumulative with prior art or information cited to or by the PTO); (b) if the prior art or information was material, a showing that applicant did not know of that art or information; (c) if applicant did know of that art or information, a showing that applicant did not know of its materiality; (d) a showing that applicant's failure to disclose art or information did not result from an intent to mislead the PTO." *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987).

Second, many, if not all, of the people who are the subjects of Intervet's proposed amendments,

Dr. Daft, Dr. Krakowka, and unnamed persons at VIDO, are not under Merial's control. Upon

information and belief, Dr. Daft, who was a professor at the University of California, has since

retired; Dr. Krakowka is a professor at Ohio State University, over which Merial has no control;

and certain of the relevant persons at VIDO, including its former Director, Dr. Lorne Babiuk, are

no longer employed at VIDO.[9] Accordingly, if Intervet were permitted to add its claims at this

late date, Merial would be unduly prejudiced by not being able to take discovery that could be

used to defend itself against these claims.

The circumstances of the present litigation are strikingly to those in the *Inline* case. Just

as Intervet does now, the *Inline* defendants sought to add three new theories of inequitable

conduct where they had, in the previous pleading, asserted a single claim of inequitable conduct

on a different theory. *Inline*, 237 F.R.D. at 370. In *Inline*, just as here, fact discovery had closed,

claim construction had been conducted, and the parties were preparing expert reports. *Id.* at 369.

The *Inline* Court recognized that it would unduly prejudice the plaintiff if the defendants were

allowed to amend the pleadings at that late stage of the litigation, and the Court, therefore,

denied the defendants' motion to amend to add new inequitable conduct theories. *Id.*

## III.    Intervet's Bad Faith/Dilatory Motive.

Taking all of the above factors into consideration, and in the absence of any evidence to

the contrary, it is apparent that Intervet had a dilatory motive in waiting to file its Motion to

Amend until the last day of discovery. There is no good explanation for Intervet's delay, and its

dilatory motive is tantamount to bad faith. *Rose Hall*, 93 F.R.D. at 865. Moreover, Merial, as a

---

[9] To the extent that any of these former VIDO persons reside in Canada, as is believed, and to the extent they would not voluntarily appear for deposition, then Merial would have to seek their testimony under applicable international conventions, such as the Hague convention, which can be a lengthy and expensive process.

patentee, has a strong interest in obtaining a speedy resolution to its claims of infringement by

Intervet. Merial initially brought suit against Intervet to stop Intervet's infringement of the '601

patent in December of 2005,[10] but through a series of legal maneuvers, Intervet has repeatedly

sought to delay the resolution of Merial's claims. It is evident that Intervet's delay until the last

day of fact discovery to attempt to add these new claims is simply a bad faith attempt to further

delay the resolution of Merial's claims. Accordingly, Intervet's Motion to Amend should be

denied.

## IV.    Intervet's Proposed Amendments Are Futile.

### A.    Intervet's Proposed New Unenforceability Claims Are Futile.

"'Inequitable conduct' is not, or should not be, a magic incantation to be asserted against

every patentee. Nor is that allegation established upon a mere showing that art or information

having some degree of materiality was not disclosed." *FMC Corp. v. Manitowoc Co.*, 835 F.2d

1411, 1415 (Fed. Cir. 1987) *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir.

1987).. Accordingly, FRCP 9(b) requires that inequitable conduct claims, like fraud claims, be

plead with particularity. *Intex Recreation Corp. v. Team Worldwide Corp.* 390 F. Supp.2d 21,

23-24 (D.D.C. 2005); *see also Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350

F.3d 1327, 1344 (Fed. Cir. 2003) ("inequitable conduct … must be pled with particularity). The

elements of inequitable conduct consist of (i) [the identification of] prior art or information that

is material; (ii) knowledge chargeable to applicant of that prior art or information and of its

materiality; and (iii) failure of the application to disclose the art or information resulting from an

---

[10] Merial's initial suit, *Merial Limited v. Intervet Inc.*, Case 1:05-cv-03168-CAP, which was filed in the United Stated District Court for the Northern District of Georgia, was dismissed without prejudice for failure to name certain parties, including those who were dismissed as being defendants in this action. Before that suit was dismissed, Intervet filed the present Declaratory Judgment Action.

intent to mislead the PTO. *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)

*FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 (Fed. Cir. 1987)..

 Significantly, a pleading that must be pled with particularity under Rule 9(b) may not rest

only on "information and belief," but must include an allegation that the information necessary

to plead with particularity lies "within the [non-movant's] control" and must include a statement

of the facts upon which the pleader bases his claims. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d

1271, 1279 n. 3 (D.C. Cir. 1994); *see also McQueen v. Woodstream Corp.*, 248 F.R.D. 73, 77

(D.D.C. 2008).  In its proposed amended complaint, Intervet pleads all of its inequitable conduct

claims "on information and belief," but it nowhere asserts, nor can it assert, that the information

needed to plead with particularity is within Merial's control.[11]  Moreover, Intervet cannot cure

these deficiencies because discovery has closed.  By waiting until the close of discovery to move

to amend its complaint, Intervet has assured not only that Merial cannot take discovery related to

Intervet's new proposed claims, but that Intervet also cannot.

### 1. Intervet's Allegations Regarding Disclosure Of A Search Report are Futile.

 Intervet's claim of unenforceability due to the Applicants' alleged failure to disclose to

the Patent Office the International Search Report is futile because it is fatally deficient.  A claim

of inequitable conduct based on a failure to disclose prior art requires that the pleadings at a

minimum identify the prior art and explain its alleged materiality. *See, e.g.*, *Cent. Admixture

Pharm. Servs., Inc. v. Advanced Cardiac Solutions, P.C.,* 482 F.3d 1347, 1356-57 (Fed. Cir.

2007) ("The pleading lacks the requisite particularity.  It does not identify what relevant and

---

[11] Information necessary to Intervet's alleged claims of inequitable conduct would be in the possession of the individuals Intervet asserts should be inventors on the patent, none of whom were listed as individuals with information in Intervet's initial disclosures, and none of whom have participated in any discovery in this case.

undisclosed prior art was known to the patentee ….”), *cert. denied,* 128 S. Ct. 648 (2007); *Eisai Co. v. Teva Pharms. USA, Inc.*, 247 F.R.D. 445, 452 (D. N.J. 2007)  (finding flaw “fatal” to allegation of inequitable conduct and denying motion to amend answer to include inequitable conduct claim where “though [defendant] alleges the prior art to have been material to the [] application, it alleges no facts upon which [plaintiff] can determine how or why that is the case.”); *Energy Absorption Sys. Inc. v. Roadway Safety Serv. Inc.*, 28 U.S.P.Q.2d 1717, 1718 (N.D. Ill 1993) (striking defense where pleading did not identify what material was not submitted to the Patent Office or why or how that omission was material.)  However, Intervet’s proposed amended pleadings do neither.  *See* Proposed Amended Complaint (Exh. A to Nodes Decl.), at ¶ 32.

It is important to understand that an International Search Report itself is not prior art, rather it merely identifies documents, some of which may potentially be prior art.  Just because certain documents are cited in an International Search Report to a foreign PCT application does not mean that those documents are necessarily prior art to the ’601 patent.[12]

Moreover Intervet’s proposed amended complaint does not identify the specific documents disclosed in the International Search Report that Intervet contends are prior art to the ’601 patent that should have been disclosed to the Patent Office by the applicants of the ’601 patent.  Also, Intervet fails to explain why any such documents would have been material.  In addition, Intervet’s amended complaint does not allege that *any* of the applicants of the ’601 patent were even aware, much less specifically identify *which* of the Applicants allegedly was

---

[12] That a PCT application may be said to “correspond to” the ’601 patent ***does not*** mean that the documents cited in the International Search Report for that PCT application are automatically pertinent to the ’601 patent.  The claims as issued in the ’601 patent are significantly different than the claims as published in WO 99/018214.  Therefore, the documents cited in the Search Report upon which Intervet relies are not ipso facto pertinent to the ’601 patent claims.

allegedly aware, of the International Search Report or any prior art cited therein.   Accordingly, Intervet's claim of inequitable conduct based on the Applicants' alleged failure to disclose the International Search Report to the Patent Office is fatally deficient, and therefore, it would be futile to permit Intervet to amend its Complaint to add this claim.

### 2.    Intervet's Incorrect Inventorship Claims Are Futile.

Intervet's claims of unenforceability due to the Applicants' alleged fraudulent failure to name certain purported inventors are also deficient because they fail to state a claim of inequitable conduct.  Intervet's pleadings identify no claim in the '601 patent for which it believes Dr. Daft, Dr. Krakowka, or any unnamed person at VIDO[13] should have been credited as an inventor, and none of these persons have ever claimed that they should have been named as an inventor.[14]  "When a question of inventorship is presented, 'the critical question . . . is who conceived . . . the subject matter of the *claims* at issue.'"  *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs.*, 292 F.3d 1363, 1373 (Fed. Cir. 2002) (quoting *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir.), *cert. denied*, 525 U.S. 923 (1998)) (emphasis in original).  That is, when it comes to inventorship, the name of the game is the claim.  Nowhere does Intervet indicate any particular *claim* upon which Dr. Daft, Dr. Krakowka and the unnamed VIDO people should be named as an inventor.

---

[13] The fact that Intervet's proposed Amended Complaint does not identify any specific person at VIDO that it contends should have been named as an inventor is also a fatal defect.

[14] It is questionable whether Intervet even has standing to challenge inventorship where the putative inventor has declined to do so.  In *PerSeptive Biosystems*, Judge Newman raised this issue in her dissent.  *Perseptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1323 n.1 (Fed. Cir. 2000).

At best, Intervet's allegations in its proposed Amended Complaint only suggest that Dr. Daft may have been a "spark" for certain of the inventors, but that is not sufficient to constitute inventorship. *See, e.g., TALtech Ltd v. Esquel Apparel, Inc.*, No. 2007-1506, 2008 WL 2165996 (Fed. Cir. May 22, 2008). Nor does providing tissue samples, as Intervet alleges Dr. Daft and persons at VIDO may have done, constitute inventorship. *Brown v. Regents of Univ. of Cal.*, 866 F. Supp. 439 (N.D. Cal. 1994) (granting summary judgment and dismissing the alleged non-joined joint inventor's action to correct inventorship pursuant to 35 U.S.C. § 256); *see also Regents of Univ. of Cal. v. Synbiotics Corp.*, 849 F. Supp. 740 (S.D. Cal. 1994). With respect to Dr. Krakowka, Intervet's proposed Amended Complaint only alleges that he "worked with the inventors to confirm the association between porcine circovirus and PMWS;" but this does not equate to inventorship of any of the claims of the '601 patent. And as to the unnamed VIDO persons, Intervet's assertions do not rise to any claim of inventorship because, *inter alia*, Intervet cannot even identify these persons.

Accordingly, Intervet's proposed claims of unenforceability due to the Applicants' alleged fraudulent failure to name certain inventors are all fatally deficient.

### B. Intervet's Proposed New Invalidity Claims are Futile.

Finally, Intervet's proposed claim of invalidity based on derivation of inventorship is clearly insufficient. A proposed amendment claim is futile, and therefore should be dismissed, "when the proposed amendment is clearly insufficient or frivolous on its face." *Mercexchange L.L.C. v. Ebay, Inc.,* 271 F. Supp. 2d 784, 788 (E.D.Va. 2002) "Denial of plaintiffs' motion [to amend] as futile would be appropriate if the Amended Complaint still failed to state a claim sufficient to survive a motion to dismiss. *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006). A claim of derivation under section 102(f) requires "the party asserting

invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee by clear and convincing evidence." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1344 (Fed.Cir. 2003) (internal quotation omitted). "Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention ..." *See, e.g., Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir. 1986). To provide grounds for derivation, "the communication must be sufficient to enable one of ordinary skill in the art to make the patented invention." *Id.* Nowhere in the allegations set forth in Intervet's proposed Amended Complaint relating to its proposed new claim for invalidity under section 102(f), or anywhere else, does Intervet contend that any of the persons who were supposedly left off as inventors of the patent (i) conceived of a definite and permanent idea of the complete and operative invention as set forth in any of the claims of the '601 patent and (ii) then made a communication to any of the named inventors sufficient to enable one of ordinary skill in the art to make the patented invention. (Amended Complaint, Nodes Decl. Exh. A. at ¶¶ 20-23).[15] Accordingly, Intervet's proposed amended complaint fails to state a claim upon which relief can be granted, and thus is futile and must be denied.

## CONCLUSION

For the reasons set forth above and on the authorities cited herein, Intervet's Motion For Leave To File An Amended Complaint should be denied.

---

[15] Moreover, "[a]bsent fraud or deceptive intent, the correction of inventorship does not affect the validity or enforceability of the patent." *See, e.g., Viskase Corp. v. American Nat'l Can Co.*, 261 F.3d 1316, 1329 (Fed.Cir.2001); *see also Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088-89 (Fed.Cir.1998) (finding that, even if an error in naming inventors was shown, the patentee would have the opportunity to correct the error anyway); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998)("[Upon such a finding of incorrect inventorship] the patentee must then be given an opportunity to correct inventorship.") Thus, because, for the reasons set forth above, Intervet's claims of unenforceability based on improper inventorship are futile, its claim of patent invalidity under section 102(f) is also futile.

Dated:  June 9, 2008                    Respectfully submitted,

                                        */s/ Timothy A. Ngau*
                                        ALSTON & BIRD, LLP
                                        Timothy A. Ngau
                                        DC Bar No. 339333
                                        950 F Street, NW
                                        Washington, DC  20004
                                        Phone: 202-756-3300
                                        Fax: 202-756-3333

                                        Judy Jarecki-Black, Ph.D.
                                        Merial Limited
                                        3239 Satellite Blvd.
                                        Duluth, GA  30096-4640
                                        Tel.: (678) 638-3805
                                        Fax: (678) 638-3350

                                        Thomas J. Kowalski
                                        Steven M. Amundson
                                        DC Bar No. 412196
                                        Vicki Franks
                                        Frommer Lawrence & Haug LLP
                                        745 Fifth Avenue
                                        New York, New York 10151
                                        Tel.: (212) 588-0800
                                        Fax: (212) 588-0500

                                        Frank G. Smith, III
                                        J. Patrick Elsevier, Ph.D.
                                        Kristen L. Melton
                                        Elizabeth K. Haynes
                                        Alston & Bird, LLP
                                        1201 West Peachtree Street
                                        Atlanta, Georgia 30309-3424
                                        Tel.: (404) 881-7000
                                        Fax: (404) 881-7777

                                        *Counsel for Merial Limited and Merial SAS*

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC.,<br><br>          Plaintiff,<br><br>                    v.<br><br>MERIAL LIMITED and MERIAL SAS,<br><br>          Defendants. | Civil Action No. 1:06-cv-00658 (HHK- JMF) |

**<u>NOTICE REGARDING CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 9th day of June 2008, I caused copies of the following

documents to be served:

1. Merial Limited and Merial SAS' Opposition to Intervet's Motion For Leave to File an Amended Complaint;

2. Declaration of Elizabeth K. Haynes in Support of Merial Limited and Merial SAS' Opposition to Intervet's Motion For Leave to File an Amended Complaint and supporting exhibits; and

3. Notice of Filing Documents Under Seal in Support of Merial Limited and Merial SAS' Opposition to Intervet's Motion For Leave to File an Amended Complaint.

The foregoing documents were served via Email and Overnight Courier on the following attorneys of record:

> John R. Hutchins, Esq.
> William G. James, Esq.
> Yariv Waks, Esq.
> Kenyon & Kenyon
> 1500 K Street, N.W., Suite 700
> Washington, DC 20005-1257
> Telephone:  202-220-4200
> Fax:  202-220-4201
>
> Richard L. DeLucia, Esq.
> Michael Loughnane, Esq.
> Jerry Canada, Esq.
> Kenyon & Kenyon
> One Broadway
> New York, NY 10004
> Tel:  212-425-7200
> Fax:  212-425-5288

Counsel of Plaintiff Intervet Inc.

ALSTON & BIRD, LLP
Crystal B. Kelly
Paralegal
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Fax: 404-881-7777