**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERVET INC., | |
| *Plaintiff*, | |
| v. | Civil Action No. 1:06-cv-00658 (HHK/JMF) |
| MERIAL LIMITED and MERIAL SAS | |
| *Defendants.* | |

**PLAINTIFF INTERVET'S OBJECTIONS TO THE MAGISTRATE JUDGE'S
ORDER DENYING INTERVET'S MOTION TO DEFER DISCOVERY OF
ATTORNEY-CLIENT PRIVILEGED INFORMATION UNTIL AFTER
DISPOSITIVE MOTIONS**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.    FACTUAL AND LEGAL BACKGROUND ............................................................ 3

    1.    PROCEDURAL BACKGROUND OF THE CASE ................................................ 3

    2.    INTERVET'S PLANNED MOTIONS FOR SUMMARY JUDGMENT ......................... 4

    3.    THE DILEMMA FACING INTERVET WITH RESPECT TO THE DECISION TO WAIVE
        PRIVILEGE AND THE DISCOVERY INTERVET SEEKS TO DEFER PENDING RESOLUTION
        OF DISPOSITIVE MOTIONS ..................................................................... 7

    4.    THE MAGISTRATE JUDGE'S DENIAL OF INTERVET'S MOTION ....................... 9

III.    ARGUMENT ..................................................................................................... 10

    1.    THE PRESENT MOTION IS NOT PREMATURE .............................................. 10

    2.    IT IS NOT NECESSARY TO PREDETERMINE THAT INTERVET WILL WIN THE CASE ON
        SUMMARY JUDGMENT BEFORE GRANTING THE PRESENT MOTION ........................ 11

    3.    GRANTING THE PRESENT MOTION WILL NOT PREJUDICE MERIAL ................. 12

IV.    CONCLUSION.................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...................................................................................................... 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)...................................................................................................... 6

*Franklin Elec. Co., Inc. v. Dover Corp.*,
    No. 05-C-598-S, 2007 U.S. Dist. LEXIS 54588 at *23 (W.D. Wis. Nov. 15, 2007) ... 11

*Fromson v. Western Litho Plate & Supply Co.*,
    853 F.2d 1568 (Fed. Cir. 1988) .................................................................................... 9

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007) (*en banc*) ........................................................... passim

*Quantum Corp. v. Tandom Corp.*,
    940 F.2d 642 (Fed. Cir. 1991) ...................................................................................... 9

*Research Plastics, Inc. v. Federal Packaging Corp.*,
    421 F.3d 1290 (Fed. Cir. 2005) .................................................................................... 6

*Safeco Ins. Co. of Am. v. Burr, --- U.S. ----,*
    127 S.Ct. 2201 (2007).................................................................................................... 5

*TGIP Inc. v. AT&T Corp.*,
    No. 2:06-CV-105, 2007 U.S. Dist. LEXIS 79919 at *37 (E.D. Tex. Oct. 29, 2007) ... 12

*Underwater Devices Inc. v. Morrison-Knudsen Co.*,
    717 F.2d 1380 (Fed. Cir. 1983) .................................................................................... 4

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981)...................................................................................................... 15

## Statutes

35 U.S.C. §284............................................................................................................... 4

Fed. R. Civ. P. 1 ............................................................................................................. 6

Fed. R. Civ. P. 72(a) ....................................................................................................... 1

LCvR 72.2(b) .................................................................................................................. 1

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 72(a) and LCvR 72.2(b), Plaintiff Intervet Inc.
("Intervet") respectfully submits this memorandum objecting to the Magistrate Judge's
June 11, 2008 Opinion (D.I. 174) and Order (D.I. 173) denying its *Motion to Defer
Discovery of Attorney-Client Privileged Information Until After Dispositive Motions*
("Motion," D.I. 129).

Defendants Merial Limited and Merial SAS ("Merial") have accused Intervet of
willful infringement of their patent.  Prior to this litigation, Intervet had obtained certain
opinions from outside counsel relating to the patent-in-suit.  Such opinions can be (but
need not be) used as a defense to an allegation of willful infringement, although the use
of the opinions necessarily requires a waiver of the attorney-client privilege with respect
to them.  As explained further below, in August 2007 the law of willful infringement was
revamped by the Federal Circuit in *In re Seagate Tech., LLC,* 497 F.3d 1360 (Fed. Cir.
2007) (*en banc*), making it much harder to prove.  More specifically, before Intervet is
required to raise any defense, Merial must be able to demonstrate a *prima facie* case of
willful infringement, which now requires proof that Intervet acted "objectively
recklessly."  Given the new, more stringent legal standard for willfulness, as well as the
Court's November 28, 2007 claim construction ruling which adopted certain of Intervet's
proposed claim constructions, Intervet will be filing motions for summary judgment with
respect to Merial's claims of both infringement and willfulness.  If either is successful,
the issue of willfulness will be moot.[1]

---

[1]    Further, even if the motions are not granted in full, the Court's rulings may limit the case in such a
way that Intervet will be able to make a better-informed decision about whether to waive privilege with
respect to its opinions.

Accordingly, Intervet requests that it not be required to decide whether to raise an "opinion of counsel" defense, thereby waiving attorney-client privilege with respect to those opinions, until after the Court has an opportunity to decide these dispositive motions. This will best serve to protect the attorney-client privilege, and may prevent the parties from engaging in unnecessary discovery. The Court clearly has discretion to grant the requested relief and defer discovery into Intervet's privileged communications with its counsel.

Further, granting the requested relief will not adversely affect these proceedings. No trial date has been set. Thus, even if Intervet does not win summary judgment and then decides to waive privilege with respect to its opinions to defend against the allegation of willfulness, there will still be plenty of time before trial for the parties to engage in additional discovery regarding the opinions. Of course, depending upon the Court's rulings, such discovery may not be necessary. If Intervet waives privilege now, however, that discovery will most definitely occur, perhaps unnecessarily. On balance, respect for the attorney-client privilege supports granting the deferral of discovery Intervet is requesting. There is no need to delve into wasteful and potentially prejudicial discovery of Intervet's attorney-client privileged information at this time and ample reason to defer such discovery until after decisions have been rendered on dispositive motions.

The Magistrate Judge denied the present motion on two grounds: (1) the motion was premature since Intervet had not yet decided whether to waive privilege; and (2) the Magistrate Judge could not determine Intervet's likelihood of success with respect to its planned dispositive motions. As explained below, the present motion is not premature,

since the very relief Intervet seeks is the ability to forestall deciding whether to waive

privilege until after the Court rules on Intervet's dispositive motions with respect to

infringement and willfulness.  Further, it is not necessary to hold that Intervet will win on

summary judgment in order to grant the present motion.  As long as there is any

reasonable chance that the issue of willfulness may become moot (or that the Court's

rulings on summary judgment will otherwise narrow or inform Intervet's decision with

respect to waiver), the present motion should be granted, since there is no prejudice to

granting the motion.  It can only serve to possibly prevent unnecessary discovery.

Accordingly, Intervet respectfully requests that the present motion be granted.


## II.    FACTUAL AND LEGAL BACKGROUND

**1.    Procedural Background of the Case**

Intervet initiated this action on April 11, 2006, seeking a declaratory judgment

that the sale of its Circumvent™ PCV vaccine does not infringe any valid or enforceable

claim of U.S. Patent No. 6,368,601 ("the '601 patent").  (D.I. 1.)  Defendants, Merial

SAS and Merial Limited, responded on May 22, 2007, claiming infringement of the '601

patent and further contending that the alleged infringement had been "deliberate and

willful."  (D.I. 7, 8 at ¶15.)

Following jurisdictional motions practice, the parties engaged in extensive fact

discovery, a process that is complete, with the exception of a few outstanding issues that

the parties have identified. [2]  One of these issues involves discovery pertaining to

---

[2]    Under the schedule, fact discovery closed on May 23, 2008.  (D.I. 126.)  The
present motion was initially filed in early February, 2008.

Intervet's privileged opinions of counsel, upon which it may rely in defense of Merial's allegation of willfulness.

2.     **Intervet's Planned Motions for Summary Judgment**

Since late 2007, there have been two significant developments that likely will have a substantial impact on the issues in this case, and which the Court will be asked to address during dispositive motions practice.

The first relates to Defendants' unwarranted allegation of "willful infringement." A claim of "willfulness" is a charged allegation in a patent litigation that is a prerequisite for (albeit it does not mandate) the recovery of enhanced damages. *See Seagate*, 497 F.3d at 138; 35 U.S.C. §284.  Defendants' *pro forma* charge of "willfulness," therefore, was to be expected in the Counterclaims—it is something almost every patentee alleges in an effort to gain leverage—especially as the standard under which the allegation was assessed at that time was quite relaxed, being "more akin to negligence."  *See id.* at 1371.

In August 2007, however, the Court of Appeals for the Federal Circuit overruled past "willfulness" case law in the face of new Supreme Court precedent and, in so doing, significantly increased the burden on a patentee in proving willful infringement.  Notably, the Federal Circuit disavowed its prior holdings that "a potential infringer [with] actual notice of another's patent rights … has an affirmative duty to exercise due care to determine whether or not he is infringing," *cf. Underwater Devices Inc. v. Morrison-Knudsen Co.,* 717 F.2d 1380, 1389-90 (Fed. Cir. 1983), and held instead that a patentee must show that an accused infringer's actions were "objectively reckless" when it made, used, or sold an accused product.  *See Seagate*, 497 F.3d at 1371.  The Federal Circuit also explained that such a showing will be subject to a high burden of proof:

> [T]o establish willful infringement, a patentee must show by clear and
> convincing evidence that the infringer acted despite an objectively high
> likelihood that its actions constituted infringement of a valid patent. The
> state of mind of the accused infringer is not relevant to this objective
> inquiry. If this threshold objective standard is satisfied, the patentee must
> also demonstrate that this objectively-defined risk (determined by the
> record developed in the infringement proceeding) was either known or so
> obvious that it should have been known to the accused infringer.

*Id.* (citing *Safeco Ins. Co. of Am. v. Burr,* --- U.S. ----, 127 S. Ct. 2201, 2215 (2007) ("[i]t

is [a] high risk of harm, objectively assessed, that is the essence of recklessness").

Thus, under *Seagate*, a patentee claiming "willful infringement" must show that

an accused infringer's actions were "objectively reckless" when it made, used, or sold an

accused product. *See Seagate*, 497 F.3d at 1371. Moreover, this showing of "objective

recklessness" is intended to be a *threshold requirement* that must be established *without*

*regard to the accused infringer's state of mind. See Seagate*, 497 F.3d at 1371 ("[t]he

state of mind of the accused infringer is not relevant to this objective inquiry"). *After*

(and only *if*) this threshold standard is satisfied by "clear and convincing evidence" then

the patentee must show that this objective risk was "either known or so obvious that it

should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371. An

accused infringer's state of mind in relying on the opinions of its attorney, and the

reliability of those opinions, is relevant only to this second, subjective prong.

The second significant development was this Court's *Memorandum and Order* on

claim construction, which was issued just a few months after the Federal Circuit decided

*Seagate*. (D.I. 121.) In that ruling, the Court interpreted the claim terms "PCV-2" and

"ORFs 1-13" in a manner consistent with Intervet's reading of the patent at issue. *Id.* at

4, 13-14. Importantly, at least one of those terms appears in each asserted claim, *see* '601

patent, cls. 9, 32, and there can be no dispute that during prosecution of the '601 patent,

the patentee/applicant made a series of narrowing amendments to the claims, which had the effect of further restricting the scope of the patent. *See, e.g., Research Plastics, Inc. v. Federal Packaging Corp.*, 421 F.3d 1290, 1298 (Fed. Cir. 2005) (if the patentee makes any "narrowing amendments" during prosecution to satisfy a requirement of the Patent Act, a presumption arises that "the patentee surrendered the territory between the original claims and the amended claims"); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736, 741 (2002) (discussing the "prosecution history estoppel" doctrine which precludes infringement under the doctrine of equivalents).

Thus, when this Court's claim construction ruling is coupled with a review of the prosecution history of the patent in this case, and considering further how an objective infringement analysis now impacts a willfulness allegation under *Seagate,* the stage will be set for dispositive motions practice on both infringement and willfulness. Summary judgment, of course, is a favored procedure whenever the undisputed evidence permits efficient resolution of disputes. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); Fed. R. Civ. P. 1.

As such, Intervet intends to move at the appropriate time for summary judgment that the accused vaccine does not literally infringe any of the asserted claims of the '601 patent (as the Intervet product does not contain or use in its production anything that the patentee referred to as "PCV-2" or "ORFs 1-13"), and that Defendants are barred by prosecution history estoppel and the dedication to the public doctrine from asserting that the accused vaccine infringes under the doctrine of equivalents.[3] Moreover, even if the Court were to find that genuine issues of material fact preclude the grant of judgment as a

matter of law on either of these points (although Intervet would submit that no such

issues exist), the motion at a minimum will demonstrate that Defendants could never

establish that there was "an objectively high likelihood" that infringement existed, thus

defeating any claim of willfulness as a matter of law under the heightened *Seagate*

standard.

3.      **The Dilemma Facing Intervet with Respect to the Decision to Waive Privilege and the Discovery Intervet Seeks to Defer Pending Resolution of Dispositive Motions**

        In light of its planned summary judgment motions, Intervet filed the present

motion to defer discovery with respect to its privileged opinions pending resolution of

those dispositive motions.  More specifically, the attorney-client privileged materials

comprise a series of written opinions of counsel regarding or relating to Intervet's

circovirus vaccine and Merial's patent.  In a typical opinion, patent counsel will explain

to the client what the patent means and will set forth the legal and factual basis for why

counsel believes that "the patent is invalid, unenforceable, and/or not infringed."  *See*

*Seagate*, 497 F.3d at 1369.  An opinion of counsel, however, serves as a *defense* against a

claim for enhanced damages—the patentee cannot rely on the legal analysis of an opinion

to *prove* infringement,[4] nor can it use the opinion to establish that at the relevant time

there was "an objectively high likelihood" that the accused infringer's actions

"constituted infringement."  *See id.* at 1368, 1371 (explaining that because "patent

infringement is a strict liability offense, the nature of the offense is only relevant in

---

[3]      Under the present schedule, dispositive motions are to be filed by October 24, 2008, as the new deadline by which to file dispositive motions.  (D.I. 179.)

[4]      The fact of infringement itself is determined simply by comparing the accused product with the properly-construed patent claims, regardless of the accused infringer's intent.  Thus, whether an accused infringer possesses an opinion of counsel with respect to a patent is not relevant to whether that patent is valid or infringed.

determining whether enhanced damages are warranted," and later noting that "[t]he state of mind of the accused infringer is not relevant" to a determination of "objective recklessness").

The decision to disclose a prior opinion of counsel, however, is not one that an accused infringer ever takes lightly. Even though the conclusions in the opinion may be favorable, an accused infringer involved in a patent litigation typically does not want the patentee to be privy to the legal and factual *analysis* contained within the opinion because review of that material could potentially provide the patentee with insight into the accused infringer's potential trial strategy or preparation. This could include how the accused infringer might question witnesses during depositions or trial, or otherwise provide the patentee with insight into the accused infringer's defenses. Indeed, this is usually why patentees (such as Merial) *want* to force early disclosure.

The Federal Circuit has expressly recognized this "dilemma," and has suggested that an effective way for a court to resolve it is to bifurcate proceedings between liability (as to which the contents of an opinion of counsel are irrelevant; *see id.* at 1368) and willfulness/damages (where an opinion of counsel may be used as a defense):

> Proper resolution of the dilemma of an accused infringer who must choose between the lawful assertion of the attorney-client privilege and avoidance of a willfulness finding if infringement is found, is of great importance not only to the parties but to the fundamental values sought to be preserved by the attorney-client privilege. An accused infringer, therefore, should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willfulness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera,* reveal that the defendant is indeed confronted with this dilemma.

*Quantum Corp. v. Tandom Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991); *see also*

*Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1572 (Fed. Cir. 1988)

("That approach may be useful in meeting the attorney-client privilege problem.").

     With summary judgment looming on the horizon, however, Intervet submits that

discussing ways to address the so-called "*Quantum* dilemma" is premature.  As the

dilemma may never manifest, the prudent course of action would be to defer discovery

into privileged communication until at least after the resolution of dispositive motions, by

which time the issue may have become moot.

**4.     The Magistrate Judge's Denial of Intervet's Motion**

     On June 12, 2008, the Magistrate Judge denied Intervet's motion.  In his opinion,

the Magistrate Judge correctly states that there is no case law *requiring* the Court to defer

discovery on willfulness pending resolution of the issue of whether a patentee can prove

that the accused-infringer's conduct was objectively reckless.  (Opinion at 3.)  However,

the Magistrate Judge also correctly recognized that it could, in its discretion, order such a

deferral.  (*Id.* ("The Court could of course order bifurcation even though not required . . .

.").)

     The Court declined to do so, however, on two grounds.  First, it found that there

was no way for it to determine the likelihood of success with respect to the planned

summary judgment motions (since they have not yet been filed).  (*Id.*)  Second, it found

that the motion was "premature" because Intervet has not yet decided whether to waive

privilege with respect to its opinions to defend against the allegation of willfulness.  (*Id.*

at 3-4.)  Intervet respectfully submits that the present motion is not premature, and that a

proper balancing of the attorney-client privilege coupled with the lack of prejudice if the

motion is granted weighs in favor of this Court exercising its discretion to defer discovery on Intervet's opinions.

## III.    ARGUMENT

### 1.    The Present Motion Is Not Premature

As noted above, the Magistrate Judge held that the present motion was not ripe because Intervet had not yet decided whether to waive privilege to defend against Merial's charge of willfulness.  Respectfully, Intervet submits that this argument misses the point of Intervet's motion, which is to defer that very decision unless and until the Court can weigh in on the viability of the charge of willful infringement, in light of both its own claim construction ruling and the new legal standard for willfulness set forth in *Seagate*.  If the Court determines that there is no infringement under its claim construction, or that the infringement question is too close for there to be a finding of "objective recklessness," then Intervet of course will not waive privilege in its opinions because the issue of willfulness (the only issue that Intervet's state of mind and these opinions are relevant to) will be moot.  Alternatively, the Court may significantly narrow the issues in the case, which also could affect Intervet's calculus in making the decision about whether to waive privilege.  Either way, though, there can be no dispute that the Court's rulings on dispositive motion could greatly influence whether Intervet should waive privilege and raise an opinion of counsel defense in this action.

Given the very nature of the relief being sought by Intervet, *i.e.*, a deferral of the time by which it must waive privilege and allow discovery of its attorney opinions, it cannot fairly be said that the present motion is premature simply because Intervet has not

yet waived that privilege.  Intervet is asking to be able to make a more informed decision about waiver following the Court's decisions on dispositive motions.

**2.     It is Not Necessary to Predetermine that Intervet Will Win the Case on Summary Judgment before Granting the Present Motion**

The second reason the Magistrate Judge gave for denying the present motion is that he could not determine that Intervet, its optimism notwithstanding, would likely succeed with respect to its planned motions for summary judgment.  (Opinion at 3.) Certainly, the premise is true, namely that the Magistrate Judge was not in a position to pre-decide dispositive motions that have not yet been filed.  However, Intervet's present motion can be granted without a finding that Intervet will likely win on summary judgment.  Indeed, even if one thought that summary judgment with respect to either infringement or willfulness had only a one-in-five chance of being granted (an assessment with which Intervet would disagree), the present motion still should be granted.  That would mean that there is at least a twenty percent chance that the issue of willfulness will be mooted, allowing Intervet to protect its attorney-client privilege and preventing expenditures on meaningless discovery.

In deciding the present motion, though, it should be kept in mind that Intervet will be entitled to summary judgment of no willfulness, provided that the question of infringement is even a close one.  The courts have held that "objective recklessness," and therefore willfulness, cannot be shown, *e.g.*, when the accused infringer has substantial and supported non-infringement positions.  *See Franklin Elec. Co., Inc.  Dover Corp.*, No. 05-C-598-S, 2007 U.S. Dist. LEXIS 54588 at *23 (W.D. Wis. Nov. 15, 2007) ("Given the significant support in the language of the patent, the specification and prosecution history for defendant's non-infringement position, plaintiff cannot meet its

burden to prove objective recklessness by clear and convincing evidence."); *TGIP Inc. v. AT&T Corp.*, No. 2:06-CV-105, 2007 U.S. Dist. LEXIS 79919 at *37 (E.D. Tex. Oct. 29, 2007) ("Likewise, it cannot be said there is clear and convincing evidence that it was known or obvious that there was an objectively high likelihood that AT&T's non-infringement position was incorrect.  Even if the jury's finding of infringement is ultimately upheld, it was, at best a very close question.").  Given that the Court has already adopted Intervet's (and rejected Merial's) proposed construction for the key terms of the patent-in-suit (D.I.121), it does not take a particularly imaginative thinker to give Intervet a reasonable chance of demonstrating that infringement is at least a close enough question under its own proffered claim construction so as to preclude any finding by the Court that Intervet acted "objectively recklessly."[5]

Further, and as explained below, there will be no prejudice to Merial if the present motion is granted.[6]  Thus, as long as there is a realistic probability that Intervet can succeed with either of its summary judgment motions, then the balance weighs in favor of granting the motion, because there is no counterbalance against deferring the discovery.

### 3.     Granting the Present Motion Will Not Prejudice Merial

Merial had argued in its Opposition brief to the Magistrate Judge that the parties (and the Court) should press ahead with extensive discovery into all aspects of Intervet's attorney-client privileged information because Merial supposedly "*needs*" this discovery

---

[5]     Further, even if the Court ultimately denied Intervet's summary judgment motions, it still could issue rulings that narrow the case and allow Intervet to make a better-informed decision with respect to waiver.

[6]     It makes perfect sense to require a high degree of likelihood of success if the relief requested would seriously prejudice the opposing party, such as in the preliminary injunction context.

into privileged materials in order to make out both its infringement case and its willfulness case, *i.e.*, in order to respond properly to Intervet's planned summary judgment motions. This argument, however, which forms the crux of Merial's claim of prejudice, is fatally flawed.

There is no reason that Merial would need to take discovery of Intervet's privileged opinions of counsel in order to respond to a summary judgment with respect to infringement. Infringement is a strict liability offense, and does not hinge upon the good faith of the accused infringer. *Seagate*, 497 F.3d at 1368, 1371. Thus, even assuming that Intervet acted in good faith based in part upon advice it had received from opinion counsel, that has nothing to do with whether its product meets the limitations of the asserted patent claims. *Id.* In fact, even Intervet could not rely on such opinions as a defense to infringement if it wanted to do so.

Moreover, Intervet has not denied Merial any discovery relating to the subject of infringement, nor has it prevented Merial in any way from learning the "facts and circumstances" relating to the accused acts of infringement. (Intervet's Reply Brief, D.I. 137, at 4-10.)

This leaves only Merial's argument that it somehow needs the privileged materials to defend against any summary judgment motion with respect to willfulness. This, too, is wrong. As *Seagate* makes clear, the subjective intent of the accused infringer—such as might be divined from the text of an opinion of counsel or testimony related to the thoughts of Intervet personnel—cannot possibly be relevant to the question of whether the patentee has made a *prima facie* showing of willfulness by proving that the alleged conduct was *objectively* reckless. And the question of whether Merial has

13

made out this objective *prima facie* case is precisely the issue that this Court will be asked to address on summary judgment. Therefore, Intervet's subjective intent is irrelevant to Intervet's proposed motion for summary judgment with respect to willfulness. Indeed, that is why Intervet is seeking to defer discovery into privileged information in the first place—there is simply no valid reason for invading the attorney-client privilege and incurring the expense associated with discovery (both for the parties and the Court) based on the mere *threat* of a willfulness claim: the patentee must first make out a *prima facie* case.

Merial also argued below that it would somehow waste judicial resources to defer discovery of Intervet's attorney-client privileged materials, suggesting that there is a large "universe of discoverable information related to Intervet's privileged opinions" that it would want to explore. (D.I. 131 at 7-8). However, even if this Court were to construe the scope of any potential waiver as broadly as Merial posits (which it should not), the fact that Merial is contemplating voluminous additional document and deposition discovery if Intervet waives privilege with respect to its opinions actually *supports* deferral of this allegedly massive amount of willfulness discovery. Intervet's requested deferral of discovery on this issue offers the opportunity to avoid this discovery altogether, saving substantial resources if (and when) this issue is mooted at the summary judgment stage. Merial insists that this discovery commence now, creating the distinct possibility that all of this discovery ultimately proves to be a waste of time. Therefore, deferring this discovery can only save party and judicial resources, and Merial can point to no potential savings that would result from allowing full discovery of attorney-client privileged materials now.

14

As opposed to the speculative prejudice that Merial alleges, Intervet faces the imminent and much more substantive prejudice of potentially waiving the attorney-client privilege—"the oldest of the privileges for confidential communications known to the common law"[7]—in order to potentially defend itself on an issue that may well prove to be moot. Merial's briefing to the Magistrate Judge erroneously downplayed the prejudice that Intervet will suffer if it is forced to waive privilege.

More specifically, Merial downplayed the effect of the "*Quantum* dilemma" that accused infringers face in patent cases. (D.I. 131 at 11-12). Merial asserted that the "*Quantum* dilemma" only applies to bifurcations of trial, not discovery, as well as insinuating that the "*Quantum* dilemma" is merely dicta. (*Id*.). These arguments are simply incorrect. The "*Quantum* dilemma" is a very real, commonly recognized prejudice that accused infringers face. While *Seagate* mitigated the "*Quantum* dilemma" somewhat by eliminating the *de facto* requirement that accused infringers waive privilege and produce any opinions of counsel—which was essentially a necessity under the pre-*Seagate* "affirmative due care" standard for willfulness—the "*Quantum* dilemma" still exists.[8] In fact, the only real way that an accused infringer can avoid facing the dilemma of having to disclose privileged communications in the face of spurious "willfulness" allegations is if those allegations are first subjected to the scrutiny under *Seagate's prima*

---

[7]    *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981).

[8]    For example, although *Seagate* limited the effects of waiver as it applies to trial counsel, it did not address how the production of opinions affects the privilege as it relates to in-house counsel. *Seagate*, 497 F.3d at 1366 n.2 ("We do not address the trial court's discovery orders pertaining to Seagate's in-house counsel. The questions presented for en banc review do not encompass this issue."). Also, the disclosure of privileged opinions can still provide an opposing party with a road map to the defendant's likely trial strategy and reveal what avenues of attack an accused infringer deems to be the most important. Thus, the decision to waive privilege, even post-*Seagate*, still carries potentially significant ramifications and invasions on the attorney-client privilege. Intervet should not be required to undergo this sort of prejudice in order to defend itself against a charge of willfulness that, under *Seagate*, likely will become moot.

*facie* standard before it becomes necessary for the accused infringer to waive privilege, which is precisely what Intervet seeks to do in this case.

## IV.    CONCLUSION

For the above reasons, Intervet respectfully requests that the Court grant its Motion and defer discovery of materials protected by the attorney-client privilege until the Court has at least resolved any motions for summary judgment the parties may file.


Dated: June 26, 2008                          Respectfully Submitted,


                                              _____/s/ Yariv Waks_____
                                              John R. Hutchins (D.C. Bar # 456749)
                                              William G. James, II (D.C. Bar # 503162)
                                              Yariv Waks (D.C. Bar # 491729)
                                              KENYON & KENYON LLP
                                              1500 K Street N.W., Suite 700
                                              Washington, DC 20005
                                              (202) 220-4200 (telephone)
                                              (202) 220-4201 (facsimile)

                                              Richard L. DeLucia
                                              Michael D. Loughnane
                                              Patrice P. Jean, Ph.D. (D.C. Bar # 482968)
                                              KENYON & KENYON LLP
                                              One Broadway
                                              New York, NY 10004
                                              (212) 425-7200 (telephone)
                                              (212) 425-5288 (facsimile)

                                              Attorneys for Plaintiff Intervet Inc.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

INTERVET INC.,

       *Plaintiff,*

   v.

MERIAL LIMITED and MERIAL SAS,

       *Defendants.*

Civil Action No. 1:06-cv-00658(HHK/JMF)

# CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of June, 2008, I electronically filed *Plaintiff Intervet's Objections to the Magistrate Judge's Order Denying Intervet's Motion to Defer Discovery of Attorney-Client Privileged Information Until After Dispositive Motions* and the proposed order with the Clerk of the Court in the CM/ECF system which will automatically email notice of this filing to the following attorneys of record:

> Judy Jarecki-Black, Ph.D.
> MERIAL LIMITED
> 3239 Satellite Blvd.
> Duluth, GA 30096-4640
> Tel: (678) 638-3805
> Fax: (678) 638-3350
>
> Thomas J. Kowalski, Esq.
> Vicki Franks, Esq.
> FROMMER LAWRENCE & HAUG LLP
> 745 Fifth Avenue, NY NY 10151
> Tel: (212) 588-0800
> Fax: (212) 588-0500

Timothy A. Ngau, Esq.
ALSTON & BIRD LLP
950 F. Street, NW
Washington, DC 20004
Tel: (202) 756-3300
Fax: (202) 756-3333

Patrick J. Elsevier, Ph.D.
Frank G. Smith III, Esq.
Kristen L. Melton, Esq.
Elizabeth Haynes, Esq.
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7000
Fax: (404) 881-7777


Peter Benson
Litigation Paralegal
Kenyon & Kenyon LLP
1500 K Street, NW
Washington, DC 20005-1257
(202) 220-4200