## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

INTERVET, INC.,

    Plaintiff,

    v.

MERIAL LIMITED and MERIAL SAS,

    Defendants.

Civil Action No. 1:06-cv-00658
(HHK/JMF)

## MEMORANDUM OPINION

Before me is Merial Limited and Merial SAS' Omnibus Motion to Compel Plaintiff Intervet Inc. to Respond to Discovery.

I. Restricted Definition of "PCV-2"

    a. Facts

First presented by Merial's motion is whether Intervet can restrict the meaning of a term in an interrogatory to the definition that Judge Kennedy used in his Memorandum Opinion and Order of November 28, 2007. Memorandum in Support of Merial Limited and Merial SAS' Omnibus Motion to Compel Plaintiff Intervet Inc. to Respond to Discovery at 4-6 ("Def. Mem.").

As Judge Kennedy explained, prior to the application for U.S. Patent No. 6,368,601 ("'601 Patent"), the "scientific community was aware of the existence of porcine circoviruses," associated with "a slow and progressive disease that causes gradual weight loss, lesions, and jaundice in young pigs." Intervet, Inc. v. Merial Ltd., No. 06-00658, at 1 (D.D.C.) (order construing six terms of the '601 Patent). The '601 Patent identified five new porcine

circoviruses that were unlike the previously known circoviruses and named them "porcine circoviruses of type II (PCV-2)" to distinguish them from the previously known porcine circoviruses, which the inventors named "porcine circoviruses of type I" (PCV-1). Id. at 2. After the '601 Patent application was filed, Intervet began producing a pig vaccine named "Porcine Circovirus Vaccine Type 2" and has brought this action, seeking a declaratory judgment that its vaccine does not infringe the '601 Patent and that, in any event, the '601 Patent is invalid and unenforceable.

Judge Kennedy indicated that he was obliged to construe six terms in the claims section including "PCV-2." Id. at 2. He explained:

> Intervet asserts that PCV-2 refers solely to the "five viral strains identified in the '601 Patent" Pl.'s Br. 9, while Merial argues that PCV-2 refers to a broad group of porcine circoviruses that includes, but is not limited to, the five porcine circoviruses identified in the patent. Merial defines this group as consisting of "porcine circovirus[es] of type II that [are] pathogenic to pigs and a causative agent of [Postweaning Syndrome]." Def.'s Br. 23.

Id. at 4.

Judge Kennedy accepted Intervet's analysis and concluded that the term "PCV-2" meant the five viral strains identified in the '601 Patent. Id. at 4. Merial made much of Intervet's own use of the term PCV-2 to refer more generically to the entire group of porcine circoviruses but Judge Kennedy found the argument unpersuasive. Id. at 4-5. He stated:

> Merial also argues that the court must accept its definition because it reflects the definition commonly used among persons skilled in the art. Merial notes that Intervet's expert witness, Dr. Raymond Rowland, stated in his deposition that, prior to his work on this patent dispute, he understood PCV-2 as referring to a group of porcine circoviruses. Merial also points out that Intervet itself uses the term PCV-2 to refer to a broad group of porcine circoviruses, as illustrated by the fact that Intervet labels its vaccine that is at issue in this litigation as a vaccine against PCV-2. The court is not persuaded.
> As Intervet points out, all of the above-mentioned facts *postdate* the date of the '601 Patent application. When the '601 Patent application was filed, PCV-2 had no ordinary and customary meaning among persons skilled in the art because the term had not been used prior to the time the '601 Patent was filed. In construing a claim, the court

> must determine a disputed claim's meaning as of "*the time of the invention,* i.e., as of the effective filing date of the patent." *Phillips*, 415 F.3d at 1313 (emphasis added). Accordingly, because PCV-2 had no ordinary and customary meaning at the time of the '601 Patent application, the court must look to the text of the '601 Patent to determine the meaning of PCV-2. *See id.* Because Merial's interpretation is not anchored in the text of the '601 Patent, the court rejects it.

Id. at 6.

Prior to Judge Kennedy's decision, Merial had propounded interrogatories which did not define its use of the term "PCV-2." Defendants Merial SAS' and Merial Limited's First Set of Interrogatories to Plaintiff Intervet, Inc.; Defendants Merial SAS' and Merial Limited's Second Set of Interrogatories to Plaintiff Intervet, Inc. Intervet answered them after Judge Kennedy's decision using the term "PCV-2" as Judge Kennedy had defined it. See Plaintiff Intervet's Supplemental Responses and Objections to Defendants Merial SAS' and Merial Limited's First Set of Interrogatories ("Pl. Resp."). As a result, there were exchanges in the discovery responses of which the following are typical:

> **INTERROGATORY NO. 1:**
> Identify by name, sequence, and any other designation used by Intervet, all PCV-2 vaccines which Intervet has made, used, sold or offered for sale in the United States; identify documents sufficient to identify the composition and sequence of each such PCV-2 vaccine; and identify the five people most knowledgeable about the composition or method of manufacture of each such PCV-2 vaccine.
>
> **RESPONSE TO INTERROGATORY NO. 1:**
> In addition to the foregoing General Objections and General Statements, INTERVET objects to Merial's definition of "PCV-2" as inconsistent with the Court's construction of this term. The Court specifically construed "PCV-2" to mean the five viral strains disclosed in the '601 patent. (D.I. 121.) INTERVET's virus is not one of these five strains, and therefore INTERVET does not have a "PCV-2" vaccine within the meaning of the '601 patent. Unless expressly noted, INTERVET's responses to any discovery requests do not reflect acquiescence in or agreement with Merial's express or implied definition of "PCV-2," or any of Merial's other express or implied definitions.

Pl. Resp. at 6-7.

b.  Analysis

Merial insists that Intervet's responses are insufficient and moves to compel a response. Def. Mem. at 2. But, the rules require that the party answering an interrogatory do so fully, Fed. R. Civ. P. 33(b)(3), and I cannot describe the answer given as anything less than a full answer. Intervet is saying that it does not accept Merial's definition, given Judge Kennedy's determination, and therefore provides an answer which is consistent with Judge Kennedy's determination. Plaintiff Intervet's Memorandum in Opposition to Merial Limited and Merial SAS' Omnibus Motion to Compel Plaintiff Intervet Inc. to Respond to Discovery at 2-3 ("Pl. Opp."). I cannot interpret the word "fully" in the pertinent rule to require Intervet to accept Merial's definition of the term "PCV-2" when Intervet's answer is clear and unequivocal and consistent with Judge Kennedy's determination.

Moreover, if I were to re-write the interrogatory to make it consistent with the history of the dispute concerning the term "PCV-2," it would have to read: "Disregarding Judge Kennedy's determination, and accepting instead Merial's definition of the term "PCV-2," identify by name, sequence, and any other designation used by Intervet, all PCV-2 vaccines which Intervet has made, used, sold or offered for sale in the United States." I do not see why requiring Intervet to answer that hypothetical question is a valid exercise of my power to supervise discovery. To the contrary, all discovery is subject to the balancing test in Rule 26(b)(C)(iii) of the Federal Rules of Civil Procedure that requires a court to limit the discovery "otherwise allowed by these rules" if the burden outweighs its likely benefit, considering (inter alia) the needs of the case, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(C)(iii). By that standard, answering that hypothetical cannot possibly be justified

4

because it seems to have no importance in resolving the issue in this case now that Judge Kennedy had issued his Markman ruling.

Merial, nonetheless, initially indicated in a footnote that the discovery was necessary because Judge Kennedy's determination was not set in stone, might change, and Merial also needed to develop a complete record to be used "in the event the Court alters its construction for purposes of appeal." Def. Mem at 5 n.2. But, the theoretical possibility that Judge Kennedy might change his mind in light of other evidence is insufficient grounds to require the answer to this interrogatory now; that possibility does not in itself render the question so important to the resolution of the issues that an answer, to what is now a hypothetical question, is in order. Indeed, if one of the purposes of a Markman hearing is to narrow the issues presented, thereby saving time and money, premising permitted discovery on a claim construction that was rejected by the court nullifies that purpose.

In its reply, Merial takes a different tack and claims that without the answer to the question it will be unable to have the evidence it needs to prove infringement directly or by the theory of equivalents. Reply in Support of Merial Limited and Merial SAS' Omnibus Motion to Compel Plaintiff Intervet Inc. to Respond to Discovery at 6 ("Def. Reply"). In the same breath, it points to scientific evidence that it claims shows such infringement if the term PVC-2 is defined as it insists. Id. But, Intervet asserts and Merial does not deny that it has given Merial a full explanation of how it produced the vaccine in question. Pl. Opp. at 12. Whether or not Merial can make its case will be a function of the scientific analysis it does and whatever comparison is necessary; it will have nothing to do with whether or not Merial answers this question.

II. <u>Waiver of Attorney Client Privilege</u>

    a. <u>Facts</u>

During the course of his deposition, counsel for Merial presented two exhibits, numbered 64 and 67, to a witness named Peter van Woensel. Both Exhibits 64 and 67 were documents that Intervel produced to Merial prior to the deposition.

As to Exhibit 64, van Woensel testified that it was a series of bi-monthly progress reports, van Woensel Deposition Exhibit 45 at 80:25-81:19, but as to exhibit 67 the witness testified that he did not recognize the document, that he could not tell what the reference to "Patent situation more favorable" in the document was, and that he did not recall any discussion of patent issues with reference to the two products named in the document. <u>Id.</u> at 146:1-18.

Two of the entries on Exhibit 64 were redacted but the remaining fourteen pages of the bi-monthly reports were produced without redactions. Counsel for Merial noted this during the deposition stating:

> MR. ELSEVIER: Mike, on the previous two bimonthly R&D progress reports, it is redacted. I don't know if that is redacted on the basis of privilege, but it doesn't appear there is a legitimate reason why that could have been redacted. So we would ask that you provide us unredacted copies of those documents.
> MR. LOUGHNANE: I will look into it and see if there is a basis for privilege.

<u>Id.</u> at 96-97.

After the deposition, counsel for Merial wrote a letter to counsel for Intervet insisting that:

> Intervet has been aware of its waiver regarding its analysis of patent-related issues for a substantial period of time and has chosen not to demand the return or destruction of the documents at issue. Therefore, such waiver cannot be inadvertent or unintentional, and section 18 of the Protective Order no longer applies.
> Examples of Intervet's waiver include, but are not limited to, the following instances:

| EXHIBIT | BATES NUMBERS | NATURE OF WAIVER |
|---|---|---|
| Van Woensel Exhibit | INT0022243* | Intervet produced 13 of 16 |

6

| | | |
|---|---|---|
| 64 | INT0022244*<br>INT0022242<br>INT0022241<br>INT0022228<br>INT0022240**<br>INT0022239<br>INT0017677<br>INT0022237<br>INT0022236<br>INT0022235<br>INT0022234<br>INT0022216<br>INT0022233<br>INT0022232 | Bimonthly R&D Progress Reports without redacting information, under the heading "Patent issues" and thus waived privilege as to this subject matter. Intervet, however, clearly and improperly redacted information on two of these reports(*) and may have done so on another one (**) regarding the same subject matter. |
| Van Woensel Exhibit 67 | INT0045617-618 | Intervet produced this summary status report without redacting the information related to its analysis of patent-related issues, including statements that "Patent situation more favourable" and "Drawbacks: cost, the use of other, patented, vectors" and thus waived privilege as to this subject matter. |
| | INT0054513-54530 | Intervet produced this document without redacting information related to its analysis of patent, license and legal issues and thus waived privilege as to this subject matter. |
| | INT0057288-57298 | Intervet produced this document without redacting information related to its analysis of patent, licensing and legal issues and thus waived privilege as to this subject matter. |

Based on these intentional waivers, Merial seeks the production of all previously withheld and/or redacted documents to the extent the withheld document or redacted information relates to the subject matter of Intervet's waivers: its analysis of patent-related issues.

7

Decl. in Supp. of Omnibus Mot. to Compel Ex. 14 ("Merial's 12/10/07 Ltr.").

Counsel for Intervet responded:

> I write in response to your December 10, 2007, letter to William James. First, we disagree with your assertion that Intervet has waived any attorney-client privilege in this matter. Intervet's redactions were in no way undertaken in an effort to selectively produce only favorable legal opinions. However, in light of your assertion that Intervet has waived privilege based on the documents you cite, Intervet demands, pursuant to the Protective Order in this matter, that Merial destroy all copies of the following documents: INT0022216, INT0022228, INT0022232, INT0022233, INT0022234, INT0022235, INT0022236, INT0022237, INT0022239, INT0022240, INT0022241, INT0022242, INT0017677, INT0045618, INT00054523, INT0057297.
> Pursuant to the provisions of the Protective Order, and as Merial has done numerous times throughout the course of this litigation, Intervet will reproduce the above pages in redacted form. Similarly, Intervet will not be unredacting the documents that you list in the final page of your letter. Furthermore, many of the redactions in the documents that you refer to in the final page of your letter have nothing to do with privilege, and instead relate to relevance (*e.g.*, the redactions involve products that are not the subject matter of this litigation).

Decl. in Supp. of Omnibus Mot. to Compel Ex. 15 ("Intervet's 1/9/08 Ltr.").

Merial agreed to destroy the unredacted documents, subject to asserting its right to compel the production of the portions of the two bi-monthly progress reports that Intervet redacted to which Merial's counsel had referred during the deposition. Def. Mem. at 8-9. Merial has now done so, but has also gone further, claiming that "Intervet's decision to waive privilege as to some of the statements in its Bimonthly R& D Progress Reports and other documents waives privilege as to *all statements* related to the relevant subject matter, and Merial is entitled to full discovery on these subjects." Def. Mem. at 10 (emphasis added).

    b. <u>Analysis</u>

The argument invokes the principle that waiver of the privilege in an attorney-client communication, even an inadvertent one, "extends to all other communications relating to the same subject matter." <u>In re Sealed Case</u>, 877 F.2d 976, 980-81 (D.C. Cir.1989). But, as Intervet correctly points out, the invocation of that principle requires that the document on which the

8

waiver was based was privileged in the first place; it is non sequitur to deduce a waiver from the production of a document that is not privileged. See Pl. Opp. at 4. Thus, in the perfect converse of the ordinary situation, the titular holder of the privilege, Intervet, is insisting that the documents are not privileged while Merial is insisting they are. It then gets, as Alice in Wonderland put it, "curioser and curioser;" Intervet, claiming that Exhibits 64 and 67 are not privileged, nevertheless "clawed them back" under a provision of a Protective Order, pertaining to the production of privileged material. Def. Mem. at 8; Pl. Opp. at 26. It then produced them in a redacted form, even though Merial had already seen them in an unredacted form, and used them during the deposition. Pl. Opp. at 25.

Merial's position is pure gamesmanship. The only reason for Merial to claim that the production of Exhibits 64 and 67 are privileged is to argue that there has been a waiver and the waiver extends to the subject matter which Merial insists is "Intervet's analysis of patent issues related to its porcine circovirus type II vaccine products." Def. Mem. at 11. According to that assertion, the waiver would extend beyond the bi-monthly reports to which the witness was directed, such as Exhibits 64 and 67, to any analysis of patent issues wherever they appear. The unlimited scope of such a waiver is utterly unjustified. In Minebea Co. v. Papst, 228 F.R.D. 34, 36 (D.D.C. 2005), the one case cited by Merial, Judge Friedman limited the waiver of privilege to "the specific patents involved in the third party communications, for that by definition is the specific subject matter involved." The judge relied on Katz v. AT&T Corp. for the proposition that the subject matter of the disclosure must be determined in reference to the content of the disclosed document. Minebea Co. v. Papst, 228 F.R.D. at 36 (citing Katz v. AT&T Corp., 191 F.R.D. 433, 440 (E.D. Penn. 2000)).

According to Merial, the "subject matter" would be all documents, claimed to be privileged, that involved an analysis of patent issues. This boundless definition of "subject matter" on the basis of the production of Exhibits 64 and 67 would be grossly unfair. It surely is not needed to prevent any unfairness of a party making a selective disclosure and thereby garbling or manipulating the truth. See Edna Selan Epstein, The Attorney Client Privilege and the Work-Product Doctrine 589 (2008).[1] As Epstein explains, the principle called "subject matter" waiver is invoked to permit a party to see what otherwise would be privileged matter so that it can comprehend the privileged matter that was selectively disclosed. This prevents the producing party from making a disclosure of privileged matter while keeping hidden information that makes what has been disclosed comprehensible. Merial's position, however, is pure "gotcha": because Intervet has been inconsistent in claiming or not claiming the privilege as to Exhibits 64 and 67 it should be deemed to have made a gross and utter waiver of its attorney-client privilege irrespective of whether such a waiver has anything to do with the documents that have been disclosed; Merial cannot pretend not to understand Exhibits 64 and 67. Such an unmitigated sanction is out of all proportion to the worse that can be said of Intervet, that it has been inconsistent in its assertion of the privileged nature of Exhibits 64 and 67 when engaging in its chess match with Merial.[2]

Finally, Merial seems to forget that subject matter waiver flows from the disclosure of privileged information, not from the inconsistent assertions that documents are not privileged. Again, enforcing a subject matter waiver would be imposed as a sanction for what Intervet has

---

[1] "When [privileged] documents are put in issue or have been disclosed, then again so much of the entirety of the document or of related documents will be ordered produced so that a full and truthful story can emerge. The test that is used to determine the requisite extent of disclosure is whatever is necessary so as not to permit the truth to become garbled or manipulated. That may involve disclosure of all documents dealing with the same subject matter. It may be sufficient to permit disclosure of only a portion of a single document." Id.

[2] Whether or not Intervet properly "clawed back" the documents is an evidentiary issue that need not be reached now.

10

done with reference to Exhibits 64 and 67 but I cannot possibly find that such a broad waiver is a legitimate judicial response to Intervet's behavior.

III. Remaining issues

Unfortunately, much time had gone by since this motion was filed and much additional discovery has apparently taken place. I have reviewed the remaining issues raised by Merial's motion and I am convinced that they are the kind of issues that may have been rendered moot or insignificant. Additionally, these parties have now filed, by my count, five other discovery motions. Finally, Intervet had moved to amend its complaint because of information secured during discovery. See Intervet's Motion for Leave to File an Amended Complaint. All of this convinces me that it is time to pause the dynamic discovery process to ensure that the parties and the court's resources are carefully husbanded and devoted to matters that are truly in issue and significant to the resolution of this case on its merits.

To that end, I will deny the remainder of the Motion to which this opinion is devoted, *i.e.* # 127, and all other motions without prejudice. I will order the parties to meet and confer in person and in good faith to ascertain what issues raised by these motions truly divide them and are worthy of the expenditure of additional judicial resources in light of what discovery has otherwise disclosed and the progress of the case since these motions were filed.

After the 20 day meet and confer period has ended, I am requiring the parties to file a joint status report in the following format:

| Docket # | Name of Motion | Issues Withdrawn | Issues to be Resolved |
|---|---|---|---|
| | | | |

11

To keep the record accurate, a party can renew a motion being dismissed without prejudice by this order, by filing a one sentence electronic filing as follows: "Intervet notes that docket #, [title of motion] is renewed."


Dated: September 3, 2008                              _____/s/_____
                                                     JOHN M. FACCIOLA
                                                     UNITED STATES MAGISTRATE JUDGE