# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
INTERVET, INC.,                           )
                                          )
    Plaintiff,        )
                                          )
    v.                 )  Civil Action No. 06-658 (HHK/JMF)
                                          )
MERIAL LTD. and MERIAL SAS,               )
                                          )
    Defendants.        )
_____)

## MEMORANDUM OPINION

This case was referred to me for resolution of several motions, including Merial Limited and Merial SAS' Omnibus Motion to Compel Plaintiff Intervet Inc. To Respond to Discovery ("Omnibus Mot.") [#127]. I resolved the majority of the issues in that motion in a Memorandum Opinion [#196] that I issued on September 3, 2008, but as to some matters I denied Merial's request without prejudice to Merial's renewing their motions at a later time. This is one of those motions.

## I. Background.

Merial and Intervet are companies that create animal health products, including vaccinations. At issue in this litigation is a vaccine called Circumvent, which is designed to prevent Porcine Circovirus, a virus that causes post-weaning multisystemic waste in young pigs. Merial Limited holds a patent entitled Porcine Circovirus Vaccine and Diagnostic Reagents, U.S. Patent No. 6,368,601 ("'601 patent"). Merial Limited initially brought suit against Intervet in the Northern District of Georgia alleging that Intervet infringed Merial's '601 patent when it created and marketed Circumvent. Intervet moved to dismiss that action and filed this suit seeking a

declaration that it did not infringe, and that Merial's patent was invalid and unenforceable.

Merial served various discovery requests on Intervet including interrogatories and deposition notices pursuant to Federal Rule of Civil Procedure 30(b)(6).  At issue now are the requests that seek information about when and how Intervet became aware of the '601 patent.  Specifically, Merial argues that Intervet's response to Interrogatory No. 6 is insufficient and also argues that Intervet should designate a witness or witnesses to testify on the company's behalf regarding that issue.  Intervet argues that the request is overbroad, vague, unduly burdensome, irrelevant and privileged.  Merial also argues that Intervet has improperly withheld discovery on the issue of wilfulness, and Intervet responded that it intended to file a motion to bifurcate, but in any event, it had given all of its non-privileged information to Merial.  The parties also disagree as to the sufficiency of Intervet's responses to Merial's 30(b)(6) notices.

## II.   Analysis.

### a.   Interrogatory No. 6.

Interrogatory No. 6 asks Intervet to "[i]dentify the date(s) on which Intervet first became aware of the '601 patent, identify the person(s) who became aware of the '601 patent, and explain the circumstances under which the '601 patent came to Intervet's attention."  Exhibit 8 to Omnibus Mot. at 14.  Intervet responded by saying that Marieke van Gent, a European patent attorney and employee of Intervet's parent company, had the most knowledge about the circumstances under which Intervet became aware of Merial's patent, as well as who and when.  Intervet also said that the company was aware of the patent by August 2002.  Anything else, it claimed, was protected by the attorney-client privilege.

I disagree that the interrogatory is overbroad and unduly burdensome because it clearly

demands when and how Merial learned of the patent.  To limit any possible overbreadth, I will narrow the identification of persons to those employees who became aware of the patent when Intervet first became aware of the 601 patent to alleviate any vagueness.  Thus, the interrogatory would read, in pertinent part: "[I]dentify the person(s) who became aware of the patent when Intervet first became aware of the patent."

Next, Intervet argues that the interrogatory seeks information that is irrelevant and thus not discoverable.  Information is relevant if it is likely to make a material fact more or less likely. Fed. R. Evid. 401.  If Merial only claimed that Intervet infringed the patent, it would not necessarily matter if Intervet was aware of the patent because infringement is a strict liability offense.  See BMC Res., Inc. v. Paymentech, LP, 498 F.3d 1373, 1381 (Fed. Cir. 2007).  But, Merial alleges that Intervet willfully infringed the patent, and that Intervet induced others to infringe as well.  These both require proof of intent to infringe, which necessarily requires that Intervet be familiar with the patent.  Id.  "To establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent . . . If this threshold objective standard is satisfied, the patentee must also demonstrate that this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer."  In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc), cert denied, 128 S. Ct. 1445 (2008). Everything hinges on when Intervet knew about Merial's patent rights and what it did after it found out.  See Imonex Servs. Inc. v. W.H. Munzprufer Dietmar Trenner, 408 F.3d 1374, 1377 (Fed. Cir. 2005).  "Actual notice of another's patent rights triggers an affirmative duty of due care."  Id. (citing Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1109 (Fed. Cir.

3

1986)).  Accordingly, information about how and when Intervet discovered Merial's patent, and

what happened thereafter is highly relevant to the issues in this case.

Finally, Intervet argues that information responsive to the interrogatory request is covered

by the attorney-client privilege.  The attorney-client privilege protects confidential

communications between a client and her lawyer that occur for the purpose of giving legal

advice, but facts do not become privileged just because they are communicated to or by a lawyer.

See Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981).  When asserting privilege, the

proponent cannot rely on blanket assertions, but must articulate facts from which the court can

determine the existence of the privilege.  In re Lindsey, 158 F.3d 1263, 1270-71 (D.C. Cir. 1998).

Further, there is a distinction between communications made to and by attorneys.  Cobell v.

Norton, 377 F. Supp. 2d 4, 10 (D.D.C. 2005), vacated on other grounds, 455 F.3d 301 (2006),

cert. denied, 549 U.S. 1317 (2007).  "In the case of attorney-to-client communications, attorney-

client privilege may only properly be invoked if the communications rest on confidential

information obtained from the client."  Id. (internal quotations omitted).

Intervet has only told Merial that the company became aware of the '601 patent by

August 2002 and that van Gent is the most knowledgeable person on the circumstances.  Intervet

has not given any basis for its privilege claim other than van Gent is a patent attorney.

Presumably Intervet obtained advice regarding the '601 patent and its own work with Porcine

Circoviruses from van Gent and is now claiming that advice is privileged.  However, Intervet

fails to distinguish between the confidential communications between van Gent and Intervet, and

the background facts about what was going on at Intervet during that crucial time period.  Any

advice sought from van Gent that would tend to reveal a confidential communication is properly

4

withheld as privileged.  What van Gent knew as an objective fact is not privileged merely because it happened that her legal advice was ultimately sought about that fact.

Also, I cannot see any reason why the identity of the person or group of people who first came across the '601 patent or the corresponding time frame can be withheld on the basis of privilege.  If van Gent discovered the patent and notified Intervet, that discovery would not be a confidential piece of information obtained from the client.  If another Intervet employee who was not an attorney discovered the patent, and that discovery lead Intervet to seek legal advice, the facts about the discovery are not in themselves protected by the attorney-client privilege merely because Intervet sought advice about the discovered fact.  To hold otherwise would mean that an individual or corporation could hide discoverable information because she or it asked advice about that information.  That is not the law; the focus of the privilege is the communication, in confidence, of a fact – meaning the attorney and the client do not have to reveal to others what they discuss in the process of securing and rendering legal advice.  Ascertaining from the client that the fact existed does not yield in itself any communication, let alone a confidential one, about that fact.

Thus, Intervet must, at a minimum, supplement Interrogatory No. 6 to state the name(s) of the person(s) who first discovered the '601 patent, and to give the dates when these discoveries were made.  Intervet must also describe the circumstances under which the discovery was made, including, if applicable, that the patent was discovered by an attorney for Intervet.  If there is information that is privileged under the principles explained in this Opinion, then Intervet must clearly state the basis for the privilege in a manner than permits the Court to evaluate that claim. See Fed. R. Civ. P. 26(b)(5).  Its current description is woefully inadequate.

5

As just explained, though Intervet does not say so clearly, it suggests that after it discovered the '601 patent, it sought an opinion from counsel regarding infringement. Such opinions may form the basis for the advice of counsel defense to willful infringement claims that, in turn, waives the attorney-client and work-product privileges as to opinion counsel. In re Seagate, 497 F.3d at 1370. Intervet previously argued that it should be permitted to bifurcate discovery in this case to prolong its decision on whether to waive its privilege. Essentially, Intervet was hoping to prove that there was no infringement at all and thereby avoid going into the issue of intent. I denied that request in June 2008. See Memorandum Opinion [#174]. While I appreciate that the decision whether to waive privilege and raise the advice of counsel defense is an important one, I do not find that its importance justifies Intervet's decision to wait until the latest possible time to assert it, particularly where doing so runs the risk of precluding Merial from conducting adequate discovery. Intervet has had a substantial amount of time to consider whether it intends to raise the advice of counsel defense, and as I understand it, has not yet taken a position. It shall do so within the next five days. If it does assert the defense, then it must supplement the interrogatory fully with any information that is responsive but currently withheld on the basis of privilege in addition to the other information described above.

### b. 30(b)(6) Designation.

Merial also sought designation of 30(b)(6) deponents to testify on Intervet's behalf regarding the information sought in Interrogatory No. 6. Intervet designated van Gent, who Merial previously agreed not to depose. Merial argues that there should be other people who are knowledgeable on the subject besides van Gent. Merial also states that it did not realize that Intervet would rely on van Gent when it agreed not to depose her, and so wishes to depose her

now.  I agree with Merial that it should be permitted to depose van Gent despite its agreement not

to do so because the circumstances have changed and Intervet has now identified her as the

person who Intervet would permit to speak on the company's behalf.

Any information that I have designated as not privileged for the purpose of the

interrogatory is not privileged for all purposes.  Thus, even if Intervet does not waive the

privilege, I expect its 30(b)(6) deponent, whether that be van Gent, or someone else,[1] to be fully

prepared to answer questions on Intervet's behalf on the subjects listed above.  Intervet's

decision whether to assert the advice of counsel defense will have important ramifications for the

30(b)(6) deposition as well as Interrogatory No. 6.  If Intervet does assert the defense, then it

waives attorney-client privilege and work-product privileges.

If Merial chooses to notice a deposition of van Gent, Intervet must make her available.

### c.    Other Issues.

Merial designated the issues discussed above in its notice of renewed motion, but also

identified several page numbers where arguments could be found in its Omnibus Motion.  Those

pages included different issues that I have not addressed herein under the assumption that Merial

only intended to raise the issues it described in its notice.  To the extent that my assumption is

incorrect, the parties are invited to bring those issues to the attention of the Court.

### IV.    Conclusion.

For the foregoing reasons Intervet will also be required to supplement the answer to

Interrogatory No. 6 within ten days as discussed above.

---

[1] See Alexander v. FBI, 186 F.R.D. 137, 149 (D.D.C. 1998) (holding that company designating a 30(b)(6) witness has the obligation to prepare that witness to testify on the subject for which the company certifies that the person is competent).

Within five days, Intervet will file a praecipe indicating whether or not it intends to claim the defense of advice of counsel.  If it indicates it does, its attorney-client and work-product privilege claims are deemed waived.  If Intervet asserts the advice of counsel defense, its waiver extends to any documents or electronically stored information that would otherwise be privileged.

Once Merial receives the supplemented answers to the interrogatory, it shall have five days to indicate whether it plans to go forward with depositions on this subject.  The parties shall then have 30 days to complete the deposition.

An Order accompanies this Memorandum Opinion.


Dated: March 4, 2009                                    _____/S/_____
                                                        JOHN M. FACCIOLA
                                                        U.S. MAGISTRATE JUDGE